UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EMHART INDUSTRIES, INC.

V. CA 02-053S

HOME INSURANCE COMPANY,
INSURANCE COMPANY OF NORTH AMERICA,
LIBERTY MUTUAL INSURANCE COMPANY,
NORTH RIVER INSURANCE COMPANY,
ONEBEACON AMERICA INSURANCE COMPANY, and
UNITED STATES FIRE INSURANCE COMPANY

MEMORANDUM AND ORDER

This matter tests the extent of the "confidentiality" of a written settlement agreement between Black & Decker Inc.[1] and the former defendant, Liberty Mutual Insurance Company ("Liberty Mutual"). When the remaining defendant insurers requested production of the entire settlement agreement[2] and other discovery (an interrogatory)[3] regarding the agreement, Emhart consulted with Liberty Mutual. Liberty Mutual requested that, in light of the confidentiality clause in the settlement agreement, Emhart object to the discovery and "use its reasonable efforts to obtain a protective order seeking to maintain the confidentiality of the Settlement Agreement, and to request that the court issue an order precluding not only the production of the Settlement Agreement, but also any information related thereto." See Exhibit B to Emhart's Supporting Mem.

---

[1] For purposes of this litigation, Black & Decker includes the plaintiff, Emhart Industries, Inc., ("Emhart").

[2] The request is as follows: "Produce the Settlement Agreement between Black & Decker and Liberty Mutual Insurance Company that resolved plaintiff's claims against Liberty Mutual Insurance Company regarding the [Centredale Manor] Site."

[3] The interrogatory in question provides: "With respect to the settlement between Liberty Mutual Insurance Company and Black & Decker, how much of that settlement is attributable to the settlement of this lawsuit, and explain how you calculated that amount."

Emhart then dutifully filed a motion for a protective order pursuant to Fed. R. Civ. P. 26(c). The remaining defendant insurers objected and a hearing was held on October 18, 2005. Based upon the court's review of the memoranda filed, the oral argument, and the court's independent research, Emhart's motion for a protective order is denied in part and granted in part.

## Background

This matter commenced in early 2002 when Emhart filed a complaint for declaratory judgment seeking coverage under various policies (both primary and excess) issued by the defendant insurers and which related to allegations of environmental contamination at a site in North Providence, Rhode Island known as the Centredale Manor Superfund site ("Centredale"). Similar litigation involving these parties, but concerning many sites other than Centredale, was then pending in the United States District Court for the District of Massachusetts.

Following discovery, Emhart and several of the defendant insurers filed motions for partial or full summary judgment pursuant to Fed. R. Civ. P. 56. In May 2005, the district court adopted the findings and recommendations of this magistrate judge dated February 15, 2005 and denied all motions for summary judgment. After the Report and Recommendation was issued, but before the district court's adoption thereof and entry of an order denying the motions for summary judgment, Black & Decker (including Emhart) and Liberty Mutual entered into a written settlement agreement which ended this litigation between them as well as the pending litigation in Massachusetts and related appeals. It is this settlement agreement that has piqued the interest of the remaining insurers. Emhart argues that it should not be obligated to satisfy the defendant insurers' curiosity because confidentiality agreements should be protected as they promote settlements and, therefore, serve the public interest; confidentiality agreements prevent the remaining defendant insurers from obtaining a competitive advantage over the settling insurer; and Emhart, with the blessing of Liberty Mutual, has agreed to provide the remaining defendant insurers with certain information about the settlement agreement which is all these defendants need to know to defend themselves in this matter.[4]

---

[4] This information would be subject to certain restrictions as to what individuals would have access to it and a consent protective order would be necessary. The information would include the amount of the settlement attributed to the Centredale claim, whether Emhart has any further rights under insurance

The remaining defendant insurers argue that Emhart's largesse[4] is insufficient to determine "how much of the alleged loss has been covered, what remains to be paid, and whether all of the applicable underlying primary insurance has been exhausted." See Defs' Mem. at 1. Further, they argue that the information requested is quite relevant to this matter. Additionally, the remaining defendant insurers state that "the Court may protect any legitimate concerns that either Emhart or Liberty Mutual may have by ordering the parties to keep the settlement agreement and the requested information confidential and by limiting the defendants' use of the requested information to this case only." Id. at 2.

Discussion

The issues raised in this matter were discussed in large part in the matter of Bennett v. La Pere, 112 F.R.D. 136 (D.R.I. 1986). In Bennett, the court stated the issue as "whether a nonsettling defendant in a civil action may compel the disclosure of an accord reached between the plaintiffs and (former) codefendants." Id. at 137. The Bennett case involved claims of medical malpractice against certain physicians and the Westerly Hospital. The plaintiffs and defendant physicians reached an amicable resolution[5] which was reduced to writing. Since the claim was brought on behalf of a minor, a hearing was necessary to obtain court approval of the settlement terms. The Hospital's lawyer, over objection, was permitted to attend the hearing with severe restrictions on republication or other use of the information gleaned from the hearing, although the Hospital's lawyer was not provided with any copies of the settlement documents. As one can easily surmise, the Hospital quickly requested production of the settlement documents and, when rebuffed, filed a motion to compel.

The court stated that the range of discovery is extremely broad and the information sought need not be admissible. Id. at

---

policies issued by Liberty Mutual with respect to the Centredale claim, whether Emhart has any further rights with respect to the Centredale claim under policies issued by Liberty Mutual to USM Corporation, and Emhart's allocation of defense and indemnification costs for the Centredale claim.

[5] The court stated these parties reached an "amicable settlement", id. at 137, although, in this writer's experience, such resolutions are far from amicable. Nonetheless, I defer to the district judge.

138. The court further stated that

> [i]f there is some legitimate relevance to the requested information and if no cognizable privilege attaches, it ought to be discoverable - at least in the absence of some countervailing consideration, e.g., that production would be disproportionately onerous or burdensome, that unfair prejudice would result, or the like.

Id. at 138.

The court indicated that relevance in the federal setting is "an elastic concept." Id. The settlement documents were determined to be relevant as they involved the issues of Joint Tortfeasor contribution, whether the Hospital could advance a claim that the settlement documents included the claim against the Hospital, and the settlement documents may affect the strategy of the Hospital adding the physicians as third parties. Also, this court would add another reason which is that the settlement documents may assist in forming a settlement strategy on behalf of the Hospital.

Upon determining relevance, the court should consider any basis which might militate against disclosure. Id. at 139. The burden of showing such basis is on the party seeking to prevent disclosure. Id. at 140. The court rejected the argument that the party requesting the disclosure has the burden to show that the disclosure will lead to admissible evidence. The court also rejected any argument that disclosure will chill settlements generally as full disclosure has not been shown to reach this result and may well lead to full settlements.

Because the court found the settlement documents relevant, not privileged and that the plaintiffs had not met their burden of showing a basis for non-disclosure, the Hospital's motion to compel was granted. The court stated

> [t]o the extent that the Hospital's ability realistically to evaluate the plaintiffs' case against it depends upon an awareness of the terms and conditions of the settlement with the codefendants - and it plainly depends on that information to a meaningful degree - the remaining defendant should not be left to grope blindly in the dark. So long as the policy of the Rules is the

> promotion of the "just, speedy, and inexpensive" resolution of cases, then fair settlements must always be encouraged. Fairness cannot be achieved when one side is needlessly blindfolded.

Id. at 141.

However, the court did not permit carte blanche use of the settlement documents. Certain restrictions were imposed by the court in accordance with a previously entered protective order.

Turning to the instant matter, this court must first determine whether the settlement agreement is relevant. This court finds that the agreement is relevant as the remaining defendant insurers have issued several excess policies. While it is unclear at this time as to what primary policies underlie these excess policies (assuming coverage), it is not inconceivable that some or all of the primary policies issued by Liberty Mutual affect these excess policies. Assuming so, the remaining defendant insurers need to determine whether the applicable primary policies were exhausted or whether there was any agreement between Black & Decker (Emhart) and Liberty Mutual as to whether Liberty Mutual's applicable primary policies were deemed to be exhausted. Further, as in Bennett, the remaining defendant insurers need to inquire as to whether any language in the settlement agreement might release them or some of them from any further claims. Also, these defendant insurers need to inquire as to the method of calculation used by the settling parties to determine the amount of the overall settlement allocated to the Centredale site and the costs attributed thereto to determine if the calculations were fair and just. In order to do this, they need to discover the full settlement amount and the amounts assigned to the many other sites at issue between the settling parties to determine if these amounts are appropriate and fair in relation to the Centredale site.[6] And lastly, a review of the full settlement agreement may cause some or all of the remaining defendant insurers to create a settlement posture as to the claims against them. This court finds that the full settlement agreement is relevant in this matter. Since neither Emhart nor Liberty Mutual has argued that the settlement agreement is privileged, the court will find that there is no valid privilege here preventing the full disclosure of the settlement agreement.

---

[6] The settlement agreement covers in excess of 80 sites and the claims related thereto.

Turning to the issue of whether Emhart and/or Liberty Mutual have shown any basis for non-disclosure, the court heard only the arguments that: (1) the confidentiality of a settlement agreement should be honored as such a result will promote settlements in generally and this will be in the public interest; and (2) disclosure will grant the requesting party a competitive advantage. Emhart and Liberty Mutual cited to certain decisions suggesting this, but no statistics have been shown to this court or studies demonstrating that the number of settlements rises when confidentiality is honored and precipitously drops when not honored. Nor has there been shown any support for the proposition that a competitive advantage goes to the requester. While this court has read the cases cited by Emhart and Liberty Mutual, they are not persuasive. Besides, the Bennett case should be followed as it is precedent in this district and, in this writer's opinion, the reasoning and analysis are rock solid. This court finds that Emhart and Liberty Mutual have failed to meet their burden to show a valid basis for non-disclosure.

This court does agree with the argument that a confidential settlement agreement ought not to be cast to the winds for all to read. Here, a review of the full settlement agreement by the defendant insurers is necessary to determine any support for legal arguments to be made in the future. At this time, the court sees no need for disclosure of the settlement agreement and interrogatory answer to be viewed by any persons other that the attorneys of record representing the remaining defendant insurers. Consequently, until a court rules otherwise, the full settlement agreement and interrogatory answer are for the attorneys' eyes only. The settlement agreement and interrogatory response are to be used only in this litigation. No additional copies shall be made by defense counsel and, at the conclusion of this matter, all copies will be returned to counsel for Emhart or Liberty Mutual. The remaining defendant insurers are free to file motions requesting additional distribution or viewing privileges should they have good cause to do so.

This decision is limited to requests from remaining parties in a lawsuit where the plaintiff and one or more, but not all, defendants have settled. Whether the settlement documents can be obtained by non-parties will have to remain open for an appropriate case.

Emhart's motion for a protective order is denied to the extent it seeks to preclude discovery of the full settlement agreement and the response to the disputed interrogatory. The motion is granted as to the restrictions suggested in the motion and as set forth above. Emhart shall provide counsel with a full

copy of the settlement agreement on or before November 18, 2005 and shall respond to the disputed interrogatory on or before December 2, 2005.

So ordered.

ENTER:

Robert W. Lovegreen
United States Magistrate Judge
November 2, 2005

Deputy Clerk