UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY,<br>INSURANCE COMPANY OF NORTH AMERICA,<br>LIBERTY MUTUAL INSURANCE COMPANY,<br>NORTH RIVER INSURANCE COMPANY,<br>ONEBEACON AMERICA INSURANCE COMPANY<br>and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 02-053 S |

REPLY MEMORANDUM OF EMHART INDUSTRIES, INC. IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE EXPERT OPINIONS OF RICHARD J. HUGHTO

In their opposition to Emhart's motion to exclude the testimony of Dr. Richard Hughto, defendants OneBeacon America Insurance Company and Century Indemnity Company (collectively "OneBeacon/Century") have failed to demonstrate that Dr. Hughto's testimony meets the criteria for admissibility set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and the cases following Daubert. The OneBeacon/Century Opposition ("Opp.") makes clear that OneBeacon/Century is relying on, and that Dr. Hughto has applied, an incorrect legal standard relating to the "discoverability" trigger of coverage applicable under Rhode Island law. In addition, Dr. Hughto's reliance on concentrations of contaminants that were much lower than those present at the Site makes his opinion as to whether the dioxin actually present at the site was "capable of being detected" misleading and irrelevant. Dr. Hughto's testimony should therefore be excluded.

A. The "Reason To Test" Opinion

OneBeacon/Century asserts that a "reasonable person" standard does not apply under the "discoverability" trigger (Opp. at 10 n.6). However, as discussed in the memorandum of law filed by Emhart in support of its motion,[1] the Textron cases explicitly adopted a "reasonable person" standard. The court in Textron, Inc. v. Aetna Casualty & Surety Co., 754 A.2d 742, 746 (R.I. 2000) ("Textron-Wheatfield"), described the "discoverability" trigger as "descend[ing] from a long and venerable line of insurance cases," including American Home Assurance Co. v. Libbey-Owens-Ford Co., 786 F.2d 22 (1st Cir. 1986), and cited American Home for the proposition that the date of an occurrence was when "a reasonable person" would have been aware of a defect. 754 A.2d at 746. American Home, in turn, had stated that "the test for determining the date of the occurrence should be the time at which a reasonable person would be aware that a defect exists that may give rise to a cause of action." 786 F.2d at 30 (emphasis added). Similarly, in Textron, Inc. v. Aetna Casualty & Surety Co., 723 A.2d 1138, 1142 (R.I. 1999) ("Textron-Gastonia"), the court ruled that evidence of spills and leaks of chemicals which "could cause a person exercising reasonable diligence to test for, and to discover, soil and groundwater contamination" sufficed to meet the "some reason to test" standard. 723 A.2d at 1142 (emphasis added). Dr. Hughto's opinions are based on an analysis that is contrary to the applicable "reasonable person" standard, and that fact alone is sufficient to make his opinion regarding "reason to test" inadmissible.

Moreover, Dr. Hughto's opinion is not that a reasonable person would not have had a reason to test for dioxin; instead, he opines that it was not "common to test" for dioxin.

---

1 This issue is also discussed on page 13 of Emhart's Memorandum of Law in Opposition to Defendants' Motions in Limine to Exclude Expert Testimony of Dr. J. Ronald Hass.

That opinion is not relevant to the discoverability trigger and, accordingly, is inadmissible for two independent reasons. First, nothing in the Textron cases requires that testing for a particular contaminant be "common." Instead, a history of spills and leaks are sufficient for a reason to test. Textron-Wheatfield, 754 A.2d at 747. Second, Dr. Hughto ignores the site history despite his testimony that any analysis of a contaminated site must take into account the site history. (see Emhart Mem. at 9-10). The site history of Metro-Atlantic includes the use of trichlorophenol prior to the policy period. Without such a context, an abstract statement about whether testing was "common" is not relevant to whether in the circumstances that existed during the policy period a reasonable insured had "some reason to test." Dr. Hughto's opinion that it was not common to test for dioxin should be excluded.

B. The "Capable Of Being Detected" Opinion

OneBeacon/Century also attempts to defend Dr. Hughto's reliance on detection of a "low part per billion" level, rather than the levels of dioxin actually found at the Site, in determining whether the dioxin was "capable of being detected" (Opp. at 12). This defense merely highlights the flaws in Dr. Hughto's opinion. OneBeacon/Century emphasizes that in his report, Dr. Hughto states that the "commercial analytical laboratories ... were not capable of quantifying dioxin to the low part per billion level in environmental samples" (Opp. at 11, emphasis added). However, the relevant question is not whether the contamination at the Site could have been "quantified" to the low part per billion level. Instead, the question is, in the words of the Textron decisions, whether the dioxin present at the Site could have been detected. Nothing in the Textron cases ties the "capable of being detected" requirement to any particular level of contamination, much less to concentrations that were more difficult to detect than the levels present at the Site. It is sufficient that the dioxin at the Site required remediation, i.e., that dioxin was present at levels that equaled or exceeded the minimum level for remediation

required by the EPA. The detection of the existing concentrations would result in sufficient property damage to require remediation. As previously discussed (Emhart Mem. at 10-11), even if any limits were required to be detected, the relevant levels would be the levels of dioxin actually present at the site which could have been detected – in this case, dioxin levels of up to 140 parts per billion – not whether lower concentrations could have been detected. To determine whether an injury is "capable of being detected," one looks to the injury that actually occurred to determine if an observer could detect it, not whether a lesser amount of damage could have been detected. To hold otherwise would be to distort the meaning of "capable of being detected" beyond any common sense meaning of the words.

CONCLUSION

For the foregoing reasons and the reasons set forth in the Motion in Limine and the supporting Memorandum of Law, the Court should exclude the testimony of Richard J. Hughto.

By its attorneys,

Gerald Petros / MRE

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600 (fax)

Jack R. Pirozzolo
Richard L. Binder
Willcox, Pirozzolo & McCarthy
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Dated: June 21, 2006

Counsel for Emhart Industries, Inc.

## CERTIFICATION

To:

James T. Murphy, Esq.
Kelly N. Michels, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903

Kevin J. O'Connor, Esq.
Hermes, Netburn, O'Connor & Spearing, P.C.
265 Franklin Street, 7th Floor
Boston, MA 02110

Mark T. Nugent, Esq.
Michael Marcello, Esq.
Michael T. Farley, Esq.
Morrison Mahoney LLP
121 South Main Street, Suite 600
Providence, RI 02903-7141

John T. Harding, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

James T. McCormick, Esq.
McKenna & McCormick
128 Dorrance Street, Suite 330
Providence, RI 02903

Lawrence A. Nathanson, Esq.
Siegal, Napierkowski & Park
533 Fellowship Road, Suite 120
Mt. Laurel, NJ 08054

I hereby certify that on the 21st day of June, 2006, a copy of the within document was served by first class mail, postage prepaid, upon the counsel of record listed above.

Cynthia Tomas

726880v1 (55451/115705)