UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC., Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO.: 02-053S |
| HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY, Defendants. | ) | |

**ONEBEACON AMERICA INSURANCE COMPANY'S MOTION**
**(PRORATION OF AGGREGATE LIMITS) FOR PARTIAL SUMMARY JUDGMENT**

OneBeacon America Insurance Company ("OneBeacon"), as successor-in-interest to Employers Surplus Lines Insurance Company ("ESLIC"), hereby moves pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's June 28, 2006 Order for the entry of an order declaring that to the extent that the ESLIC Policy provides coverage for costs associated with an Environmental Protection Agency-ordered cleanup of contamination at the Centerdale Manor Superfund Site in North Providence, Rhode Island, which OneBeacon denies, Emhart Industries, Inc.'s recovery is limited to the *pro rata* limit of the Policy, or approximately $974,400 (24.36%).

In support of this Motion, OneBeacon relies on the following documents:

1. Memorandum of Law in Support of OneBeacon America Insurance Company's Motion (Proration of Aggregate Limits) for Partial Summary Judgment; and
2. Joint Appendix.

ONEBEACON AMERICA INSURANCE COMPANY
By its Attorneys,

James T. Murphy #1698
Kelly N. Michels #6478
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Kevin J. O'Connor
Peter C. Netburn
Michael S. Batson
Hermes, Netburn, O'Connor
& Spearing, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110
(617) 728-0050

Dated: July 21, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing, by First-Class Mail on all counsel of record on July 21, 2006.

Kelly N. Michels

G:\DOCS\MSB\Clients\OneBeacon\Enhart - 15035\Pleadings\motion sj - pro rata.doc

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | CIVIL ACTION NO.: 02-053S |

**MEMORANDUM OF LAW IN SUPPORT OF ONEBEACON AMERICA INSURANCE COMPANY'S MOTION (PRORATION OF AGGREGATE LIMITS) FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Emhart Industries, Inc. ("Emhart") brought this declaratory judgment action against OneBeacon America Insurance Company ("OneBeacon") and several of its insurers seeking to establish that the insurers must defend and indemnify Emhart for costs associated with an Environmental Protection Agency-ordered cleanup of contamination at the Centerdale Manor Superfund Site in North Providence, Rhode Island (the "Loss"). See Joint Appendix, Tab P. OneBeacon, as successor-in-interest to Employers Surplus Lines Insurance Company ("ESLIC"),[1] issued a single excess umbrella liability policy to Crown Metro, Inc. ("Crown Metro"), an Emhart predecessor,[2] for the period from April 24, 1969 to January 1, 1970 (the "Policy"). See id., Tab C. The Policy is an excess umbrella policy and grants coverage subject

[1] OneBeacon and ESLIC are hereinafter collectively referred to as OneBeacon.

[2] Crown Metro and Emhart are hereinafter collectively referred to as Emhart.

to the terms of the underlying umbrella policy issued by Insurance Company of North America ("INA"). See id. The original period of the Policy was April 24, 1969 through February 15, 1972 and provided for a $4M aggregate limit over the life of the Policy; however, approximately eight (8) months after the Policy became effective, Crown Metro was acquired by USM Corporation ("USM") and cancelled the Policy. See id., Tabs C and O. USM subsequently included Crown Metro under its policies. See id., Tab O. Emhart seeks the full limit of coverage under the Policy, despite having only made premium payments for the pre-cancellation period. Because Emhart cancelled the Policy and replaced it with other coverage, OneBeacon is entitled to summary judgment declaring that, to the extent that the Policy provides coverage for the Loss, which OneBeacon denies, Emhart's recovery is limited to the *pro rata* limit of the Policy, or approximately $974,400 (24.36%).

## III. ARGUMENT

### A. The Aggregate Limit Applies Only To The Shortened Policy Period.

The Policy provisions regarding the aggregate limit of liability are unambiguous. Pursuant to the Policy, OneBeacon provided excess umbrella coverage "in consideration of the payment of premium and … subject to all the terms and conditions of the" INA policy. The "Proportion of Risk Incurred" was $4M for each occurrence and $4M aggregate for the policy period. The Policy required premium payments on April 24, 1969, February 15, 1970 and February 15, 1971. The amount of the available aggregate limits under the Policy, therefore, must be considered in the context of the shortened policy period, and the limited premium paid. Based on a literal reading of the express and unambiguous Policy language, because the Policy was cancelled and premium payments ceased, the full aggregate limit is not available to Emhart. Because the Policy provided an aggregate limit of $4M, the aggregate limit applicable to the

approximately eight-month period in which the Policy was in force must be pro rated to approximately $974,400. This proration of the aggregate coverage reflects the reduced premium that Emhart paid to OneBeacon. Moreover, because the USM policies provide the balance of the original annual aggregate limit, Emhart retains seamless aggregate coverage as it intended.

**B. Emhart's Reasonable Expectations Are Reflected By Crown Metro's Notice Of Cancellation To OneBeacon**

Emhart's reasonable expectations with regard to its aggregate limits for the period from January 1, 1970 to February 15, 1972 are reflected further by Crown Metro's cancellation notice to OneBeacon. According to the notice, the USM policies were replacing the Policy. The language of the Policy demonstrates that Crown Metro originally sought to obtain just under three (3) years of excess coverage that provided a $4M aggregate limit for the policy period. Accordingly, the Policy as originally written provided $4M in aggregate coverage, subject to premium payments being made. Upon being acquired by USM, Crown Metro no longer required the coverage provided by the Policy, because it was going to be covered by USM's policies. Therefore, Crown Metro cancelled the Policy and allowed the USM policies to pick up where the Policy left off with no break in coverage.

If the policy period is viewed as a timeline, aggregate coverage operates along the horizontal line because it applies to every loss along the timeline. Once the aggregate limit is met, no matter how many losses have been included, a policy's coverage has been exhausted. Occurrence coverage, on the other hand, operates along the vertical line because it responds losses at single points in time. Once the occurrence limit is reached, the policy's coverage has been exhausted for that loss only. Coverage may still exist for other losses along the timeline if the aggregate limit has not been reached. Where several policies act to fill out the horizontal line, as is the case here, standard industry custom and practice calls for the proration of the

coverage. Crown Metro's cancellation and replacement of the Policy with the USM's policies reflects its reasonable expectation of obtaining seamless excess umbrella coverage.

**C. Equity Requires Proration Of The ESLIC Aggregate Limit To Avoid A Windfall To Emhart Because Crown Metro Cancelled The Policy After Approximately Eight (8) Months, Ceased Paying Premiums And Replaced the Policy With USM's Policies Immediately.**

Emhart is seeking an inequitable windfall by attempting to collect aggregate limits for which it never made premium payments. Emhart seeks "double" coverage for the periods covered by the USM policies and which would have been covered by the Policy, had it not been cancelled. Proration of the aggregate limit of the Policy avoids such a result. Equity does not permit Crown Metro to recover double aggregate limits where it paid only for an approximately eight-month period from April 24, 1969 to January 1, 1970. The Court should read the contract language to make economic sense in the context of the facts. See Northbrook Excess & Surplus Ins. Co. v. Medical Malpractice Joint Underwriting Assoc., 1988 U.S. Dist LEXIS 17954 *19, 34 (D. Mass 1988) (court gives "great weight" to insurance policy interpretations that make economic sense). See also Gerow v. Rohm & Haas Co., 308 F.3d 721, 725 (7th Cir. 2002) ("it is a fundamental principle of contract interpretation that courts read language to make business sense whenever possible"). The only way to make economic sense of the cancellation/replacement of the Policy, while also effectuating Crown Metro's reasonable expectations, is to prorate the annual aggregate limit of the Policy.

This outcome is supported by In Re Midland Ins. Co., 709 N.Y.S.2d 24, 33-34 (N.Y. App. Div. 2000), in which the court adopted the decision of the United States District Court for the District of New Jersey, in the same matter, that prorated the aggregate limits for the shortened period of a cancelled excess umbrella policy where the insured immediately secured replacement coverage for the balance of the intended coverage period. Accord Stonewall Ins.

Co. v. National Gypsum Co., 1992 U.S. Dist. LEXIS 11093 (S.D.N.Y. 1992), aff'd, 73 F.3d 1178 (2d Cir. 1995) (the court recognized that in a cancellation/immediate replacement scenario, there should be a proration to reflect the seamless continuation of coverage); *Continental Ins. Co. v. Paccar, Inc.*, 634 P.2d 291 (Wash. 1981) (the court recognized that, where the insurer cancelled a policy prior to the expiration of an annual period, equity required proration of the annual retained aggregate limit to reflect the shortened period of the policy).

## IV. CONCLUSION

For the foregoing reasons, OneBeacon requests that this Honorable Court allow its Motion for Partial Summary Judgment on the proration of limits issue and declare that the potentially available aggregate limits under the Policy are $974,400.

**ONEBEACON AMERICA INSURANCE COMPANY**
By its Attorneys,

James T. Murphy #1698
Kelly N. Michels #6478
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Kevin J. O'Connor
Peter C. Netburn
Michael S. Batson
Hermes, Netburn, O'Connor
& Spearing, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110
(617) 728-0050

Dated: July 21, 2006

G:\DOCS\MSB\Clients\OneBeacon\Emhart - 15035\Pleadings\memo sj - pro rata.doc

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing, by First-Class Mail on all counsel of record on July 21, 2006.

Kelly N. Michels