**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| EMHART INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY and United States FIRE INSURANCE COMPANY,<br><br>Defendants | Civil Action No.: 02-053-S |

**DEFENDANT THE NORTH RIVER INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE "OCCURRENCE" ISSUE**

Pursuant to Fed.R.Civ.P. 56, LR Cv 56 and the Court's Order dated June 28, 2006, defendant The North River Insurance Company ("North River") requests that the Court enter an Order granting it partial summary judgment with respect to the legal standard to be applied in determining whether Plaintiff Emhart Industries, Inc. ("Emhart") can establish that there was an "occurrence" within the meaning of the policy issued by North River to Emhart. Specifically, North River requests that the Court declare as follows:

1. Emhart bears the burden of proving that there was an "occurrence" at the Centredale Manor Superfund Site (the "Centredale Manor Site"), including the burden of proving that any claimed "property damage" at the Centredale Manor Site was neither expected nor intended.

2. An "objective" standard applies to the issue of whether property damage from pollution at the Centredale Manor Site was expected or intended. The relevant

legal standard is whether Emhart knew or should have known that the operations at the Centredale Manor Site would cause at least some property damage. Emhart's subjective intent at the time of the operations is irrelevant.

As grounds for this motion, North River relies upon its Statement of Undisputed Facts and supporting Memorandum of Law filed herewith and further states as follows:

1. North River issued a "Commercial Comprehensive Catastrophe Liability Policy," No. 523 313109 9, to Emhart that was in effect during the policy period from January 1, 1984 to January 1, 1985 (the "North River Policy") [North River's Statement, ¶1; Joint Appendix, Ex. E].

2. The North River Policy states that "the Company agrees to pay on behalf of the insured the ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of the liability imposed upon the insured by law, or assumed by the insured under contract, for:. . .(c) Property Damage Liability, . . .arising out of an occurrence. [North River's Statement, ¶3].

3. The North River Policy defines "Property Damage" to mean "physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom. . ." [North River's Statement, ¶4].

4. The North River Policy defines "Occurrence" to mean "(a) with respect to Bodily Injury Liability or Property Damage Liability, injurious exposure to conditions which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the insured. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence." [North River's Statement, ¶5].

5. This Court has previously determined that New York law applies to all issues relating to the North River Policy. [Magistrate's Report and Recommendation, February 15, 2005 at 38-39 (PACER No. 220); Memorandum and Order, May 17, 2005 (PACER No. 238)].

6. The New York Court of Appeals has ruled that the policyholder bears the burden of proving all elements of an "occurrence," including that the property damage was "neither expected nor intended from the standpoint of the insured." Consolidated Edison Co. of New York, Inc. v. Allstate Ins. Co., 98 N.Y.2d 208, 218-220, 774 N.E.2d 687, 690-692 (2002). Since New York's highest appellate court has expressly addressed the issue, the Court is bound to apply this precedent and rule that Emhart bears the burden of proof on all elements of the "occurrence" definition, including the burden of proving that any property damage for which it seeks coverage under the North River policy was neither expected nor intended.

7. Similarly, the highest New York appellate court to have addressed the issue in the context of a claim for coverage for alleged property damage resulting from environmental contamination held that an "objective" standard applies in determining whether the property damage was expected. County of Broome v. Aetna Casualty & Surety Co., 146 A.D.2d 337, 340, 540 N.Y.S.2d 620, 622 (3d Dept.), leave to appeal denied, 74 N.Y.2d 614, 547 N.E.2d 103 (N.Y. 1989). The court declared that the standard to be applied is whether the policyholder knew or should have known that there was a substantial probability that property damage would result from its actions. The New York Court of Appeals declined to review the Third Department's decision and no later decision of the Court of Appeals has questioned the correctness of the County of Broome holding. County of Broome has been followed by later decisions of New York's intermediate appellate court. Borg-Warner Corp. v. Insurance Co. of N. America, 174 A.D. 2d 24, 34, 577 N.Y.S. 2d 953, 959 (3d. Dept.), leave to appeal denied, 80

N.Y. 2d 753, 600 N.E. 2d 632 (1992); Town of Moreau v. Orkin Exterminating Co., Inc., 165 A.D. 2d 415, 418, 568 N.Y.S. 2d 466, 468 (3d Dept. 1991). Accordingly, County of Broome remains the most authoritative statement of New York law on the issue. There is no reason for the Court to disregard these New York cases holding that an "objective" standard applies to determining the policyholder's expectation of property damage.

For the reasons stated above and in its supporting Memorandum of Law, North River respectfully requests that the Court enter an Order declaring that:

1. Emhart bears the burden of proving that there was an "occurrence" at the Centredale Manor Site, including the burden of proving that any claimed "property damage" was neither expected nor intended; and

2. An "objective" standard applies to the issue of whether property damage at the Centredale Manor Site was expected or intended.

Respectfully submitted,

**THE NORTH RIVER INSURANCE COMPANY,**
By its attorneys,

Mark T. Nugent /mr
Michael J. Marcello

Mark T. Nugent, RI Bar# 2637
Michael J. Marcello, RI Bar# 5221
**MORRISON MAHONEY LLP**
121 South Main Street, Suite 600
Providence, RI 02903-7141
(401) 331-1660

John T. Harding, *pro hac vice*
**MORRISON MAHONEY LLP**
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500

Dated: July 24, 2006

**CERTIFICATION**

I hereby certify that on this 24th day of July 2006, a copy of the foregoing was mailed, postage prepaid, to:

Jack R. Pirozzolo
Rick Binder
Willcox, Pirozzolo & McCarthy
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

James T. McCormick #2614
128 Dorrance Street - Suite 330
Providence, RI 02903
(401) 831-2970

John F. Glowacki
220 Lake Drive East, Suite 304
Cherry Hills, NJ 08002
(856) 667-2080

Ian Wallach
Kimball Ann Lane
Luce, Forward, Hamilton & Scripps LLP
153 East 53rd Street, 26th Floor
New York, NY 10022
(212) 744-1414

James T. Murphy #1698
Kelly N. Michels #6478
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Kevin J. O'Connor
Peter C. Netburn
Hermes, Netburn, O'Connor & Spearing, P.C.
265 Franklin Street, 7th Floor
Boston, MA 02110-3113
(617) 728-0050

Lawrence Nathanson
Siegal, Napierkowski & Park
533 Fellowship Road, Suite 120
Mt. Laurel, NJ 08054-3412
(856) 380-8900

Jennifer Miller



618533v1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC. | ) | |
| | ) | Civil Action No.: 02-053-S |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOME INSURANCE COMPANY, et al | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**DEFENDANT THE NORTH RIVER INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE "OCCURRENCE" ISSUE</u>**

Defendant The North River Insurance Company ("North River") submits this Memorandum of Law in support of its Motion for Partial Summary Judgment with respect to the interpretation of the "occurrence" definition in the policy that it issued to Plaintiff Emhart Industries, Inc. ("Emhart"). The Court should rule as a matter of New York law that (1) Emhart bears the burden of proving that the pollution at the Centredale Manor Site was not expected or intended; and (2) whether the pollution was "expected" is to be determined based upon an "objective" standard that does not depend upon Emhart's subjective intent at the time of the operations. <u>Consolidated Edison Co. of New York, Inc. v. Allstate Ins. Co.</u>, 98 N.Y.2d 208, 218-220, 774 N.E.2d 687, 690-692 (2002)(policyholder bears burden of proof on "occurrence"); <u>County of Broome v. Aetna Casualty & Surety Co.</u>, 146 A.D. 2d 337, 339-341, 540 N.Y.S.2d 620, 621-622 (3d Dept.)(objective standard applies), <u>leave to appeal denied</u>, 74 N.Y.2d 614, 547 N.E.2d 103 (N.Y. 1989).

## <u>STATEMENT OF RELEVANT FACTS</u>

North River issued a "Commercial Comprehensive Catastrophe Liability Policy," No. 523 313109 9, to Emhart that was in effect during the policy period from January 1, 1984 to

January 1, 1985 (the "North River Policy")[Joint Appendix, Ex. E]. The North River Policy states that:

> the Company agrees to pay on behalf of the insured the ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of the liability imposed upon the insured by law, or assumed by the insured under contract, for. . .(c) Property Damage Liability, . . .arising out of an occurrence.

The North River Policy defines an "occurrence" to mean:

> (a) with respect to Bodily Injury Liability or Property Damage Liability, injurious exposure to conditions which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the insured. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

## ARGUMENT

### I. EMHART BEARS THE BURDEN OF PROVING AN "OCCURRENCE"

### A. New York Law Applies to the North River Policy

The Court has previously determined that New York law applies to all issues relating to the North River Policy. [Magistrate's Report and Recommendation, Feb. 15, 2005 at 38-39 (PACER No. 220); Memorandum and Order, May 17, 2005 (PACER No. 238)]. The Court is therefore bound to apply the controlling precedent of the New York Court of Appeals. Ramos-Baez v. Bossolo-Lopez, 240 F.3d 92, 93 (1st Cir. 2001)("a federal court sitting in diversity jurisdiction and called upon in that role to apply state law is absolutely bound by a current interpretation of that law formulated by the state's highest tribunal"). Moreover, when the highest state court has not addressed the precise issue, "an intermediate appellate state court. . .is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."



618536v1

CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co., 759 F.Supp. 966, 972 (D.R.I. 1991)(quoting Comm'r of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465 (1967)).

### B. EMHART HAS THE BURDEN OF PROVING THAT PROPERTY DAMAGE WAS NEITHER EXPECTED NOR INTENDED

In Consolidated Edison Co. of New York, Inc. v. Allstate Insurance Company, 98 N.Y.2d 208, 774 N.E.2d 687 (2002), the New York Court of Appeals expressly held that a policyholder seeking coverage is required to prove that there was an "occurrence" as defined in the policy, including that the property damage for which coverage is sought was neither expected nor intended. 98 N.Y.2d at 218-220, 774 N.E.2d at 690-692. The Court of Appeals rejected the contention that the "neither expected nor intended" language operates as an exclusion from coverage on which the insurer has the burden of proof. The Court of Appeals held:

> In our view, the contention that the requirement of an 'accident' or 'occurrence' itself operates as an exclusion is unpersuasive. ***Any*** language providing coverage for certain events of necessity implicitly excludes other events. Indeed, virtually all of the language in the policies following the initial grant of coverage has the effect of limiting the scope of coverage in one way or another.
>
> Insurance policies generally require 'fortuity' and thus implicitly exclude coverage for intended or expected harms. Insurance Law §1101(a)(1) itself defines 'insurance contract' as: 'any agreement...whereby one party, the 'insurer,' is obligated to confer benefit of pecuniary value upon another party, the 'insured',. . .depending upon the happening of a fortuitous event. . .' A 'fortuitous event' is defined as: 'Any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the control of either party.' (§1101[a][2]). Thus, the requirement of a fortuitous loss is a necessary element of insurance policies based on either an 'accident' or 'occurrence.' The insured has the initial burden of proving that the damage was the result of an 'accident' or 'occurrence' to establish coverage where it would not otherwise exist.

98 N.Y.2d at 219-220, 774 N.E. 2d at 691-692 (original emphasis). The Court is bound to apply the holding of Consolidated Edison.



618536v1

## II. AN OBJECTIVE STANDARD APPLIES TO WHETHER THE PROPERTY DAMAGE WAS EXPECTED OR INTENDED

The definition of "occurrence" requires proof that the resulting property damage was not "expected" or "intended" by the policyholder. Contrary to Emhart's position, whether a policyholder ***expected*** damage to occur does not depend on what the insured subjectively ***intended***. Rather, whether property damage was "expected" is governed by an objective test; namely, what a reasonable policyholder knew or should have foreseen to be the consequences of the operations at a site. Emhart's attempt to conflate the separate concepts of "expected" and "intended" should be rejected.

Although the Court of Appeals has not squarely addressed this issue, New York's intermediate appellate courts have held that an "objective" standard determines whether "property damage" caused by pollution was expected by the policyholder. In County of Broome v. Aetna Casualty & Surety Co., 146 A.D.2d 337, 540 N.Y.S.2d 620 (3d Dept.), leave to appeal denied, 74 N.Y.2d 614, 547 N.E.2d 103 (N.Y. 1989), the Appellate Division held that "personal injuries or property damage are expected if the actor knew or should have known that there was a substantial probability that a certain result would take place." 146 A.D.2d at 340, 540 N.Y.S.2d at 622. The court rejected the policyholder's contention that it was entitled to coverage because it was at most "negligent" in allowing pollution to develop at the site; indeed, the court went on to hold that the policyholder's knowledge of the pollution was such that there was no "occurrence" as a matter of law. Id. Later decisions have equally applied an "objective" standard to the issue of whether damage from pollution was expected. See Borg-Warner Corp. v. Insurance Co. of N. America, 174 A.D.2d 24, 34, 577 N.Y.S.2d 953, 959 (3d Dept.)(damages from pollution are expected if the insured knew or should have known that they were

substantially probable to occur), leave to appeal denied, 80 N.Y.2d 753, 600 N.E.2d 632 (N.Y. 1992); Town of Moreau v. Orkin Exterminating Co., Inc., 165 A.D.2d 415, 418, 568 N.Y.S.2d 466, 468 (3d Dept. 1991)(adopting County of Broome).[1] There is no basis for the Court to reject this New York precedent. Emhart's contention that it need only prove that it did not specifically intend to cause dioxin contamination at the Centredale Manor Site is wholly inconsistent with these decisions.

Any reliance by Emhart upon certain federal court cases applying New York law is misplaced. Olin Corp. v. Insurance Co. of N. America, 221 F.3d 307 (2d Cir. 2000) did not involve the question of whether an "objective" or "subjective" standard should apply to the "occurrence" definition. Instead, the relevant issue was whether the "caused by accident" policies that were in use before "occurrence" forms were adopted are restricted to providing coverage for "boom" events or, as the court ultimately held, extend to losses that occur over a period of time. 221 F.3d at 316-318. In Stonewall Ins. Co. v. Asbestos Claims Management Corp., 73 F. 3d 1178 (2d Cir. 1995), the Second Circuit declined to set aside a verdict after a jury trial in which the District Court had applied a subjective standard to the issue of whether asbestos bodily injuries were expected or intended. Significantly, the court affirmed the ruling on the premise that the "occurrence" definition was an exclusion from coverage on which the insurers bore the burden of proof, 73 F. 3d at 1204-1206, a proposition that the New York Court of Appeals invalidated in Consolidated Edison.

---

[1] As noted in Century Indemnity Company's Motion for Partial Summary Judgment on this issue under Rhode Island law, courts in many other jurisdictions have employed a similar "objective" standard for determining whether property damage was "expected" by the policyholder.

Respectfully submitted,

**THE NORTH RIVER INSURANCE COMPANY,**
By its attorneys,

Mark T. Nugent, RI Bar# 2637
Michael J. Marcello, RI Bar# 5221
**MORRISON MAHONEY LLP**
121 South Main Street, Suite 600
Providence, RI 02903-7141
(401) 331-1660

John T. Harding, *pro hac vice*
**MORRISON MAHONEY LLP**
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500

Dated: July 24, 2006

**CERTIFICATION**

I hereby certify that on this 24th day of July 2006, a copy of the foregoing was mailed, postage prepaid, to:

Jack R. Pirozzolo
Rick Binder
Willcox, Pirozzolo & McCarthy
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

James T. McCormick #2614
128 Dorrance Street - Suite 330
Providence, RI 02903
(401) 831-2970

John F. Glowacki
220 Lake Drive East, Suite 304
Cherry Hills, NJ 08002
(856) 667-2080

Ian Wallach
Kimball Ann Lane
Luce, Forward, Hamilton & Scripps LLP
153 East 53rd Street, 26th Floor
New York, NY 10022
(212) 744-1414

James T. Murphy #1698
Kelly N. Michels #6478
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Kevin J. O'Connor
Peter C. Netburn
Hermes, Netburn, O'Connor & Spearing, P.C.
265 Franklin Street, 7th Floor
Boston, MA 02110-3113
(617) 728-0050

Lawrence Nathanson
Siegal, Napierkowski & Park
533 Fellowship Road, Suite 120
Mt. Laurel, NJ 08054-3412
(856) 380-8900

Jennifer Miller



618536v1