**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC. | ) | |
| | ) | Civil Action No.: 02-053-S |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY and United States FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANT THE NORTH RIVER INSURANCE COMPANY'S JOINDER IN MOTION FOR PARTIAL SUMMARY JUDGMENT**
**(NO RIGHT TO JURY TRIAL)**

Pursuant to Fed.R.Civ.P. 56, LR Cv 56 and the Court's Order dated June 28, 2006, defendant The North River Insurance Company ("North River") joins in Defendant OneBeacon America Insurance Company's Motion for Partial Summary Judgment seeking a ruling that plaintiff Emhart Industries, Inc. ("Emhart") is not entitled to a trial by jury on its claims for equitable and declaratory relief against OneBeacon. For substantially the same reasons, Emhart is not entitled to a jury trial on its claims against North River. Instead, the Court should rule that all such claims should be tried to the Court.

In further support of this joinder, North River states as follows:

1. North River issued a "Commercial Comprehensive Catastrophe Liability Policy," No. 523 313109 9, to Emhart that was in effect during the policy period from January 1, 1984 to January 1, 1985 (the "North River Policy")[Joint Appendix, Ex. E]. The North River Policy states that:

> the Company agrees to pay on behalf of the insured the ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of the liability imposed upon the insured by law, or assumed by the insured under contract, for...(c) Property Damage Liability. . .arising out of an occurrence.

The North River Policy further states, in relevant part, that:

> The Company's liability shall be only for the ultimate net loss in excess of the insured's retained limit defined as the greater of;
>
> (a) the total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits of any other insurance collectible by the insured. . .

[Ex. E].

2. The Complaint filed by Emhart against North River ***does not*** allege that North River has breached any term of the North River Policy or that North River presently owes Emhart any amounts whatsoever. Instead, the Complaint solely seeks equitable relief in the form of a declaration that North River will be required to indemnify Emhart upon the happening of entirely contingent future events which may never come to pass. Specifically, the only allegations of the Complaint directed to North River assert:

> Pursuant to the provisions of the . . .North River Emhart Policy, if and to the extent that, the underlying primary insurance coverage is exhausted, North River is obligated to defend and/or indemnify Emhart with respect to the Claim. [Complaint, ¶86].
>
> An actual controversy exists between Emhart and North River with respect to the obligation of North River, pursuant to the . . .North River Emhart Policy, to defend and/or indemnify Emhart with respect to the Claim, following exhaustion of the underlying primary insurance coverage. [Complaint, ¶90].
>
> Emhart is entitled to a declaration that, following exhaustion of the underlying primary insurance coverage, North River is required to defend and/or indemnify Emhart with respect to the Claim. [Complaint, ¶92].

3. Further, it is undisputed that the Environmental Protection Agency has not determined the scope or extent of remediation that will be required at the Centredale Manor Site, nor has Emhart actually incurred ***any*** remediation costs at the Site that have not been reimbursed by insurance. [Plaintiff's Pretrial Memorandum, 4/6/06 at 4 ("To date, Emhart has incurred, and paid, indemnification costs in the amount of $711,732 and in March 2005 was reimbursed for those costs by another insurance company")]. Accordingly, no matter what the outcome on the coverage issues, a jury could never award any sums to Emhart under the North River Policy.

4. The entirely hypothetical and speculative nature of Emhart's claims against North River is further emphasized by the fact that the New York Court of Appeals has ruled that in cases involving alleged pollution that takes place over a long period of time, the indemnity costs incurred by the policyholder must be allocated or spread on a *pro rata* basis over the entire period of property damage. Consolidated Edison Co. of New York, Inc. v. Allstate Ins. Co., 98 N.Y.2d 208, 221-224, 774 N.E.2d 687, 693-695 (2002). Accord Olin Corp. v. INA, 221 F.3d 307 (2d Cir. 2000); Sybron Transition Corp. v. Security Ins. Co. of Hartford, 258 F.3d 595 (7th Cir. 2001)(applying New York law).

5. In addition to the authorities relied upon by OneBeacon, North River notes that in the specific context of a claim by a policyholder seeking a declaration that an insurer may be liable to indemnify it for remediation costs to be incurred in the future, the New Jersey Supreme Court has twice held that such a claim is an equitable one on which the policyholder does not have a right to a jury trial. In re Environmental Insurance Declaratory Judgment Actions, 149 N.J. 278, 693 A.2d 844 (N.J. 1997); Insurance Co. of North America v. Anthony Amadei Sand & Gravel, Inc., 162 N.J. 168, 742 A.2d 550 (N.J. 1999). As the New Jersey Supreme Court stated:

> We hold that an action by an insured against an insurer for a declaratory judgment to compel indemnification for future

> environmental clean-up costs is substantially an action for specific performance, to which a right to trial by jury does not attach. We further hold that when an insured's claim to recover damages for past environmental remediation costs is ancillary to the insured's claim for specific performance, the entire matter should be resolved in a non-jury trial.. . .

149 N.J. at 287, 693 A.2d at 849. The New Jersey Supreme Court went on to explain that, in essence, the policyholders were seeking a decree of specific performance of the insurance contracts if and when the policyholders incurred costs that were sufficient to implicate the insurers' policies and coverage was established. In such circumstances, there is no right to a jury trial. As the court noted:

> A declaratory judgment, although it ultimately may result in the payment of money, is not necessarily an action of law. GEIs and Ciba-Geigy's complaints seek judgments mandating that the defendant-insurers defend and indemnify them for the future costs of environmental remediation. Such a request, which seeks an order to compel an insurer to discharge future obligations under its policy, is sufficiently like an action for specific performance to withstand a demand for a jury trial.

149 N.J. at 293-294, 693 A.2d at 851. The New Jersey Supreme Court reaffirmed this rule in a later case brought by an insurer who sought a declaration that it was not obligated to indemnify its policyholder for such future costs. Amadei, 162 N.J. at 177-178, 742 A.2d at 555 ("We hold, therefore, that an action by an insurer or an insured seeking a declaratory judgment of non-coverage or coverage respectively for future environmental remediation costs does not implicate the right of trial by jury").

6. The rationale of the New Jersey Supreme Court equally supports a ruling here that Emhart is not entitled to a jury trial on its claims against North River. Emhart's Complaint does not seek a determination that North River has breached any term of the policy. Emhart does not seek a judgment at the conclusion of the trial that North River owes Emhart even a single dollar. It cannot be determined at this time whether North River will ever owe Emhart any amounts

whatsoever even if Emhart was able to establish some "theoretical" entitlement to coverage under the North River Policy. The nature, amount and timing of any such future environmental remediation costs are (at this point) entirely unknown and unknowable. Equally unknown and unknowable is whether any such costs will ever impact the North River Policy. Accordingly, Emhart's claims against North River are equitable (not legal) and should be tried to the Court.

Respectfully submitted,

**THE NORTH RIVER INSURANCE COMPANY,**
By its attorneys,

Mark T. Nugent, RI Bar# 2637
Michael J. Marcello, RI Bar# 5221
**MORRISON MAHONEY LLP**
121 South Main Street, Suite 600
Providence, RI 02903-7141
(401) 331-1660

John T. Harding, *pro hac vice*
**MORRISON MAHONEY LLP**
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500

Dated: July 24, 2006

**CERTIFICATION**

I hereby certify that on this 24th day of July 2006, a copy of the foregoing was mailed, postage prepaid, to:

Jack R. Pirozzolo
Rick Binder
Willcox, Pirozzolo & McCarthy
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

James T. McCormick #2614
128 Dorrance Street - Suite 330
Providence, RI 02903
(401) 831-2970

John F. Glowacki
220 Lake Drive East, Suite 304
Cherry Hills, NJ 08002
(856) 667-2080

Ian Wallach
Kimball Ann Lane
Luce, Forward, Hamilton & Scripps LLP
153 East 53rd Street, 26th Floor
New York, NY 10022
(212) 744-1414

James T. Murphy #1698
Kelly N. Michels #6478
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Kevin J. O'Connor
Peter C. Netburn
Hermes, Netburn, O'Connor & Spearing, P.C.
265 Franklin Street, 7th Floor
Boston, MA 02110-3113
(617) 728-0050

Lawrence Nathanson
Siegal, Napierkowski & Park
533 Fellowship Road, Suite 120
Mt. Laurel, NJ 08054-3412
(856) 380-8900

Jennifer Miller