UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | CIVIL ACTION<br>NO. CA 02-053S<br><br>STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF CENTURY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON WHETHER IT HAS A DUTY TO DEFEND UNDER ITS 1969 PRIMARY POLICY |

Defendant Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"), by its attorneys, pursuant to LR CV 56(a) and this Court's June 28, 2006 Order, submits the following statement of undisputed facts in support of Century's motion for partial summary judgment on whether it has a duty to defend under its 1969 primary policy:

**Century's 1969 Primary Policy**

1. Century issued Policy No. GAL 36597 ("Century's 1969 primary policy") to Crown-Metro, Inc. ("Crown-Metro") for the period from February 15, 1969 to January 1, 1970. The limits under Century's 1969 primary policy are $100,000. [Joint Appendix: Tab A.]

2. The insuring agreement in Century's 1969 primary policy states:

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
> B. property damage

> to which this insurance applies, **caused by an occurrence and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payments of judgments or settlements.

[Joint Appendix: Tab A at CIC 0483 (emphasis added).]

3. Century's 1969 primary policy defines an "occurrence" as:

> an accident, including injurious exposure to conditions, **which results, during the policy period,** in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

[Joint Appendix: Tab A at CIC 0478 (emphasis added).]

**<u>The EPA's Claim against Emhart</u>**

4. On February 28, 2000, the EPA sent a letter to plaintiff Emhart Industries, Inc. ("Emhart"), in which the EPA advised Emhart that Emhart had potential liability with respect to dioxin contamination at the Centredale Manor Restoration Project Superfund Site in North Providence, Rhode Island (the "Site"). [Joint Appendix: Tab F.] The letter did not state when Emhart discovered the dioxin contamination at the Site, when the dioxin contamination at the Site manifested itself to Emhart, or when the dioxin contamination at the Site was discoverable to Emhart in the exercise of reasonable diligence. The only factual allegation in the letter with respect to Emhart's liability is that "EPA has reason to believe that Emhart Industries, Inc., is a successor to the liability of a chemical company which operated at the Site." [Joint Appendix: Tab F at BD 01026.]

5. On April 12, 2000, the EPA issued a Unilateral Administrative Order for Removal Action to Emhart and four other parties. [Joint Appendix: Tab G.] The Unilateral Administrative Order did not state when Emhart discovered the dioxin contamination at the Site, when the dioxin contamination at the Site manifested itself to Emhart, or when the dioxin contamination at the Site was discoverable to Emhart in the exercise of reasonable diligence. The only factual allegations with respect to Emhart's potential liability are as follows:

> 6. Hazardous substances were disposed of at the Site as part of former operations of several chemical companies (the Atlantic Chemical Company, Metro-Atlantic Inc., and Crown Metro, Inc.) and a drum recycler (New England Container Co., Inc.).

[Joint Appendix: Tab G at AON 00478], and

> 18. Respondent Emhart is also a successor to liability of several chemical companies which operated at the Site from approximately 1943 to approximately 1971. The chemicals manufactured by these companies included hexachlorophene. The chemical companies also buried drums and other containers at the Site.

[Joint Appendix: Tab G at AON 00479.]

6. On March 26, 2001, the EPA issued a Second Administrative Order for Removal Action to Emhart and four other parties. [Joint Appendix: Tab H.] The Second Administrative Order states that EPA mailed a Notice of Potential Liability letter to Emhart on February 28, 2000. [Joint Appendix: Tab H at AON 00022.] Other than that, the order does not state when Emhart discovered the dioxin contamination at the Site, when the dioxin contamination at the Site manifested itself to Emhart, or when the dioxin contamination at the Site was discoverable to Emhart in the exercise of reasonable diligence. However, the Second Administrative Order alleges that EPA discovered the dioxin contamination in the Woonasquatucket watershed in 1996, and dioxin contamination at the Site in 1998. [Joint

Appendix: Tab H at AON 00021.] The only other factual allegation with respect to Emhart's potential liability is that: "Evidence suggests that the operations of the chemical companies and the drum reconditioning facility at the Site resulted in releases and threats of releases of hazardous substances at the Site." [Joint Appendix: Tab H at AON 00020 – AON 00021.] Based on these allegations, the letter states that Emhart "is a liable party within the meaning of section 107(a) of CERCLA, 42 U.S.C. § 9607(a)." [Joint Appendix: Tab H at AON 00030.]

7. On September 11, 2003, the EPA issued a Third Unilateral Administrative Order for Removal Action to Emhart and nine other parties. [Joint Appendix: Tab I.] The Third Unilateral Administrative Order states that EPA mailed a Notice of Potential Liability letter to Emhart on February 28, 2000. [Joint Appendix: Tab I at SBSF 19643.] Other than that, the order does not state when Emhart discovered the dioxin contamination at the Site, when the dioxin contamination at the Site manifested itself to Emhart, or when the dioxin contamination at the Site was discoverable to Emhart in the exercise of reasonable diligence. However, the Second Administrative Order alleges that EPA discovered the dioxin contamination in the Woonasquatucket watershed in 1996, and dioxin contamination at the Site in 1998. [Joint Appendix: Tab I at SBSF 19642.] The only other factual allegation with respect to Emhart's potential liability is that: "Evidence suggests that the operations of the chemical companies and the drum reconditioning facility at the Site resulted in releases and threats of releases of hazardous substances at the Site." [Joint Appendix: Tab I at SBSF 19641.] Based on these allegations, the order states that Emhart "is a responsible party under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and is jointly and severally liable for performance of response action and for response costs incurred and to be incurred at the Site." [Joint Appendix: Tab I at SBSF 19649.]

Dated: July 21, 2006

McKENNA & McCORMICK

By: ______________________
James T. McCormick
McKENNA & McCORMICK
128 Dorrance Street, Suite 330
Providence, RI 02903
(401) 831-2970

- and -

Lawrence A. Nathanson
Scott E. Levens
SIEGAL, NAPIERKOWSKI & PARK
533 Fellowship Road, Suite 120
Mt. Laurel, NJ 08054
(856) 380-8910

Attorneys for Defendant Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America