**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC., | ) | |
| | ) | Civil Action No.: 02-053-S |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICAN, LIBERTY MUTUAL INSURANCE COMPANY, THE NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE CO. UNITED STATES FIRE INSURANCE COMPANY | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANT THE NORTH RIVER INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE "ALLOCATION" ISSUE**

**THE NORTH RIVER INSURANCE COMPANY**,
By its attorneys,

Mark T. Nugent
MORRISON MAHONEY LLP
121 South Main Street, Suite 600
Providence, RI 02903-7141
(401) 331-1660

John T. Harding
Michael F. Aylward
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500

Dated: August 9, 2006

**INTRODUCTION**

The Court should rule as a matter of law that, in the event Plaintiff Emhart Industries, Inc. ("Emhart") is otherwise able to establish coverage for its costs at the Centredale Manor Superfund Site (the "Centredale Site"), Emhart's costs must be allocated or spread on a *pro rata* by time on the risk basis among all of the years during which property damage occurred at the Centredale Site. The New York Court of Appeals and federal courts applying New York law have repeatedly declared that where property damage occurs in more than one year, the costs incurred by the policyholder must be allocated on a *pro rata* basis over the entire period of injury. *Consolidated Edison Co. of New York, Inc. v. Certain Underwriters of Lloyds, London,* 98 N.Y.2d 208, 221-225, 774 N.E.2d 687, 693-696 (2002); *Olin Corp. v. Insurance Company of North America,* 221 F.3d 307, 321-327 (2d Cir. 2000); *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 258 F.3d 595, 597-602 (7th Cir. 2001) (applying New York law); *Serio v. Public Service Mutual Ins. Co.*, 304 A.2d 167, 171, 759 N.Y.S. 2d 110, 113 (2d Dept. 2003). This rule is consistent with the fundamental terms of the excess policy that was issued by The North River Insurance Company ("North River") to Emhart. North River agreed to pay only for those damages that took place during its one year policy period, ***not*** for damages that occurred outside its policy period. [*See* North River's Statement of Undisputed Facts, ¶4 ("North River St."); North River Policy, Ex. E to Joint App.]. The Court should apply this settled rule of New York law to Emhart's claim. There is no reason to delay entering a declaratory ruling that will clarify how Emhart's alleged costs are to be allocated in the event that Emhart establishes coverage at trial.[1]

[1] To the extent that Rhode Island law applies to policies issued by other insurers, there is no basis for Emhart to contend that the Rhode Island Supreme Court would adopt a different rule of allocation if presented with the issue. The overwhelming majority of courts have endorsed the *pro rata* approach exemplified by *Consolidated Edison* based upon the clear language of the

# UNDISPUTED FACTS

The issue of "allocation" involves solely a question of law for the Court; there are no disputed issues of fact that would preclude the Court from resolving this issue now. North River issued a single excess liability policy to Emhart that was in effect from January 1, 1984 to January 1, 1985. [North River St., ¶1; Ex. E to Joint App.]. The North River Policy provides, in relevant part, that "[t]he Company [North River] agrees to pay on behalf of the insured the ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of the liability imposed upon the insured by law, or assumed by the insured under contract, for. . .Property Damage Liability" [North River St., ¶3]. The North River Policy then defines "property damage" to mean "physical injury to or destruction of tangible property ***which occurs during the policy period***. . ." [North River St., ¶4 (emphasis added)].[2] Accordingly, subject to all of the other terms, conditions and exclusions contained in the policy, North River agreed to provide coverage to Emhart for "property damage" that occurred during the one year period from January 1, 1984 to January 1, 1985. North River did not agree to provide coverage

---

policies. *See e.g., Northern States Power Co. v. Fidelity & Cas. Co.*, 523 N.W.2d 657, 662 (Minn. 1994); *Security Ins. Co. of Hartford v. Lumbermens' Mutual Cas. Co.*, 826 A.2d 107, 115-122 (Conn. 2003); *Atchison Topeka & Santa Fe RR Co. v. Stonewall Ins. Co.*, 71 P.3d 1097, 1132-1134 (Kan. 2003); *Public Service Co. v. Wallis & Cos.*, 986 P.2d 924, 939 (Colo. 1999); *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 732-33 (Minn. 1997); *Carter-Wallace, Inc. v. Admiral Ins. Co.*, 154 N.J. 312, 327-28, 712 A.2d 1116, 1124 (N.J. 1998); *Owens-Illinois, Inc. v. United Ins. Co.*, 138 N.J. 437, 475, 650 A.2d 974, 993-94 (N.J. 1994); *Mayor of Baltimore v. Utica Mut. Ins. Co.*, 802 A.2d 1070, 1076, 1100-1104 (Md.App. 2002), *appeal dismissed*, 821 A.2d 369 (Md. 2003); *Arco Industries Corp. v. American Motorists Ins. Co.*, 594 N.W.2d 61, 68-69 (Mich. App. 1998). To the extent that some courts, not applying any state's law that is relevant here, have declined to adopt *pro rata* allocation, they have done so based upon so-called "all sums" language that is ***not*** contained in the North River policy or any of the other policies at issue in this case. *See e.g., Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1057-1058 (Ind. 2001).

[2] The policies issued by Century Indemnity Company (as successor to Insurance Company of North America) ("Century") and OneBeacon America Insurance Company ("OneBeacon") that are at issue in this case contain substantially identical language. [*See* Exs. A-D to Joint App.].

to Emhart for "property damage" which occurred either before or after the period of the North River Policy.

It is equally undisputed that any "property damage" from dioxin contamination at the Centredale Site occurred over a prolonged period of time. Indeed, the only way Emhart could attempt to simultaneously establish coverage under the policies that were issued by Century and OneBeacon in the 1968-71 time period, and the North River Policy that was issued for the period from January 1, 1984 to January 1, 1985, is to prove that there was property damage throughout this period and continuing through 1999 when Emhart was first notified of the alleged "property damage" by the United States Environmental Protection Agency.

Indeed, this is precisely the theory that Emhart has advanced here. [*See* Memorandum of Law of Emhart Industries, Inc. in Support of its Motion for Summary Judgment Concerning the Duty to Defend Under Century Policy GAL 36597 at 4 ("In its First Order, the EPA alleges that the chemical companies operated 'from approximately 1952 to 1969' (Tab G at 3) and that Emhart is liable to the EPA as a result of the operations of 'chemical companies which operated at the Site from approximately 1943 to approximately 1971'. . .[The EPA] allegations create, at a minimum, the 'reasonable possibility' that contamination was discoverable at all times from the commencement of operations at the Site through the time of the EPA orders.")]. Further, one of Emhart's expert witnesses, John R. Kastrinos, has specifically opined: "Based on the above information and observations, it is my professional opinion that dioxins and PCBs that would have been detected between 1968 and 1985 (had they been sampled for and analyzed) were present at concentrations as great or greater than concentrations detected at the property from the mid-1990s through the present." [North River St., ¶9 and Ex. A thereto].

## ARGUMENT

### I. THE COURT SHOULD APPLY *PRO RATA* ALLOCATION TO EMHART'S CLAIMS

The New York Court of Appeals' decision in *Consolidated Edison*, as well as the consistent decisions of the federal courts, require that the Court apply *pro rata* allocation here. The *pro rata* by time on the risk method of allocation is required by the language in the North River Policy stating that North River is only obligated to pay for the "ultimate net loss" on account of "property damage" that occurred during the period when its policy was in effect. Under this approach, an insurer's responsibility for indemnity is determined by dividing the duration of its coverage by the total amount of time over which the underlying damage or injury occurred. *See e.g., Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 258 F. 3d 595, 597-602 (7th Cir. 2001) (applying New York law).

The time on the risk approach to allocation and its implications for Emhart's claim against North River are illustrated by the New York Court of Appeals' decision in *Consolidated Edison.* Con Ed sought coverage for the cost of cleaning up a manufactured gas plant that a corporate predecessor owned and operated in Tarrytown, New York between 1873 and 1933. The site was later sold to another company. Contamination was discovered on the property in 1995 pursuant to an investigation conducted at the request of the NYDEC, which demanded that Con Ed clean up the property. Con Ed subsequently brought suit against insurers that had issued policies to it between 1936 and 1986, seeking coverage for costs that it incurred for the cleanup. 98 N.Y. 2d at 215-216, 774 N.E. 2d at 688-89.

The trial court ruled that any coverage that might otherwise apply to the claim should be pro rated on a "time on the risk" basis throughout the period of alleged injury, with each affected year from 1936 to 1986 being allocated an equal share of the costs. The New York Court of

Appeals affirmed the trial court's ruling, rejecting the argument made by Con Ed that it should be permitted to collect its total liability (so-called "all sums") under ***any*** policy that was in effect during the 50 years that property damage occurred. Con Ed further contended that the designated policy would then be required to seek contribution from other insurers who provided coverage during the relevant period, a "joint and several" approach analogous to tort law liability. This argument was rejected as well. As the Court of Appeals held:

> Joint and several allocation in the present factual setting is inconsistent with the unambiguous language of the policies before us. Con Edison concedes that it is impossible to determine the extent of the property damage that is the result of an occurrence in a particular policy period. Indeed, its theory of the case was that while the plant was in operation—long before any of the policies were issued—there were leaks, spills and drips that eventually migrated to the groundwater. Con Edison planned to establish that the dispersion of the pollutants was a gradual, continuous process, thus creating an inference that there was an accident or occurrence during each and every policy period, though there is no evidence of an accident during any particular policy period.
>
> Con Edison wants to combine this uncertainty-based approach, which implicates many successive policies, with an entitlement to choose a particular policy for indemnity. Yet collecting all the indemnity from a particular policy presupposes ability to pin an accident to a particular policy period. Although more than one policy may be implicated by a gradual harm, joint and several allocation is not consistent with the language of the policies providing indemnification for "all sums" of liability that resulted from an accident or occurrence "during the policy period."[3]
>
> Pro rata allocation under these facts, while not explicitly mandated by the policies, is consistent with the language of the policies. ***Most fundamentally, the policies provide indemnification for liability incurred as a result of an accident or occurrence during the policy period, not outside that period.*** Con Edison's singular focus on "all sums" would read this important qualification out of the policies. Proration of liability among the insurers acknowledges the fact that there is uncertainty as to what actually transpired during any particular policy period.

[3] The North River Policy does not even contain the "all sums" language upon which Con Ed relied to support its "joint and several" approach. [Joint App., Ex. E at MISC 01082].

98 N.Y.2d at 224, 774 N.E.2d at 694-695 (emphasis added). Based upon this reasoning, the court affirmed the trial court's decision to adopt a *pro rata* by time on the risk approach to allocation. *Id*. Federal courts applying New York law have reached the same result. *Olin Corp. v. INA*, 221 F.3d 307, 321-327 (2d Cir. 2000)(*pro rata* allocation of clean-up costs); *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 258 F.3d 595, 597-602 (7th Cir. 2001) (settlement of asbestos bodily injury claims allocated on a *pro rata* basis).

As noted above (n.1), the *pro rata* rule of allocation set forth in *Consolidated Edison* is consistent with the analysis of numerous other courts. For example, this principle was similarly expressed in *Northern States Power Co. v. Fidelity & Cas. Co.*, 523 N.W. 2d 657, 662 (Minn. 1994), an environmental coverage case involving former manufactured gas plants, where the Minnesota Supreme Court stated:

> The essence of the actual injury trigger theory is that each insurer is held liable for only those damages which occurred during its policy period; no insurer is held liable for damages outside its policy period. Where the policy periods do not overlap, therefore, the insurers are consecutively, not concurrently liable.

523 N.W.2d at 662. In order to preserve the principle that each insurer would only be responsible for those damages which occurred during its policy period, *Northern States Power* held that (1) the insured must first show that some damage occurred during the policy period; (2) the insured must prove the damages for which coverage may exist; and (3) where the damages occurred over multiple policy periods, the damages should be treated as "evenly distributed (or continuous) through each policy period from the first point at which damage occurred to...whenever the last triggered policy period ended." 523 N.W.2d at 663-64. In applying this rule, the Minnesota Supreme Court also allocated a *pro rata* percentage of the costs to periods in which actual damage took place but for which the policyholder had not purchased insurance; thus, no insurer would be required to pay for property damage taking place outside of its policy

period based upon the fact that there was no insurance in a particular year. 523 N.W.2d at 664. At the same time, this rule relieves a policyholder such as Emhart from being required to prove the precise amount of "property damage" that took place during each triggered year. 523 N.W.2d at 663-665. *Accord Consolidated Edison,* 98 N.Y. 2d at 224, 774 N.E. 2d at 694.

In addition to being the logical corollary of the definition of "property damage" contained in the North River Policy, *pro rata* allocation makes sense in the context of this case. Emhart has never contended that it is possible to precisely quantify the amount of "property damage" that took place at the Centredale Site during any particular period of time. Instead, Emhart seeks to avoid this burden by contending that the "property damage" at the Centredale Site was continuous during every period from not later than 1968 through 1999. As a consequence, there is no reason why North River should have to pay for "property damage" that took place outside of its one year policy period (assuming that there is coverage at all). *Consolidated Edison* requires that North River can only be liable (at most) for its one year *pro rata* share of Emhart's costs.

## II. THERE IS NO REASON TO DELAY ENTERING A DECLARATORY RULING ON THE ALLOCATION ISSUE

The Court should reject Emhart's contention that a decision on allocation await the outcome of the trial. [Joint Statement Pursuant to Pretrial Conference, 5/16/06 at 19-20]. The issue of allocation is solely one of contract interpretation and therefore a matter of law for the Court to decide; it is not a jury question. *Consolidated Edison,* 98 N.Y.2d at 221, 774 N.E.2d at 693 (allocation decided as a matter of law); *Olin*, 221 F.3d at 322-324 (allocation is a matter of contract construction). Accordingly, there is no reason for the Court to defer ruling on the issue. Entering the declaration requested by North River will enable the parties to know in advance of trial what rule of allocation applies to Emhart's claims.

Emhart has not offered any solid reason for the Court to postpone deciding the allocation issue until after trial. [*See* Joint Statement Pursuant to Pretrial Conference, 5/16/06 at 19-20]. Allocation is a fundamental rule of contract construction based upon the express language of the policies. Resolving the allocation issue does not depend in any way upon what amounts (if any) Emhart may recover (or has already recovered) from North River or any other insurer. Deciding the issue of allocation does not require a determination of what "damages" are recoverable by Emhart in this case.[4] Rather, the purpose of allocation is to determine what percentage of the ultimate costs each insurer owes based upon the period of time that its policy (or policies) were in effect. There is no reason for the Court to delay that determination. While any allocation ruling by the Court will be moot if Emhart fails to prove that it is entitled to coverage, the parties should know the fundamental rules of contract construction that will apply in the event Emhart proves its claim. Determining the allocation method that will apply may also promote settlement.

Similarly, there is no basis for the Court to delay its allocation ruling based upon any potential argument by Emhart concerning the so-called "unavailability" of insurance coverage in any of the years after 1985. Emhart has refused to produce information during the course of discovery concerning its insurance program beyond 1985, including information relating to the policies that it purchased and the terms thereof. Emhart cannot now be heard to contend only a few weeks before trial that a ruling on allocation should be delayed when it has declined to produce information that would be relevant to any purported claim of insurance "unavailability."

[4] Emhart has only incurred slightly more than $700,000 in remediation costs at the Centredale Site, all of which have been reimbursed by other insurers. Emhart does not even claim that it has exhausted the primary policy that serves as underlying insurance to the North River Policy. Accordingly, there is no theory under which North River could be found at trial to owe Emhart even one dollar.

More importantly, New York courts have consistently rejected claims of alleged insurance "unavailability" as a grounds for eliminating particular years from the allocation period in the context of environmental pollution claims. For example, in *Olin*, the Second Circuit held that it was irrelevant whether the specific type of insurance previously purchased by the policyholder was available. The court specifically found that, as of at least 1980, Environmental Impairment Liability ("EIL") insurance on a "claims made" basis was generally available to corporations and would have applied to pollution that predated the policy because such policies are "triggered" when a claim against the policyholder by the EPA is actually made. As the Second Circuit noted:

> The district court concluded, however, that it was sufficient to find that 'EIL insurance was available to companies like Olin in the marketplace beginning at least in 1980' and that 'Olin did not obtain such insurance.' According to the court, Olin therefore assumed the risk for injuries that occurred during uninsured periods. We agree with the district court that its findings as to the general availability of insurance that would have covered the risk at issue here and Olin's failure to obtain it were all that was necessary to allocate the uninsured years to Olin. There was no need to analyze whether Olin subjectively elected to forego insurance and self-insure.

221 F.3d at 326.

Fundamentally, North River only agreed to provide coverage to Emhart for a single year. What happened or did not happen with respect to Emhart's insurance program in other years with other insurers cannot expand the scope of North River's obligations. As the Seventh Circuit Court of Appeals held:

> But instead of asking whether Sybron had some kind of insurance, we prefer to ask why it should matter whether Sybron was insured. Suppose it had not set up any casualty reserves for 1986-88 (the equivalent of the coverage 'purchased' with the internal 'premium' that Sybron saved and released to other uses). Why would this affect the legal obligations of a firm whose last policy expired in 1971? The whole idea of a time-on-the-risk calculation is that any

> given insurer's share reflects the ratio of its coverage (and thus the premiums it collected) to the total risk.. . .
>
> To require Security to pay extra because Sybron did not find it cost-effective to purchase coverage during 1986 to 1988 would be the economic equivalent of requiring Security to furnish ***free*** coverage during 1986-88 (for Sybron does not propose to pay the going premium retroactively). Why an underwriter who furnishes low-price coverage during a period before the magnitude of the risk became apparent should be required to furnish, for nothing, an additional period of high-price coverage, escapes us.

258 F.3d at 600 (original emphasis). As in *Sybron*, there is no reason for the Court to expand North River's contractual obligations to Emhart based upon whatever economic decisions Emhart made after North River was off the risk.

**CONCLUSION**

For the reasons stated, the Court should enter a declaration that New York's rule of *pro rata* by time on the risk allocation applies to Emhart's claim.

Respectfully submitted,

**THE NORTH RIVER INSURANCE COMPANY**,

By its attorneys,

/s/ Mark T. Nugent
Mark T. Nugent, RI Bar# 2637
**MORRISON MAHONEY LLP**
121 South Main Street, Suite 600
Providence, RI 02903-7141
(401) 331-1660

John T. Harding, *pro hac vice*
**MORRISON MAHONEY LLP**
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500

Dated: August 9, 2006

**CERTIFICATION**

I hereby certify that on this 9 day of August 2006, a copy of the foregoing was sent via ECF/mailed, postage prepaid, to:

Jack R. Pirozzolo
Rick Binder
Willcox, Pirozzolo & McCarthy
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

James T. McCormick #2614
128 Dorrance Street - Suite 330
Providence, RI 02903
(401) 831-2970

John F. Glowacki
220 Lake Drive East, Suite 304
Cherry Hills, NJ 08002
(856) 667-2080

Ian Wallach
Kimball Ann Lane
Luce, Forward, Hamilton & Scripps LLP
153 East 53rd Street, 26th Floor
New York, NY 10022
(212) 744-1414

James T. Murphy #1698
Kelly N. Michels #6478
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Kevin J. O'Connor
Peter C. Netburn
Hermes, Netburn, O'Connor & Spearing, P.C.
265 Franklin Street, 7th Floor
Boston, MA 02110-3113
(617) 728-0050

Lawrence Nathanson
Siegal, Napierkowski & Park
533 Fellowship Road, Suite 120
Mt. Laurel, NJ 08054-3412
(856) 380-8900

______/s/ Mark T. Nugent____________