UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC., Plaintiff, | ) | CIVIL ACTION NO. CA 02-053S |
| v. | ) | |
| HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY, Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF ONEBEACON AMERICA INSURANCE COMPANY'S MOTION (REFORMATION) FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Emhart Industries, Inc. ("Emhart") brought this declaratory judgment action against OneBeacon America Insurance Company ("OneBeacon") and several of its insurers seeking to establish that the insurers must defend and indemnify Emhart for costs associated with an Environmental Protection Agency-ordered cleanup of contamination at the Centerdale Manor Superfund Site in North Providence, Rhode Island (the "Loss"). (See Joint Appendix, Tab P).[1] OneBeacon, as successor-in-interest to Employers Surplus Lines Insurance Company ("ESLIC"),[2] issued a single excess umbrella liability policy to Crown Metro, Inc. ("Crown Metro"), an Emhart predecessor, for the period from April 24, 1969 to January 1, 1970 (the "OneBeacon Policy"). (See id., Tab C). The OneBeacon Policy is an excess umbrella policy

[1] The Joint Appendix was submitted to the Court on July 24, 2006.

[2] OneBeacon and ESLIC are hereinafter collectively referred to as OneBeacon.

and grants coverage subject to the terms of the underlying Insurance Company of North America ("INA") umbrella policy (the "INA Crown Metro Policy"). (See id.). The original period of the OneBeacon Policy was April 24, 1969 through February 15, 1972 and provided for a $4M aggregate limit over the life of the OneBeacon Policy; however, approximately eight (8) months after the OneBeacon Policy became effective, Crown Metro was acquired by USM Corporation ("USM") and cancelled the Policy. (See id., Tabs C and O). USM subsequently included Crown Metro under its policies. (See id., Tab 0). Emhart contends that the OneBeacon Policy follows the form of the INA Crown Chemical Policy[3] and not the INA Crown Metro Policy. OneBeacon is entitled to summary judgment that the OneBeacon Policy follows the form of the INA Crown Metro Policy.[4]

## III. ARGUMENT

### A. The OneBeacon Policy Follows Form to the INA Crown Metro Policy.

By letter dated March 21, 1969, Crown Metro, through its brokers, asked OneBeacon to provide a quote on a proposed umbrella liability policy, with limits of $5.0 million, excess only of Crown Metro's primary insurance. (A3202).[5] On April 15, 1969, OneBeacon provided that quotation. (A3202). Crown Metro did not accept that quote. (A3202).

On May 9, 1969, Crown Metro, again acting through its brokers, sent OneBeacon a copy of the INA Crown Metro policy, which provides the first $1.0 million of the $5.0 million

[3] The Declarations page of the OneBeacon Policy states that it follows the form of INA Policy No. XBC64674, an earlier-in-time INA Policy issued to Crown Chemical Company, a corporate predecessor of Crown Metro (the "INA Crown Chemical Policy").

[4] United States Magistrate Judge Robert W. Lovegreen addressed reformation of a contract when there is a mutual mistake. See February 15, 2004 Report and Recommendation at 50-51. His Honor did not fully address reformation of undisputed clerical errors, which is discussed infra.

[5] Citations beginning with the prefix "A" are from the Joint General Appendix of Exhibits to the Parties' Summary Judgment Papers, which was submitted to the Court in connection with the summary judgment motions filed in late 2003 and early 2004.

umbrella insurance layer upon which OneBeacon was asked to provide a quote. (A3202). As issued, the OneBeacon Policy provides the remaining $4.0 million of that layer of excess coverage. (P0700).

Mr. Vincent Puccio was the OneBeacon underwriter with whom Crown Metro's brokers communicated regarding this matter. (A3202). Mr. Puccio filled in a draft Declarations Page for the OneBeacon Policy, using a preprinted "Daily Report" form. (A3202). The preprinted form read:

> Employers' Surplus Lines Insurance Company . . . Agrees with the Insured named below in consideration of the payment of the premium and, except as herein provided, subject to all the terms and condition of Policy No. _______________ issued by ______________________
>
> to:
> Item 1. INSURED: _________________

(A3215). In the space for the issuing company, he wrote "INA." (A3203). In the blank space for the policy number, Mr. Puccio wrote "XBC 64674," the number of the Crown Chemical, not the Crown Metro, INA policy. (A3203). This was a clerical error. (A3203). Mr. Puccio did not have a copy of the INA Crown Chemical policy; he only had the INA Crown Metro policy. The declarations page of the INA Crown Metro policy contained both policy numbers. (A3203). Mr. Puccio, however, wrote the wrong policy number in by mistake, intending to write in the number of the INA Crown Metro policy. (A3203). This mistake was carried through when the typed version of the OneBeacon policy was prepared and issued to Crown Metro. (A3203).

The fact that this was a clerical error and does not reflect the true intent of the parties is beyond dispute, **and undisputed**.[6] Mr. Puccio's universal practice in writing following form

[6] In his February 15, 2004 Report and Recommendation, Magistrate Judge Lovegreen indicated that: "[t]he reformation of a contract based on testimony suggesting an error which remained undiscovered for thirty years is not appropriate for summary judgment, but clearly falls within the purview of a finder of fact to assess the

coverage was to follow form to contemporaneous, lower level policies or to contemporaneous policies sharing the same level of insurance. (A3203). He did not write such coverage following form to expired policies. (A3203).

Crown Metro, for its part, also did not intend the OneBeacon Policy to follow form to the INA Crown Chemical policy. That would have been a highly unusual situation, unique in Mr. Puccio's experience. (A3203). If Crown Metro had intended that result, there would have been some indication of it in the underwriting file. However, there is none. (A3204).

Finally, following form to the INA Crown Chemical policy would be contrary to other terms of the OneBeacon Policy. The Declarations Page clearly states that the OneBeacon policy incorporates the terms of a policy "issued by I.N.A. to . . . INSURED: Crown Metro Inc." (A3261-64). If the intent was to follow form to the INA Crown Chemical policy, the OneBeacon policy would have so stated, identifying the insured under the Policy to be followed as "Crown Chemical."

**B. The OneBeacon Policy Should Be Reformed to Correct the Clerical Error.**

The reformation of insurance policies to correct clerical errors reflects the basic rule that the terms of a contract are determined based upon the intent of the parties. Drafting mistakes that create a writing at variance with that intent should be corrected. See, e.g., Cincinnati Ins. Co. v. Fred S. Post, Jr. Co. 747 S.W. 2d. 777, 781-782 (Tenn. 1988) (insurer entitled to reformation to correct typographic error made by insurer because error made the policy differ from the actual agreement of the parties); see also Board of Trustees of the Univ. of Ill. V. Ins. Corp. of Ireland, Ltd., 969 F.2d 329, 334-35 (7th Cir. 1992); Reynolds v. Farmers Ins. Co. of

---

weight of the evidence and the credibility of the affiant." Report and Recommendation at 51. In this case, however, such an assessment of evidence and credibility is unnecessary because OneBeacon's evidence is uncontroverted.

Washington, 90 Wash. App. 880, 885, 960 P.2d 432, 434 (1998). A leading insurance law treatise states the basic rule as it applies to insurance contracts:

> Reformation has been allowed because of the insurer's clerical mistake, since in such instances it is apparent that the policy which was issued does not, in fact, set forth what has been agreed to and what was intended by all the parties.

Couch on Insurance, 3d §27:27.

It is undisputed that OneBeacon made a clerical error by stating that the OneBeacon Policy followed form to the INA Crown Chemical Policy instead of the INA Crown Metro Policy. Mr. Puccio, the OneBeacon underwriter with whom Crown Metro's brokers communicated regarding this matter, has admitted that he mistakenly wrote the wrong policy number on the draft Declarations Page. Emhart cannot offer any facts to contradict the fact that a clerical error occurred. Application of the clear rule of law to the undisputed fact of OneBeacon's clerical error entitles OneBeacon to summary judgment that it follows form to the INA Crown Metro Policy.

## IV. CONCLUSION

For the foregoing reasons, OneBeacon requests that this Honorable Court allow its Motion for Partial Summary Judgment and order that the OneBeacon Policy follows form to the INA Crown Metro Policy.

**ONEBEACON AMERICA INSURANCE COMPANY**
By its Attorneys,

/s/ Peter C. Netburn
_______________________________
James T. Murphy #1698
Kelly N. Michels #6478
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Kevin J. O'Connor
Peter C. Netburn
Michael S. Batson
Hermes, Netburn, O'Connor
& Spearing, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110
(617) 728-0050
(617) 728-0052 (f)

Dated: August 9, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 9, 2006.

/s/ Peter C. Netburn
_______________________________
Peter C. Netburn

G:\DOCS\MSB\Clients\OneBeacon\Emhart - 15035\Pleadings\memo sj - reformation scr.doc