UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY,<br>INSURANCE COMPANY OF NORTH AMERICA,<br>LIBERTY MUTUAL INSURANCE COMPANY,<br>NORTH RIVER INSURANCE COMPANY,<br>ONEBEACON AMERICA INSURANCE COMPANY<br>and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 02-053 S |

**OBJECTION OF EMHART INDUSTRIES, INC. TO DEFENDANT THE NORTH RIVER INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON THE "ALLOCATION" ISSUE**

Plaintiff, Emhart Industries, Inc. ("Emhart"), opposes the motion for summary judgment filed by The North River Insurance Company ("North River") on the so-called "allocation" issue, in which North River argues that, as to its policy which is construed under New York law, Emhart's insurance claim must be allocated on a pro rata basis by time on the risk among all of the years during which environmental property damage occurred at the Centredale Manor Superfund Site ("Centredale Site")

1. North River's motion should be denied because it is premature. The Emhart claim against North River is for a declaratory judgment. Questions regarding the portion of Emhart's damage allocable to the North River policy will best be resolved in post-trial proceedings, after the amount of Emhart's recovery from North River has been determined, rather than now, as an abstract question of law.

2. Allocation should not be applied to any of the policies at issue in this case. Application of the allocation rule is not based on the policy language and is contrary to the public policy of Rhode Island. The better rule is the "all sums" rule, where an insured collects its damages from a policy or policies of its choosing up to the policy limits, and, if the claim exceeds the policy limits, the insured selects such additional policies as are necessary to satisfy its claim.

3. Even under an allocation rule, years when insurance is not generally available to cover the risk at issue may not be included in the allocation formula. During the years 1986 through 1999 insurance was not generally available for environmental pollution exclusion claims of the type in issue. Stonewall Ins. v. Asbestos Claims Mgmt. Corps., 73 F.3d 1178, 1204 (2d Cir. 1995), modified on denial of reh'g on different grounds, 85 F.3d 49 (2d Cir. 1996). See also Champion Dyeing & Finishing Co. v. Centennial Ins. Co., 810 A.2d 68, 73 (N.J. Super. App. Div. 2002). North River has not met its burden of showing the general availability of insurance covering the risk at issue. Accordingly, the North River motion must be denied.

In further support of this Objection, Emhart relies upon its Memorandum of Law, its Statement of Disputed Facts and Additional Facts and its Appendix of Exhibits, including the Affidavit of Rodney J. Taylor, all filed herewith and incorporated herein.

Respectfully submitted,

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600
gpetros@haslaw.com

Jack R. Pirozzolo
Richard L. Binder
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Dated: August 18, 2006

Counsel for Plaintiff, Emhart Industries, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2006, a copy of the foregoing Objection Of Emhart Industries, Inc. To Defendant The North River Insurance Company's Motion For Summary Judgment On The “Allocation “ Issue was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600
gpetros@haslaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY,<br>INSURANCE COMPANY OF NORTH AMERICA,<br>LIBERTY MUTUAL INSURANCE COMPANY,<br>NORTH RIVER INSURANCE COMPANY,<br>ONEBEACON AMERICA INSURANCE COMPANY<br>and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 02-053 S |

**MEMORANDUM OF LAW OF EMHART INDUSTRIES, INC. IN SUPPORT OF ITS OBJECTION TO DEFENDANT THE NORTH RIVER INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON THE "ALLOCATION" ISSUE**

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, Rhode Island 02903
(401) 274-2000

Jack R. Pirozzolo
Richard L. Binder
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Dated: August 18, 2006

Counsel for Plaintiff, Emhart Industries, Inc.

## INTRODUCTION

The North River Insurance Company ("North River") has moved for summary judgment on the so-called "allocation" issue. North River seeks allocation on a pro rata basis among all years during which environmental property damage occurred at the site in issue ("Centredale Site"). Under such a scheme, only a fraction of an insured's loss may be recoverable from an insurer even when the loss reaches or exceeds the policy limits. North River's motion should be denied. North River seeks to calculate allocation in a manner contrary to applicable law. Even if a "pro rata allocation" rule were to apply, genuine issues of material fact exist regarding the proper calculation of allocation. Further, this issue should be resolved in post-trial proceedings.

This Court has held that the North River policy is construed under New York law.[1] New York law, however, applies only to the interpretation of the policy language, and this Court is not obligated to apply New York "public policy." Cases cited by North River concede that their application of pro rata allocation was based not on the policy language but on public policy. This Court should make its own evaluation of the public policy to be applied. The better-reasoned decisions support adoption of the all sums rule, where an insured collects its damages from a policy or policies of its choosing up to the policy limits, and, if the claim exceeds the policy limits, the insured selects such additional policies as are necessary to satisfy its claim. This approach flows from the policy language, in contrast to allocation, which courts frankly acknowledge is not required by the policy terms.

Even if this Court were to apply the "pro rata allocation" approach, the manner of allocation suggested by North River is incorrect. North River fails to acknowledge that in determining what fraction of the damage is allocated to 1984, the year of North River coverage,

---

[1] Emhart contends that Rhode Island law should be applied to the North River policy, and the arguments made by Emhart herein do not constitute a waiver of Emhart's position on choice of law.

amounts allocated to years when insurance to cover the risk was not generally available are excluded. Specifically, courts that have concluded that allocation is appropriate under New York law have determined the amount of a damage claim allocable to a specific policy year by multiplying the damage by a fraction that has "as its denominator the number of years in which both injury-in-fact was occurring and insurance was available, and as its numerator the number of years within that period when the insurance [issued by that insurer] was in effect." Stonewall Ins. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178, 1204 (2d Cir. 1995), modified on denial of reh'g on different grounds, 85 F.3d 49 (2d Cir. 1996) (emphasis supplied). As North River provided insurance for one year, the numerator of its allocation fraction is one.

Under the "pro rata allocation" rule, the denominator depends upon the number of years when insurance coverage for the risk at issue generally was available. Expecting an insured to assume or retain a risk during "periods when coverage for a risk is not available" is not deemed reasonable. See Stonewall, 73 F.3d at 1203-04; see also Champion Dyeing & Finishing Co. v. Centennial Ins. Co., 810 A.2d 68 (N.J. Super.App. Div. 2002). By seeking to include in the denominator years when insurance was unavailable, North River would impermissibly reduce the loss allocated to its policy year.

From 1986 to 1999, the "absolute" pollution exclusion was in effect, making coverage unavailable, and the lack of coverage was not cured by other types of insurance. Any specialty environmental liability insurance policies ("EIL policies") available during this period did not provide coverage for discharges associated with operations in prior years, such as the claims at issue here. See Champion, 810 A.2d at 71-72; Affidavit of Rodney J. Taylor ("Taylor Aff."),

¶¶11-26 and exhibits referenced therein.[2] If allocation were to apply, these years should be excluded from the calculation.

Emhart seeks a declaratory judgment against North River. A ruling regarding the amount of Emhart's recovery is premature. Any issue regarding possible allocation best is resolved after the amount of Emhart's recovery from North River has been determined, rather than now, as an abstract question of law. However, if the Court reaches the merits of the motion and determines that allocation applies, North River has not shown that it is entitled to the ruling that it seeks. For example, while North River contends that the period from 1986 to 1999 period must be included in the denominator of the applicable allocation fraction, it has failed to sustain its burden of showing the availability of such insurance. See Champion, 810 A.2d at 73. To the contrary, the record supports a finding that, as a matter of law, such insurance generally was not available in 1986-1999. North River has also failed to show the availability of insurance covering this claim prior to 1984. At a minimum, there are disputed questions of fact, precluding resolution of this issue in favor of North River on summary judgment.

## FACTUAL BACKGROUND

If an allocation approach were to be followed, the pertinent facts for allocation would concern the availability of insurance coverage for the environmental risk at issue here in and after 1986. North River has not presented any evidence regarding this issue, which warrants denial of its motion insofar as it seeks a determination that years after 1985 should be included in a formula. In 1986 the insurance industry replaced its prior standard pollution exclusion, which had an exception for "sudden and accidental" events, with the so-called "absolute" pollution exclusion, which did not have such an exception (see Exhibits B and C). See Millipore Corp. v.

[2] The affidavit of Mr. Taylor is Exhibit A to the Emhart Appendix of Exhibits, filed herewith.

Travelers Indemnity Co., 115 F.3d 21, 25, n.2 (1st Cir. 1997); Champion, 810 A.2d at 70-71; Taylor Aff., ¶¶ 10, 14. Insofar as EIL policies were available at all following the advent of the absolute pollution exclusion, they were very narrow in scope. Such policies had limited retroactivity, excluded coverage for pre-existing conditions, and were written on a claims-made, rather than on an "occurrence," basis. See Champion, 810 A.2d at 71-72; Taylor Aff., ¶¶ 11-26 and exhibits referenced therein. As a result, coverage for environmental claims arising out of discharges associated with business operations that occurred before 1986, such as the claims at issue here, was unavailable for the period beginning in 1986.

North River errs when it states that its policy does not contain the "all sums" language upon which courts adopting the all sums approach rely. See NR Mem. at 2 n.1; id. at 5 n.3. Under North River's policy, it "agrees to pay on behalf of the insured the ultimate net loss in excess of the retained limit" on account of property damage. See North River Statement of Undisputed Facts at 2. "Ultimate Net Loss" is defined as "all sums which the insured is legally obligated to pay as damages…." Id. at 3 (emphasis supplied).

**ARGUMENT**

**A. Determination Of The Allocation Issue Is Premature**

Emhart presently seeks declaratory relief from North River. The allocation issue affects the amount of damages recoverable from North River after Emhart incurs indemnification costs that reach the $1,000,000 attachment point of the North River policy, a question not before the Court. The course of the trial will be no different if the application of allocation to North River, is determined now or later. Any issues pertaining to allocation should be addressed in post-trial proceedings. North River argues that the parties are entitled to know the rules that will be applied and that such a determination "may also promote settlement." NR Mem. at 7-8. Such vague statements are insufficient to support an argument that the Court should decide the

allocation issue now, as an abstract matter, instead of in the course of post-trial proceedings. Allocation involves consideration of complex issues unrelated to the issues regarding insurance coverage that will be addressed at trial.

## B. Allocation Should Not Be Applied To The North River Policy

### 1. Consolidated Edison And Olin Are Based On Public Policy And Not On Interpretation Of The Policy Language

Both Consolidated Edison Co. of New York, Inc. v. Certain Underwriters of Lloyds, London, 774 N.E.2d 687 (N.Y. 2002), and Olin Corp. v Ins. Corp. of N. Am., 221 F.3d 307 (2d Cir. 2002), a decision applying New York law, concede that the application of pro rata allocation is not based on an interpretation of the plain language of the policy. Olin explicitly stated that the pertinent language of the policy was "not free from ambiguity," and then based its decision on "public policy and equitable considerations" because "the language is inconclusive…." Olin, 221 F.3d at 324. Similarly, in Consolidated Edison, the court acknowledged that pro rata allocation was "not explicitly mandated by the policies…." 774 N.E.2d at 695. Both Consolidated Edison and Olin relied on the decision of the New Jersey Supreme Court in Owens-Illinois, Inc. v. United Ins. Co., 650 A.2d 974, 992, 995 (N.J. 1994), in which the court candidly admitted that it could not find support for allocation in the text of the insurance policies, that it was relying solely upon "public interest" factors, and that it would "not hesitate to revisit the issue" if its "solution" proved "inefficient or unrealistic." 650 A.2d at 995. These approaches directly contravene Rhode Island's bedrock rule that "an ambiguous policy term should be construed in favor of coverage and against the insurer." Textron, Inc. v. Aetna Casualty and Surety Co., 754 A.2d 742, 749 (R.I. 2000) ("Textron-Wheatfield").

Where a state adopts a rule pertaining to insurance coverage, which rests more on perceived public policy than on the text of the insurance contract, there is a strong basis for

holding that a choice of law rule regarding contract interpretation should not apply. The First Circuit recognizes the principle of depecage, which "erects [a] framework under which different issues in a single case, arising out of a common nucleus of operative facts, may be decided according to the substantive law of different states." Putnam Resources v. Frenkel & Co., 958 F.2d 448, 465 (1st Cir. 1992); see also Crellin Technologies, Inc. v. Equipmentlease Corp., 18 F.3d 1, 11 (1st Cir. 1994) (recognizing Rhode Island's interest in applying its substantive law to a claim initially brought under Mass. Gen. L. ch. 93A). Where, as here, the adoption of pro rata allocation by the New York court in Consolidated Edison is, admittedly, not required by policy terms, Rhode Island is entitled to take its own public policy into account. Application of Rhode Island public policy results in the rejection of allocation.

Under Rhode Island law, "when a claimant pays premiums for two separate policies, that claimant is entitled to recover benefits under both policies." Pennsylvania General Ins. Co. v. Cantley, 615 A.2d 477, 480 (R.I. 1992). This rule was adopted in the uninsured motorist context, where an insured who had coverage for two vehicles under the same policy could stack them and recover benefits up to the policy limits under both coverages. Taft v. Cerwonka, 433 A.2d 215, 219 (R.I. 1981). This rule protects "an expectation interest." Pennsylvania General, 615 A.2d at 480. As the Rhode Island Supreme Court has stated, "[w]hen insureds pay out two sets of premiums, he or she does so with the belief that both policies will compensate him or her in the event of an accident." Id. Rhode Island refused to "preclude an individual who held the required insurance coverage from ever receiving full compensation." Id. A Rhode Island trial court applied this "two premiums/two coverage" principle outside of the automobile insurance context in Medical Malpractice Joint Underwriting Associating Association of Rhode Island v. Doe, 1999 WL 41877, at *4 (R.I. Super. Ct. 1999).

Rhode Island's public policy that full policy limits should be available to an insured also comes into play when an insurer seeks to reduce an insured's recovery by setting off other funds received by the insured. In Poulos v. Aetna Casualty & Surety Co., 379 A.2d 362 (R.I. 1977), the Rhode Island Supreme Court announced that Rhode Island also has strong "public policies of protection for actual losses of the insured and prevention of double recovery." For example, the court in Pennsylvania General, citing Poulos, ordered that insurance proceeds received from a different insurer could be set-off only "to prevent … a double recovery in the event that her total damages do not exceed the Penn General policy limits." 625 A.2d at 480.

New York's allocation rule contravenes the Rhode Island public policies set forth in Poulos, Pennsylvania General, and Taft. Under the New York rule, Emhart, having paid its premium to North River, would not be entitled to coverage up to the policy limits even if a portion of Emhart's loss remains unpaid. Looking at it another way, New York's rule permits a set-off even when there is no risk of double recovery in contravention of the public policies set forth in Poulos. As New York allocation law is inconsistent with clear public policies enunciated by Rhode Island's highest court, Rhode Island would be reluctant to apply New York law to limit the obligation of an insurer to pay the policy limits.

While Consolidated Edison opted for pro rata allocation and chose to disregard the terms of the insurance policy on public policy grounds, its public policy argument is flawed. An insurer should not be permitted to pay less than the policy limits merely because the insured did not (or could not) purchase insurance in other years. North River argues that "[w]hat happened or did not happen with respect to Emhart's insurance program in other years should not expand its obligations." NR Mem. at 9. By the same token, what happened in other years should not reduce an insurer's obligations either. Under the all sums approach, the presence or absence of

insurance coverage in other years is not relevant. The Ohio Supreme Court stated, when the indemnity obligation and the definition of occurrence are read together, the insured would reasonably expect that it would receive "complete security from each policy that it purchased" up to the policy limits. Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co., 769 N.E.2d 835, 841 (Ohio 2002) (quoting Keene Corp. v. Ins. Co. of N. Am., 667 F.2d 1034, 1048 (D.C. Cir. 1981), cert. denied, 455 U.S. 1007 (1982)). The all sums rule provides that security; pro rata allocation does not.

**2. All Sums Is The Better Rule**

North River greatly overstates its case when it claims that the "overwhelming majority of courts" have adopted pro rata allocation and that the courts that have done so rely upon "the clear language of the policies." NR Mem. at 1 n.1. Rather, the majority of courts construe the relevant language (the "all sums" and "during the policy period" phrases) as unambiguously requiring the all sums rule or, alternatively, that such policy terms create sufficient ambiguity to invoke the rule that ambiguous language must be construed in favor of the insured. In short, policy language supporting the pro rata allocation rule is not "clear" and there is no "majority."

The all sums rule was adopted in the leading decision of Keene, 667 F.2d at 1048-49, and has been followed by a number of other courts. Hercules, Inc. v. AIU Ins. Co., 784 A.2d 481 (Del. 2001); Monsanto Co. v. C.E. Heath Compensation & Liability Ins. Co., 652 A.2d 30, 35 (Del. 1994) (construing Missouri law); Allstate Ins. Co. v. Dana Corp., 759 N.E.2d 1049, 1057-1058 (Ind. 2001); Rubenstein v. Royal Ins. Co. of America, 694 N.E.2d 381, 388 (Mass. App. 1998), aff'd on other grounds, 708 N.E.2d 639 (Mass. 1999); Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co., 769 N.E.2d 835, 841 (Ohio 2002); H. France Refractories Co. v. Allstate Ins. Co., 626 A.2d 502 (Pa. 1993); Texas Property & Cas. Guaranty v. Southwest Aggregates, Inc, 982 S.W.2d 600 (Tex. App. 1998) (all sums approach at least as to duty to defend);

American Nat'l Fire Ins. Co. v. B&L Trucking Construction Co., 951 P.2d 250, 254 (Wash. 1998). California has adopted a rule that costs may be allocated only among insurers, which has the same effect as the all sums rule since "uninsured" periods are not charged to the insured. Dart Industries, Inc. v. Commercial Union Ins. Co., 52 P.3d 79, 93 (Cal. 2002). The Illinois Supreme Court adopted the all sums rule in Zurich Insurance Co. v. Raymark Industries, Inc., 514 N.E.2d 150 (Ill. 1987), which was followed by a Massachusetts court applying Illinois law in an environmental contamination case. See Chicago Bridge & Iron Co. v. Certain Underwriters at Lloyd's London, 797 N.E.2d 434 (Mass. App. Ct. 2003). As the Goodyear court explained when it adopted the all sums approach, this approach strikes the appropriate balance as it "promotes economy for the insured while still permitting insurers to seek contribution from other responsible parties when possible." 769 N.E.2d at 841. The insurer would be liable for loss up to its policy limits only if there were no other insurer from whom it could obtain contribution.

Courts that adopt the all sums approach often do so on the basis of policy language stating that the insurer must cover "all sums" which the insured is legally obligated to pay. The significance of "all sums" is that it does not permit payment of "merely some portion" of the loss (H. France, 626 A.2d at 507) or a "proportionate share" thereof (Hercules, 784 A.2d at 490-91). These courts also emphasize that the insurance policies at issue do not contain language that restricts the insurer's obligation to sums less than the policy limits where multiple policies provide coverage. As explained in Keene, "[t]here is nothing in the policies that provides for a reduction of the insurer's liability if an injury occurs only in part during the policy period." 667 F.2d at 1048. See also B&L Trucking, 951 P.2d at 256 (1998) ("If the insurer wished to limit its liability through a pro rata allocation of damages once a policy is triggered, the insurer could

have included that language in the policy"); Goodyear, 769 N.E.2d at 841 ("There is no language in the triggered policies that would serve to reduce an insurer's liability if an injury occurs only in part during the policy period"); Monsanto, 652 A.2d at 35 (Del. 1994) ("The majority of courts have held that without a *pro rata* clause in the policy, the insurance companies cannot limit their obligation to a *pro rata* share…."). Under Rhode Island law, a significant limitation on the scope of coverage must be apparent from the policy language. Elliott Leases Cars, Inc. v. Quigley, 373 A.2d 810, 812-13 (R.I. 1977).

To the extent that the courts adopting allocation cite policy language as supporting their decisions, they cite the portion of the standard definition of "occurrence" that refers to injury "during the policy period." E.g., Consolidated Edison, 774 N.E.2d at 693 (citing this policy language but finding that it did not explicitly mandate allocation). However the better reading of that language, particularly when considered in connection with the indemnity obligation, requires that some "property damage," not "all property damage" or "the property damage," happen during the policy period. As stated in Chicago Bridge with respect to the phrase "during the policy period," that phrase "mean[s], as a matter of basic syntax, that [the insurer's] obligation to indemnify a loss arose when a covered event resulted in property damage during the policy period," but "the phrase 'during the policy period' does not define the extent of coverage." 797 N.E.2d at 441 (emphasis added). Indeed, Owens-Illinois expressly declined to rely upon the "during the policy period" phrase when it opted for allocation. 650 A.2d at 988-89. As Stonewall put it, Owens-Illinois acknowledged that the insurers' interpretation "ignores their obligation to indemnify for subsequent damages attributable to an injury occurring during the relevant policy period." Stonewall, 73 F.3d at 1203 (citing Owens-Illinois, 650 A.2d at 988-89).

As courts and a commentator have noted, the all sums approach is the majority rule. E.g., Monsanto, 652 A.2d at 35; Goodyear, 769 N.E.2d at 841 (adopting "the national majority rule [that] forbids insurers from limiting their liability to a pro rata share unless the policy expressly allows it"); B&L Trucking, 951 P.2d at 256. See also Christopher Hermann et al., The Unanswered Question of Environmental Insurance Allocation in Oregon Law, 39 Will L. Rev. 1131, 1136-37 (2003) (finding that nine state courts and one federal court adopted the all sums approach, six state courts and three federal courts adopted allocation and the courts of two states were split). Under Rhode Island law, "diversity of judicial thought [as to the meaning of terms in an insurance contract] is proof positive' of ambiguity." Textron-Wheatfield, 754 A.2d at 748-49 (quoting Zanfagna v. Washington Ins. Co., 415 A.2d 1049, 1051 (R.I. 1980)). This principle further mandates the conclusion that Rhode Island would adopt the all sums rule.

### C. Even If Allocation Applies. There Should Be No Allocation To Policy Years In Which Applicable Insurance Was Not Available

Under the allocation rule, an insurance policy is available to pay only a fraction of the loss, even if the policy limits are sufficient to pay a greater portion. If there are uninsured years in which insurance for the risk generally was available, courts explain that the recovery attributable to those years is "allocated" to the insured. Thus, uninsured years where insurance was available are "allocated" to the insured (by inclusion in the denominator of the allocation fraction), while uninsured years, where insurance was unavailable, are not. See Stonewall, 73 F.3d at 1203-04.

In this case, the allocation rule, if applied, would apply only to determine the fraction of Emhart's total claim that should be allocated to 1984, the year of the North River policy. The distinction New York draws between years when insurance was available, and years when insurance was unavailable, is crucial because it affects the number of years in the denominator of

the allocation fraction. Years where insurance was unavailable simply are omitted from the calculation; they are not "allocated" to anyone. By seeking to include years during which insurance was not available, North River seeks impermissibly to reduce the percentage of Emhart's total claim recoverable from North River.

The Stonewall court set forth the rationale for attributing to the insured only those years when insurance was available: "[w]hen periods of no insurance reflect a decision by an actor to assume or retain a risk, as opposed to periods when coverage for a risk is not available, to expect the risk-bearer to share the allocation is reasonable." 73 F.3d at 1203 (quoting Owens-Illinois, 650 A.2d at 992, 995). On the other hand, an allocation to the insured is not reasonable insofar as coverage could not be obtained in a particular year. In Olin, the Second Circuit, applying New York law, fleshed out the meaning of "availability," stating that the "availability" requirement means that there was "an opportunity for [the insured] to obtain some form of generally available insurance for this sort of risk." 221 F.3d at 325 (emphasis supplied). In Stonewall, where the claim involved injury from asbestos, "years after 1985, the point at which asbestos liability insurance ceased to be available," were excluded from the allocation. 73 F.3d at 1203. This ruling was based upon the absolute exclusion of asbestos related injuries, a provision similar to the absolute pollution exclusion adopted to eliminate coverage of damages stemming from environmental contamination.

Stonewall relied upon Owens-Illinois, where the New Jersey Supreme Court declined to include in the denominator of its allocation formula years where asbestos liability insurance was unavailable. 650 A.2d at 995. Champion applied this rule to an environmental contamination coverage claim. As the court explained, "[t]he insurance industry responded to adverse judicial precedent [regarding the 'sudden and accidental' exception to the pollution exclusion] in 1986 by

adopting an 'absolute' pollution exclusion that did not contain the 'sudden and accidental' language construed by the courts interpreting the 1973 coverage form." 810 A.2d at 70-72. The standard pollution exclusion, as contained in policies issued to Emhart beginning in 1986, is contained in Exhibits B and C of the Appendix of Exhibits.

Champion also discussed the introduction of EIL policies in the 1970's and pointed out the serious limitations in such policies. They had retroactive periods which resulted in excluding coverage for contamination that commenced well before the policies were written. 810 A.2d at 71-76 and n.2. Second, as they were claims-made policies,[3] at most a single policy, i.e., the one in effect on the date the claim was made, would provide coverage even if such policies had been purchased for a series of years. 810 A.2d at 75-76. Thus, the policies that were purchased for years other than the year in which the claim was made were not available to cover the claim.

Based upon this evidence regarding the absolute pollution exclusion and the limitations of the EIL policies, the court reversed a trial court decision to include years 1986 and later in its allocation calculation. Citing Olin, 221 F.3d at 326-27, which, like Stonewall, was decided under New York law, the court held that the determination of "availability" must be made on an objective basis. 810 A.2d at 73-74. As the court explained, "[i]f coverage is unavailable, no 'decision' by the insured can be meaningfully made." Id. at 74. In addition to being available, Champion required that the insurance be "affordable" and that it "cover[] the precise risk that manifested." Id. at 73-74. Champion also placed the burden upon the insurer to prove the availability of such coverage. In view of the degree to which New York and New Jersey law coincide in this area, and the extent to which courts construing the law of one state have borrowed from the law of the other, it is likely that New York would do the same. Since the

[3] "[A] claims-made policy provides coverage for any claim first asserted against the insured during the policy period, regardless of when the incident giving rise to the claim occurred." Textron, Inc. v. Liberty Mut. Ins. Co., 639 A.2d 1358, 1361, n.2 (R.I. 1994).

insurer in Champion failed to carry its burden, the court concluded that environmental contamination coverage was "unavailable" in and after 1986.

North River has made no attempt to prove the "unavailability" of coverage. It apparently contends, without citation of authority, that availability should be determined on a subjective basis. See NR Mem. at 8. Disregarding both its own burden and the objective nature of the inquiry, North River merely has stated, and stated inaccurately, that "Emhart has refused to produce information during the course of discovery concerning its insurance program beyond 1985, including information relating to the policies that it purchased and the terms thereof." NR Mem. at 8. In response to discovery propounded by North River, Emhart listed, and produced, all policies issued to USM Corporation and to Emhart (the entities whose insurance would have provided coverage) for periods ending in 1990.[4] North River received the information it sought. In any event, the determination of availability is to be made on an objective basis, and the insured's actual insurance program is not relevant. North River must show that insurance was available covering this claim for the periods both before and after its policy period, and it has failed to do so.

As North River has failed to show that coverage generally was available for the pertinent periods, its summary judgment motion should be denied. Champion strongly suggests that, as a matter of law, insurance coverage for environmental contamination was not available after the advent of the absolute pollution exclusion. At a minimum, there are genuine issues of material fact concerning the availability of insurance for pollution-related damage during this period, given the absolute pollution exclusion and the serious limitations in the coverage available from

---

[4] See Appendix Exhibit D (Responses 1 and 2 and Appendix A to Response of Plaintiff Emhart Industries, Inc. to Defendant North River Insurance Company's First Set of Interrogatories); Ex. E (Response to Request 2 of Response of Plaintiff Emhart Industries, Inc. to Defendant North River Insurance Company's First Request for Production of Documents); Ex. F (letter from Richard L. Binder to Ian Wallach dated April 7, 2003).

the EIL policies. The 1986 switch from the "sudden and accidental" pollution exclusion to the "absolute" pollution exclusion is confirmed in Millipore, 115 F.3d at 25 n.2.

While Emhart believes that it does not have the burden of proof, out of an excess of caution it submits the Taylor Affidavit herewith (see n.2, supra). Mr. Taylor states that "in 1985 … the ISO Absolute Pollution Exclusion replaced the 1970 ISO Pollution Exclusion in general and excess liability policies written for U.S. industrial accounts" (Taylor Aff., ¶ 14; see also id., ¶ 10). Mr. Taylor's statements regarding the limited scope of EIL policies are consistent with the testimony supporting the ruling in favor of the insured in Champion. See Taylor Aff., ¶¶ 11-26. See also Exhibits B-F to the Taylor Affidavit.

North River points to Olin and to Sybron Transition Corp. v. Security Ins. Co. of Hartford, 258 F.3d 595 (7th Cir. 2001), to support its position that years from 1986 forward should be included in the allocation formula. North River's reliance is misplaced. Olin, like Stonewall and Champion, held that policy periods should not be allocated to an insured when the "decision to 'go bare' … was imposed [on the insured] by the marketplace." 221 F.3d at 325. Olin confirmed the principle that the allocation period excludes years in which generally available insurance did not cover the pertinent risk. Indeed, it specifically noted that years are not included in the denominator unless there was "an opportunity for [the insured] to obtain some form of generally available insurance for this sort of risk." 221 F.3d at 325.

The allocation issue was decided against Olin solely because the insured in Olin failed to argue at trial (as the plaintiff argued in Champion, as the Taylor affidavit shows, and as Emhart has shown here) that the EIL policies that were available would not have covered the claim. Instead, the plaintiff argued that the court should not consider the coverage afforded by such EIL policies so long as comprehensive general liability policies excluded coverage. 221 F.3d at 326.

The Olin trial court thus was not fully informed regarding the narrow scope of the EIL policies. Second, the Olin plaintiff argued that the "availability" issue should be decided on a subjective basis, i.e., on whether it "elected not to purchase" a series of EIL policies. 221 F.3d at 326; emphasis in original. The court, instead, opted for an objective standard.

In short, the record in Olin was deficient because the insurer pointed to the EIL policies but the insurer did not point out the inadequacies of those policies to the trial court. An incomplete record led to an erroneous result. Olin supports the principle upon which Emhart relies, i.e., that insurance for the precise risk must be available and that the determination of availability involves issues of fact.

Sybron cannot be reconciled with Olin or Stonewall. Sybron recognized that it was deviating from the holdings of those courts that "time during which [an insured is] self-insured out of necessity should be excluded from the [allocation] denominator." 258 F.3d at 598-99. The Sybron rationale that self-insurance is insurance is contrary to basic principles of insurance law. As stated in a leading treatise, "self-insurance does not constitute insurance in any traditional form …." Appleman on Insurance Law and Practice § 1.3. It is "repugnant to the concept of insurance which fundamentally involves the shifting to a third party, by contract, for consideration, the risk of loss as a result of an incident or event." Chambi v. Regents of University of California, 116 Cal. Rptr. 2d 50, 53 (Cal. App. 2002). New York does not consider "self-insurance" to be insurance. American Cas. of Reading, Pa. v. St. Charles Hospital and Rehabilitation Center, 801 N.Y.S.2d 57, 58 (N.Y.App.Div. 2005). Any assertion that self-insurance is insurance also is inconsistent with Rhode Island law, which recognizes that "self-insurance" is the antithesis of true insurance because, unlike the insurers, self-insurers retain all risk of loss. See Ellis v. Rhode Island Pub. Transit Auth., 586 A.2d 1055, 1058 (R.I. 1991);

Rhode Island Insurers' Insolvency Fund v. Rhode Island Pub. Transit Auth., 1994 WL 930941 (R.I. Super. Ct. 1994). Further, if self-insurance were deemed insurance for an allocation analysis, it would always be available. Such a construction would render meaningless the statements in numerous judicial decisions stating that years in which insurance was not generally available should not be included in an allocation calculation.

The Sybron jettisoning of settled Second Circuit jurisprudence regarding New York law may well be attributable to its unusual approach to insurance law. The court flatly rejected common approaches to the concept of insurance, stating that a publicly owned company should "depend upon shareholders for risk-bearing services" rather than relying upon conventional insurance. 258 F.3d at 600. Sybron deviates from mainstream insurance law. The general principles stated by the Second Circuit in Olin and Stonewall, and applied in the environmental context in Champion, provide better guidance regarding New York law than does the rather unusual approach of the Seventh Circuit in Sybron.

North River is not entitled to summary judgment. Following Olin and Stonewall, years when insurance was unavailable should not be allocated to an insured. Champion, buttressed by the Taylor affidavit, establishes, as a matter of law, that insurance to cover the risk at issue here was not available in 1986 and later years. North River has not made an affirmative showing as to the availability of insurance to cover the risk at issue prior to 1984. At a minimum, there are genuine issues of material fact concerning the availability of insurance during the relevant period.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment On the "Allocation" Issue of Defendant The North River Insurance Company should be denied.

Respectfully submitted,

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600
gpetros@haslaw.com

Jack R. Pirozzolo
Richard L. Binder
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Dated: August 18, 2006

Counsel for Plaintiff, Emhart Industries, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2006, a copy of the foregoing Memorandum Of Law Of Emhart Industries, Inc. In Support Of Its Objection To Defendant The North River Insurance Company's Motion For Summary Judgment On The "Allocation" Issue was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600
gpetros@haslaw.com