UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC. | : | |
| | : | |
| v. | : | C.A. No. 02-53S |
| | : | |
| HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY and UNITED STATES FIRE INSURANCE COMPANY | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This diversity action arises out of several insurance contract disputes related to environmental contamination at the Centredale Manor Superfund site (the "Site") located near the Woonasquatucket River in North Providence, Rhode Island. Before this Court for preliminary review, findings and recommended disposition (28 U.S.C. § 636(b)(1)(B) and LR Cv 72(a)) is Defendant North River Insurance Company's ("North River") Motion for Summary Judgment Concerning Allocation. (Document No. 334). Plaintiff, Emhart Industries, Inc. ("Emhart") objects to the Motion. In sum, North River has requested that this Court issue a declaratory ruling that if Emhart is entitled to coverage under the excess policy issued by North River (No. 523-313109-9), the costs that Emhart can recover from North River should be allocated, i.e., the costs should be divided *pro rata* by time on the risk across all of the years in which there was property damage at the Site. The Court has

determined that no hearing is necessary to resolve this Motion. For the reasons discussed below, this Court recommends that North River's Motion (Document No. 334) be DENIED.

**Standard of Review**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505,

2514-2515, 91 L. Ed. 2d 202 (1986). In other words, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

**Facts**[1]

1. The Site has been defined by the EPA to include 2072 Smith Street and 2074 Smith Street in North Providence, Rhode Island, as well as a flood plain of the Woonasquatucket River from the Smith Street locations south to the Allendale Dam, a drainage swale which discharges into a wooded wetland south of the Site and eventually into the Woonasquatucket River and any other location to which contamination from that area has come to be located.

2. Atlantic Chemical Co., Inc. and its successor, Metro-Atlantic Inc., are alleged to have operated a textile and chemical manufacturing operation at 2072 Smith Street, North Providence, Rhode Island, from the late 1940s to the early 1970s.

3. New England Container Company allegedly conducted operations at 2074 Smith Street, North Providence, Rhode Island from approximately 1952 to at least 1969.

4. By Agreement of Consolidation dated November 29, 1968, Metro-Atlantic Inc. and Crown Chemical Corporation formed a new corporation, Crown-Metro, Inc.

5. Insurance Company of North America ("INA") issued Policy No. GAL 36597 for the period February 15, 1969 through February 15, 1970 to Crown-Metro, Inc., and that policy was cancelled effective January 1, 1970.

---

[1] These undisputed facts are gleaned from those found by Judge Smith during his bench rulings on August 3, 2006, and from the parties' LR Cv 56(a) statements.

6. INA issued Policy No. XBC 46961 for the period December 1, 1968 through February 15, 1970 to Crown-Metro, Inc. However, Defendant Century Indemnity Company ("Century") claims that the policy period was from December 1, 1968 to January 1, 1970.

7. Century is the successor in interest to INA (Counterclaim and Cross-Claim of Century).

8. Employers' Surplus Lines Insurance Company issued Policy No. S-16-07084 for the period April 24, 1969 through February 15, 1972 to Crown-Metro, Inc., and that policy was cancelled by Crown-Metro, Inc. effective January 1, 1970.

9. Policy No. S-16-07084 states that it is "subject to all the terms and conditions of Policy No. XBC 64674 issued by I.N.A." However, OneBeacon America Insurance Company ("OneBeacon") claims its policy follows form to a different policy, INA Policy No. XBC 46961.

10. OneBeacon is the successor to Employers' Surplus Lines Insurance Company.

11. North River issued Policy No. 523-313109-9, "Commercial Comprehensive Catastrophe Liability Policy," for the period January 1, 1984 through January 1, 1985 to Emhart (the "Policy").

12. The Policy provided coverage for loss sustained as a result of "liability imposed upon the insured by law, or assumed by the insured under contract, for (c) Property Damage Liability,..arising out of an occurrence."

13. "Property Damage" is defined under the Policy as "physical injury to or destruction of tangible property which occurs during the policy period...."

14. An "occurrence" is defined under the Policy as "injurious exposure to conditions which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the insured."

15. New York law applies to all claims related to the Policy.

16. On February 28, 2000, the United States Environmental Protection Agency ("EPA") issued a Notice of Potential Liability for the Centredale Manor Superfund Site ("PRP Letter") to Emhart.

17. Following receipt of the PRP Letter, Emhart and other entities who had received PRP Letters entered into negotiations with the EPA, but those negotiations did not result in an agreement with the EPA.

18. On April 12, 2000, the EPA issued a Unilateral Administrative Order for Removal Action ("First Order") captioned In the Matter of Centredale Manor Restoration Project Superfund Site (U.S. EPA Region I CERCLA Docket No. CERCLA1-2000-0026) and naming Emhart and four other entities as Respondents.

19. On March 26, 2001, the EPA issued a Second Administrative Order for Removal Action ("Second Order") captioned In the Matter of Centredale Manor Restoration Project Superfund Site (U.S. EPA New England CERCLA Docket No. CERCLA-1-2001-0032) and naming Emhart and the four other PRPs as Respondents.

20. In September 2003, the EPA issued a Third Administrative Order On Consent For Removal Action ("Third Order") captioned In the Matter of Centredale Manor Restoration Project

Superfund Site (U.S. EPA Region I CERCLA Docket No. 01-2003-0073) to Emhart and a number of other PRPs.

21. Emhart notified Century regarding the Centredale Manor claim under a number of INA policies by letter dated July 21, 1999.

22. Emhart forwarded the PRP Letter to Century by letter dated March 14, 2000.

23. By letter dated November 22, 2000, Emhart specifically provided notice to Century and demanded defense and indemnification under INA Policy No. XBC 46961 issued to Crown-Metro, Inc.

24. Emhart advised Century of the Second Administrative Order by letter dated April 27, 2001.

25. In response to the PRP Letter, Emhart retained the law firm of Swidler Berlin Shereff Freedman LLP ("SBSF"), now Bingham McCutchen LLP, to represent it. In its defense of the EPA claim, SBSF conducted an investigation to identify PRPs with respect to the Site who had not been identified by the EPA. A number of the PRPs that it located contributed to the cost of remediating the Site and are likely to contribute to future remediation costs.

**Discussion**

In this action, Emhart seeks indemnification from several insurance companies based on damages sustained at the Site over a span of years. Because there were multiple insurance policies in effect during the periods when the damage occurred, if liability is found, there will be a dispute regarding the respective obligations of each individual insurer. Specifically, if a jury finds that

Emhart is entitled to recover benefits, the Court must then determine how the damages should be apportioned.

There are two basic methods for assessing the costs incurred in a complex CERCLA action such as this one: (1) allocation of the costs; and (2) the joint and several approach of assessing costs. Under the joint and several approach, the insured collects the total liability "under any one triggered policy, up to that policy's coverage limit." Olin Corp. v. Ins. Co. of N. Am., 221 F.3d 307, 322 ( 2nd Cir. 2000). That insurer must then seek contribution from any of the other implicated insurers. Id. Under an allocation method, on the other hand, "liability for injury or damages is allocated among all triggered policies, and to the insured for periods of self-insurance, if any, based on some objective factor." Id. Under this approach, each insurer only pays costs based on their *pro rata* share.

There are several policy reasons why the allocation method of cost recovery is preferred by insurers. The allocation method, for example, "avoids saddling one insurer with the full loss, the burden of bringing a subsequent contribution action, and the risk that recovery in such an action will prove to be impossible because, for instance, the insurer of other triggered policies is unable to pay." Id. at 323. It also ensures that the insured is indemnified for "injuries occurring within the policy period, not injuries occurring outside that period." Id. at 322.

Although North River's interest in obtaining a pre-trial declaration is understandable, such a declaration would be premature. First, Emhart contends that there are factual disputes regarding the calculation of costs under the allocation method. The Second Circuit Court of Appeals has noted that, "[a]llocation need not be based strictly on the number of years during which injury was incurred and the number of years that the insurers and the insured were on the risk." Id. at 325. (Internal

citations omitted, emphasis added). North River has proposed allocation based strictly on the years during which the injury occurred and the single year that it was "on the risk." Thus, the parties disagree concerning the factors to be used in allocating costs. Emhart also argues that in calculating the costs under an allocation approach, the Second Circuit Court of Appeals has stated that if insurance for a particular risk is not generally available, those years shall not be included under the allocation method. See Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178, 1201 - 1204 (2nd Cir. 1995). North River contends that Emhart has not set forth any evidence which demonstrates that insurance was unavailable. Thus, there are at least two disputes concerning how the costs should be allocated.

In addition to this Court's concern regarding the existence of factual issues as identified by Emhart concerning application of the rule of allocation, it is not convinced a decision on this issue prior to a jury trial serves the interest of judicial economy. Although such a ruling could potentially facilitate settlement, this Court believes that such potential is outweighed by the risk of inappropriately deciding contested issues of fact. Thus, the sounder approach is to allow the case to proceed to jury trial and to then consider the assessment of costs, if necessary, after the jury has reached its verdict. Thus, I recommend that North River's Motion for Summary Judgment Concerning Allocation (Document No. 334) be DENIED.

**Summary**

For the foregoing reasons, this Court recommends that North River's Motion for Summary Judgment (Document No. 334) be DENIED. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See

Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

LINCOLN D. ALMOND
United States Magistrate Judge
August 22, 2006