UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC. | : | |
| | : | |
| v. | : | C.A. No. 02-53S |
| | : | |
| HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY and UNITED STATES FIRE INSURANCE COMPANY | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This diversity action arises out of several insurance contract disputes related to environmental contamination at the Centredale Manor Superfund Site (the "Site") located near the Woonasquatucket River in North Providence, Rhode Island. Before this Court for preliminary review, findings and recommended disposition (28 U.S.C. § 636(b)(1)(B) and LR Cv 72(a)) is OneBeacon America Insurance Company's ("OneBeacon") Motion for Partial Summary Judgment Concerning Reformation (Document No. 343), and OneBeacon's Motion for Partial Summary Judgment concerning the Pollution Exclusion (Document No. 339). Plaintiff, Emhart Industries, Inc. ("Emhart") filed objections to both Motions (Document Nos. 360 and 362). The Court has determined that no hearing is necessary to resolve these Motions. For the reasons discussed below, this Court recommends that OneBeacon's Motions (Document Nos. 339 and 343) be DENIED.

**Facts**[1]

1. The Site has been defined by the EPA to include 2072 Smith Street and 2074 Smith Street in North Providence, Rhode Island, as well as a flood plain of the Woonasquatucket River from the Smith Street locations south to the Allendale Dam, a drainage swale which discharges into a wooded wetland south of the Site and eventually into the Woonasquatucket River and any other location to which contamination from that area has come to be located.

2. Atlantic Chemical Co., Inc. and its successor, Metro-Atlantic Inc., are alleged to have operated a textile and chemical manufacturing operation at 2072 Smith Street, North Providence, Rhode Island, from the late 1940s to the early 1970s.

3. New England Container Company, Inc. ("NECC") allegedly conducted operations at 2074 Smith Street, North Providence, Rhode Island from approximately 1952 to at least 1969.

4. By Agreement of Consolidation dated November 29, 1968, Metro-Atlantic Inc. and Crown Chemical Corporation formed a new corporation, Crown-Metro, Inc.

5. Insurance Company of North America ("INA") issued Policy No. GAL 36597 for the period February 15, 1969 through February 15, 1970 to Crown-Metro, Inc., and that policy was cancelled effective January 1, 1970.

6. INA issued Policy No. XBC 46961 for the period December 1, 1968 through February 15, 1970 to Crown-Metro, Inc. However, Defendant Century Indemnity Company ("Century") claims that the policy period was from December 1, 1968 to January 1, 1970.

---

[1] These undisputed facts are gleaned from those found by Judge Smith during his bench rulings on August 3, 2006, and from the parties' LR Cv 56(a) statements.

7. Century is the successor in interest to INA (Counterclaim and Cross-Claim of Defendant Century).

8. Employers' Surplus Lines Insurance Company issued Policy No. S-16-07084 for the period April 24, 1969 through February 15, 1972 to Crown-Metro, Inc., and that policy was cancelled by Crown-Metro, Inc. effective January 1, 1970.

9. Policy No. S-16-07084 states that it is "subject to all the terms and conditions of Policy No. XBC 64674 issued by I.N.A." However, OneBeacon claims its policy follows form to a different policy, INA Policy No. XBC 46961.

10. INA Policy XBC 64674 contains no pollution exclusion; INA Policy XBC 46961 contains a "Pollution and Contamination Exclusion Endorsement."

11. OneBeacon is the successor to Employers' Surplus Lines Insurance Company.

12. Defendant North River Insurance Company issued Policy No. 523 313109 9 for the period January 1, 1984 through January 1, 1985 to Emhart.

13. On February 28, 2000, the United States Environmental Protection Agency ("EPA") issued a Notice of Potential Liability for the Centredale Manor Superfund Site ("PRP Letter") to Emhart.

14. Following receipt of the PRP Letter, Emhart and other entities who had received PRP Letters entered into negotiations with the EPA, but those negotiations did not result in an agreement with the EPA.

15. On April 12, 2000, the EPA issued a Unilateral Administrative Order for Removal Action ("First Order") captioned <u>In the Matter of Centredale Manor Restoration Project Superfund</u>

Site (U.S. EPA Region I CERCLA Docket No. CERCLA1-2000-0026) and naming Emhart and four other entities as Respondents.

16. On March 26, 2001, the EPA issued a Second Administrative Order for Removal Action ("Second Order") captioned In the Matter of Centredale Manor Restoration Project Superfund Site (U.S. EPA New England CERCLA Docket No. CERCLA-1-2001-0032) and naming Emhart and the four other PRPs as Respondents.

17. In September 2003, the EPA issued a Third Administrative Order On Consent For Removal Action ("Third Order") captioned In the Matter of Centredale Manor Restoration Project Superfund Site (U.S. EPA Region I CERCLA Docket No. 01-2003-0073) to Emhart and a number of other PRPs.

18. Emhart notified Century regarding the Centredale Manor claim under a number of INA policies by letter dated July 21, 1999.

19. Emhart forwarded the PRP Letter to Century by letter dated March 14, 2000.

20. By letter dated November 22, 2000, Emhart specifically provided notice to Century and demanded defense and indemnification under INA Policy No. XBC 46961 issued to Crown-Metro, Inc.

21. Emhart advised Century of the Second Administrative Order by letter dated April 27, 2001.

22. In response to the PRP Letter, Emhart retained the law firm of Swidler Berlin Shereff Freedman LLP ("SBSF"), now Bingham McCutchen LLP, to represent it. In its defense of the EPA claim, SBSF conducted an investigation to identify PRPs with respect to the Site who had not been

identified by the EPA. A number of the PRPs that it located contributed to the cost of remediating the Site and are likely to contribute to future remediation costs.

23. Emhart sought to reduce its liability in connection with the EPA claim by ensuring that all PRPs share in the past and future costs of remediating the site on an equitable basis and attempted to do so without litigation. Bernard Buonanno and the Estate of Joseph Buonanno were PRPs who refused to pay a portion of the costs of remediating the Centredale Site. After their refusal, Emhart commenced litigation to assert claims of contribution and indemnification against them and thereby limit the amount of its liability in connection with the EPA proceeding. Emhart commenced an adversary proceeding pursuant to bankruptcy law in an attempt to ensure that assets of another PRP, NECC, were available for remediation of the Site. The purpose of that proceeding was also to limit Emhart's liability to the EPA for costs of remediating the Site.

**Discussion**

The arguments advanced by OneBeacon in these two Motions for Partial Summary Judgment are not new. In brief, OneBeacon contends that Policy S-16-07084, which incorporates the terms of INA Policy No. XBC 64674, should be reformed and should instead incorporate the terms of INA Policy No. XBC 46961. OneBeacon claims that the reference to Policy XBC 64674 was a clerical error and that the facts underlying the Motion are undisputed. Further, OneBeacon argues that Policy No. XBC 46961 contains an absolute pollution exclusion, which bars Emhart's claims. OneBeacon previously sought summary judgment on these same issues in January 2004. (Document No. 159.) The Motion was fully briefed, and argument was held before Magistrate Judge Robert W. Lovegreen on July 15, 2004. On February 15, 2005, Judge Lovegreen issued a thorough and exhaustive Report and Recommendation (the "R&R") which recommended the denial of OneBeacon's Motions and

several other pending summary judgment motions. (Document No. 220). OneBeacon timely objected to Judge Lovegreen's R&R (Document No. 222), and a hearing was held before District Judge William Smith on May 13, 2005. On May 17, 2005, Judge Smith adopted the R&R over objection and issued an Order denying OneBeacon's Motion. (Document No. 238).

Emhart essentially argues that the prior Order denying OneBeacon's Motion is the law-of-the-case. The law-of-the-case doctrine serves the important goals of judicial consistency, finality and efficiency. See United States v. Connell, 6 F.3d 27, 30 (1st Cir. 1993). While an initial denial of summary judgment does not absolutely foreclose a subsequent grant of summary judgment on the same issue, courts are hesitant to do so absent a compelling reason. See e.g., Fisher v. Trainor, 242 F.3d 24, 29 n.5 (1st Cir. 2001) ("amplified record"); and Abbadessa v. Moore Business Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993) ("unusual circumstances"). "A renewed or successive summary judgment motion is appropriate, especially if one of the following grounds exist: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or prevent manifest injustice." Whitford v. Boglino, 63 F.3d 527, 530 (7th Cir. 1995) (citation omitted).

OneBeacon does not argue any intervening change in controlling law. Rather, in its Motion regarding Reformation, OneBeacon states that Judge Lovegreen "did not fully address reformation of undisputed clerical errors" but only considered "reformation of a contract when there is mutual mistake." Document No. 344, p. 2 fn. 4. This Court has thoroughly reviewed the R&R (pp. 50-52) and OneBeacon's Objection to the R&R, and respectfully disagrees. In the R&R, Magistrate Judge Lovegreen recites the argument presented by OneBeacon as follows: "because the OneBeacon policy contains a 'mere clerical error' and does not reference the intended policy, OneBeacon is entitled to

reformation of such policy." Document No. 220 at p. 51. Given the reference to "clerical error" in the R&R, the Court gives little credit to OneBeacon's claim that Judge Lovegreen did not adequately consider "undisputed clerical errors." OneBeacon does not point this Court to any "new" case law in its newly-filed Motions and, in fact, its new Motions are nearly verbatim copies of their Objections to Magistrate Judge Lovegreen's Report and Recommendations.

OneBeacon also fails to identify any new evidence or amplification of the record which would warrant revisiting the issue of summary judgment. In the R&R, Judge Lovegreen thoroughly outlined the relevant evidence and determined that the issue "clearly falls within the purview of a finder of fact to assess the weight of the evidence and the credibility of the affiant." R&R (Document No. 220 at p. 51). OneBeacon relies on the same affiant in support of the instant motions. Under Fed. R. Civ. P. 56, the evidence must be viewed in a light most favorable to the non-movant and all inferences must be drawn in its favor. It is apparent from the R&R that Judge Lovegreen properly applied the Rule 56 standards of review and concluded that Emhart presented sufficient evidence to show that a genuine "trialworthy issue remains" on this issue. Cadle, 116 F.3d at 960. It is also undisputed that Judge Smith agreed when he adopted the R&R over objection. OneBeacon has not convinced this Court that the evidentiary record has been "amplified" such that Judge Lovegreen's and Judge Smith's conclusions must be reversed.

Finally, OneBeacon has not shown that the denial of its original Rule 56 Motion was "clear error" or will cause any "manifest injustice." Thus, this Court recommends that OneBeacon's Motions for Partial Summary Judgment on Reformation and the Pollution Exclusion issue be DENIED.

**Summary**

For the foregoing reasons, this Court recommends that OneBeacon's Motions for Partial Summary Judgment (Document Nos. 339 and 343) be DENIED. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

LINCOLN D. ALMOND
United States Magistrate Judge
August 22, 2006