UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC. | : | |
| | : | |
| v. | : | C.A. No. 02-53S |
| | : | |
| HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY and UNITED STATES FIRE INSURANCE COMPANY | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This diversity action arises out of several insurance contract disputes related to environmental contamination at the Centredale Manor Superfund Site (the "Site") located near the Woonasquatucket River in North Providence, Rhode Island. Before this Court for preliminary review, findings and recommended disposition (28 U.S.C. § 636(b)(1)(B) and LR Cv 72(a)) is North River Insurance Company's ("North River") Renewed Motion for Summary Judgment Based on the Pollution Exclusion contained in its excess policy (No. 523-313109-9). (Document No. 352). Plaintiff, Emhart Industries, Inc. ("Emhart") objects to the Motion. The Court has determined that no hearing is necessary to resolve this Motion. For the reasons discussed below, this Court recommends that North River's Motion (Document No. 352) be DENIED.

**Standard of Review**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514-2515, 91 L. Ed. 2d 202 (1986). In other words, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the

nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

**Facts**[1]

1. The Site has been defined by the EPA to include 2072 Smith Street and 2074 Smith Street in North Providence, Rhode Island, as well as a flood plain of the Woonasquatucket River from the Smith Street locations south to the Allendale Dam, a drainage swale which discharges into a wooded wetland south of the Site and eventually into the Woonasquatucket River and any other location to which contamination from that area has come to be located.

2. Atlantic Chemical Co., Inc. and its successor, Metro-Atlantic Inc., are alleged to have operated a textile and chemical manufacturing operation at 2072 Smith Street, North Providence, Rhode Island, from the late 1940s to the early 1970s.

3. New England Container Company allegedly conducted operations at 2074 Smith Street, North Providence, Rhode Island from approximately 1952 to at least 1969.

4. By Agreement of Consolidation dated November 29, 1968, Metro-Atlantic Inc. and Crown Chemical Corporation formed a new corporation, Crown-Metro, Inc.

5. Insurance Company of North America ("INA") issued Policy No. GAL 36597 for the period February 15, 1969 through February 15, 1970 to Crown-Metro, Inc., and that policy was cancelled effective January 1, 1970.

[1] These undisputed facts are gleaned from those found by Judge Smith during his bench rulings on August 3, 2006, and from the parties' LR Cv 56(a) statements.

6. INA issued Policy No. XBC 46961 for the period December 1, 1968 through February 15, 1970 to Crown-Metro, Inc. However, Defendant Century Indemnity Company ("Century") claims that the policy period was from December 1, 1968 to January 1, 1970.

7. Century is the successor in interest to INA (Counterclaim and Cross-Claim of Century) .

8. Employers' Surplus Lines Insurance Company issued Policy No. S-16-07084 for the period April 24, 1969 through February 15, 1972 to Crown-Metro, Inc., and that policy was cancelled by Crown-Metro, Inc. effective January 1, 1970.

9. Policy No. S-16-07084 states that it is "subject to all the terms and conditions of Policy No. XBC 64674 issued by I.N.A." However, OneBeacon America Insurance Company ("OneBeacon") claims its policy follows form to a different policy, INA Policy No. XBC 46961.

10. OneBeacon is the successor to Employers' Surplus Lines Insurance Company.

11. North River issued Policy No. 523-313109-9, "Commercial Comprehensive Catastrophe Liability Policy," for the period January 1, 1984 through January 1, 1985 to Emhart (the "Policy").

12. The Policy provided coverage for loss sustained as a result of "liability imposed upon the insured by law, or assumed by the insured under contract, for (c) Property Damage Liability,..arising out of an occurrence."

13. "Property Damage" is defined under the Policy as "physical injury to or destruction of tangible property which occurs during the policy period...."

14. An "occurrence" is defined under the Policy as "injurious exposure to conditions which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the insured."

15. New York law applies to all claims related to the Policy.

16. On February 28, 2000, the United States Environmental Protection Agency ("EPA") issued a Notice of Potential Liability for the Centredale Manor Superfund Site ("PRP Letter") to Emhart.

17. Following receipt of the PRP Letter, Emhart and other entities who had received PRP Letters entered into negotiations with the EPA, but those negotiations did not result in an agreement with the EPA.

18. On April 12, 2000, the EPA issued a Unilateral Administrative Order for Removal Action ("First Order") captioned In the Matter of Centredale Manor Restoration Project Superfund Site (U.S. EPA Region I CERCLA Docket No. CERCLA1-2000-0026) and naming Emhart and four other entities as Respondents.

19. On March 26, 2001, the EPA issued a Second Administrative Order for Removal Action ("Second Order") captioned In the Matter of Centredale Manor Restoration Project Superfund Site (U.S. EPA New England CERCLA Docket No. CERCLA-1-2001-0032) and naming Emhart and the four other PRPs as Respondents.

20. In September 2003, the EPA issued a Third Administrative Order On Consent For Removal Action ("Third Order") captioned In the Matter of Centredale Manor Restoration Project Superfund Site (U.S. EPA Region I CERCLA Docket No. 01-2003-0073) to Emhart and a number of other PRPs.

21. Emhart notified Century regarding the Centredale Manor claim under a number of INA policies by letter dated July 21, 1999.

22. Emhart forwarded the PRP Letter to Century by letter dated March 14, 2000.

23. By letter dated November 22, 2000, Emhart specifically provided notice to Century and demanded defense and indemnification under INA Policy No. XBC 46961 issued to Crown-Metro, Inc.

24. Emhart advised Century of the Second Administrative Order by letter dated April 27, 2001.

25. In response to the PRP Letter, Emhart retained the law firm of Swidler Berlin Shereff Freedman LLP ("SBSF"), now Bingham McCutchen LLP, to represent it. In its defense of the EPA claim, SBSF conducted an investigation to identify PRPs with respect to the Site who had not been identified by the EPA. A number of the PRPs that it located contributed to the cost of remediating the Site and are likely to contribute to future remediation costs.

**Discussion**

North River issued an excess policy (No. 523-313109-9) to Emhart for the period January 1, 1984 through January 1, 1985. The policy contains a "pollution exclusion" as follows:

> This policy shall not apply:...(f) to liability arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into our upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

North River contends that Emhart cannot, as a matter of law, meet its burden of proving that the dioxin contamination at the Site was caused by a "sudden and accidental" discharge or release of

contaminants. Thus, North River argues it is entitled to summary judgment. Emhart counters that genuine issues of material fact exist which make the entry of summary judgment on this issue inappropriate. Further, Emhart argues that North River's "renewed" Motion on this issue should be denied because North River is seeking to have the Court revisit an issue that has already been fully briefed, argued and decided in Emhart's favor. As discussed below, this Court agrees with Emhart.

On January 16, 2004, North River moved for summary judgment. (Document No. 162). The Motion was fully briefed and argument was held before Magistrate Judge Robert W. Lovegreen on July 15, 2004. On February 15, 2005, Judge Lovegreen issued a thorough and exhaustive Report and Recommendation (the "R&R") which recommended the denial of North River's Motion and several other pending summary judgment motions. (Document No. 220). North River timely objected to Judge Lovegreen's R&R (Document No. 223) and a hearing was held before District Judge William Smith on May 13, 2005. On May 17, 2005, Judge Smith adopted the R&R over objection and issued an Order denying North River's Motion. (Document No. 238).

Emhart essentially argues that the prior Order denying North River's Motion is the law-of-the-case. The law-of-the-case doctrine serves the important goals of judicial consistency, finality and efficiency. See United States v. Connell, 6 F.3d 27, 30 (1st Cir. 1993). While an initial denial of summary judgment does not absolutely foreclose a subsequent grant of summary judgment on the same issue, courts are hesitant to do so absent a compelling reason. See e.g., Fisher v. Trainor, 242 F.3d 24, 29 n.5 (1st Cir. 2001) ("amplified record"); and Abbadessa v. Moore Business Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993) ("unusual circumstances"). "A renewed or successive summary judgment motion is appropriate, especially if one of the following grounds exist: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and

(3) need to correct a clear error or prevent manifest injustice." Whitford v. Boglino, 63 F.3d 527, 530 (7th Cir. 1995) (citation omitted).

North River does not argue any intervening change in controlling law. Rather, it "respectfully suggests that the Court did not fully consider all of the contours of New York law" on the pollution exclusion issue. North River's Mem. in Supp. at p. 2, n.1. This Court has thoroughly reviewed the R&R (pp. 46-50) and North River's Objection to the R&R (Document No. 223), and respectfully disagrees. North River does not point this Court to any "new" case law in its renewed Motion and, in fact, it relies primarily on the same New York cases cited by Judge Lovegreen in the R&R and by it in the unsuccessful objection to the R&R.

North River also fails to identify any new evidence or amplification of the record which would warrant revisiting the issue of summary judgment. The only development in the record identified by North River is the fact that Emhart's expert witness, Dr. J. Ronald Hass, has recently been deposed. In the R&R, Judge Lovegreen thoroughly outlined the relevant evidence and determined that the existence of "disputed fact issues regarding the nature and source of the contamination, as well as contributory factors that may qualify as 'sudden and accidental,' this matter at this time cannot be resolved by summary judgment, and North River's Motion should be denied." R&R (Document No. 220 at p. 50). Under Fed. R. Civ. P. 56, the evidence must be viewed in a light most favorable to the non-movant and all inferences must be drawn in its favor. It is apparent from the R&R that Judge Lovegreen properly applied the Rule 56 standards of review and concluded that Emhart presented sufficient evidence to show that a genuine "trialworthy issue remains" on this issue. Cadle, 116 F.3d at 960. It is also undisputed that Judge Smith agreed when he adopted the R&R over objection. North River has not convinced this Court that the evidentiary record has been

"amplified" such that Judge Lovegreen's and Judge Smith's conclusions must be reversed. North River's arguments regarding the weight to be accorded to Dr. Hass' expert opinion are for the trier of fact and not appropriate for consideration by the Court on a "renewed" summary judgment motion on the eve of trial.

Finally, North River has not shown that the denial of its original Rule 56 Motion was "clear error" or will cause any "manifest injustice." Thus, this Court recommends that North River's Renewed Motion for Summary Judgment on the pollution exclusion issue be DENIED.

**Summary**

For the foregoing reasons, this Court recommends that North River's Motion (Document No. 352) be DENIED. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

LINCOLN D. ALMOND
United States Magistrate Judge
August 22, 2006