UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

EMHART INDUSTRIES, INC. :
:
v. : C.A. No. 02-53S
:
HOME INSURANCE COMPANY, :
INSURANCE COMPANY OF NORTH :
AMERICA, LIBERTY MUTUAL :
INSURANCE COMPANY, NORTH :
RIVER INSURANCE COMPANY, :
ONEBEACON AMERICA INSURANCE :
COMPANY and UNITED STATES FIRE :
INSURANCE COMPANY :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This diversity action arises out of several insurance contract disputes related to environmental contamination at the Centredale Manor Superfund Site (the "Site") located near the Woonasquatucket River in North Providence, Rhode Island. Before this Court for preliminary review, findings and recommended disposition (28 U.S.C. § 636(b)(1)(B) and LR Cv 72(a)) is the Motion filed by Defendant Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America (collectively "Century") for Partial Summary Judgment Under its 1969 primary policy (No. GAL 36597) based on "Trigger of Coverage." (Document No. 348). Defendant OneBeacon America Insurance Company ("OneBeacon") joins Century's Motion as to its umbrella policy (No. S-16-07084) because it contends the 1969 Century primary policy to which it followed form was not triggered. (Document No. 337). Plaintiff, Emhart Industries, Inc. ("Emhart") objects to the Motion. The Court has determined that no hearing is

necessary to resolve these Motions. For the reasons discussed below, this Court recommends that Century's Motion (Document No. 348) be DENIED and OneBeacon's Motion (Document No. 337) be DENIED.

### Standard of Review

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505,

2514-2515, 91 L. Ed. 2d 202 (1986). In other words, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

### Facts[1]

1.  The Site has been defined by the EPA to include 2072 Smith Street and 2074 Smith Street in North Providence, Rhode Island, as well as a flood plain of the Woonasquatucket River from the Smith Street locations south to the Allendale Dam, a drainage swale which discharges into a wooded wetland south of the Site and eventually into the Woonasquatucket River and any other location to which contamination from that area has come to be located.

2.  Atlantic Chemical Co., Inc. and its successor, Metro-Atlantic Inc., are alleged to have operated a textile and chemical manufacturing operation at 2072 Smith Street, North Providence, Rhode Island, from the late 1940s to the early 1970s.

3.  New England Container Company allegedly conducted operations at 2074 Smith Street, North Providence, Rhode Island from approximately 1952 to at least 1969.

4.  By Agreement of Consolidation dated November 29, 1968, Metro-Atlantic Inc. and Crown Chemical Corporation formed a new corporation, Crown-Metro, Inc.

5.  Insurance Company of North America ("INA") issued Policy No. GAL 36597 for the period February 15, 1969 through February 15, 1970 to Crown-Metro, Inc., and that policy was cancelled effective January 1, 1970.

---

[1] These undisputed facts are gleaned from those found by Judge Smith during his bench rulings on August 3, 2006, and from the parties' LR Cv 56(a) statements.

6. INA issued Policy No. XBC 46961 for the period December 1, 1968 through February 15, 1970 to Crown-Metro, Inc. However, Century claims that the policy period was from December 1, 1968 to January 1, 1970.

7. Century is the successor in interest to INA (Counterclaim and Cross-Claim of Century).

8. Employers' Surplus Lines Insurance Company issued Policy No. S-16-07084 for the period April 24, 1969 through February 15, 1972 to Crown-Metro, Inc., and that policy was cancelled by Crown-Metro, Inc. effective January 1, 1970.

9. Policy No. S-16-07084 states that it is "subject to all the terms and conditions of Policy No. XBC 64674 issued by I.N.A." However, OneBeacon claims its policy follows form to a different policy, INA Policy No. XBC 46961.

10. OneBeacon is the successor to Employers' Surplus Lines Insurance Company.

11. Defendant North River Insurance Company issued Policy No. 523-313109-9 for the period January 1, 1984 through January 1, 1985 to Emhart.

12. On February 28, 2000, the United States Environmental Protection Agency ("EPA") issued a Notice of Potential Liability for the Centredale Manor Superfund Site ("PRP Letter") to Emhart.

13. Following receipt of the PRP Letter, Emhart and other entities who had received PRP Letters entered into negotiations with the EPA, but those negotiations did not result in an agreement with the EPA.

14. On April 12, 2000, the EPA issued a Unilateral Administrative Order for Removal Action ("First Order") captioned <u>In the Matter of Centredale Manor Restoration Project Superfund</u>

Site (U.S. EPA Region I CERCLA Docket No. CERCLA1-2000-0026) and naming Emhart and four other entities as Respondents.

15.     On March 26, 2001, the EPA issued a Second Administrative Order for Removal Action ("Second Order") captioned <u>In the Matter of Centredale Manor Restoration Project Superfund Site</u> (U.S. EPA New England CERCLA Docket No. CERCLA-1-2001-0032) and naming Emhart and the four other PRPs as Respondents.

16.     In September 2003, the EPA issued a Third Administrative Order On Consent For Removal Action ("Third Order") captioned <u>In the Matter of Centredale Manor Restoration Project Superfund Site</u> (U.S. EPA Region I CERCLA Docket No. 01-2003-0073) to Emhart and a number of other PRPs.

17.     Emhart notified Century regarding the Centredale Manor claim under a number of INA policies by letter dated July 21, 1999.

18.     Emhart forwarded the PRP Letter to Century by letter dated March 14, 2000.

19.     By letter dated November 22, 2000, Emhart specifically provided notice to Century and demanded defense and indemnification under INA Policy No. XBC 46961 issued to Crown-Metro, Inc.

20.     Emhart advised Century of the Second Administrative Order by letter dated April 27, 2001.

21.     In response to the PRP Letter, Emhart retained the law firm of Swidler Berlin Shereff Freedman LLP ("SBSF"), now Bingham McCutchen LLP, to represent it. In its defense of the EPA claim, SBSF conducted an investigation to identify PRPs with respect to the Site who had not been

identified by the EPA. A number of the PRPs that it located contributed to the cost of remediating the Site and are likely to contribute to future remediation costs.

22.     Emhart sought to reduce its liability in connection with the EPA claim by ensuring that all PRPs share in the past and future costs of remediating the site on an equitable basis and attempted to do so without litigation. Bernard Buonanno and the Estate of Joseph Buonanno were PRPs who refused to pay a portion of the costs of remediating the Site. After their refusal, Emhart commenced litigation to assert claims of contribution and indemnification against them and thereby limit the amount of its liability in connection with the EPA proceeding. Emhart commenced an adversary proceeding pursuant to bankruptcy law in an attempt to ensure that assets of another PRP, New England Container Company, Inc. ("NECC"), were available for remediation of the Site. The purpose of that proceeding was also to limit Emhart's liability to the EPA for costs of remediating the Site.

## Discussion

Century's 1969 primary policy (No. GAL 36597) covers property damage "caused by an occurrence." An "occurrence" is defined as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Under Rhode Island law, Emhart has the burden of proving that the property damage was discovered, manifested itself, or was reasonably discoverable during the policy period. CPC Intern., Inc. v. Northbrook Excess & Surplus Ins. Co., 668 A.2d 647, 649 (R.I. 1995). Since it is undisputed that the contamination at the Site did not manifest itself and was not discovered by Emhart during the policy period, Century contends that the only issue remaining is whether the contamination was discoverable in the exercise of reasonable diligence

during the policy period. Century argues that Emhart cannot, based on the undisputed facts, meet its burden of proof on this issue. Emhart disagrees and asserts that there are disputed issues of material fact on this issue that preclude the entry of summary judgment. This Court agrees with Emhart.

To establish that property damage was discoverable during the policy period, Emhart must prove that (1) the contamination occurred during the policy period (February 15, 1969 to January 1, 1970); (2) the contamination was capable of being detected; and (3) the insured had reason to test the property for contamination at that time. See Textron, Inc. v. Aetna Cas. and Surety Co., 754 A.2d 742, 745 (R.I. 2000). Century contends Emhart cannot, as a matter of law, meet this burden because it had no reason to conduct environmental testing at the Site in 1969. In particular, Century argues that Emhart's predecessor never owned the Site and conducted no operations at the Site in 1969. Emhart counters that these facts are not legally relevant to the discoverability issue because an insured may well have reason to test for contamination following the discontinuance of operations at a site.

In addition, this Court notes that the "trigger issue" was addressed by both Emhart (Document No. 323 at pp. 3-4) and Century (Document No. 327 at pp. 2-5) in connection with their Cross-Motions for Summary Judgment on the issue of Century's duty to defend under the 1969 primary policy. Century argued that the trigger of coverage issue could be resolved prior to trial and that such issue had to be resolved before the Court could address Century's duty to defend. (Document No. 327 at p. 1, n.1). On August 3, 2006, Judge Smith denied both Century's and Emhart's Motions on the duty to defend issue, due to the existence of genuine issues of material fact. At that hearing, Judge Smith discussed the trigger issue and noted that the appropriate inquiry may

be whether Emhart can establish a "reasonable possibility" that contamination was discoverable, in the exercise of reasonable diligence, during the policy period. Significantly, Judge Smith indicated that too many factual issues remained regarding the trigger of coverage which must be resolved at trial. Thus, Century litigated the trigger issue in the context of a prior Rule 56 motion and lost. Despite these clear statements from Judge Smith, Century filed the instant motion trying to again convince the Court that there are no disputed issues of fact regarding the trigger issue.

Emhart also contends that Century already unsuccessfully sought summary judgment on this issue in 2004. In particular, it notes that the trigger issue was argued in detail before Judge Smith during the May 13, 2005 hearing on R&R objections. See Emhart's Ex. A at pp. 29-42. At that hearing, Defendant OneBeacon's counsel addressed the "discovery trigger of coverage" issue in the context of OneBeacon's unsuccessful 2004 summary judgment motion. Id. at p. 29. After listening to counsel's argument and recitation of the facts, Judge Smith observed that "the bottom line is whether there's a factual dispute about this question." Id. at p. 38. As to the discoverability analysis, OneBeacon's counsel described the issue as whether Emhart's predecessor had "a reason to test for the contamination" and indicated that Century's counsel has "already gone through some of the issues." Id. at 39. After discussing the issue further, OneBeacon's counsel asserted that Emhart was inappropriately "asking the Court to make too large of a jump to create an issue of fact here" and he argued that summary judgment should enter for OneBeacon because there was no reason to test. Id. at 41.

By overruling OneBeacon's objection to the R&R and denying its 2004 Motion for Summary Judgment, Judge Smith necessarily concluded that factual issues remained on the trigger issue. Moreover, Judge Smith's unambiguous comments during the August 3, 2006 bench rulings about

the existence of factual issues were directly related to Century's position on this issue. Thus, this Court recommends that Century's instant Motion on the Trigger Issue (Document No. 348) also be DENIED.

### Summary

For the foregoing reasons, this Court recommends that Century's Motion (Document No. 348) be DENIED and OneBeacon's Motion (Document No. 337) be DENIED. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond

LINCOLN D. ALMOND
United States Magistrate Judge
August 22, 2006