UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | DOCKET NO: 02-53-S |

**DEFENDANT THE NORTH RIVER INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO EMHART'S MOTIONS *IN LIMINE* RE LIBERTY MUTUAL ISSUES**

Defendant The North River Insurance Company ("North River") opposes the motions filed by Plaintiff Emhart Industries, Inc. ("Emhart") seeking to preclude all references at trial to any matters pertaining to the insurance policies that were issued to Emhart's predecessor, USM Corporation, by Liberty Mutual Insurance Company ("Liberty Mutual") and the settlement reached between Black & Decker, Inc. (Emhart's parent company) and Liberty Mutual.[1] These matters are directly relevant to the issues in the case and the Court has so determined. There is no basis for the Court to issue a blanket order of exclusion at this time; the Court can instead decide in the context of particular testimony whether any specific information relating to the Liberty

[1] This Memorandum is submitted by North River in opposition to the "Motion In Limine Of Emhart Industries, Inc. To Preclude References To, Or Evidence Regarding, Settlement Between Black & Decker, Inc. And Liberty Mutual Insurance Co." [PACER No. 408] and "Motion in Limine Of Emhart Industries, Inc. To Preclude References To, Or Evidence Regarding, Insurance Policies Issued By Liberty Mutual Insurance Co." [PACER No. 407](collectively, "Emhart's Motions").

Mutual policies or the Liberty Mutual settlement should be admitted. In further support of its opposition to Emhart's Motions, North River states as follows:

1. The North River policy that is at issue in this case does not exist in a vacuum. It is an excess policy that can only potentially provide coverage for Emhart's claim if Emhart satisfies all conditions precedent to coverage including, most particularly, exhaustion in accordance with the requirements of the North River policy. Under New York law, which this Court has previously held applies to all claims against North River, an excess insurer's duties cannot arise until such time as all applicable primary and other insurance is exhausted. *State Farm Fire & Casualty Co. v. LiMauro*, 65 N.Y.2d 369, 482 N.E.2d 13 (1985). Until the primary liability insurance is exhausted, an excess carrier has no contractual duty to participate in the insured's defense, nor does it have any duty to reimburse the costs of defense, whether incurred by the primary insurer or the policyholder. *General Accident Fire & Life Assurance Co. v. Piazza*, 4 N.Y.2d 659, 669 (1958). *See also IBM Corp. v. Liberty Mut. Ins. Co.* 303 F.3d 419, 429 (2d Cir. 2002) ("The excess insurer is required to provide coverage only when the primary insurance has been fully exhausted"); *GMAC v. Nationwide Ins. Co.*, 796 N.Y.S. 2d 2, 4, 828 N.E. 2d 959, 961 (N.Y. 2005)(excess insurer has no obligation to participate in defense). Similarly, there can be no duty to indemnify until the year and layer in which North River's policy was issued are properly reached under New York's rule of *pro rata* allocation. *Consolidated Edison of New York v. Allstate Ins. Co.,* 98 N.Y.2d 208, 774 N.E.2d 687 (N.Y. 2002)(adopting *pro rata* allocation based upon express policy language); *Olin Corp. v. INA,* 221 F.3d 307 (2d Cir. 2000)(*pro rata* allocation of environmental clean-up costs); *Sybron Transition Corp. v. Security Ins. Co. of Hartford,* 258 F.3d 595 (7th Cir. 2001)(settlement of asbestos bodily injury claims would be allocated on a pro rata basis; applying New York law).

2. The North River policy specifically states:

> I. COVERAGE
>
> The Company agrees to pay on behalf of the insured the ultimate net loss ***in excess of the retained limit hereinafter stated***, which the insured may sustain by reason of the liability imposed upon the insured by law, or assumed by the insured under contract, for:
>
> (c) Property Damage Liability
>
> arising out of an occurrence.
>
> V. RETAINED LIMIT – LIMIT OF LIABILITY
>
> The Company's liability shall be only for the ultimate net loss in excess of the insured's retained limit defined as the greater of:
>
> (a) the total of the applicable limits of the underlying policies listed in Schedule A hereof, ***and the applicable limits of any other insurance collectible by the insured***; or
>
> (b) the self-insured retention stated in Item 4(c) of the declarations as the result of all occurrences not covered by said underlying insurance, and which shall be borne by the insured, separately as respects each annual period of this policy.
>
> When the self-insured retention stated in Item 4(c) has been exhausted, this policy shall apply without application of the self-insured retention for the remainder of that annual period.

The North River Policy also contains an "Other Insurance" condition which states:

> **I. Other Insurance.** If other collectible insurance including other insurance with this company is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the retained limit hereunder), the insurance hereunder shall be in excess of and shall not contribute with such other insurance.

Collectively, these provisions mandate that Emhart establish that the underlying Aetna policy and all other insurance available to it ***(including the Liberty Mutual policies)*** be exhausted before North River can have any potential obligation with respect to Emhart's claim.

3. Emhart has never contended that it has exhausted all relevant coverage with respect to the North River policy. Accordingly, there is no basis for the jury to make any award of damages against North River. The purported "declaration" sought by Emhart is meaningless

since the North River policy could only potentially apply to the claim once Emhart has proven proper exhaustion. No such finding could be made by the jury, or by the Court in any post-trial proceedings, since Emhart does not contend (and cannot prove) that exhaustion has happened or will happen before the trial ends. Interpreting what is required under the North River policy to establish exhaustion is strictly a matter of contract construction for the Court. At such time (if ever) that Emhart attempts to demonstrate exhaustion, Emhart's claimed proof will be fully open to challenge by North River. In short, what Emhart is really seeking here is not an appropriate "declaration," but rather an impermissible "advisory opinion" based upon any number of contingencies that have not taken place and may never happen.

4. Unless Emhart is willing to stipulate and have it presented to the jury that it ***has not*** satisfied the exhaustion requirement with respect to the North River policy, then North River should be able to advise the jury that this condition of coverage has not been met, including by referring to the issues pertaining to Liberty Mutual. Indeed, in the original Memorandum and Order on this issue, Magistrate Judge Lovegreen recognized precisely this point:

> Turning to the instant matter, this court must first determine whether the settlement agreement is relevant as the remaining defendant insurers have issued several excess policies. While it is unclear at this time as to what primary policies underlie these excess policies (assuming coverage), it is not inconceivable that some or all of the primary policies issued by Liberty Mutual affect these excess policies.

[Memorandum and Order, 11/2/05, *aff'd*, Order, 12/21/05]. The fact that the Court has subsequently ruled that the ***entire*** Liberty Mutual settlement agreement (which covers other policies and sites not at issue in this case) should not be admitted at trial in no way affects this initial determination of relevance.

For the reasons stated, the Court should deny Emhart's Motions, which collectively seek a ruling that the jury should "pretend" that Emhart was never insured by Liberty Mutual. The

Court can deal with objections to any specific evidence relating to Liberty Mutual during the course of the trial.

Respectfully submitted,

**THE NORTH RIVER INSURANCE COMPANY,**
By its attorneys,

*/s/ Mark T. Nugent*

Mark T. Nugent, RI Bar# 2637
MORRISON MAHONEY LLP
121 South Main Street, Suite 600
Providence, RI 02903-7141
(401) 331-1660

*/s/ John T. Harding*

John T. Harding, Esquire
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500

Dated: September 11, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 11, 2006.

*/s/ John T. Harding*

John T. Harding, Jr. BBO #221270