UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC., Plaintiff, v. HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY, Defendants. | CIVIL ACTION NO. CA 02-053S |

**MEMORANDUM IN SUPPORT OF ONEBEACON AMERICA INSURANCE COMPANY'S OPPOSITION TO EMHART INDUSTRIES' *MOTION IN LIMINE* TO PRECLUDE REFORMATION EVIDENCE**

OneBeacon America Insurance Company ("OneBeacon") hereby opposes Emhart Industries, Inc.'s ("Emhart") Motion *in Limine* seeking to preclude evidence by OneBeacon of reformation of its insurance policy:

## I. INTRODUCTION

Because it is unable to dispute OneBeacon's reformation evidence or to argue credibly that the applicable law requires a different result, Emhart seeks to shift the Court's attention away from the simple facts in the case and seeks to have the Court apply an incorrect legal standard. Emhart does not and cannot dispute that the OneBeacon underwriter copied the wrong policy number when he was preparing the initial handwritten draft Daily Report for the OneBeacon Excess Umbrella Liability Policy. The copying or scrivener's error was carried though into the typed version of the Policy Declarations. The copying error reflected a mistake

in the written form of the insuring agreement between the insurer and Crown Metro and should be reformed. Rather than acknowledge the obvious, however, Emhart seeks to attack the quality of OneBeacon's evidence and Emhart argues that OneBeacon cannot establish that the Policy embodies a mutual mistake of the parties. This is incorrect. Because the OneBeacon Policy contains a scrivener's error, the mutuality of the parties' mistake is presumed. Moreover, even if OneBeacon is required to show that the Policy as issued contains a mutual mistake and that it does not reflect the terms of the parties' insuring agreement, then OneBeacon has presented clear, convincing and undisputed evidence of such mutual mistake.

Emhart's Motion *in Limine* should be denied and the Court should enter an Order in favor of OneBeacon and against Emhart that the OneBeacon Policy follows form to the INA Crown Metro Policy.

## II. UNDISPUTED FACTS

### A. The Policies At Issue.

OneBeacon, as successor-in-interest to Employers Surplus Lines Insurance Company ("ESLIC"),[1] issued a single excess umbrella liability policy to Crown Metro, Inc. ("Crown Metro"), an alleged Emhart predecessor, for the period from April 24, 1969 to January 1, 1970 (the "OneBeacon Policy").[2] (See Joint Appendix, Tab C).[3] The OneBeacon Policy is an excess umbrella policy and grants coverage subject to the terms of one of two different primary umbrella policies issued by Century Indemnity Company's predecessor, the Insurance Company of North America ("INA").

---

[1] OneBeacon and ESLIC are hereinafter collectively referred to as OneBeacon.

[2] The OneBeacon Policy is attached hereto as Exhibit "A."

[3] The Joint Appendix was submitted to the Court on July 24, 2006.

The three policies at issue are the following:

1. INA Policy No. XBC64674 (the "INA Crown Chemical Policy").[4] This was an umbrella policy issued by INA to Crown Chemical Company ("Crown Chemical") for the period December 1, 1967 to December 1, 1968. It provided $5.0 million of umbrella liability insurance.

2. INA Policy No. XBC46961 (the "INA Crown Metro Policy).[5] This was an umbrella policy issued by INA to Crown Metro for the period December 1, 1968 to February 15, 1970. It provided only $1.0 million of umbrella liability insurance.

3. OneBeacon Policy No. S-16-07084 (the "OneBeacon Policy"). This policy insured Crown Metro, "subject to all the terms and conditions of Policy No. XBC64674 [sic] issued by INA to ... Crown-Metro Inc."

The existence of a mistake is apparent on the face of the OneBeacon Policy because it refers incorrectly to INA Policy No. XBC64674 as having been issued to Crown-Metro. In fact, INA issued Policy No. XBC64674 to Crown Chemical. The Declarations page of the OneBeacon Policy states that ESLIC "AGREES WITH THE INSURED named below in consideration of the payment of premium and, except as herein provided, subject to all the terms and conditions of Policy No. XBC64674 issued by INA to: ... Crown Metro Inc." This inconsistency can be explained only in one of two ways:[6] (1) the INA policy number was listed

[4] The INA Crown Chemical Policy is attached hereto as Exhibit "B."

[5] The INA Crown Metro Policy is attached hereto as Exhibit "C."

[6] A third explanation, that there is a fourth, unknown, policy bearing the listed number and issued to Crown Metro does not seem reasonable and has not been raised by either Emhart or OneBeacon.

mistakenly on the OneBeacon Policy as XBC64674 instead of XBC46941; or (2) the underlying insured to which the relevant INA policy was issued was listed mistakenly on the OneBeacon Policy as Crown Metro, which requires reformation.

OneBeacon is seeking to reform the OneBeacon Policy to clarify this patent discrepancy and to effectuate the parties' intent that the OneBeacon Policy follow form to the INA Crown Metro Policy. Emhart's Motion *in Limine* is a belated attempt to preserve its untenable position that the OneBeacon Policy was intended to follow form to the expired INA Crown Chemical Policy. That Motion should be denied and Judgment should enter against Emhart because OneBeacon has ample (and undisputed) evidence to support its claims.

**B. <u>The Underwriting.</u>**

On March 21, 1969, Crown Metro, through its broker George Busnach at Maurice H. Saval, Inc. ("Saval"), sought to procure $5.0 million of umbrella coverage from OneBeacon, excess only of Crown Metro's primary insurance.[7] (A3202, A3233-A3239).[8] On April 15, 1969, OneBeacon provided a quote, which Crown Metro did not accept. (A3202). On May 2, 1969, INA issued its Crown Metro Policy, which provided the first $1.0 million of the $5.0 million umbrella insurance that Crown Metro sought to procure from OneBeacon on March 21, 1969. (A3202). On May 9, 1969, Crown Metro, again acting through its broker Mr. Busnach at Saval, sent OneBeacon a copy of the INA Crown Metro Policy.[9] (A3202, A3232). Crown Metro sought to procure the remaining $4.0 million of umbrella insurance from OneBeacon. (A3202).

---

[7] The March 21, 1969 letter from George Busnach to Vincent Puccio is attached hereto as Exhibit "D."

[8] Citations beginning with the prefix "A" are from the Joint General Appendix of Exhibits to the Parties' Summary Judgment Papers, which was submitted to the Court in connection with the summary judgment motions filed in late 2003 and early 2004.

[9] The May 9, 1969 letter from George Busnach to Vincent Puccio is attached hereto as Exhibit "E."

In response, on May 16, 1969, OneBeacon issued the OneBeacon Policy.[10] It provides the remaining $4.0 million of that layer of excess coverage. (P0700).[11]

Mr. Vincent Puccio was the OneBeacon underwriter with whom Crown Metro's brokers communicated regarding this matter. (A3202). Mr. Puccio filled in a draft Declarations Page for the OneBeacon Policy, using a preprinted "Daily Report" form. (A3202). The preprinted form read:

> Employers' Surplus Lines Insurance Company . . . Agrees with the Insured named below in consideration of the payment of the premium and, except as herein provided, subject to all the terms and condition of Policy No. _______________ issued by
>
> ______________________
>
> to:
> Item 1. INSURED: _________________

(A3215). In the space for the issuing company, he wrote "INA." (A3203). In the blank space for the policy number, Mr. Puccio wrote "XBC 64674," **the number of the expired Crown Chemical, not the recently issued Crown Metro, INA Policy**. (A3203). Emhart does not and cannot dispute that this was a clerical or copying error. (A3203). Mr. Puccio did not have a copy of the INA Crown Chemical Policy; he had only the INA Crown Metro Policy. The declarations page of the INA Crown Metro Policy contained both policy numbers (i.e., XBC64674 as the "old policy no." and XBC46961 as the number assigned to the INA Crown Metro Policy). (A3203). Mr. Puccio, however, copied the wrong policy number by mistake, intending to copy the number of the INA Crown Metro Policy. (A3203). This mistake was

[10] The May 16, 1969 letter from Vincent Puccio to George Busnach is attached hereto as Exhibit "F."

[11] Citations beginning with the prefix "P" are from the Joint Appendix of Policies referenced in the Parties' Summary Judgment papers.

carried through when the OneBeacon Policy was typed and subsequently issued to Crown Metro. (A3203).

The fact that this was a copying error and does not reflect the true intent of the parties is both beyond dispute **and undisputed**. Mr. Puccio's universal practice in writing following form coverage was to follow form to contemporaneous, lower level policies or to contemporaneous policies sharing the same level of insurance. (A3203). He did not write such coverage following form to expired policies. (A3203).

Crown Metro, for its part, also did not intend the OneBeacon Policy to follow form to the INA Crown Chemical Policy. That would have been a highly unusual situation, unique in Mr. Puccio's experience. (A3203). If Crown Metro had intended that result, there would have been some indication of it in the underwriting file. However, there is none. (A3204).

## II. ARGUMENT

### A. OneBeacon Is Entitled To Reformation Of The OneBeacon Policy Because The INA Policy Number Mistakenly Was Listed On The OneBeacon Policy As XBC64674 Instead Of XBC46941.

1. The OneBeacon Policy should be reformed because there was a scrivener's error.

The reformation of insurance policies to correct copying or scrivener's errors reflects the basic rule that the terms of a contract are determined based upon the intent of the parties. Drafting mistakes that create a writing at variance with that intent should be corrected.[12] See,

[12] While there are no Rhode Island cases directly on point, this does not mean that "Rhode Island law does not recognize some form of 'scrivener's error' exception to the rules of reformation by mutual mistake" as Emhart argues. Emhart *Motion* at 13. In fact, Emhart mis-cites three cases offered in support of this proposition. Hopkins v. Equitable Life Assurance Soc., 107 R.I. 679, 270 A.2d 915 (1970) cited by Emhart as being "[p]articularly on point," is a mutual mistake case that has nothing to do with a copying or scrivener's error. Rather, as correctly quoted by Emhart, the case involved a "clerical" error (i.e., "the employer's failure to ascertain who was then the existing designee") and a mistake "by Walter who signed the enrollment card" (i.e., a mutual mistake). 107 R.I. at 685, 270 A.2d at 918. Similarly, neither Rosen v. E. Rosen Co., 818 A.2d 695 (R.I. 203) nor Diaman v. Providence, Warren & Bristol R.R. Co., R.I. 130 (1858) are cases involving copying or scrivener's error. The Rosen decision in Footnote Continued On Next Page

e.g., Cincinnati Ins. Co. v. Fred S. Post, Jr. Co. 747 S.W. 2d. 777, 781-782 (Tenn. 1988) (insurer entitled to reformation to correct typographic error made by insurer because error made the policy differ from the actual agreement of the parties); see also Board of Trustees of the Univ. of Ill. V. Ins. Corp. of Ireland, Ltd., 969 F.2d 329, 334-35 (7th Cir. 1992); Reynolds v. Farmers Ins. Co. of Washington, 90 Wash. App. 880, 885, 960 P.2d 432, 434 (1998). A leading insurance law treatise states the basic rule as it applies to insurance contracts:

> Reformation has been allowed because of the insurer's clerical mistake, since in such instances it is apparent that the policy which was issued does not, in fact, set forth what has been agreed to and what was intended by all the parties.

Couch on Insurance, 3d §27:27.

It is undisputed that OneBeacon made a scrivener's error by stating that the OneBeacon Policy followed form to the INA Crown Chemical Policy instead of the INA Crown Metro Policy. Mr. Puccio, the OneBeacon underwriter with whom Crown Metro's brokers communicated regarding this matter, has admitted that he mistakenly wrote the wrong policy number on the draft Declarations Page. Emhart has not and cannot offer any evidence to contradict the fact that a copying mistake occurred. Application of the clear rule of law to the undisputed fact of OneBeacon's scrivener's error entitles OneBeacon to reformation.

---

fact, did not turn on a mistake, mutual or otherwise, issue. Rather, the Rhode Island Supreme Court concluded that the complaining party had no standing to challenge the transaction at issue and to prosecute the appeal. Id. at 697. In Diaman, the complaining party "by some unaccountable mistake, subscribed for double the amount [of stock]." 5 R.I. 130.

2. The OneBeacon Policy should be reformed because there was a mutual mistake.

Even if the Court is unwilling to presume that the OneBeacon Policy embodies a mutual mistake of the parties (i.e., reforming the OneBeacon Policy based upon the copying error), then the clear and convincing evidence, and in fact, the undisputed and only evidence, is that the parties intended that the OneBeacon Policy follow form to the INA Crown Metro Policy. Crown Metro approached OneBeacon seeking to procure a single umbrella policy in the amount of $5.0 for the entire excess layer. After receiving a quote from OneBeacon for the coverage, Crown Metro decided to seek alternatives. Crown Metro eventually procured the first $1.0 million from INA (the INA Crown Metro Policy), and the remaining $4.0 million from OneBeacon (the OneBeacon Policy). If the OneBeacon Policy is found to follow form to the INA Crown Chemical Policy, then a different policy will apply to the two layers of excess coverage. Given Crown Metro's efforts to procure the entire $5.0 million through one policy, it could not possibly have intended for the two policies in the excess layer to have different terms.

Consistent with Crown Metro's intent for the OneBeacon Policy to follow form to the INA Crown Metro Policy, Crown Metro forwarded to OneBeacon the INA Crown Metro Policy, not the expired INA Crown Chemical Policy (the INA Crown Metro Policy was the renewal of the expired INA Crown Metro Policy). Mr. Puccio used the INA Crown Metro Policy to draft the OneBeacon Policy, only he mistakenly included the reference to the old policy instead of the new one. The INA Crown Chemical Policy to which Emhart claims the OneBeacon Policy follows form was never even considered by Mr. Puccio. The INA Crown Chemical Policy was expired and it was not Mr. Puccio's practice to write excess coverage to follow the form of an expired policy. If Crown Metro wanted OneBeacon to underwrite a policy to follow the form of

the INA Crown Chemical Policy, then it could have provided it to OneBeacon. It is undisputed that the only policy that OneBeacon was given was the INA Crown Metro Policy.

In addition, Crown Metro's intent can be shown through the actions of its broker, Mr. Busnach of Maurice H. Saval, Inc. Mr. Busnach communicated with OneBeacon on behalf of Crown Metro while attempting to procure the $5.0 million in excess coverage.[13] However, in a letter dated May 9, 1969, Mr. Busnach wrote to Mr. Puccio referencing "Crown Metro, Inc." and coverage of "$4,000,000 Excess of $1,000,000." (A3232). Enclosed with Mr. Busnach's May 9, 1969 correspondence was a copy of "the underlying policy" (i.e., the copy of the INA Crown Metro Policy contained in the OneBeacon underwriting file). (A3202, A3232). Accordingly, the undisputed and only evidence of Crown Metro's intent before the Court is that Crown Metro sought and OneBeacon wrote excess umbrella liability coverage following form to the INA Crown Metro Policy.

**B. <u>If The Court Is Unwilling To Enter Summary Judgment In Favor Of OneBeacon And Reform The OneBeacon Policy, Then The Court Should Deny Emhart's Motion In Limine Because The Court Has Determined Previously That There Is A Genuine Trialworthy Issue.</u>**

On August 22, 2006, United States Magistrate Judge Lincoln D. Almond issued a Report and Recommendation on OneBeacon's Motion for Summary Judgment on the issue of reformation. The August 22, 2006 Report and Recommendation stated, in relevant part:

> Judge Lovegreen thoroughly outlined the relevant evidence and determined that the issue "clearly falls within the purview of a finder of fact to assess the weight of the evidence and the credibility of the affiant." ... It is apparent from the R&R that Judge Lovegreen properly applied Rule 56 standards of review and concluded that Emhart presented sufficient evidence to show that a genuine "trialworthy issue remains" on this issue. ... It is also undisputed that Judge Smith agreed

[13] At his deposition, Mr. Busnach confirmed that he wrote to Mr. Puccio on Crown Metro's behalf seeking to obtain the umbrella coverage discussed above. <u>See</u> Document No. 360, page 5 of 16 (February 4, 2000 Deposition of George Busnach at 14).

> when he adopted the R&R over objection. OneBeacon has not convinced this Court that the evidentiary record has been "amplified" such that Judge Lovegreen's and Judge Smith's conclusions must be reversed.

Report and Recommendation at 7 (August 22, 2006).[14] On September 6, 2006, Judge William E. Smith adopted the August 22, 2006 Report and Recommendation and denied OneBeacon's Motion for Summary Judgment.

OneBeacon is entitled to Judgment reforming the OneBeacon Policy such that it follows form to the INA Crown Metro Policy. However, if the Court is unwilling to enter Judgment in favor of OneBeacon, then the Court should deny Emhart's *Motion In Limine* because the Court has already held that there are trialworthy issues.

---

[14] On September 1, 2006, OneBeacon submitted an Objection to the August 22, 2006 Report and Recommendation.

## IV. CONCLUSION

Emhart's *Motion In Limine* should be denied and the Court should enter an Order in favor of OneBeacon and against Emhart that the OneBeacon Policy follows form to the INA Crown Metro Policy.

**ONEBEACON AMERICA INSURANCE COMPANY**
By its Attorneys,

/s/ Kevin J. O'Connor

James T. Murphy #1698
Kelly N. Michels #6478
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Kevin J. O'Connor
Peter C. Netburn
Michael S. Batson
Hermes, Netburn, O'Connor
& Spearing, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110
(617) 728-0050
(617) 728-0052 (f)

Dated: September 11, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 11, 2006.

/s/ Kevin J. O'Connor

Kevin J. O'Connor

G:\DOCS\PCN\Cavell-OneBeacon\Emhart\memo in opp to motion in limine - reformation.doc

# EXHIBIT A

Polic; No. S-16-07084

# Employers' Surplus Lines Insurance Company

(WILMINGTON, DELAWARE)

(A Stock insurance company, herein called the Company)

Administrative Offices: 110 Milk Street, Boston, Massachusetts 02107

Cancelled S/R eff. 1-1-70

...ES WITH THE INSURED named below in consideration of the payment of premium and, except as herein provided, ...ct to all the terms and conditions of Policy No. XBC64674 ...d by I.N.A.

to:

1. INSURED: Crown Metro Inc. - Etal Per named insured end.
12 Dudley Street
Providence, Rhode Island

2. POLICY PERIOD: April 24, 1969 to February 15, 1972

3. COVERAGE: Excess Umbrella

4. EXCEPTIONS: This insurance differs from the Policy which it follows in the following particulars:

(a) Rate

(b) Proportion of Risk Insured:

$4,000,000. each occurrence, $4,000,000. aggregate Umbrella xs $1,000,000. each occurrence, $1,000,000. aggregate.

(c) Premium: $6,958. payable 2,158. - 4/24/69
2,400. - 2/15/70
2,400. - 2/15/71

(d) Other:

REDACTED

P0700

# Employers' Surplus Lines

Insurance Company
(WILMINGTON, DELAWARE)
(A Stock insurance company, herein called the Company)
Administrative Offices: 110 Milk Street, Boston, Massachusetts 02107

## DAILY REPORT

AGREES WITH THE INSURED named below in consideration of the payment of premium and, except as herein provided, subject to all the terms and conditions of Policy No. XBC64674
issued by E.M.A.
to:

Item 1. INSURED: Crown Metro Inc. - Etal Per named insured end.
12 Dudley Street
Providence, Rhode Island

Item 2. POLICY PERIOD: April 24, 1969 to February 15, 1972

Item 3. COVERAGE: Excess Umbrella

Item 4. EXCEPTIONS: This insurance differs from the Policy which it follows in the following particulars:

(a) Rate

(b) Proportion of Risk Insured:

$4,000,000. each occurrence, $4,000,000. aggregate Umbrella xs $1,000,000. each occurrence, $1,000,000. aggregate.

(c) Premium: $6,958. payable 2,158. - 4/24/69
2,400. - 2/15/70
2,400. - 2/15/71

(d) Other:

P0701

9136R-3

This endorsement is effective ______ for attachment to Policy No. S-16-07084

issued to EFFECTIVE FROM INCEPTION DATE OF POLICY

by **EMPLOYERS' SURPLUS LINES INSURANCE COMPA**

Crown-Metro, Inc., The Cravenette Company, U.S.A., Neva-Stain Corporation, I.B.C. Chemical, Ltd., Crown-Metro, Inc. - Southern, Centredale Enterprises, Inc., Ranedare Corporation, Bryant Chemical Corporation, Metro-Atlantic (Canada) Limited Metro-Atlantic, Inc. (New Jersey), Metro-Atlantic, Inc. (South Carolina), Metro-Atlantic, Inc. (Eastern Division), Bon Color Corp., Metro-Atlantic Research Corporation and any Financially Controlled Associated, Affiliated and Subsidiary Companies.

Authorized Representative

End. #1

KSB162 8 PARTS

P0702

OBA 0013

GU 84 (Ed. 10

A&G 661a

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

(BROAD FORM)

This endorsement, effective (12:01 A. M., standard time), forms a part of policy No.

issued to

by

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurar Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organizati is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendat thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the Unit States of America, or any agency thereof, under any agreement entered into by the United States of America, or a agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardo properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properti of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has be discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, tran ported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, par or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facilit but if such facility is located within the United States of America, its territories or possessions or Canada, th exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

**"hazardous properties"** include radioactive, toxic or explosive properties;

**"nuclear material"** means source material, special nuclear material or byproduct material;

**"source material"**, **"special nuclear material"**, and **"byproduct material"** have the meanings given them in the Atom Energy Act of 1954 or in any law amendatory thereof;

**"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in nuclear reactor;

**"waste"** means any waste material (1) containing byproduct material and (2) resulting from the operation by any perso or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (t thereof;

**"nuclear facility"** means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processin or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time th total amount of such material in the custody of the insured at the premises where such equipment or device is lc cated consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or mor than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premise used for such operations;

**"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction c to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactiv contamination of property.

Authorized Representative

OBA 0026

P0703

# EXHIBIT B

Service Office Number: Boston 521
Agency Number: 138024
Insurance Underwriters, Inc.

☐ New: ☒ Renewal: ☐ Rewrite of:

← Agency Name
← Address

| Old Policy No. | Prev. Carrier No. |
|---|---|
| XBC 11424 | |

# INSURANCE COMPANY OF NORTH AMERICA

## EXCESS BLANKET CATASTROPHE LIABILITY POLICY

XBC 64674

Named Insured: Crown Chemical Corporation, etal
Per Named Insured Endorsement
Address: 12 Dudley Street
Providence, Rhode Island

Policy Period: From December 1, 1967 to December 1, 1968 12:01 A.M., standard time at the address of the Named Insured as stated herein.

Audit Period: Annual unless otherwise stated not subject to audit

Endorsements attached to policy at inception:

1 - Name of Insured Endorsement

LIMITS OF LIABILITY

| | | |
|---|---|---|
| ITEM 1. | $ 10,000 | as the result of any one occurrence not covered by the underlying insurance listed in Schedule A or by other underlying insurance collectible by the insured |
| ITEM 2. | $ 5,000,000 | as the result of any one occurrence on account of personal injury, property damage or advertising offense, or any combination thereof |
| ITEM 3. | $ 5,000,000 | on account of all occurrences during each policy year arising out of the products hazard or the completed operations hazard, or both combined |

PREMIUM COMPUTATION

| Estimated | Rate per | Total Advance Premium |
|---|---|---|
| | 2,350. fixed Premium not Subject to Audit | |

P0704

MINIMUM PREMIUM $ 2,350.00

In the event of cancellation by the Named Insured, INA shall receive and retain not less than $ 300.00 as the Minimum Premium.

sr 11/28/67

Countersigned By ______________________
Authorized Agent

147 20M 8-25-66 Printed in U.S.A.

PROCESSING COPY

MISC 00044

INA

# SCHEDULE OF UNDERLYING INSURANCE

SCHEDULE A

POLICY NO. XBC 64674

It is agreed by the Insured that the following underlying insurance is in force as collectible insurance at inception of this policy for the limits of liability stated hereafter.

| Type of Policy | Applicable Limits |
|---|---|
| Standard Workmen's Compensation & Employers' Liability | Coverage B - Employers' Liability<br>$100,000 one accident |
| General Liability | Injury Liability<br>$250,000 each person<br>$1,000,000 each occurrence<br>$1,000,000 aggregate products<br><br>Property Damage Liability<br>$100,000 each occurrence<br>$100,000 aggregate products |
| Automobile Liability | Bodily Injury Liability<br>$250,000 each person<br>$500,000 each accident<br><br>Property Damage Liability<br>$50,000 each accident |

MISC 00045

SPECIMEN FORM
From SSU

INA

**INSURANCE COMPANY OF NORTH AMERICA, PHILADELPHIA, PENNSYLVANIA**

# EXCESS BLANKET CATASTROPHE LIABILITY POLICY

A Stock Insurance Company, herein called INA

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the Named Insured as follows:

## INSURING AGREEMENT

Coverage A—Personal Injury Liability
Coverage B—Property Damage Liability
Coverage C—Advertising Liability

INA will indemnify the insured for ultimate net loss in excess of the retained limit hereinafter stated which the insured shall become legally obligated to pay as damages because of

A. personal injury or
B. property damage or
C. advertising offense

to which this policy applies, caused by an occurrence.

## DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS

**When Underlying Insurance Does Not Apply to an Occurrence:**

With respect to any occurrence not covered by the underlying insurance listed in Schedule A hereof, or any other underlying insurance collectible by the Insured, but covered by this policy except for the amount of retained limit specified herein, INA will, in addition to the amount of the ultimate net loss payable:

(a) defend any suit against the insured seeking damages on account of personal injury, property damage or advertising offense, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient;

(b) pay all expenses incurred by INA, all costs taxed against the insured in any suit defended by INA and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before INA has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of INA's liability thereon;

(c) pay premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies but INA shall have no obligation to apply for or furnish any such bonds;

(d) pay reasonable expenses incurred by the insured at INA's request, including actual loss of wages or salary (but not loss of other income) not to exceed $50 per day because of his attendance at hearings or trials at such request.

In jurisdictions where INA may be prevented by law or otherwise from carrying out this agreement, INA shall pay any expense incurred with its written consent in accordance with this provision.

The insured shall promptly reimburse INA for any amount of ultimate net loss paid on behalf of the insured within the retained limit.

**When Underlying Insurance Does Apply to an Occurrence:**

This policy does not apply to defense, investigation, settlement or legal expenses covered by underlying insurance, but INA shall have the right and opportunity to associate with the insured in the defense and control of any claim or proceeding reasonably likely to involve INA. In such event the insured and INA shall cooperate fully.

In the event that the limits of liability of the underlying insurance listed in Schedule A are exhausted by an occurrence, INA shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence, but only where this policy applies and is immediately in excess of such listed underlying insurance without intervening excess insurance with another insurer.

## RETAINED LIMIT—INA's LIMIT OF LIABILITY

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain injury or damage, or (3) claims made or suits brought on account of personal injury, property damage, or advertising offense, INA's liability is limited as follows:

With respect to personal injury, property damage or advertising offense, or any combination thereof, INA's liability shall be only for the ultimate net loss in excess of the insured's retained limit defined as the greater of:

(a) an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the insured; or

(b) the amount specified in Item 1 of the Limits of Liability section of the Declarations as the result of any one occurrence not covered by the said insurance;

and then for an amount not exceeding the amount specified in Item 2 of the Limits of Liability section of the Declarations as the result of any one occurrence.

There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of INA arising out of either the products hazard or the completed operations hazard, or both combined, on account of all occurrences during each policy year shall not exceed the amount specified in Item 3 of the Limits of Liability section of the Declarations.

In the event that the aggregate limits of liability of the underlying insurance listed in Schedule A are reduced or exhausted by reason of losses that arise out of occurrences which take place during the period of this policy, INA shall, subject to INA's limit of liability which is stated above, continue such coverage as is afforded by the listed underlying insurance in excess of the reduced or exhausted underlying limits.

For the purpose of determining the limit of INA's liability, all damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

## POLICY PERIOD, TERRITORY

This policy applies to personal injury, property damage or advertising offense which occurs anywhere during the policy period.

P0706

SPECIMEN FORM
From SSU

## PERSONS OR ENTITIES INSURED

(a) The Named Insured;

(b) Each of the following is an Insured under this policy to the extent set forth below:

(1) if the Named Insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such, however, this policy does not apply to personal injury, property damage or advertising offense arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this policy as a Named Insured;

(2) any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to operations by or in behalf of the Named Insured or to facilities of or used by the Named Insured;

(3) subject to the terms and conditions of this policy, any additional Insured included in the underlying insurance listed in Schedule A but only to the extent that insurance is provided to such additional Insured thereunder;

(4) except with respect to the ownership, maintenance or use, including loading or unloading, of automobiles, or aircraft, (i) any executive officer, other employee, director or stockholder of the Named Insured while acting within the scope of his duties as such; (ii) any person or organization while acting as real estate manager for the Named Insured;

(5) any person while using, with the permission of the Named Insured, any automobile or aircraft owned by, loaned to or hired for use by or on behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual operation or other actual use is within the scope of such permission, and any executive officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured but only while such automobile or aircraft is being used in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under paragraph (5):

(i) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any occurrence arising out of the operation thereof;

(ii) with respect to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or a lessee (of whom the Named Insured is a sub-lessee) thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

(iii) to any manufacturer of aircraft, aircraft engines or aviation accessories, or any aviation sales or service or repair organization or airport or hangar operator or their respective employees or agents, with respect to any occurrence arising out of the operation thereof.

## EXCLUSIONS

This policy does not apply:

(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(b) to property damage to (1) property owned by the Insured, or (2) the Insured's products arising out of such products or any part of such products, or (3) work performed by or on behalf of the Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, or (4) property rented to, occupied or used by or in the care, custody or control of the Insured to the extent the Insured is under contract to provide insurance therefor

(c) to personal injury or property damage resulting from the failure of the Insured's products or work completed by or for the Insured to perform the function or serve the purpose intended by the Insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any Insured; but this exclusion does not apply to personal injury or property damage resulting from the active malfunctioning of such products or work;

(d) to damages claimed for the withdrawal, inspection, repair, replacement or loss of the use of the Insured's products or work completed by or for the Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(e) to damages arising out of advertising offense for (1) failure of performance of contract, (2) infringement of trade mark, service mark or trade name by use thereof as the trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans, (3) incorrect description of any article or commodity, or (4) mistake in advertised price.

## NUCLEAR ENERGY LIABILITY EXCLUSION

SPECIMEN FORM
From SSU

This policy does not apply:

a. Under any Liability Coverage, to bodily injury or property damage:

(1) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

b. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

c. Under any Liability Coverage to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of an Insured, or (b) has been discharged or dispersed therefrom:

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat;

d. As used in this Exclusion:

(1) "Hazardous properties" include radioactive, toxic, or explosive properties;

(2) "Nuclear material" means source material, special nuclear material or byproduct material;

(3) "Source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

(5) "Waste" means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (6), (a) or (b) thereof;

(6) "Nuclear facility" means: (a) any nuclear reactor; (b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging waste; (c) any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and (e) includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

"advertising offense" means libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy, arising out of the Insured's advertising activities;

"completed operations hazard" includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(a) when all operations to be performed by or on behalf of the Insured under the contract have been completed,

(b) when all operations to be performed by or on behalf of the Insured at the site of the operations have been completed, or

(c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete shall be deemed completed.

The completed operations hazard does not include personal injury or property damage arising out of

(1) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(2) the existence of tools, uninstalled equipment or abandoned or unused materials;

"damages" include damages for death and for care and loss of services resulting from personal injury and damages for loss of use of property resulting from property damage;

"Insured" means any person or organization qualifying as an Insured under the Persons or Entities Insured section of this policy. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of INA's liability;

"Insured's products" means goods or products manufactured, sold, handled or distributed by the Insured or by others trading under his name, including any container thereof (other than a vehicle) but "Insured's products" shall not include a vending machine or any property other than such a container, rented to or located for use of others but not sold;

"Named Insured" means the organization named in the declarations of this policy and includes any subsidiary company (including subsidiaries thereof) of the Named Insured and any other company of which it assumes active management;

"occurrence", as respects property damage, means an accident, including injurious exposure to conditions, which results, during the policy period, in property damage neither expected nor intended from the standpoint of the Insured;

"personal injury" means, (a) bodily injury, sickness, disease, disability, shock, mental anguish and mental injury; (b) false arrest, detention or imprisonment, malicious prosecution or humiliation; (c) the publication or utterance of a libel or slander or of other defamatory material, including disparaging statements concerning the condition, value, quality or use of real or personal property, or a publication or utterance in violation of rights of privacy, except when any of the foregoing of this part (c) arises out of the Insured's advertising activities; (d) wrongful entry or eviction, or other invasion of the right of private occupancy; (e) racial or religious discrimination, unless insurance therefor is prohibited by law not committed by or at the direction of the Insured; and (f) assault and battery not committed by or at the direction of the Insured, unless committed for the purpose of protecting persons or property;

"products hazard" includes personal injury and property damage arising out of the Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the Insured and after physical possession of such products has been relinquished to others;

"property damage" means injury to or destruction of tangible property;

"ultimate net loss" means the sum actually paid or payable in cash in the settlement or satisfaction of losses for which the Insured is liable either by adjudication or compromise with the written consent of INA, after making proper deduction for all recoveries and salvages collectible, but excludes all loss expenses and legal expenses (including attorneys' fees, court costs and interest on any judgment or award) and all salaries of employees and office expenses of the Insured, INA or any underlying Insurer so incurred.

## CONDITIONS

**1. Premium**

The premium for this policy shall be as stated in the Declarations.

**2. Inspection and Audit**

INA shall be permitted but not obligated to inspect the insured's property and operations at any time. Neither INA's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the insured or others, to determine or warrant that such property or operations are safe. INA may examine and audit the insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3. Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to INA or any of its authorized agents as soon as practicable. The insured shall promptly take at his expense all reasonable steps to prevent other personal injury or property damage or advertising offense from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to INA every demand, notice, summons or other process received by him or his representative.

(c) The insured shall cooperate with INA and upon INA's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of personal injury or property damage or advertising offense with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not except at his own cost, voluntarily make any payment, assume any obligation or incur any expense; however, in the event that the amount of ultimate net loss becomes certain either through trial court judgment or agreement among the insured, the claimant and INA, then, the insured may pay the amount of ultimate net loss to the claimant to effect settlement and, upon submission of due proof thereof, INA shall indemnify the insured for that part of such payment which is in excess of the retained limit, or, INA will, upon request of the insured, make such payment to the claimant on behalf of the insured.

**4. Appeals**

In the event the insured or the insured's underlying insurer elects not to appeal a judgment in excess of the retained limit, INA may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of INA for ultimate net loss exceed the amount specified in the Limits of Liability section of the Declarations plus the taxable costs, disbursements and interest incidental to such appeal.

**5. Action Against INA**

No action shall lie against INA with respect to any one occurrence unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay an amount of ultimate net loss in excess of the retained limit shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and INA. The insured shall make a definite claim for any loss in which INA may be liable within a reasonable time after such final determination. If any subsequent payments are made by the insured on account of the same occurrence, the insured shall make additional claims from time to time and these claims shall be payable within thirty (30) days after proof in conformity with this policy. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join INA as a co-defendant in any action against the insured to determine the insured's liability.

Bankruptcy or insolvency of the insured shall not relieve INA of any of its obligations hereunder.

**6. Other Insurance with INA**

If collectible insurance under any other policy of INA is available to the insured, covering a loss also covered hereunder, INA's total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy provided, however, this does not apply to insurance with INA which is written as underlying insurance or which is written as excess insurance over the limit provided in this policy.

**7. Other Insurance Not with INA**

If collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over the limit provided in this policy.

**8. Subrogation**

INA shall be subrogated to the extent of any payment hereunder to all the insured's rights of recovery therefor; and the insured shall do nothing after loss to prejudice such rights and shall do everything necessary to secure such rights. Any amount so recovered shall be apportioned as follows:

Any interest (including the insured's) having paid an amount in excess of the retained limit plus the limit of liability hereunder shall be reimbursed first to the extent of actual payment. INA shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains unpaid, it shall be applied to reimburse the insured or any underlying insurer, as their interest may appear. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by INA, it shall bear the expenses thereof.

**9. Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop INA from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**10. Assignment**

Assignment of interest under this policy shall not bind INA until its consent is endorsed hereon; if, however, the Named Insured shall die, such insurance as is afforded by this policy shall apply (a) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (b) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as insured, but only until the appointment and qualification of the legal representative.

**11. Three Year Policy**

If this policy is issued for a period of three years, the limits of INA's liability shall apply separately to each consecutive annual period thereof.

**12. Cancellation**

This policy may be cancelled by the Named Insured by surrender thereof to INA or any of its authorized agents or by mailing to INA written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by INA by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by INA shall be equivalent to mailing.

If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If INA cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, the INSURANCE COMPANY OF NORTH AMERICA has caused this policy to be signed by its President and Secretary-Treasurer at Philadelphia, Pennsylvania, and countersigned on the Declarations page by a duly Authorized Agent of the Company.

SPECIMEN FORM
From SSU

Geoffrey Stengel
Secretary-Treasurer
GEOFFREY STENGEL

H. Richard Heilman
President
H. RICHARD HEILMAN

P0709

MISC 00049

INA

INSURANCE COMPANY OF NORTH AMERICA

NAMED INSURED ENDORSEMENT

Crown Chemical Corporation

Regal Chemical Corporation

Crown Chemical Corporation Southern

The Cravenette Co., U.S.A.

Crown Polymer Corporation

Neva-Stain Corporation

I B C Chemical Co., Ltd.

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| Effective Date | | Part of Policy No. |
|---|---|---|
| December 1, 1967 | at the hour specified in the policy. | XBC 64674 |
| Issued to Crown Chemical Corporation, etal | | |

Authorized Agent

Not valid unless countersigned by a duly authorized agent of the INSURANCE COMPANY OF NORTH AMERICA.

H Richard Heilman
President.

C-1660

COMPANY REGISTRATION COPY

100M 7-10-67 Ptd. in U.S.A.

P0710

MISC 00050

## Endorsement

In consideration of an additional premium of $50.00, it is agreed the policy is amended as follows:

(1) The Policy Premium is amended to read: $24.00.

(2) Schedule of Underlying Insurance is amended to read:

Property Damage Liability
$50,000 each occurrence
$50,000 aggregate products

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| Effective Date | | Part of Policy No. |
|---|---|---|
| December 1, 1967 | at the hour specified in the policy. | XBC 6 46 74 |
| Issued to Crown Chemical Corporation, Etal. | | |

Authorized Agent

1E es 1/4/68 Insurance Underwriters, Inc. 13024

Not valid unless countersigned by a duly authorized agent of the INSURANCE COMPANY OF NORTH AMERICA

Richard Heilman
President.

C-1660 COMPANY REGISTRATION COPY 100M 7-10-67 Ptd. in U.S.A.

P0711

MISC 00051

INA

INSURANCE COMPANY OF NORTH AMERICA

Correction

ENDORSEMENT

JAN 23 1968

Included below

In consideration of an additional premium of $50.00, it is agreed the policy is amended as follows:

(1) The Policy Premium is amended to read: $2400.00.

(2) Schedule of Underlying Insurance is amended to read:

Property Damage Liability
$50,000. each occurrance
$50,000. aggregate products

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| Effective Date | | Part of Policy No. |
|---|---|---|
| December 1, 1967 | at the hour specified in the policy. | XBC 6 46 74 |
| Issued to Crown Chemical Corporation, etal | | |

Authorized Agent

Not valid unless countersigned by a duly authorized agent of the INSURANCE COMPANY OF NORTH AMERICA

H Richard Heilman
President.

C-1660

COMPANY REGISTRATION COPY

100M 7-10-67 Ptd. in U.S.A.

P0712

MISC 00052

# EXHIBIT C

| ...ice Office Number | Agency Number |
|---|---|
| ...ton 524 | 138024 |
| ...surance Underwriters, Inc. | |

☐ New; ☒ Renewal; ☐ Rewrite of:

—Agency Name
—Address

Old Policy No. XBC 64674

EXCESS BLANKET CATASTROPHE LIABILITY POLICY

## INSURANCE COMPANY OF NORTH AMERICA

XBC 46961

Crown-Metro, etal, per
Named Insured Endorsement
12 Dudley Street
Providence, Rhode Island

...Period: From December 1, 1968 to February 15, 1970 12:01 A.M., standard time at the address of the Named Insured as stated herein.

...Period: Annual, unless otherwise stated

...ments attached to policy at inception: Nuclear Energy Liability Exclusion
Name of Insured Endorsement
Property Damage Exclusion Endorsement #LC-1374
Premium Computation Endorsement #LC-746e
Persons or Entities Insured Endorsement
Contamination or Pollution Exclusion #5

### LIMITS OF LIABILITY

INA'S LIMIT OF LIABILITY:

ITEM 1. $ 1,000,000. arising out of any one occurrence because of personal injury, property damage or advertising injury or any combination thereof.

ITEM 2. $ 1,000,000. arising out of all occurrences during each policy year because of the products hazard, or the completed operations hazard, or both combined.

INSURED'S RETAINED LIMIT:
Underlying Insurance, or

ITEM 3. $ 10,000. because of personal injury, property damage or advertising injury arising out of any one occurrence not within the terms of coverage of underlying insurance but within the terms of the coverage of this insurance.

### PREMIUM COMPUTATION

| Estimated Annual Sales | Rate per 1000 | Total Advance Premium |
|---|---|---|
| 12,000,000. | .35 | $4,500 |

Annual MINIMUM PREMIUM $ 4,500

...event of cancellation by the Named Insured, INA shall receive and retain not less than $ 1,000.00 as the Minimum Premium.

.../2/69

Countersigned By ____________

P0582

CIC 0153

INSURANCE COMPANY OF NORTH AMERICA, PHILADELPHIA, PENNSYLVANIA

Crown-Metro, etal, per
Named Insured Endorsement
12 Dudley Street

EXCESS BLANKET CATASTROPHE
LIABILITY POLICY

A Stock Insurance Company, herein called INA

...tion of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, ... the Named Insured as follows:

## INSURING AGREEMENT

...—Personal Injury Liability

...—Property Damage Liability

...—Advertising Liability

...mnity the Insured for ultimate net loss in excess of the retained limit ...ated which the Insured shall become legally obligated to pay as dam...s of

A. personal injury or

B. property damage or

C. advertising injury

... insurance applies, caused by an occurrence, and

...ect to any personal injury, property damage or advertising injury not ... terms of the coverage of underlying insurance but within the terms ...e of this insurance; or

...al liability of the underlying insurance are exhausted because of per...ury, property damage or advertising injury during the period of this

...the right and duty to defend any suit against the Insured seeking dam... on account of such personal injury, property damage or advertising ... even if any of the allegations of the suit are groundless, false or ...ulent, and may make such investigation and settlement of any claim or suit as it deems expedient; but INA shall not be obligated to pay any claim or judgment or to defend any suit after INA's limit of liability has been exhausted by payment of judgments or settlements;

(b) in adition to the amount of ultimate net loss payable:

(i) pay all expenses incurred by INA, all costs against the Insured in any suit defended by INA and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before INA has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of INA's liability thereon;

(ii) pay premiums on appeal bonds required in any suit, premium on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the Insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies but INA shall have no obligation to apply for or furnish any such bonds;

(iii) pay reasonable expenses incurred by the Insured at INA's request, including actual loss of wages or salary (but not loss of other income) not to exceed $50 per day because of his attendance at hearings or trials at such request.

In jurisdictions where INA may be prevented by law or otherwise from carrying out this agreement, INA will indemnify the Insured for such expense incurred with its written consent in accordance with this provision.

## PERSONS OR ENTITIES INSURED

...d Insured is the organization(s) named in the declarations of this ... includes:

...ubsidiary company (including subsidiaries thereof) and any other com...nder their control and active management at the inception date of ...olicy;

...rganizations acquired by the Named Insured, during the policy period, ...h consolidation, merger with, purchase of the assets of, or assump... control and active management of; provided such acquisition or ...ption is reported to INA within 60 days after it is effected and en...on this policy for an additional premium to be determined; but un...onal failure to report such new acquisition or assumption shall not ...ate this insurance;

...Named Insured in the declarations is a partnership or joint venture, ...tner or member thereof is included as a Named Insured but only ...spect to his liability as a partner or member of such partnership or ...nture.

...e following is an Insured under this policy to the extent set forth

(a) any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract or permit to provide insurance such as is afforded by the terms of this policy, but only with respect to operations by on behalf of the Named Insured or to facilities of or used by the Named Insured and then only to the extent of the coverage required by such contract and for the limits of liability specified in such contract, but in no event for insurance not afforded by this policy nor for limits of liability in excess of the applicable limits of liability of this policy;

(b) at the option of the Named Insured and subject to the terms of the coverage of this insurance, any additional Insured(s) included in the underlying insurance listed in Schedule A, but only to the extent that insurance is provided for such additional Insured(s) thereunder;

(c) except with respect to the ownership, maintenance or use, including loading or unloading, of automobiles or aircraft,

(i) any officer, executive, employee, director or stockholder of the Named Insured while acting on behalf of such Named Insured; (ii) any person or organization while acting as real estate manager for the Named Insured;

## NUCLEAR ENERGY LIABILITY EXCLUSION

...does not apply:

...ny Liability Coverage, to bodily injury or property damage:

...respect to which an Insured under the policy is also an Insured under ...ar energy liability policy issued by Nuclear Energy Liability Insurance ...ciation, Mutual Atomic Energy Liability Underwriters, or Nuclear Insur... Association of Canada, or would be an Insured under any such policy ...for its termination upon exhaustion of its liability; or

...lting from the hazardous properties of nuclear material and with respect ...which (a) any person or organization is required to maintain financial ...tection pursuant to the Atomic Energy Act of 1954, or any law amendatory ...eof, or (b) the Insured is, or had this policy not been issued would be ...itled to indemnity from the United States of America, or any agency ...reof, under any agreement entered into by the United States of America, ...any agency thereof, with any person or organization;

...ny Medical Payments Coverage, or under any Supplementary Payments ...ion relating to immediate medical or surgical relief, to expenses incurred ...respect to bodily injury resulting from the hazardous properties of nuclear ...al and arising out of the operation of a nuclear facility by any person or ...ization;

...er any Liability Coverage to bodily injury or property damage resulting from ...azardous properties of nuclear material, if:

...e nuclear material (a) is at any nuclear facility owned by, or operated by ...on behalf of an Insured, or (b) has been discharged or dispersed therefrom;

...e nuclear material is contained in spent fuel or waste at any time pos...ssed, handled, used, processed, stored, transported or disposed of by or ...behalf of an Insured; or

...e bodily injury or property damage arises out of the furnishing by an ...sured of services, materials, parts or equipment in connection with the ...anning, construction, maintenance, operation or use of any nuclear facility, ...if such facility is located within the United States of America, its terri...ories or possessions, or Canada, this exclusion (3) applies only to property ...amage to such nuclear facility and any property thereat;

d. As used in this Exclusion:

(1) "Hazardous properties" include radioactive, toxic, or explosive properties;

(2) "Nuclear material" means source material, special nuclear material or by-product material;

(3) "Source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

(5) "Waste" means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (6), (a) or (b) thereof;

(6) "Nuclear facility" means: (a) any nuclear reactor; (b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing, or packaging waste; (c) any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and (e) includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

## DEFINITIONS

...ed in this policy (including endorsements forming a part hereof):

...sing injury" means libel, slander, defamation, infringement of copyright, ...slogan, privacy, unfair competition, idea misappropriation or invasion of ...privacy, arising out of the Insured's advertising activities;

...ted operations hazard" includes personal injury and property damage aris...ut of operations or reliance upon a representation or warranty made at any ...ith respect thereto, but only if the personal injury or property damage occurs ...h operations have been completed or abandoned and occurs away from ...s owned by or rented to the Insured. "Operations" include materials, parts ...pment furnished in connection therewith. Operations shall be deemed ...ted at the earliest of the following times:

...all operations to be performed by or on behalf of the Insured under the ...ract have been completed,

...all operations to be performed by or on behalf of the Insured at the site ...e operations have been completed, or

...the portion of the work out of which the injury or damage arises has ...put to its intended use by any person or organization other than an... contractor or subcontractor engaged in performing operations for a ...ipal as a part of the same project.

...ns which may require further service or maintenance work, or correction, ...replacement because of any defect or deficiency, but which are otherwise ...e shall be deemed completed.

...pleted operations hazard does not include personal injury or property ...arising out of

...perations in connection with the transportation of property, unless the ...ersonal injury or property damage arises out of a condition in or on a ...ehicle created by the loading or unloading thereof,

...the existence of tools, uninstalled equipment or abandoned or unused ...aterials;

...s" means only those damages which are payable because of personal ...roperty damage or advertising injury to which this insurance applies and ...damages for (1) death and for care and loss of services resulting from ... injury, (2) loss of use of property resulting from property damage, and ...ertising injury;

"Insured" means any person or organization qualifying as an Insured under the Persons or Entities Insured section of this policy. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of INA's liability;

"Insured's products" means goods or products manufactured, sold, handled or distributed by the Insured or by others trading under his name, including any container thereof (other than a vehicle) but "Insured's products" shall not include a vending machine or any property other than such a container, rented to or located for use of others but not sold;

"occurrence" means an injurious exposure to conditions which results, during the policy period, in personal injury, property damage or advertising injury neither expected nor intended from the standpoint of the Insured.

"personal injury" means, (a) bodily injury, sickness, disease, disability, shock, mental anguish and mental injury; (b) false arrest, detention or imprisonment, malicious prosecution or humiliation; (c) the publication or utterance of a libel or slander or of other defamatory material, including disparaging statements concerning the condition, value, quality or use of real or personal property, or a publication or utterance in violation of rights of privacy, except when any of the foregoing of this part (c) arises out of the Insured's advertising activities; (d) wrongful entry or eviction, or other invasion of the right of private occupancy; (e) racial or religious discrimination, unless insurance therefor is prohibited by law not committed by or at the direction of the Insured; and (f) assault and battery not committed by or at the direction of the Insured, unless committed for the purpose of protecting persons or property;

"products hazard" includes personal injury and property damage arising out of the Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the Insured and after physical possession of such products has been relinquished to others;

"property damage" means injury to or destruction of tangible property;

"ultimate net loss" means the sum actually paid or payable in cash in the settlement or satisfaction of losses for which the Insured is liable either by adjudication or compromise with the written consent of INA, after making proper deduction for all recoveries and salvages collectible, but excludes all loss expenses and legal expenses (including attorneys' fees, court costs and interest on any judgment or award) and all salaries of employees and office expenses of the Insured, INA or any underlying insurer so incurred.

## CONDITIONS

**...mium**

...premium for this policy shall be as stated in the Declarations.

...e premium as stated in the declarations is an advance premium. It shall ... computed in accordance with the premium computation endorsement ...ched to the policy.

**...pection and Audit**

... shall be permitted but not obligated to inspect the Insured's property and ...rations at any time. Neither INA's right to make inspections nor the making ...reof nor any report thereon shall constitute an undertaking, on behalf of ...for the benefit of the Insured or others, to determine or warrant that such ...perty or operations are safe. INA may examine and audit the Insured's books ... records at any time during the policy period and extensions thereof and ...hin three years after the final termination of this policy, as far as they ...ate to the subject matter of this insurance.

**...ured's Duties in the Event of Occurrence, Claim or Suit**

... In the event of an occurrence, reasonably likely to exceed the retained limit, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to INA or any of its authorized agents as soon as practicable. The expenses of all steps to prevent other personal injury or property damage or advertising injury from arising out of the same or similar conditions are not recoverable under this policy.

(b) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to INA every demand, notice, summons or other process received by him or his representative.

(c) The Insured shall cooperate with INA and upon INA's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of personal injury or property damage or advertising injury with respect to which insurance is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense; however, if the amount of ultimate net loss becomes certain either through trial court judgment or agreement among the Insured, the claimant and INA, then, the Insured may pay the amount of ultimate net loss to the claimant to effect settlement and, upon submission of due proof thereof, INA shall indemnify the Insured for that part of such payment which is in excess of the retained limit, or, INA will, upon request of the Insured, make such payment to the claimant on behalf of the Insured.

(d) The Named Insured shall promptly reimburse INA for any amount of ultimate net loss paid on behalf of any Insured within the retained limit.

(e) As this policy is excess insurance, the Insured warrants that coverage under the uninsured motorist laws will be maintained during the policy period. It is agreed that the Named Insured shall promptly reimburse INA for any amount of ultimate net loss paid on behalf of any Insured as respects any payment made under an uninsured motorist law, or any similar law.

**...peals**

...the Insured or the Insured's underlying insurer elects not to appeal a judg...ent in excess of the retained limit, INA may elect to do so at its own ex...ense, and shall be liable for the taxable costs, disbursements and interest ...cidental thereto, but in no event shall the liability of INA for ultimate net ...s exceed the amount specified in the Limits of Liability section of the ...clarations plus the taxable costs, disbursements and interest incidental to ...ch appeal.

**...ion Against INA**

...action shall lie against INA unless, as a condition precedent thereto, there ...all have been full compliance with all the terms of this policy, nor until the ...ount of the Insured's obligation to pay shall have been finally determined ...her by judgment against the Insured after actual trial or by written agree...t of the Insured, the claimant and INA. Any person or organization or the ...l representative thereof who has secured such judgment or written agree...t shall thereafter be entitled to recover under this policy to the extent of ...insurance afforded by this policy. No person or organization shall have any ...ht under this policy to join INA as a co-defendant in any action against the ...ured to determine the Insured's liability, nor shall INA be impleaded by the ...ured or his Legal Representative. Bankruptcy or insolvency of the In...ed shall not relieve INA of any of its obligations hereunder.

**...her Insurance**

...collectible insurance with any insurer is available to the Insured covering ...loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over INA's limit of liability provided in this policy.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, INA shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, INA shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, INA shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

7. **Subrogation**

In the event of any payment under this policy, INA shall be subrogated to the Insured's rights of recovery therefor; and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Any amount so recovered shall be apportioned as follows:

Any interest (including the Insured's) having paid an amount in excess of the retained limit plus INA's limit of liability hereunder shall be reimbursed first to the extent of actual payment. INA shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains unpaid, it shall be applied to reimburse the Insured or any underlying insurer, as their interest may appear. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by INA, it shall bear the expenses thereof.

8. **Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop INA from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

9. **Assignment**

Assignment of interest under this policy shall not bind INA until its consent is endorsed hereon; if, however, the Named Insured shall die, or be adjudged bankrupt or insolvent, such insurance as is afforded by this policy shall apply (a) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (b) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

10. **Three Year Policy**

If this policy is issued for a period of three years, the limits of INA's liability shall apply separately to each consecutive policy year thereof.

11. **Cancellation**

This policy may be cancelled by the Named Insured by surrender thereof to INA or any of its authorized agents or by mailing to INA written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by INA by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by INA shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If INA cancels, earned premium shall be computed pro rata. When this policy insures more than one Named Insured cancellation may be effected by the first named of such Named Insured for the account of all Insureds. Notice of cancellation by INA to the first named Named Insured shall be deemed notice to all Insureds and payment of any unearned premium to such first named Named Insured shall be for the account of all Insureds. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

12. **Acceptance**

By acceptance of this policy, the Insured agrees that this policy embodies all agreements existing between himself and INA or any of its agents relating to this insurance.

...NESS WHEREOF, the INSURANCE COMPANY OF NORTH AMERICA has caused this policy to be signed by its President and Secretary-Treasurer at Philadelphia, ...vania, and countersigned on the Declarations page by a duly Authorized Agent of the Company.

Geoffrey Stengel

Secretary-Treasurer

P0585

Charles K. Cox

President

CIC 0156

ned in- me, in- to

remaining insurers then continue to contribute equal shares of ... ing amount of the loss until each such insurer has paid its limit ... the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does no[t provide] for contribution by equal shares, INA shall not be liable for a gr[eater] portion of such loss than the applicable limit of liability under t[his policy] for such loss bears to the total applicable limit of liability of [all valid] and collectible insurance against such loss.

## RETAINED LIMIT—INA'S LIMIT OF LIABILITY

...the number of (1) Insureds under this policy, (2) persons or organiza-...n injury or damage, or (3) claims made or suits brought because of ...property damage, or advertising injury, INA's liability is limited

...to personal injury, property damage or advertising injury, or any ...thereof, INA's liability shall be only for the ultimate net loss in ...e Insured's retained limit defined as the greater of:

...t equal to the limits of liability indicated beside the underlying in-...listed in Schedule A hereof, plus the applicable limits of any other ...g insurance collectible by the Insured; or

...nt specified in Item 3. of the Limits of Liability section of the ...ions because of personal injury, property damage or advertising ...t within the terms of the coverage of the underlying insurance listed ...dule A:

and then for an amount not exceeding the amount specified in Item 1. of the Limits of Liability section of the declarations arising out of any one occurrence.

There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of INA, because of either the products hazard or the completed operations hazard, or both combined, arising out of all occurrences during each policy year shall not exceed the amount specified in Item 2. of the Limits of Liability section of the declarations.

If the aggregate limits of liability of the underlying insurance listed in Schedule A are reduced or exhausted because of personal injury, property damage or advertising injury during the period of this policy, INA will, subject to INA's limit of liability stated above, continue such coverage as is afforded by such listed underlying insurance for the remainder of the policy year of such underlying insurance in excess of the reduced or exhausted limits.

For the purpose of determining the limits of INA's liability, all damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

## POLICY PERIOD, TERRITORY

...pplies to personal injury, property damage or advertising injury which occurs anywhere during the policy period.

## EXCLUSIONS

...oes not apply:

...bligation for which the Insured or any carrier as his insurer may be ...le under any workmen's compensation, unemployment compensation ...lity benefits law, or under any similar law;

...rty damage to (1) property owned by the Insured, or (2) the Insured's ...arising out of such products or any part of such products, or (3) work ...ed by or on behalf of the Insured arising out of the work or any portion ...or out of materials, parts or equipment furnished in connection ...ith;

...nal injury or property damage resulting from the failure of the Insured's ...or work completed by or for the Insured to perform the function or ...e purpose intended by the Insured, if such failure is due to a mistake ...ciency in any design, formula, plan, specifications, advertising material ...ted instructions prepared or developed by any Insured; but this exclu-sion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work;

(d) to damages claimed for the withdrawal, inspection, repair, replacement or loss of the use of the Insured's products or work completed by or for the Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(e) to advertising injury resulting from (1) failure of performance of contract, (2) infringement of trade mark, service mark or trade name by use thereof as the trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans, (3) incorrect description of any article or commodity, or (4) mistake in advertised price;

(f) To property damage in accordance with the provisions of the property damage exclusion endorsement attached hereto;

CIC 0157

INSURANCE COMPANY OF NORTH AMERICA

## NAMED INSURED ENDORSEMENT

Endorsement #1

The named insured shall read as follows:

Crown-Metro, Inc.
The Cravenette Company, U.S.A.
Neva-Stain Corporation
I.B.C. Chemical., Ltd.
Crown-Metro, Inc. - Southern
Centredale Enterprises, Inc.
Ranedare Corporation
Bryant Chemical Corporation
Metro-Atlantic (Canada) Limited
Metro-Atlantic, Inc. (New Jersey)
Metro-Atlantic, Inc. (South Carolina)
Metro-Atlantic, Inc. (Eastern Division)
Bon Color Corp.
Metro-Atlantic Research Corporation

...ein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| ...te December 1, 1968 at the hour specified in the policy. | Part of Policy No. XBC 46961 |
|---|---|
| Crown-Metro, Inc., etal. | |

CIC 0158

Authorized Agent

...less countersigned by a duly authorized agent of the ... COMPANY OF NORTH AMERICA

Charles K. Cox
President

100M 7-10-67 Ptd. in U.S.A.

# PROPERTY DAMAGE EXCLUSION ENDORSEMENT

(Excess Policy Forms Only)

Named Insured Crown-Metro, etal

Effective December 1, 1968 Policy No. XBC 46961

Issued by Insurance Company of North America
(Name of Insurance Company)

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

Endorsement No. 2

In accordance with the provisions of Exclusion (f), this policy does not apply:

to property damage to property rented to, occupied or used by or in the care, custody or control of the Insured to the extent the Insured is under contract to provide insurance therefor.

CIC 0159

Authorized Agent

P0588

# PREMIUM COMPUTATION ENDORSEMENT

...d Insured Crown-Metro, etal

...tive December 1, 1968 Policy No. XBC 46961

...d by Insurance Company of North America
(Name of Insurance Company)

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

...mium for this policy shall be based upon the: Endorsement No. 3

One year wording:

- Admissions
- Remuneration
- Receipts
- Cost
- Sales

of the Named Insured during the policy period and shall be computed by applying to such estimated premium basis, the rate set forth in the declarations. Upon delivery of this policy the Named Insured shall pay the advance premium shown in the declarations and upon termination of the policy shall render to INA a statement of the premium basis for the policy period and the earned premium shall be computed thereon. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to INA; if less, INA shall return to the Named Insured the unearned ...mium paid by the Named Insured.

Three year wording:

- Admissions
- Remuneration
- Receipts
- Cost
- Sales

of the Named Insured during the policy period and shall be computed by applying to such estimated premium basis, the rate set forth in the declarations. Upon delivery of this policy the Named Insured shall pay the advance premium shown in the declarations and at the end of each twelve months during the policy period, shall render to INA a statement of the premium basis during that period and the earned premium shall be paid to INA, except that the advance premium shown in the declarations shall be credited against the premium found to be due INA for the last twelve months of the policy period.

...arned premiums shall be subject to any applicable minimum premiums stated in the declarations.

...hen used as a premium basis:

a) "admissions" means the total number of persons, other than employees of the Named Insured, admitted to the event(s) insured or to events conducted on the premises, whether on paid admission tickets, complimentary tickets or passes;

b) "remuneration" means the entire renumeration earned during the policy period by all employees of the Named Insured engaged in the Insured's operations, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by INA;

c) "receipts" means the gross amount of money charged by the Named Insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division;

d) "cost" means the total cost to the Named Insured for operations perfomed for the Named Insured, during the policy period, by independent contractors on all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or sub-contractor, including all fees, allowances, bonuses or commissions made, paid or due;

e) "sales" means the gross amount of money charged by the Named Insured or by others trading under his name for all goods or products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division; monies charged one Insured under this policy by another Insured under this policy, for goods, products, installation, servicing or repair shall not be considered sales within the meaning of this definition.

Authorized Agent

CIC 0160

INSURANCE COMPANY OF NORTH AMERICA

PERSONS OR ENTITIES INSURED

Endorsement #4

rsons or Entities Insured" provisions of the policy are amended addition of the following:

y person while using, with the permission of the Named Insured, y automobile or aircraft owned by, loaned to or hired for use by on behalf of the Named Insured and any person or organization gally responsible for the use thereof, provided the actual operation other actual use is within the scope of such permission, and y officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft now owned by the Named nsured but only while such automobile or aircraft is being used n the business of the Named Insured. The insurance with respect o any person or organization other than the Named Insured does not pply under this paragraph (d):

(i) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place;

(ii) to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or a lessee (of whom the Named Insured is a sub-lessee) thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

(iii) to any manufacturer of aircraft, aircraft engines or aviation accessories, or any aviation sales or service or repair organization or airport or hangar operator or their respective employees or agents.

ein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| ate | | Part of Policy No. |
|---|---|---|
| December 1, 1968 | at the hour specified in the policy. | XBC 46961 |
| Crown-Metro, etal. | | |

CIC 0161

Authorized Agent

less countersigned by a duly authorized agent of the COMPANY OF NORTH AMERICA

Charles K. Cox
President

100M 7-10-67 Ptd. in U.S.A.

P0590

INSURANCE COMPANY OF NORTH AMERICA

POLLUTION AND CONTAMINATION EXCLUSION ENDORSEMENT

Endorsement #5

It is agreed that;

"(Except with respect to the products hazard), such insurance as is afforded by this policy or any other endorsement thereto shall not apply to any claim for damages arising out of contamination or pollution of land, air, water or other real or personal property."

...herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| ...e Date December 1, 1968 at the hour specified in the policy. | Part of Policy No. XBC 46961 |
|---|---|
| ...to Crown-Metro, etal | |

CIC 0162

Authorized Agent

...unless countersigned by a duly authorized agent of the ...CE COMPANY OF NORTH AMERICA

Charles K. Cox
President

100M 7-10-67 Ptd. in U.S.A.

# SCHEDULE OF UNDERLYING INSURANCE

**SCHEDULE A** | **POLICY NO. XBC** 46961

It is agreed by the Insured that the following underlying insurance is in force as collectible insurance at inception of this policy for the limits of liability stated hereafter.

| Type of Policy | Applicable Limits |
|---|---|
| ndard Workmen's Compensation Employers' Liability | Coverage B - Employers' Liability<br>$100,000 one accident |
| neral Liability | Personal Injury Liability<br>$100,000 each occurrence<br>$300,000 each occurrence<br>$300,000 aggregate products |
| | Property Damage Liability<br>$100,000 each occurrence<br>$100,000 aggregate products |
| tomobile Liability | Bodily Injury Liability<br>$100,000 each person<br>$300,000 each accident |
| | Property Damage Liability<br>$100,000 each accident |

CIC 0163

MAURICE H. SAVAL
INCORPORATED
Insurance

BOSTON
LONDON
MONTREAL
PROVIDENCE

22 BATTERYMARCH STREET · BOSTON · MASSACHUSETTS 02109
CABLE ADDRESS "MAUSAVAL" (617) 482-2360 TELEX 094-6565

July 3, 1969

Mr. Vincent Puccio
Employers Surplus Lines Insurance Company
110 Milk Street
Boston, Massachusetts

Re: Crown Metro, Inc.
Umbrella Liability
Policy No. S16-07084

Dear Vince:

I am enclosing a copy of endorsement #6 which was added to the primary underlying Umbrella contract issued by the INA.

If you have any questions please give me a call.

Sincerely yours,

George M. Busnach

GMB/cg
enclosure

NuK
WAP 7/7

CIC 0164

P0593

INA

INSURANCE COMPANY OF NORTH AMERICA

## EXCLUSION OF WASTE PRODUCTS ENDORSEMENT 6

It is agreed that Endorsement #5, Pollution Contamination Exclusion Endorsement is deleted.

It is further agreed that this policy shall not apply to:

1.) Injury to or destruction of property caused by intentional or willful introduction of waste products, fluids or materials, including oil refuse, gas or gas bleed water, into any soil or inland or tidal waters, irrespective of whether the insured possessed knowledge of the harmful effects of such acts.

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| Effective Date | | Part of Policy No. |
|---|---|---|
| December 1, 1968 | at the hour specified in the policy. | XBC 46961 |
| Issued to Crown-Metro, etal, per Named Insured Endorsement | | |

cc 6/19/69 Insurance Underwriters, Inc.

Authorized Agent

Not valid unless countersigned by a duly authorized agent of the INSURANCE COMPANY OF NORTH AMERICA

1560

AGENT'S COPY

RECEIVED JUN 24 8 27 AM '69 INSURANCE UNDERWRITERS INC. PROVIDENCE

Charles K. Cox
President

100M 7-10-67 Ptd. in U.S.A.

CIC 0165

P0594

# EXHIBIT D

MAURICE H. SAVAL
INCORPORATED
Insurance

BOSTON
LONDON
MONTREAL
PROVIDENCE

22 BATTERYMARCH STREET · BOSTON · MASSACHUSETTS 02109
CABLE ADDRESS "MAUSAVAC" (617) 482-2360 TELEX 094-6565

March 21, 1969

Mr. Vincent Puccio
Employers Surplus Lines Insurance Company
110 Milk Street
Boston, Massachusetts

Re: Crown-Metro, Inc. etal
Umbrella Liability

Dear Vince:

Enclosed is our application for the above captioned. Please quote five million dollars limit subject to a self-insured retention of $10,000.

If additional information is needed, please advise.

Sincerely yours,

George M. Busnach

GMB:prr

Enc.

George to provide brochure - info on flammables prem with I.R.O.
[illegible] 4/11

Quoted to George Busnach 4/15/69
\# 5,000,000
\# 7,200 Annually
SIR 10,000 - @ Aggregate
Subj to 100,000/300,000 Aggregate

or 20,700 pre paid.

1 MIL - 5200 Ann
14700 P.P.

UMBRELLA POLICY APPLICATION

OBA 0029

All Question Must Be Answered

A3234

BMITTED THROUGH THE OFFICE OF MAURICE H. SAVAL INCORPORATED
BOSTON, MASS.

e of Applicant Crown-Metro, Inc., et al (Per attached Sheet #1)

ess 12 Dudley Street, Providence, Rhode Island

s of Affiliated or Subsidiary companies

Limit Desired $ 5,000,000 (b) Self-Insured Retention $ 10,000

plete description of all operations Manufacturer of chemicals mainly for the textile industries.

Does Applicant perform any installation, servicing, repairing or r services? no if so, explain

t states in which operating or producing plants are located Rhode Island, South Carolina

t states in which warehouses are located New York, New Jersey, and Quebec, Canada

s Applicant have any operations outside the U.S.? Canada

describe Office and warehouse

imated annual receipts or sales (a) United States ? 12,000,000

) Elsewhere $ Included

timated annual payroll $1,000,000

al number of employees Est. 300

ual advertising Expenditures $ 10,000 (a) List Media used and
tage of expenditures for each
trade magazines

e radioactive materials used or handled? no

es Applicant operate an industrial railroad? no

mber of owned or leased autos by type 36 vehicles including private passenger, trucks, etc.

there any transportation of explosive or inflammable substances? no

_____ (a) Does Applicant have any trucks or tractors which regularly

beyond a 150 mile radius from their place of garaging? yes - 3

ber and type of owned or leased **OBA 0030**

) Aircraft none

) Watercraft none

s Applicant have any storage of explosives or inflammables? no

describe fully

s Applicant operate a hospital or first-aid facility? first aid facility

) Is coverage provided for individual doctors and nurses? no

) State the number of doctors and nurses none

Workmen's Compensation insurance carried? yes (a) State

yers' Liability Limit $ 100,000

Applicant self-insured for Workmen's Compensation?

) if so, in what states is he so qualified

) Give details of excess insurance carried

es Applicant have any exposure under (a) Jones Act? no

) Federal Railroad Employees Act? no (c) Federal Long-

oremen's and Harbor Workmen's Act? no if so, how is the

posure presently insured?

s Applicant had a liability loss (insured or uninsured) during the past

rs which exceed $10,000? no if so, explain fully

es Applicant lease premises from others? yes- see Sheet #2 attached (a) if so, attach

ule of locations where the estimated value of the leased portion ex-

insured's retention. (Show complete address, value of leased portion,

ire and E.C. rates of each locations.) (b) Does Applicant assume liab-

in any of the above lease? no

s Applicant's responsibility covered by insurance or is he held harm-

_____ if so, give complete details

A3235

PAGE 2 - FORM 985

ive the details of any non-owned property in the Applicant's care, ody or control where the value may exceed Insured retention (i.e. ed Machinery, material on consignment, storage, RR tank cars, motives, etc.) none

Is Applicant's responsibility covered by insurance or is he held harm-
? ________ if so, give complete details ________

Details of written contractual agreements other than liability assumed r any lease of premises, easement agreement, agreement required by cipal ordinance, side-track agreements and elevator or escalator main- nce agreement. none known - underlying policy insures blanket contractual.

Has Applicant carried higher limits at any time during the last 5 rs? no if so, explain ________

Does Applicant presently carry an umbrella type policy? yes if so, te carrier, form, expiring premium and renewal quote ________

INA standard form; renewal in negotiations

State any coverages which may be excluded from our quotation? none

(OVER)

Schedule of primary Policies:

A3237

| TYPE | | CARRIER | LIMITS | PREMIUM |
|---|---|---|---|---|
| General | BI | INA | $100,000/300,000 BI<br>100,000 PD | Est. $15,000 |
| | PD | INA | | |
| Products | BI | Incl | | |
| | PD | Incl | | |
| Auto | PI | INA | 100,000/300,000 BI | Est. $14,000 |
| | PD | INA | 100,000 PD | |
| WC | | INA | 100,000 | Est. $16,000 |
| Advertisers | | | | |
| Aircraft | | | | |
| Other | | | | |

Does the primary insurance cover

Occurrence basis Bodily Injury? x

Occurrence Basis Property Damage? x

Personal Injury? x

Truly Blanket contractual? x

Products Liability? x

Vendor's Liability? x

Foreign Liability (over seas)? x

(g) Owned Watercraft? no

(h) Advertisers Liability? no

(i) Fire Legal Liability? no

(j) Care, Custody or Control? no

(k) Liquor Law Liability? no

(l) Employees malpractice? x

(m) Explosion, collapse and underground damage? x

Are there any other extentsions or restrictions of coverage? no

cribe

OBA 0032

DOES APPLICANT CARRY

(a) Employers Liability Coverage? yes
(b) Employers Liability Occupational Disease Coverage? yes
(c) Federal Railroad Employees Act Coverage? no
(d) Jones Act Coverage? no
(e) Federal Longshoremen's and Harbor Workers' Act Coverage? no

IF SO INDICATE WHICH COVERAGE CARRIED AND FURNISH FULL DETAILS ON SEPARATE PAGE.

SHEET #1

Name of Applicant: Crown-Metro, Inc., Cravanette Company, U.S.A., I.B.C. Chemical Co. Ltd., Crow-Metro, Inc. Southern, Metro-Atlantic, Inc. Southern, Crown-Metro Jew Jersey, Metro-Atlantic Canada, Bryant Chemical Co., Ranedare Corporation, Centerdale Enterprises, Inc.

SHEET #2

**List of Locations:and description of each:**

12 Dudley Street, Providence, Rhode Island:

Main Plant, office and manufacturing; 75% occupied by insured and 25% occupied by a few non-hazardous operations.

2072 Smith Street, North Providence, Rhode Island:

Various buildings occupied by insured for manufacturing purposes. This facility is to be vacated shortly and combined with the Dudley Street, Providence plant.

111 East 40th Street, New York, New York: *$10,000 Est ccc Value*

Office and showroom.

100 Magaraw Road, Hawthorne, New Jersey: *$25,000 Est. ccc Value*

Office and warehouse.

Highway 29-A, Wellford, Spartanburg, South Carolina:

Manufacturing facility.

Donaldson Center, Greenville, South Carolina:

Manufacturing facility.

37 Gay Street, Granby, Quebec, Canada: *$5,000 Est ccc Value*

Office and warehouse.

# EXHIBIT E

MAURICE H. SAVAL
INCORPORATED
Insurance

BOSTON
LONDON
MONTREAL
PROVIDENCE

22 BATTERYMARCH STREET · BOSTON · MASSACHUSETTS 02109
CABLE ADDRESS-MAUSAVAC (617) 482-2360 TELEX 094-6565

May 9, 1969

Mr. Vincent Iuccio
Employers Surplus Lines Insurance Company
110 Milk Street
Boston, Massachusetts

Re: Crown Metro, Inc.
Umbrella Liability
$4,000,000 Excess of $1,000,000

Dear Vince:

In line with my letter of April 24, 1969 regarding the above captioned, I am enclosing photostatic copies of the underlying policy.

If you have any questions please give me a call.

Sincerely yours,

George M. Busnach

GMB/prr

Enc.

A3232

OBA 0027

# EXHIBIT F

EXHIBIT McCARTHY 5 4/9/03 SLB

# Employers' Surplus Lines
Insurance Company
(WILMINGTON, DELAWARE)

Administrative Offices: 110 MILK STREET / BOSTON, MASSACHUSETTS 02107 / Telex: 094-6265 / Telephone: Area Code 617-426-2600

FRANK J. CAREY, President

Mr. G. Busnach
Maurice H. Saval
22 Batterymarch St.
Boston, Mass. 02109

May 16, 1969

Gentlemen:

Re: CROWN METRO INC., ETAL
POLICY NO: S-16-07084

We are pleased to enclose herewith the documents noted below which we trust you will find in satisfactory order:

[x] Original & (2) copies of above policy/ies

[ ] Endorsement/s

[ ] Retrocessional Agreement. Please sign and return one copy to us.

[ ] Copy of policy for reinsurance purposes.

[ ] Certificate of Insurance.

[ ] Renewal Certificates.

for 1st mill QUOTED 17,500 ~~Annual~~ 3 yrs pp or 7,000 - Annual

quoted to G. Busnach 6/10/69.

Very truly yours,

Vince Puccio

Gen Re to take 50% of 1st mill.

for 50% of 17,500 - 3 yrs, gross -

Enc.

ES18910