**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| EMHART INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | DOCKET NO: 02-53-S |

**DEFENDANT THE NORTH RIVER INSURANCE COMPANY'S MOTION *IN LIMINE* TO PRECLUDE EMHART FROM INTRODUCING NEWSPAPER ARTICLES INTO EVIDENCE**

Defendant The North River Insurance Company ("North River") respectfully requests that the Court preclude Plaintiff Emhart Industries, Inc. ("Emhart") from introducing into evidence certain newspaper articles [Plaintiff's Exhibits 113, 115, 117, 119, 120, 123, 124]. The articles are not relevant to the "pollution exclusion" issue and include multiple levels of inadmissible hearsay under FRE 801(c). The articles do not contain any information that is relevant to the question of whether there was an event at the Site that resulted in a "sudden and accidental" release of the dioxin contamination that Emhart may be required to clean up. There is no dispute that certain historical facts occurred, such as the August 1972 fire, and thus the articles are completely unnecessary to prove any issue in the case. The articles are solely being offered by Emhart because of their sensationalist language and tabloid headlines in an effort to

generate juror confusion and escape the inescapable fact that Emhart has no proof of a "sudden and accidental" discharge of pollutants that was a substantial cause of the pollution at the Site. In further support of this motion, North River states as follows.

## I. THE NEWSPAPER ARTICLES

Emhart has previously identified certain alleged "events" that it contends are relevant to the question of whether Emhart can prove that the exception to the pollution exclusion for discharges or releases of pollutants that are both "sudden and accidental" applies here. To this end, Emhart has sought to introduce a series of newspaper articles dating back to the 1960's that describe certain explosions, fires and floods that allegedly occurred at the Site.[1] By way of example, Emhart seeks to introduce:

- "Explosion and Fire Light Up Centredale," The Providence Evening Bulletin, pp. 1, 10, and 21, August 29, 1972 [Ex. 120]
- "Tank Explosion Hurls Chemical," The Providence Journal, pp. 1 and 12, January 10, 1968 [Ex. 115]
- "Many Forced to Evacuate Homes by Rain-Caused Floods," The Providence Journal, pp. 1 and 18, March 19, 1968 [Ex. 123].

While the articles refer to certain historical facts (all of which are either uncontested or easily proven by official sources), the articles contain quotes and other statements from named and unnamed witnesses including police officers, fire fighters and anonymous residents of the area. Critically, the articles do not even purport to make a causal link between any of the events so colorfully described in the articles and the contamination at the Site.

[1] Some of the articles that Emhart seeks to introduce do not even specifically relate to the Site. As the Court noted on September 13, 2006, one of the articles related to flooding in another part of Rhode Island.

## II. EMHART'S BURDEN UNDER NEW YORK LAW[2]

As the policyholder, it is Emhart's burden to prove that the pollution at issue arose from a "discharge, dispersal, release or escape" of pollutants that is both "sudden and accidental." *Northville Industries Corp. v. National Union Fire Ins. Co.*, 679 N.E.2d 1044, 1049 (N.Y. 1997) ("Shifting the burden to establish the exception conforms with an insured's general duty to establish coverage where it would otherwise not exist…"); *Powers Chemco, Inc. v. Federal Ins. Co.*, 548 N.E.2d 1301, 1302 (N.Y. 1989) (noting that the "sudden and accidental" dispersals exception to the pollution exclusion does not apply unless the occurrence in question was *both* "sudden" and "accidental").

Under New York law, the policyholder fails to meet its burden unless the policyholder can show that the alleged "sudden" event actually caused a discharge of pollutants that was sufficient to result in the contamination for which the policyholder is being held responsible. *Northville*, 679 N.E.2d at 1048. Thus, the insured is required to show that there was a discharge, "abruptly…or brought about within a short time," of a significant quantity of the pollutant sufficient to have some potentially damaging effect. *Northville*, 679 N.E.2d at 1048. Moreover, under New York law, the focus of the pollution exclusion is only on the original discharge of pollutants into the environment, not on their subsequent migration through the soil or groundwater. *See, e.g., Rheem Manufacturing Co. v. Home Indemnity Co.*, 723 N.Y.S.2d 354 (1st Dept. 2001) (initial disposal of wastes at site caused the damage without regard to whether subsequent fires or floods exacerbated the damage).

A New York federal court has provided the following explanation of the proper standard following the *Northville* decision:

---

[2] These issues are more fully discussed in North River's Renewed Motion for Summary Judgment and Supporting Memorandum of Law.

> Few reported cases have interpreted the *Northville* decision. But one New York case relying upon *Northville* suggests that ***merely dispelling an alleged method of pollution and thereby creating uncertainty how pollution may have occurred does not allow an insured to resuscitate coverage after the pollution exclusion is triggered***. In *Hadco Corp. v. Fidelity & Cas. Co.*, No. 23420 (N.Y. Sup. Ct. May 22, 1998), slip op. at 13-16, the court held that where an insured had presented no proof of sudden and accidental discharge of pollutants and the evidence adduced in the underlying action of spillage of wastes from storage drums was "at best, inconclusive as to whether at their outset the discharges" were sudden, the exception did not apply as a matter of law. "Mere speculation" that the spillage may have occurred suddenly and accidentally, without more, was held insufficient to meet the insured's burden under *Northville*.

*Employers Insurance of Wausau v. The Duplan Corp.*, 1999 U.S. Dist. LEXIS 15368, *33-34 (S.D.N.Y. 1999) (emphasis added).

In this case, in order to meets its burden as the policyholder, Emhart is required to prove that there was significant dioxin contamination that resulted from a "sudden and accidental" discharge of pollutants. Merely citing an alleged sudden and accidental "event" at a site which, as a theoretical matter, "could" or "might" have resulted in contamination, fails to establish the requisite causal link between the discharge of the pollutant and the environmental damage for which the policyholder is being held liable. To put it another way, in addition to merely citing an alleged "sudden and accidental" event, Emhart must provide documentation or other proof of the release of pollutants at the Site. These alleged "events" must have been the cause of the original contamination sought to be remediated. None of the newspaper articles relied upon by Emhart have any bearing on this issue. Emhart cannot satisfy its burden of proof by having the jury speculate that floods, fires or explosions described in the newspaper articles at or near the Site may have caused contamination at the Site. Emhart must show that the alleged sudden events actually resulted in the release of the dioxin contamination.

## III. THE NEWSPAPER ARTICLES FAIL TO PROVIDE ANY EVIDENCE NECESSARY FOR EMHART TO MEET ITS BURDEN

For any evidence to be admissible it must be relevant to and probative of an issue in dispute. *U.S. v. Johnson*, 952 F.2d 565, 574 (1st Cir. 1991). Under Fed. R. Evid. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence which is not relevant is not admissible. Fed. R. Evid. 403. Although the newspaper articles report historical events, they are irrelevant to the issue of the pollution exclusion because they refer to any facts that would create a causal link to the contamination at the Site. North River does not dispute the historical fact that certain events (e.g. the 1972 fire) described in the newspaper articles occurred on the dates reported. Further, because the "events" described in the newspaper articles are irrelevant to issues actually in dispute between the parties, the articles should not be admitted as evidence during the trial.

With respect to the fire and the explosions, the newspaper articles provide no evidence that the events actually resulted in the release of the dioxin contamination that the EPA is requiring Emhart to investigate and remediate. For example, the articles fail to establish what materials were on the Site at the time of the fire or explosion, what materials were in the barrels that may have burned, or any other information that would establish a causal link between the fire or explosion and a substantial release of the dioxin detected at the Site. Emhart's own expert, Hass, has disavowed that any such proof of what materials were on the Site at the time of the fire exist.

The amount of water pumped at the Site to put out the 1972 fire is similarly irrelevant. As noted above, New York authority makes it clear that the subsequent movement or migration of contaminants that have already been discharged into the environment is legally irrelevant to

the issue of whether the policyholder can satisfy its burden of proof under the exception to the pollution exclusion. *Northville*, 679 N.E.2d at 1048. Thus, pouring water onto ground that already contained dioxin contamination does nothing to bolster Emhart's case with respect to the pollution exclusion.

Lastly, the newspaper article describing the 1968 flood never: (1) refers to the Site; (2) describes the environmental impact (if any) that the waters may have had on the Site; or (3) demonstrates that dioxin was discharged at the Site during the course of any of the events. This is not surprising because no witness has testified and no expert has opined that any flood event resulted in the initial release of dioxin.[3]

In summary, even assuming *arguendo* that the newspaper articles are not inadmissible hearsay, the articles fail to contain any information that would support Emhart's claim that any of the alleged "events" actually caused dioxin contamination at the Site. Thus, the newspaper articles are not relevant to the pollution exclusion issue or any other matters in dispute before this Court and should be excluded. Moreover, even if the Court was to conclude that the articles had some marginal relevance to this case, they should nevertheless be excluded on the grounds that they are unfairly prejudicial under FRE 403. The articles are replete with "sensational" tabloid headlines and statements designed to sell newspapers. They are being offered precisely because of their "dramatic" qualities in a trial that, unfortunately, is unlikely to be very dramatic. That is precisely the type of evidence that FRE 403 was meant to exclude.

## IV. THE NEWSPAPER ARTICLES ARE INADMISSIBLE HEARSAY

Courts have consistently held that newspaper articles or other news accounts, unsupported by corroborating evidence and offered to prove that certain facts occurred, lack the

[3] North River disputes that a flood qualifies as a "sudden and accidental" event in the context of this case. Metro Atlantic elected to build its facility in an area that was prone to flooding. The fact that flooding happened in a flood prone area can hardly be considered an "accident."

"circumstantial guarantees of trustworthiness" that the Federal Rules of Evidence require. *See, e.g.*, *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1999) (finding that newspaper article was hearsay and therefore inadmissible at trial to establish the truth of the reported facts because the article itself constituted inadmissible out-of-court statements, by unidentified persons, offered to prove the truth of the matters asserted); *Coyne v. Taber Partners I,* 53 F.3d 454, 461 n.6 (1st Cir. 1995) (admitting newspaper article for the limited purpose of establishing that the defendant knew or should have known of the volatile nature of a labor protest); *Pallotta v. U.S.,* 404 F.2d 1035, 1036 (1st Cir. 1964) (stating that newspaper article is not admissible as an exhibit); *Fitzgerald v. Town of Kingston,* 13 F.Supp. 2d 119, 123 (D. Mass. 1998) (holding that newspaper article was inadmissible hearsay); *Larez v. City of Los Angeles,* 946 F.2d 630, 642-644 (9th Cir. 1991) (noting that "courts may well question whether an out-of-court statement, merely because it appears in newsprint, is sufficiently reliable"); *W.E. Green v. Leroy Baca*, 226 F.R.D. 624, 637 (C.D. Cal. 2005) ("Generally, newspaper articles and television programs are considered hearsay under Rule 801(c) when offered for the truth of the matter asserted"); *In re Columbia Securities Litigation*, 155 F.R.D. 466, 474 (S.D.N.Y. 1994) (holding that press reports were hearsay because they were out-of-court statements offered to prove the truth of the matter asserted).

Moreover, even if actual statements quoted in a newspaper article would not constitute hearsay, or fall within a hearsay exception, their repetition in the newspaper creates a hearsay problem. *W.E. Green*, 226 F.R.D. at 637-638 (C.D. Cal. 2005) (*citing Larez*, 946 F.2d at 642 ("As the reporters never testified nor were subjected to cross-examination, their transcriptions of [the declarant]'s statements involve a serious hearsay problem")); *U.S. Football League v. Nat'l Football League*, 1986 U.S. Dist. LEXIS 25390 *1, 2 (S.D.N.Y. 1986) (holding that statements

of belief by unknown declarants reiterated in a newspaper article constituted hearsay within hearsay).

The newspaper articles sought to be offered by Emhart are classic examples of double hearsay; that is, the articles themselves are out-of-court statements offered to prove the truth of the matters asserted therein, and the statements and quotations within the articles are another layer of out-of-court statements sought to be offered for their truth. Thus, notwithstanding that newspaper articles are hearsay when offered for their truth, any statements alluded to or made in newspaper articles ordinarily cannot be considered as evidence unless an exception to the prohibition against hearsay set forth in Fed. R. Evid. 802 applies to these individual statements as well as the newspaper articles.

## V. NO EXCEPTION TO THE PROHIBITION AGAINST HEARSAY APPLIES

### A. The "Ancient Document" Exception Does Not Apply

Federal Rule of Evidence 803(16) provides a hearsay exception for "statements in a document in existence for twenty years or more the authenticity of which has been established." *EnergyNorth Natural Gas, Inc. v. UGI Utilities, Inc.*, 2003 U.S. Dist. LEXIS *1, 2 (D. N.H. 2003). However, as a recent federal court observed, where the declarant is not also the author of the article, the age of the document does not remedy the dangers of faculty perception. *Hicks v. Pfizer*, 2005 U.S. Dist. LEXIS *1, 19 (E.D. Texas 2005). When considering the ancient documents exception to the hearsay rule,

> the crucial issue, however, is whether Rule 803(16) inoculates all assertive statements contained within an ancient document, including double hearsay, against application of the general prohibition against hearsay contained in Rule 802. The rationale of Rule 803(16) in permitting the admission of statements in ancient documents where the author is the declarant does not justify the admission of double hearsay merely because of its presence in an ancient document. The danger of faulty perception

> persists unabated because a narrator, such as a reporter, may not properly record the remarks of the speaker.

*Id.*

The *Hicks* court comprehensively reviewed prior case law, and the court concluded:

> Better reasoned authority indicates that the ancient documents exception permits the introduction of statements only where the declarant is the author of the document. Even if a document qualifies as ancient under Rule 803(16), other hearsay exceptions must be used to render each individual layer of hearsay admissible. This interpretation best reconciles the underlying justifications of Rule 803(16) with the limitations of Rule 805.

*Id.* at 22-23.[4]

Thus, even if a newspaper or other document qualifies as an ancient document under Rule 803(16), other hearsay exceptions must be used to render each individual layer of hearsay (such as the statement of a witness referenced in the newspaper article) admissible. *Hicks*, 2005 U.S. Dist LEXIS 40660 at 23 (*citing Columbia First Bank, FSB*, 58 Fed. Cl. at 338); *U.S. v. Stelmokas*, 1995 U.S. Dist. LEXIS 11240 *1, 6 (E.D. Pa. 1995)("This interpretation best reconciles the underlying justifications of Rule 803(16) with the limitations of Rule 805").

---

[4] Some courts have implied that multiple levels of otherwise inadmissible hearsay may be admitted under Rule 803(16). *See Murray v. Sevier*, 50 F. Supp. 2d 1257, 1265 n.6 (M.D. Ala. 1999) (permitting statements made in an interview in a newspaper article to be used under Rule 803(16), *vacated on other grounds, Murray v. Scott*, 253 F.3d 1308 (11th Cir. 2001); *Gonzales v. North Twp. of Lake County*, 800 F. Supp. 676, 681 (N.D. Ind. 1992), *rev'd on other grounds*, 4 F.3d 1412 (7th Cir. 1993) ("As the newspaper articles in Exhibit C are well more than twenty-years old, the statements contained within are admissible into evidence. . . .") (citing *Ammons v. Dade City*, 594 F. Supp. 1274, 1280 n.8 (M.D. Fla. 1984), *aff'd*, 783 F.2d 982 (11th Cir. 1986) (admitting newspaper articles to prove the existence of a street paving program in 1925 without inquiry into the double hearsay issue); *Bell v. Combined Registry Co.*, 397 F. Supp. 1241, 1246-47 (N.D.Ill. 1975), *aff'd*, 536 F.2d 164, 166-67 (7th Cir. 1976) (receiving into evidence newspaper articles detailing the use of a poem to further good works and announcing the poet's death)); JOHN W. STRONG ET AL., MCCORMICK ON EVIDENCE § 323 (5th ed. 2003) ("The more common tendency appears to be to admit newspaper articles over 20 years old without the proper inquiry."). However, there is simply no reason for the Court to conclude that an article that purports to filter statements and perceptions through the prism of its author suddenly becomes trustworthy simply because of the passage of time.

Each article proffered by Emhart purports to quote or attribute statements to witnesses and unnamed sources, none of whom will be testifying at trial. Although the articles that Emhart seeks to offer were written more than twenty years ago and have been authenticated, the embedded statements are not excepted from the ban on the admission of hearsay under the ancient document exception. Therefore, even if the newspaper articles qualify for the ancient document exception to the hearsay rule, the statements of these witnesses and sources must also qualify under a specific exception to the hearsay rule before they can be admitted. Because Emhart seeks to introduce the statements contained in the articles to prove that their truth, there must be a basis for excepting the statements from the hearsay rule other than the ancient document exception.

The statements lack the required indicia of reliability that would permit their admissibility for several reasons, and the dangers of hearsay relating to flaws in perception, memory, narration and sincerity remain. Neither the reporters nor the declarants (witnesses and sources) are testifying at trial to verify their out-of-court statements and resolve the problems associated with the admissibility of hearsay. The declarants' perceptions of the events described in the articles and the sincerity of those descriptions cannot be tested. It is also possible that the reporters did not accurately record the statements of the witnesses and sources. That the statements appear in a so-called ancient document does not render them automatically admissible at trial. Because there is no exception to the hearsay rule under which the statements themselves could be admitted, they should not be received.

**B. The "Residual" Hearsay Exception Does Not Apply**

With respect to the residual exception[5] to the ban on hearsay, it is Emhart that bears the burden of proof on the admissibility issue, and the burden is high. *U.S. v. Washington*, 106 F.3d 983, 1001-02 (D.C. Cir.), *cert. denied*, 522 U.S. 984 (1997) ("The proponent of the statement bears a heavy burden to come forward with indicia of both trustworthiness and probative force."); *Cody v. Harris,* 2004 U.S. Dist Lexis 10425 *1, 13 (N.D. Ill. 2004) ("A court should use the residual exception only in rare and exceptional cases. Thus, hearsay that does not fall within an enumerated exception is considered presumptively unreliable, and the party proffering the evidence has burden of overcoming that presumption.").

The residual exception codified at FRE 807 should only be applied to newspaper articles that have some circumstantial guarantee of trustworthiness beyond their mere age, and evidence should only be admitted under "exceptional circumstances." *See, e.g., Brown v. Crown Equip. Corp.*, 2006 U.S. Dist. LEXIS 55506 *1, 17 (D. Me. 2006) ("[H]earsay testimony should only be admitted under Rule 807 in exceptional circumstances," *citing U.S. v. W.B.*, 452 F.3d 1002, 1006 (8th Cir. 2006)); *U.S. v. Walker*, 410 F.3d 754, 757 (5th Cir. 2005); *U.S. v. Lawrence*, 349 F.3d 109, 117 (3rd Cir. 2003); *Hicks*, 2005 U.S. Dist. LEXIS 40660 at 25 ("Before admitting evidence under the residual hearsay exception, the court must find that the evidence satisfies the

[5] A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant. Fed. R. Evid. 807.

prerequisites of trustworthiness, notice, necessity, and materiality, and must also determine that the purposes of the rules and justice will be served by admission of the evidence," *citing Herdman v. Smith*, 707 F.2d 839, 841-42 (5th Cir. 1983)); *see also Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590, 595 (S.D.N.Y. 2002) ("…news accounts, unsupported by corroborating evidence and offered to prove that certain statements were made, will usually lack the 'circumstantial guarantees of trustworthiness' that Rule [807] requires."); *Wright v. Montgomery County*, 2002 U.S. Dist. LEXIS 9442 *1, 4-5 ( E.D.Pa. 2002).

Where articles have been admitted to prove the truth of the matters asserted, the courts have identified some "extraordinary circumstances" that demonstrate the trustworthiness of the material. For instance, in *Larez*, plaintiff offered evidence from independent sources and the declarant did not dispute the statements attributed to him in the articles. *Larez*, 946 F.2d at 643. *See also In re Columbia Securities Litigation*, 155 F.R.D. 466, 475 (S.D.N.Y. 1994) ("Newspaper and magazine articles, however, may nevertheless be introduced into evidence if they are bolstered by supporting evidence that confers some circumstantial guarantees of trustworthiness upon them"). Similarly, in *Hicks,* four articles, by a minimum of two different authors, in two separate newspapers, without any relation to the present controversy, all identified the defendant drug company as the manufacturer of the doses at issue, and the court noted that other drug company possessed a motive to correct inaccurate public statements on this issue, given that the project was a high-profile, public health campaign designed to eradicate a devastating illness. *Hicks*, 2005 U.S. Dist. LEXIS 40660 at 29-31. Emhart has not demonstrated any "exceptional circumstances" that would warrant admission of the newspaper articles.

In addition to indicia of "extraordinary circumstances," courts have analyzed the proposition for which the hearsay evidence is offered in determining the potential applicability of

the residual hearsay exception to the general hearsay rule. *See, e.g., Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590 , 595 (S.D.N.Y. 2005) (when considering the residual exception to the hearsay rule "the Second Circuit has instructed us to analyze the trustworthiness of a piece of evidence offered under the residual exception with respect to whether, and to what extent, it minimizes the 'four classic hearsay dangers,' namely, insincerity, faulty perception, faulty memory, and faulty narration").

Courts that have addressed newspaper articles recounting fires have admitted articles for the sole purpose of proving that the fire occurred, as opposed to proving the specifics of the event. As the *Jacobsen* court found:

> In *Dallas County*, the proponent of the newspaper article was merely trying to prove that there had been a fire in the county courthouse nearly sixty years previously. *Dallas County* concerned what might be called a "binary event" - either there was a fire, or there was not. **The specifics of the temperature of the fire, exactly what time it started, et cetera, were not relevant to the case at hand.** Thus, the binary nature of the proposition to be proved in *Dallas County* itself provides a "circumstantial guarantee of trustworthiness," because even if the author's perception, memory, or narration (three of the four classic hearsay dangers) were less than perfect, it truly is "inconceivable" that he would have misreported the simple occurrence of a fire in the courthouse.

*Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590, 595-596 (emphasis added), *citing Dallas County v. Commercial Union Assurance Co.*, 286 F.2d at 397. Thus, the *Jacobsen* court refused to admit a newspaper article to prove that the defendant uttered specific statements at a specific time. *Id.* In contrast, the *Hicks* court admitted several newspaper articles to prove that the defendant supplied certain doses of a drug because there were "no more difficult, qualitative issues that would involve complicated issues of perception and description." *Hicks*, 2005 U.S. Dist. LEXIS 40660 at 31.

The newspaper articles identified by Emhart are not being offered to prove any such binary event. Indeed, North River does not dispute that the fundamental events described in the articles (e.g. a fire) actually occurred on the dates reported in the newspaper. That the specific events described in the articles actually occurred is not at issue in this case. Any other matters described in the newspaper articles, such as the intensity of the fire or the amount of water used, are inadmissible. These types of qualitative statements lack the requisite trustworthiness, and they involve exactly the type of complicated issues of perception and description that the hearsay rules are intended to protect against. Emhart does not seek to introduce these articles as proof that the events occurred. Instead, Emhart must meet its burden in proving that these events in some way caused the dioxin contamination at the Site. These articles do not constitute any evidence that is relevant to Emhart's burden; they do not purport to document discharges and releases of dioxin.

## CONCLUSION

The newspaper articles and the statements contained therein are hearsay. There is no exception under which the statements could be admitted as evidence, although the articles may qualify under the ancient document exception to the rule against the admissibility of hearsay. If, however, the Court concludes that the articles and statements are excepted from the hearsay rule, they are still irrelevant to the pollution exclusion issue and their admission would be unduly prejudicial. For these reasons, the Court should preclude Emhart from introducing the newspaper articles into evidence.

**THE NORTH RIVER INSURANCE COMPANY**,
By its attorneys,

*/s/ Mark T. Nugent*

Mark T. Nugent, RI Bar# 2637
MORRISON MAHONEY LLP
121 South Main Street, Suite 600
Providence, RI 02903-7141
(401) 331-1660

*/s/ John T. Harding*

John T. Harding, Esquire (pro hac vice)
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500

Dated: September 13, 2006

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 13, 2006.

*/s/ John T. Harding*

John T. Harding, Jr. BBO #221270