UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC., Plaintiff, v. HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY, Defendants. | ) | CIVIL ACTION No. 02-053-S |

PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW
REGARDING THE DUTY TO DEFEND UNDER THE CENTURY PRIMARY POLICY

Emhart moves, pursuant to Fed.R.Civ.P. 50, that the Court enter judgment as a matter of law that Century Indemnity Company owes a duty to defend under policy No.GAL-36957.

Under the law of Rhode Island law, the duty to defend is determined solely on the basis of the charging documents, and a duty to defend exists unless the charging documents preclude the possibility of coverage. Flori v. Allstate Ins. Co., 388 A.2d 25, 26 (R.I. 1978); Employers' Fire Ins. Co. v. Beals, 240 A.2d 397, 403 (R.I. 1968); Employers Mut. Cas. Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 216-17 (D.R.I. 1998). Rhode Island strictly employs the "pleadings test" under which the allegations of the complaint "determine[] the insurer's duty to defend even if the known facts conflict with the facts alleged" in the underlying complaint. Flori v. Allstate Ins. Co., 388 A.2d 25, 26 (R.I. 1978). Thus, under Rhode Island law, "a liability

insurer's duty to defend is predicated not upon information in its possession which indicates or even proves non-coverage, but instead upon the allegations in the complaint filed against the insured." Employers' Fire Ins. Co. v. Beals, 240 A.2d 397, 403 (R.I. 1968). Rhode Island courts have strictly applied the pleadings test to determine the duty to defend. See Progressive Cas. Ins. Co. v. Narragansett Auto Sales, 1997 WL 839923, at *2-3 & n.1 (R.I. Super. Ct. June 2, 1997) (noting that "the Rhode Island Supreme Court has recognized only one very narrow exception to the application of the pleadings test" in cases involving sexual molestation of children).

In applying the pleadings test, an insurer's duty to defend "is resolved by comparing the complaint [in the underlying action] with the policy issued by the insurer; if the complaint discloses a statement of facts bringing the case potentially within the risk coverage of the policy, the insurer will be duty-bound to defend…." Flori, 388 A.2d at 26; see Beals, 240 A.2d at 403. See also Shelby Ins. Co. v. Northeast Structures, Inc., 767 A.2d 75, 77 (R.I. 2001) (where there was a "question of fact" as to cause of collapse of structure and therefore as to whether an occurrence was covered, insurer had a duty to defend "until there has been a finding of fact that the cause of the collapse was excluded from coverage").

Applying the principle of Flori to a complaint that was silent as to whether there was an occurrence during the policy period, this Court ruled that the insurer had a duty to defend as "the complaints in the underlying suits make no reference to when the plaintiffs' injuries first manifested themselves or were discovered or were discoverable" and that the dates on which plaintiff's injuries were diagnosed did "not exclude the possibility that their injuries manifested themselves or were discovered or were discoverable prior to that time." Employers Mut. Cas. Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 216-217 (D.R.I. 1998).[1] Any doubts as to

1 The complaints alleged exposure during the policy period, but not when injury was discoverable. 24 F. Supp. 2d at 214. Here, the charging documents alleged exposure to contaminants during operation of

whether the pleadings "encompass an occurrence within the scope of the policy must be resolved in the insured's favor." O'Donnell v. Twin City Fire Ins. Co., 40 F. Supp. 2d 68, 71 (D.R.I. 1999); see Providence Journal Co. v. Travelers Indemnity Co., 938 F. Supp. 1066, 1072 (D.R.I. 1996); Beals, 240 A.2d at 403. Therefore, the determination that a review of the charging documents results in questions of fact as to whether there was an occurrence requires the conclusion that Century has a duty to defend.

Here, the charging documents require the conclusion that Century has a duty to defend.

Each of the complaining documents seeks recovery of costs for remediating extensive contamination at the Site. Rhode Island has held that response costs such as those in this case are on account of "property damage," as that term is used in insurance policies. Insurance Co. of N. Am. v. Kayser-Roth Corp., 770 A.2d 403, 417 (R.I. 2001). Other courts have held similarly. See Plaintiff's Memorandum In Support Of Its Motion For Partial Summary Judgment (Docket Index 152) ("SJ Mem.") at 33-34. Here, EPA Administrative alleged that there are "elevated levels of contaminants," including dioxin and PCBs in surface soil and river sediments, and remediation has been required by the EPA (Tab G at 4-5, 10; Tab H at 7-8, 13).[2] The complaining documents therefore allege "damages" on account of "property damage."

### 3. The Complaining Documents Do Not Allege That Damage Was Expected Or Intended

The Policy defines an occurrence as "an accident, including injurious exposure to conditions, which results, during the policy period, in … property damage neither expected or

Crown Metro and its predecessors, which included the term of the Century policy, and that the concentration of dioxin was at levels that both parties' experts stated were discoverable using tests available during the policy period. See Joint Appendix To The Parties' Summary Judgment Motions, Tab G, ¶¶ 18, 22, 26, 29; id., Tab H, ¶¶ 14, 35-36; see also Memorandum Of Law Of Emhart Industries, Inc. In Support Of Its Motion In Limine To Preclude Expert Opinions Of Richard J. Hughto at 10-11 and the portions of the record cited therein.

2 References to "Tab __" are to the tabbed exhibits in the accompanying Joint Appendix.

intended from the standpoint of the insured" (Tab A at CIC 0478). It is not possible to show from the EPA's complaining documents that there was an expectation or intent to cause damage at the Site. The complaining documents are silent with respect to this issue, as they contain little information about what Crown-Metro allegedly did, let alone information about what it intended. The PRP Letter lists hazardous substances, makes the broad statement that "[r]esponsible parties" include those "who arranged for disposal or treatment of hazardous substances found at the Site," and describes Emhart as "a successor to the liability of a chemical company which operated at the Site" (Tab F at 2). In the First Order, the EPA makes findings that "[h]azardous substances were disposed of at the Site as part of former operations of several chemical companies ... and a drum recycler ..." (Tab G at 2) and that the chemical companies are found to have manufactured hexachlorophene (id. at 3). In the Second Order, the EPA merely states that "[e]vidence suggests that the operations of the chemical companies and the drum reconditioning facility at the Site resulted in releases and threats of releases of hazardous substances at the Site" (Tab H at 3-4). Accordingly, based upon the complaining documents, there is a possibility or potentiality that the EPA claims are for "occurrences" within the meaning of the policies at issue and, accordingly, Century has the duty to defend Emhart. See SJ Mem. at 35-37.

The issue of whether there was damage from an occurrence during a policy period turns on the applicable "trigger" of coverage. In view of the holdings concerning trigger in the Textron and CPC cases,[3] at a minimum the dates on which the contamination was discoverable must be considered. The Supreme Court of Rhode Island has held that where a facility operated between 1960 and 1973, insurance policies that were in effect between 1963 and 1986 could be

3 Textron, Inc. v. Aetna Cas. & Sur. Co., 754 A.2d 742, 746 (R. I. 2000) ("Textron Wheatfield"); Textron, Inc. v. Aetna Casualty & Surety Co., 723 A.2d 1138, 1142-43 (R.I. 1999) ("Textron Gastonia"); CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co., 668 A.2d 647, 650 (R.I. 1995). See Pretrial Mem. at 28-31 (discussing trigger of coverage).

triggered, as contaminants that entered the environment prior to the inception of the policies would have continued to remain in the soil and be "discoverable" during subsequent policy periods. Textron-Wheatfield, 754 A.2d at 746-47. Since the trigger issue here arises in the context of the duty to defend, the question is whether there is a "reasonable possibility" that the policies at issue have been triggered based upon the information in the EPA's complaining documents. The PRP Letter is completely silent as to the dates on which contamination first occurred. In the First Order, the EPA alleges that the chemical companies operated "from approximately 1943 to approximately 1971" and that NECC operated "from approximately 1952 to approximately 1969" (Tab G at 3)[4] and that Emhart is liable to the EPA as a result of the operations of "chemical companies which operated at the Site from approximately 1943 to approximately 1971" (id.). In the Second Order, the EPA asserts that that "the operations of the chemical companies and the drum reconditioning facility at the Site resulted in releases and threats of releases of hazardous substances at the Site" (Tab H at 3-4). Such allegations create, at a minimum, the "reasonable possibility" that contamination was discoverable at all times from the commencement of operations at the Site through the time of the EPA orders. See Pretrial Mem. at 5-6.

In its summary judgment memorandum regarding the duty to defend, Century asserted that there was an exception to this rule and extrinsic evidence may be considered if "the complaint is silent and the relevant facts regarding coverage will not be determined in the underlying action…." The authority cited by Century for the proposition that, in certain circumstances, a determination of the duty to defend may be deferred until there has been a decision on the merits of the underlying claim is contrary to Rhode Island law, which requires

---

4 Emhart contests these dates. However, in determining the duty to defend, the insurer's duty is determined by the allegations in the complaining documents.

that a duty to defend be determined strictly on the basis of the pleadings. The cases cited by Century are inapposite as involving undisputed facts that contradicted the allegations in the pleadings. In circumstances similar to the instant case, this Court, applying Rhode Island law, ruled that there was a duty to defend where the facts alleged in the complaining documents provided insufficient information to determine whether the injury was discoverable during the policy period. PIC, 24 F. Supp. 2d at 216-17. The exception advocated by Century would impermissibly erode the distinction between the duty to defend, which is determined on the basis of the pleadings, and the duty to indemnify, which is determined on the basis of the facts developed at trial. Beals, 240 A.2d at 403.

The Century attempt to distinguish PIC is unpersuasive. That PIC involved personal injury and this action involved property damage does not change applicable legal principles regarding the duty to defend. In addition, the portion of PIC discussed in this memorandum does address a requirement that injury occur during the policy period. The Court found that summary judgment in favor of the insured lies even if "coverage under [the] policies is triggered only if the injury occurs during the policy period." 24 F. Supp. 2d at 21.

Even if Rhode Island were to follow the four out-of-state cases upon which Century relies, the "exception" would not be applicable in the instant action. Three of those four cases permitted consideration of undisputed facts that established that the acts alleged in the underlying complaint were outside the scope of coverage. See Delta Airlines v. State Farm Fire & Cas. Co., 1996 WL 511575, at *2 (9th Cir. Sept. 9, 1996) (noting that "the uncontroverted facts [pertaining to the initial publication date of the publication allegedly causing advertising injury] demonstrate that the underlying complaint fell within" an exclusion to coverage); Western Heritage Ins. Co. v. River Entertainment, 998 F.2d 311, 313 (5th Cir. 1993) (holding

there was no duty to defend based on "the undisputed facts extraneous to this petition," namely, that insured sold alcoholic beverages to intoxicated individual); Millers Mutual Ins. Assoc. of Ill. v. Ainsworth Seed Co., 552 N.E.2d 254, 255, 257 (Ill. App. Ct. 1990) (relying on an "undisputed affidavit" outside the pleadings which established conclusively that a "completed operations hazards" exclusion applied); see also Lafarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 394 n.8 (5th Cir. 1995) (characterizing Western Heritage as case "in which the complaint either omitted or indisputably misrepresented material facts that would have clearly excluded coverage"). Here, the Court has determined that there are material facts that are disputed and Century requested that the determination of the duty to defend be deferred until those issues are resolved. If the exception set forth in the cases upon which Century relied were consistent with the law of Rhode Island, that exception would not be applicable to the instant action.

The fourth case cited by Century, Burd v. Sussex Mut. Ins. Co., 267 A.2d 7 (N.J. 1970), focused primarily on a conflict of interest between the insured and the insurer. The conflict was whether the alleged injuries were inflicted intentionally or negligently. It arose from the insured having been convicted of assault and battery. The Burd court concluded that, due to the conflict, the insurer did not have a duty to defend, but would be required to reimburse the insured if it were later determined that the claim was within the scope of the policy. 267 A.2d at 10.

Burd is inconsistent with Rhode Island principles regarding the duty to defend. Rhode Island has held that the conflict of interest present in Burd does not absolve the insurer of the duty to defend. In Beals, as in Burd, the court was faced with a potential conflict of interest between the insured and the insurer regarding whether the alleged injuries were inflicted intentionally or negligently. However, Beals concluded that the insurer was still required to defend the insured. 240 A.2d at 403-04. Specifically, Beals recognized the broad scope of the

duty to defend and the requirement that "any doubts as to the adequacy of the pleadings to encompass an occurrence within the coverage of the policy are resolved against the insurer and in favor of its insured" (id. at 403) and noted that the insurer "should have set forth its provisions in such clear and distinct language as would have avoided any doubt relative to the extent of its duty to defend" if it wished to avoid providing a defense in such a situation. Id. at 404.

As the dissent in Burd points out (267 A.2d at 16), the Burd court's holding is incompatible with the principles regarding the duty to defend stated in a number of cases, including Missionaries of the Co. of Mary, Inc. v. Aetna Cas. & Sur. Co., 230 A.2d 21, 26 (Conn. 1967). The Rhode Island Supreme Court, like the Connecticut Supreme Court in Missionaries, has recognized that "the duty to defend is broader in scope than the duty of an insurer to indemnify...." Beals, 240 A.2d at 403 (citing Missionaries). Denial of the Emhart summary judgment motion would erode that distinction by having the duty to defend decided on the basis of facts that will be considered in determining whether there is a duty to indemnify. The Court should not rely on the Burd rationale, which was implicitly rejected by the Rhode Island Supreme Court in Beals.

Emhart further relies on the memorandum of law filed in support of its motion for summary judgment on the duty to defend, filed on July 24, 2006 and its memorandum of law in support of its motion that the Court reconsider its denial of the summary judgment motion, filed on August 10, 2006.

Applying the correct rule that the duty to defend arises when the charging documents are consistent with the possibility of coverage, Emhart is entitled to judgment as a matter of law that Century has a duty to defend. The evidence at trial, including the testimony of Dr. Hass, has

fortified Emhart's position as it has further explained the manner in which the allegations of the charging documents are consistent with the policies being triggered.

Respectfully submitted,

Alexandra K. Callam (#5358)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600
acallam@haslaw.com

Counsel for Plaintiff, Emhart Industries, Inc.

Jack R. Pirozzolo
Richard L. Binder
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 832-1000

Dated: October 3, 2006