**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC., Plaintiff, v. HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, THE NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE CO. and UNITED STATES FIRE INSURANCE COMPANY, Defendants | ) | Civil Action No.: 02-053-S |

**DEFENDANT THE NORTH RIVER INSURANCE COMPANY'S MOTION *IN LIMINE* TO PRECLUDE EMHART FROM PRESENTING IMPROPER CLOSING ARGUMENTS ON THE POLLUTION EXCLUSION**

Defendant The North River Insurance Company ("North River") moves that the Court enter an Order *in Limine* precluding Plaintiff Emhart Industries, Inc. ("Emhart") from making any improper arguments in its closing statement regarding the pollution exclusion that are contrary to New York law and to the Court's jury instructions. Emhart's so-called "Submission to Address Sudden and Accidental Events Under the North River Pollution Exclusion" (10/16/06) makes it quite clear that Emhart intends to ignore applicable law and the Court's instructions and contend that ***any*** alleged sudden and accidental "event" at the Centredale Site restores coverage under the pollution exclusion even if there is no proof that the event actually caused an initial release of contaminants; that the contaminants released during the discharge were a "substantial" cause of the contamination; and that the release is the actual source of Emhart's "liability" for remediation at the Site. Emhart continues to contend that the pollution

exclusion requires an element of "intentional" conduct that has uniformly been rejected by the New York courts. Emhart appears to contend that the decision of the New York Court of Appeals in *Northville Industries Corp. v. National Union Fire Insurance Co.*, 89 N.Y.2d 621, 679 N.E.2d 1044 (1997) is some type of "advisory" opinion when, in fact, it is the dispositive word on the pollution exclusion from New York's highest court.

Emhart should be precluded from making any such arguments, as well as from arguing directly or indirectly that any event that allegedly caused any dioxin contaminated soil or sediment at the Centredale Site to migrate may satisfy the "sudden and accidental" exception. New York law clearly rejects a "secondary discharge" analysis. This argument is directly contrary to the applicable law and this Court's jury instructions regarding North River's insurance policy and should not be allowed. To say that Emhart is attempting to create a case with "smoke and mirrors" is an understatement and, if permitted, can only serve to create error where none exists.[1]

As further grounds for this motion, North River states as follows:

1. In its preliminary charge distributed on October 10, 2006, the Court followed clear New York precedent with respect to Emhart's burden to prove the "exception" to the North River pollution exclusion. For example, the Court indicated an intent to instruct the jury as follows with respect to the "initial discharge" issue:

> Moreover, once you've determined when the initial release occurred, intervening events, although they might be sudden and

---

[1] Emhart's repeated arguments that this is not a "landfill" case is inexplicable. As North River has noted, the New York courts have uniformly held that even when contaminants are placed in a sanitary landfill designed for the purpose of disposing of such contaminants, subsequent migration from the landfill does not constitute an initial discharge within the meaning of the exception to the exclusion. Here, Emhart's own proof has been that contaminants were dumped and burned on the Site on a daily basis; one of the dioxin "hot spots" is located in the vicinity of the old dump. [Plaintiff's Ex. 183].

> accidental, ***cannot be considered*** for the purposes of the exception to the exclusion. Thus, for instance, where the initial release discharged pollutants onto the land, an intervening fire or flood may not satisfy the "sudden and accidental" exception. Instead, you must determine whether the initial discharge event was, itself, sudden.

2. This instruction is in conformity with clear New York authority holding that the focus of the pollution exclusion is only on the ***original discharge*** of pollutants into the environment, ***not*** on their subsequent migration through the soil, sediment or groundwater. *See, e.g., Employers Insurance of Wausau v. The Duplan Corp.*, 1999 U.S. Dist. LEXIS 15368 (S.D.N.Y., Sept. 30, 1999) (District Court rejected the policyholder's argument that despite years of intentional and systematic disposal of wastes, a flood and fire at the location were "sudden and accidental" events that could have caused a further release). Based upon this instruction, any suggestion that fires or floods may have caused the migration of dioxin contaminated materials is not relevant to the issue of the applicability of the exception to the pollution exclusion.[2] Mr. Kastrinos quite clearly and consistently testified to the obvious: that the Site was contaminated with dioxin not later than approximately 1968, when Metro Atlantic's operations at the Site ended.[3]

3. Allowing Emhart to refer to subsequent events that may have caused the contamination to migrate (or to any other matters that are inconsistent with the Court's instructions) would be unduly prejudicial to North River since it could cause the jury to base its decision on legally irrelevant issues in contravention of this Court's explicit instructions to the contrary. F.R.E. 403; *CPC International, Inc. v. Northbrook Excess and Surplus Ins. Co.*, 144

---

[2] Emhart's attempt to circumvent the pollution exclusion by relying upon cases outside the ***environmental*** context is wholly misplaced. *See e.g., Vigilant Ins. Co. v. V.I. Technologies, Inc.*, 676 N.Y.S.2d 596 (App. Div. 1998)(rejecting attempt to apply a pollution exclusion to a claim that did not involve environmental damage).

[3] Emhart would, of course, be required to take this position since it has to establish that there was "property damage" during the period of the OneBeacon and Century policies.

F.3d 35, 45 (1st Cir. 1998) ("Unfair prejudice, as the Advisory Committee Note teaches, means an undue tendency to suggest decisions on an improper basis, commonly, though not necessarily, an emotional one"); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) ("it is the responsibility -- and the duty -- of the court to state to the jury the meaning and application of the appropriate law"); *Maytag Corp. v. Clarkson,* 875 F. Supp. 324, 329, n.9 (D.S.C. 1995) ("a jury does not do 'justice' when it ignores the evidence or the controlling law in order to reach a certain result which is consistent with one side's notion of fairness."). As the Eighth Circuit Court of Appeals has explained:

> In federal jury trials, counsel's argument must be limited by the evidence and law pertinent to the issues in the case. We note that "when a lawyer departs from the path of legitimate argument, he does so at his own peril and that of his client, and if his argument is both improper and prejudicial, then he [may destroy] any favorable verdict that his client may obtain." (internal citations omitted)

*Higgins v. Hicks Co.*, 756 F.2d 681, 684 (8th Cir. 1985).

4. Similarly, Emhart should be precluded from contending that any "event" which is not linked up to the actual contamination at the Site for which it is being held legally liable qualifies to restore coverage under the pollution exclusion. For example, while the 1968 formaldehyde tank explosion may create a visceral image, no one testified that the formaldehyde ever went into the ground; caused environmental contamination; remained in the ground thirty years later; or that the EPA is requiring Emhart to remediate formaldehyde. This is precisely the type of attempt to "back door" coverage by referring to events that are factually and legally irrelevant that should be prevented in closing argument.

5. While courts have traditionally afforded latitude to counsel during closing arguments, attorneys have no latitude to misstate the law. *Fenolio v. Smith*, 802 F.2d 256, 258 (7th Cir. 1986). To argue or insinuate otherwise during closing arguments is nothing more than a

misstatement of controlling law that is substantially likely to confuse the jury. *See Sasaki v. Class*, 92 F.3d 232, 237 (4th Cir. 1996) (The Fourth Circuit Court of Appeals found that an attorney improperly referred to a cap on damages in the closing argument and reversed the damage award despite the district court's admonition to the jury that statements and arguments of counsel are not evidence).

6. The Court has made its position on the legal effect of the pollution exclusion clear. North River requests that the Court enter an Order precluding Emhart from making any references during closing arguments to any matters that are inconsistent with the Court's instructions on the pollution exclusion or for which there is no evidentiary support. To do otherwise would create a serious risk of prejudice to North River and utterly confuse the jury.[4]

Respectfully submitted,

**THE NORTH RIVER INSURANCE COMPANY**,
By its attorneys,

*/s/ Mark T. Nugent*

Mark T. Nugent, RI Bar# 2637
**MORRISON MAHONEY LLP**
121 South Main Street, Suite 600
Providence, RI 02903-7141
(401) 331-1660

*/s/ John T. Harding*

John T. Harding, *pro hac vice*
**MORRISON MAHONEY LLP**
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500

Dated: October 16, 2006

[4] To the extent that the Court has excluded evidence relating to these events (e.g., the ubiquitous newspaper articles), Emhart should similarly be precluded from making any mention of them in its closing statement).

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 16, 2006.

*/s/ John T. Harding*

______________________________

John T. Harding, Jr. BBO #221270