UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EMHART INDUSTRIES, INC.,

Plaintiff,

v.

HOME INSURANCE COMPANY,
INSURANCE COMPANY OF NORTH AMERICA,
LIBERTY MUTUAL INSURANCE COMPANY,
NORTH RIVER INSURANCE COMPANY,
ONEBEACON AMERICA INSURANCE COMPANY
and UNITED STATES FIRE INSURANCE COMPANY,

Defendants.

Civil Action No. 02-053 S

SUPPLEMENTAL MEMORANDUM FOR CHARGE CONFERENCE

INTRODUCTION

This memorandum addresses three issues raised by defendants' requests for jury instructions. In connection with these issues, defendants erroneously seek to deprive plaintiff of insurance coverage as a result of actions of New England Container Company. In addition, defendants misconstrue St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp., 26 F.3d 1195 (1st Cir. 1994).

A. The Expected And Intended Issue

Conduct of New England Container may not be attributed to Emhart for purposes of the "expected and intended" portion of the occurrence issue. It is settled that intentional acts of a third party may not deprive the insured of coverage. The policy language specifically refers to the damage not being expected or intended from the

standpoint of the insured. Accordingly, actions of third parties do not deprive the insured of coverage. E.g., EnergyNorth Natural Gas, Inc. v. Century Indemnity Co., 452 F.3d 44, 51 (1st Cir. 2006) (insured entitled to judgment as a matter of law on occurrence issue as the only evidence regarding intentional dumping that concerned during a period when the insured's predecessor did not own or operate the facility and, accordingly, was not relevant to whether insured engaged intentionally dumped any material); Ferrara & DiMercirio, Inc. v. St. Paul Mercury Ins. Co., 169 F.3d 43, 50 n. 10 (1st Cir. 1999) (where boat was set on fire by person other than the insured, the arsonist's conduct, "however intentional on the part of the arsonist, surely is fortuitous[1] on the part of the insured, who does not expect that such a loss will occur"). See also CPC International, Inc. v. Northbrook Excess & Surplus Insurance Co., 759 F.Supp. 966 (D.R.I. 1991), rev'd as to choice of law, 962 F.2d 77 (1st Cir. 1992) (noting that Lansco, Inc. v. Department of Environmental Protection, 350 A.2d 520 (N.J. Ch. Div. 1975) "found that the pollution clause did not bar coverage because, although the spill was caused by a deliberate act by a third party, it was 'sudden and accidental' as to the insured'"). In Lansco the court found coverage where the insured did not intend a release, but vandals opened tank valves, resulting in a large oil spill. See also Upjohn Co. v. Aetna Casualty & Surety Co., 1994 WL 1029337 (W.D. Mich. July 22, 1994) * 18-20 (pollution caused by "random acts of vandalism" by third parties, not barred by accidental portion of the pollution exclusion).

B. The INA Exclusion Of Waste Products Endorsement

The authority quoted in the previous section also demonstrates that Century is incorrect in seeking a jury instruction that would result in the Exclusion of Waste

[1] The definition of fortuitous in the policy embraced the concept of accident

Products Endorsement in its policy depriving Emhart of coverage solely as a result of NECC intentionally discharging waste products into the environment. The Endorsement excludes coverage for: "[i]njury to or destruction of property caused by intentional or willful introduction of waste products, fluids or materials … into any soil or inland or tidal waters, irrespective of whether the insured possessed knowledge of the harmful effects of such acts." That exclusion states that coverage would be denied "irrespective of whether the insured possessed knowledge of the harmful effect of such acts", but it does not comparably deny coverage "irrespective of whether" the insured committed the intentional act.

Denying coverage to an insured on the basis of intentional acts of a third party would be contrary to the rule that an insurance policy is construed based on "what the ordinary reader and purchaser would have understood [the words of the policy] to mean". Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, 860 A.2d 1210, 1215 (R.I. 2004). An ordinary purchaser of insurance would not understand that he would lose benefits because of the actions of a third party. An insured would understand that an exclusion for intentional acts would deny coverage for the insured's own intentional acts. Id., at 1218. There is no reason for an insured to think that it would lose coverage if the intentional acts were committed by a third party. The argument, for an intentional acts exclusion, that permitting coverage for the insured's acts would be inconsistent with "fortuity" (Id. at 1218) has no applicability if the intentional acts are committed by a third party. As stated in DiMercirio,. 169 F.3d at 50 n. 10, injury caused a third party is fortuitous from the standpoint of the insured. Indeed, the "reasonable

expectation" of the insured is that policy listing coverage for specific torts would include coverage for those torts, even if intentionally committed. Id.

Further, the policy language quoted above creates, at a minimum, ambiguity as to whether the intentional acts precluding coverage are limited to those of the insured. It is settled that "an ambiguous policy term should be construed in favor of coverage and against the insurer." Textron, Inc. v. Aetna Cas. & Sur. Co., 754 A.2d 742, 749 (R.I. 2000).

Century does not address the language of the exclusion or the applicable rules of policy construction. Rather, it relied exclusively, and without explanation, on St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp., 26 F.3d 1195 (1st Cir. 1994). St. Paul addressed the sudden and accidental pollution exclusion, not the waste product endorsement in the Century policy. In St. Paul, the insured engaged in an intentional act that ultimately led to disposal of waste in the environment: it gave waste to a hauler for disposal. 26 F.3d at 1201. Here, in contrast, Metro-Atlantic did not provide waste to NECC for disposal. To the extent that Metro-Atlantic provided barrels to NECC, it did so with the expectation that the barrels would be reconditioned, not that there would be disposal of waste (if any) that might have been present in the barrels. Further, as shown by the deposition of Vincent Buonanno, Metro-Atlantic did not provide NECC with any barrels associated with the manufacture of hexachlorophene as the manufacture of hexachlorophene did not result in the generation of used barrels appropriate for reconditioning. Thus, nothing in St. Paul supports the assertion of Century that intentional acts of NECC may be attributed to Metro-Atlantic for purposes of the exclusion in the Century policy

Indeed, St. Paul, in the context of addressing the sudden and accidental pollution exclusion, expressly noted "strong disagreement" among the courts, over the issue of "whether the discharge must be unintended and unexpected from the standpoint of the insured or from the standpoint of some other person who is more closely connected to the actual discharge of the waste" and did not decide the issue. 26 F.3d at 1202 n. 3. Thus, St. Paul does not address whether intentional acts of a third party may be attributed to the insured even in the context of the sudden and accidental pollution exclusion, such as that contained in the North River policy. St. Paul provides no guidance as to whether the "intentional introduction" of waste into the environment within the meaning of the Century policy extends to intentional acts of a person other than the insured.

C. There Is No Merit To The North River Argument That The Only Discharges Considered For Purposes Of The Pollution Exclusion Are "Initial" Discharges

St. Paul is among the cases that North River included in its October 5, 2006 "Supplemental Authorities in Support of Jury Instructions. St. Paul is inapposite with respect to the sudden and accidental pollution exclusion in the North River policy. Here, as is the case regarding the Century exclusion, St. Paul is distinguishable as there is overwhelming evidence that Metro-Atlantic did not intentionally dispose of any waste on the Site. Second, St. Paul emphasized that its affirmance of the trial court decision that the pollution exclusion barred coverage was premised on the absence of any allegation that damage was caused by an intermediate discharge between the time the waste was sent to the landfill and the time it damaged the environment. The St. Paul Court stated that "[n]o cause of the contamination, other than the fact that hazardous substances were

placed in the landfill, is mentioned in the order or in the complaint". 26 F.3d at 1204. The court went on to explain as follows:

> This is not a case involving ruptured or exploding tanks, leaking drums, or even some sort of improper dumping of waste after its arrival at the Site. … In sum, because there is no evidence of any intervening discharge between the disposal of waste on the landfill and the actual damage that eventually resulted, the initial disposal at the Site was the relevant discharge which must be sudden and accidental for coverage to exist under the exception to the pollution exclusion.

Id. at 1204. Here, in contrast, there is evidence of the sudden and accidental floods and fires at the Site after NECC disposed of waste at the SIte. Indeed, the EPA has made specific allegations to that effect in paragraph 26 of the first order (Ex. 13), which states "Erosion and flooding appear to have caused the contaminated soil to migrate, since elevated levels of contaminated levels of hazardous substances have been found in the Woonasquatucket River sediments located in the downstream portion of the site". Thus, St. Paul stands for the proposition that when the insured's liability arises, in part, from discharges that occur at a landfill after the insured's waste reaches the landfill, the sudden and accidental exception to the pollution exclusion remains applicable even if the original disposal of waste at the landfill was not sudden and accidental.

Other decisions recognize that events that occur after the initial discharge must be considered in determining whether the sudden and accidental exception to the policy exclusion is applicable. The courts reach such decisions on the basis that the pollution exclusion applies to "dispersal", "release" and "escape", as well as to discharges. Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha, 882 P.2d 703, 719 dissenting opinion modified, 891 P.2d 718 (Wash. 1994) ("the relevant polluting event is the

discharge, dispersal, release or escape of toxic material into the environment, and where the material has been deposited in a place which was believed would contain or safely filter the material, such as a waste disposal pit or sanitary landfill, the polluting event is the discharge, dispersal, release or escape from that place of contamination into or upon the land, the air or water, including groundwater"); Compass Insurance Co. v. City of Littleton, 984 P.2d 606, 617 (Colo. 1999) ("the phrase 'discharge, dispersal, release or escape' in the pollution exclusion does not apply to an initial placement of waste in a containment area, such as a licensed landfill. the relevant polluting event for the purposes of the pollution exclusion is the release of pollutants from a containment area and not the initial placement …"); Sylvester Bros. Development Co. v. Great Central Insurance Co., 480 N.W.2d 368 (Minn. App. 1992) ("the deposit of pollutants into a landfill cannot be the triggering event; rather the 'escape' is the critical inquiry for purposes of determining the applicability of the pollution exclusion" as "[b]oth the exclusion and the exception apply to a 'discharge, dispersal, release or escape' of pollutants. All of these terms carry the connotation of the issuance of a substance from a place of containment; none of the terms is normally used to describe the placement of a substance into an area of confinement"). Similarly, here, with respect to the dioxin, the relevant polluting event or injurious event is not just the initial introduction but the

discharge, dispersal, escape or release of dioxin during flood events.

Respectfully submitted,

/s/ Alexandra K. Callam
Alexandra K. Callam (#5358)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600
acallam@haslaw.com

Jack R. Pirozzolo
Richard L. Binder
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02110
(617) 832-1000

Dated: October 9, 2006