UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | CIVIL ACTION<br>No. 02-053-S |

**PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL REGARDING ITS CLAIMS AGAINST NORTH RIVER**

Emhart renews its motion for judgment as a matter of law regarding its claims against North River and, in the alternative, moves for a new trial regarding those claims.

The jury found that the claims against North River were barred by the pollution exclusion. That verdict was the product of an incorrect instruction that prevented the jury from considering sudden and accidental events, such as fires and floods, that caused dispersal of dioxin that had previously been discharged at the Site. If the jury had been instructed that it could consider sudden and accidental events that caused dispersal of dioxin that had previously been present at the Site, no reasonable jury could find that the pollution exclusion barred coverage. The error was compounded by

the answer to a jury question that invaded the province of the jury by suggesting that the pollution exclusion barred coverage. The Court also erred in finding that the North River policy should be interpreted in accordance with the law of New York, rather than the law of Rhode Island.

If the Court determines that Emhart is not entitled to judgment as a matter of law, it should grant Emhart's alternative motion for a new trial. Emhart was prejudiced by the incorrect jury instructions that imposed an unduly onerous burden to prove the sudden and accidental exception to the pollution exclusion. It was also prejudiced by the exclusion of the newspaper articles concerning the fires and floods at the Site.

In support of its motion, Emhart relies upon the memorandum of law in support of this motion, filed herewith and incorporated herein.

By its attorneys,

/s/Gerald J. Petros
Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600
gpetros@haslaw.com

Jack R. Pirozzolo
Richard L. Binder
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 832-1000
jpirozzolo@foleyhoag.com

Dated: November 20, 2006

Counsel for Plaintiff, Emhart Industries, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2006, a copy of the foregoing Plaintiff's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial Regarding its Claims Against North River was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's Cm/ECF System.

/s/Gerald J. Petros
Gerald J. Petros

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | ) | CIVIL ACTION<br>No. 02-053-S |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL REGARDING ITS CLAIM AGAINST NORTH RIVER**

## INTRODUCTION

Emhart has renewed its motion for judgment as a matter of law regarding its claims against North River and, in the alternative, has moved for a new trial regarding those claims. The jury found that dioxin contamination at the Centredale Site caused property damage in 1984—during the period of the North River policy—but ultimately found that the pollution exclusion in the North River policy barred coverage. That verdict was the product of an erroneous instruction preventing the jury from considering sudden and accidental events, such as fires and floods, that caused dispersal of dioxin that had previously been discharged at the Site.

The error was compounded by the Court's answer to a jury question during deliberations. The question indicated that the jury had found that a series of sudden and accidental events at the Site had caused property damage. The answer to that question suggested to the jury that the pollution exclusion barred coverage. Those errors and the exclusion of evidence regarding the fires and floods entitle Emhart to judgment as a matter of law or, at a minimum, a new trial.

BACKGROUND

At trial, Emhart presented uncontroverted evidence of floods and fires at the Site. Emhart's expert hydrologist, John Kastrinos[1], using streamflow records (plaintiff's exhibit ("PX") 122), testified in detail regarding the floods. He also explained that dioxin is bound to soil and sediment and that during floods it is transported, with the soil and sediment, through the processes of erosion, scouring, and re-deposition. The floods were also reported in newspaper articles. The fires were described in the testimony of former firemen, as well as newspaper articles and records of the fire department. Indeed, the jury found that, in 1984, a year in which there was a major flood event, dioxin contamination caused actual property damage at the Site. [Answer to Question 4] The jury, however, was prevented from considering whether those events were "sudden and accidental" within the meaning of the pollution exclusion in the North River policy[2] (PX 5, clause f).

The following portion of the instruction concerning the pollution exclusion ("initial release instruction") is at issue:

---

1 The transcript of the trial testimony of Mr. Kastrinos has not been obtained.

2 The North River policy is PX 5; the pollution exclusion is exclusion f.

> Moreover, once you've determined when the initial release occurred, intervening events, although they might be sudden and accidental, cannot be considered for the purposes of the exception to the exclusion. Thus, for instance, where the initial release discharged pollutants onto the land, an intervening fire or flood, may not satisfy the "sudden and accidental" exception. Instead, you must determine whether the initial discharge event was, itself, sudden. It may be the case, however, that fire was the initial discharge event (assuming that the fire caused the at-issue property damage), in which case it would be proper to determine whether this event was sudden.

**ARGUMENT**

A. The Initial Release Instruction Is Erroneous

1. New York Law Does Not Apply

The Court applied New York law to the North River policy on the basis that the law of the place of contracting governs interpretation of the contract. While some Rhode Island decisions held that the law of the place of contracting governs interpretation of the contract (e.g., Union Savings Bank v. DeMarco, 254 A.2d 81, 83 (R.I. 1969)), more recent decisions have applied the "interest-weighing" approach of the Restatement (Second) of Conflict of Laws. See Gordon v. Clifford Metal Sales Co., 602 A.2d 535, 538-39 (R.I. 1992) (approving trial court's application of Restatement (Second) Conflict of Laws § 6 to determine which forum had the most appropriate relation to the transaction in question); see also Najarian v. National Amusements, Inc., 768 A.2d 1253, 1255 (R.I. 2001) ("This Court has adopted the 'interest-weighing' approach in deciding choice-of-law questions"). This Court has likewise applied the "interest-weighing" approach of the Restatement (Second) in considering what law

Rhode Island courts would apply in interpreting an insurance contract.[3] The result is not changed by DeCesare v. Lincoln Benefit Life Co., 852 A.2d 474 (R.I. 2004), where the Rhode Island Supreme Court applied the lex loci contractus rule. The question of whether to apply an interest-weighing approach was not squarely presented in DeCesare.

Application of the interest analysis would have resulted in the selection of Rhode Island law. Rhode Island, unlike New York, finds that the sudden and accidental exception to the pollution exclusion is not limited to abrupt events. Textron, Inc. v. Aetna Cas. & Sur. Co., 754 A.2d 742, 747-755 (R.I. 2000).

2. The Instruction Does Not Correctly State New York Law

The initial release instruction incorrectly interprets the phrase "discharge, dispersal, release or escape" in the sudden and accidental exception to the pollution exclusion. The pollution exclusion provides as follows:

> [t]his policy shall not apply: (f) to liability arising out of the discharge, dispersal or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does not apply *if such discharge, dispersal, release or escape is sudden and accidental*

(PX 5, emphasis supplied). By instructing the jury that "intervening events, although they might be sudden and accidental, cannot be considered for the purposes of the exception to the exclusion", the Court prevented the jury from considering any dispersal of dioxin

3 See Nortek, Inc. v. Liberty Mut. Ins. Co., 858 F. Supp. 1231, 1235 n.14 (D.R.I. 1994) (noting that "[t]he Rhode Island Supreme Court has endorsed the application of the Second Restatement's general choice-of-law principles"); Marshall Contractors, Inc. v. Peerless Ins. Co., 827 F. Supp. 91, 94 (D.R.I. 1993) ("In contract cases, Rhode Island follows the choice of law rules set forth in the Restatement (Second) of Conflict of Laws"). This is consistent with the "modern trend" of moving "away from the lex loci approach of the Restatement (First) to the more flexible approach of the Restatement (Second)." Reichhold Chemicals, Inc. v. Hartford Acc. & Indem. Co., 703 A.2d 1132, 1137 (Conn. 1997) (construing Connecticut law).

caused by flooding and much of the dispersal of dioxin caused by fires on the Site, even if the jury permissibly founded that the fires and floods were sudden and accidental events.

Under the legal theory advocated by North River and adopted by the Court, consideration of the "initial release" of dioxin into the environment was the determinative inquiry. This interpretation was an incorrect construction of the phrase "discharge, dispersal, release or escape" that essentially conflated the meanings of those four terms, with the result that the entire phrase was limited to the **original discharge** of dioxin into the land. This interpretation removed the words "dispersal," "release" and "escape" from the exception, and reached a result that conflicts with the policy language by rendering those terms redundant and essentially meaningless. Such a result is also inconsistent with New York principles regarding the construction of insurance policies. " 'In interpreting insurance policies, every clause or word is deemed to have some meaning.' Furthermore, a policy's terms should not be assumed to be superfluous or to have been idly inserted." Bretton v. Mut. of Omaha Ins. Co., 492 N.Y.S.2d 760, 763, 110 A.D.2d 46, 50 (N.Y. App. Div. 1985) (citing City-Wide Knitwear Processing Co. v. Safeco Ins. Co., 366 N.Y.S.2d 81, 83, 80 Misc. 2d 978, 979 (N.Y. Sup. Ct. 1975) and quoting Theatre Guild Prod., Inc. v. Ins. Corp. of Ireland, 267 N.Y.S.2d 297, 300, 25 A.D.2d 109, 111 (N.Y. App. Div. 1966)).

In Farm Family Mut. Ins. Co. v. Bagley, 409 N.Y.S.2d 294, 64 A.D.2d 1014 (N.Y. App. Div. 1978), a New York intermediate appellate court recognized that the pollution exclusion must be construed so as to give meaning to "dispersal". It stated that "[t]he word 'discharge' clearly refers to the original release of the toxic chemicals, an intentional act. However, the word 'dispersal' may refer to the original release or it may refer to a secondary dissemination after the original release . . ." Id. at 296 (quoting

Webster's Third New World Dictionary, unabridged volume, which defined dispersal as "distribution; dissemination; scattering.") The court held that it was proper to consider subsequent discharges, dispersals, releases or escapes of chemicals that occurred after the initial discharge. While the court's interpretation of the meaning of "sudden" and "accidental" is called into question by subsequent decisions of the New York Court of Appeals, its construction of the term "dispersal" remains correct.

While Farm Family addressed the interpretation of "discharge, dispersal, release or escape," questions of how to interpret the terms "sudden" and "accidental" remained open. The court in Technicon Elec. v. Atl. Mut. Ins. Co., 533 N.Y.S.2d 91, 141 A.D.2d 124, 139 (N.Y. App. Div. 1988) addressed the latter of these.

> [T]he pollution exclusion clause, by its own terms, does not distinguish between intended or unintended consequences of intentional discharges; rather it excludes from coverage liability based on all intentional discharges of waste whether consequential damages were intended or unintended. If the discharge was intentional, the disqualifying exclusion clause is operative and there is no coverage because the exception clause lacks its springboard. Inasmuch as the underlying complaint alleges and Technicon's answer concedes that its dumping of wastes was deliberate, the occurrence cannot be "accidental" within the meaning of the policy.

Id. at 100 (emphasis in original). Thus, Technicon stands for the proposition that an intentional discharge by the insured cannot be accidental. Such discharges fall outside the "sudden and accidental" exception as a matter of law. However, that difference is not pertinent here as the evidence established that Emhart did not intentionally discharge any dioxin or contaminants containing dioxin.[4] In short, while the Technicon court elected not to follow the portion of the Farm Family decision that allowed coverage when the

---

[4] That evidence is discussed in detail in the memorandum in support of Emhart's post-trial motion regarding its claims against OneBeacon and Century, filed herewith.

initial discharge, dispersal, release or escape was intentional, it did not disturb the Farm Family court's construction of the "discharge, dispersal, release or escape" language or rule whether subsequent dispersals of contaminants may be sudden and accidental if the presence of the contaminant was not caused by intentional conduct of the insured. As to whether a subsequent dispersal, release or escape may be considered "sudden and accidental," Farm Family remains persuasive.

Courts in other jurisdictions have also recognized that the language of the pollution exclusion requires consideration of whether events occurring after the initial discharge are "sudden and accidental". As in Farm Family, the basis for such rulings is that the pollution exclusion applies to "dispersal", "release" and "escape", as well as to discharge. Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha, 882 P.2d 703, 719 dissenting opinion modified, 891 P.2d 718 (Wash. 1994) ("the relevant polluting event is the discharge, dispersal, release or escape of toxic material into the environment, and where the material has been deposited in a place which was believed would contain or safely filter the material, such as a waste disposal pit or sanitary landfill, the polluting event is the discharge, dispersal, release or escape from that place of confinement into or upon the land, the air or water, including groundwater"); Compass Ins. Co. v. City of Littleton, 984 P.2d 606, 617 (Colo. 1999) ("the phrase 'discharge, dispersal, release or escape' in the pollution exclusion does not apply to an initial placement of waste in a containment area, such as a licensed landfill. The relevant polluting event for the purposes of the pollution exclusion is the release of pollutants from a containment area and not the initial placement . . ."); Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co., 480 N.W.2d 368, 374 (Minn. App. 1992) ("the deposit of pollutants into a landfill cannot be

the triggering event; rather the escape is the critical inquiry for purposes of determining the applicability of the pollution exclusion" as "[b]oth the exclusion and the exception apply to a 'discharge, dispersal, release or escape' of pollutants. All of these terms carry the connotation of the issuance of a substance from a place of containment; none of the terms is normally used to describe the placement of a substance into an area of confinement").

The initial discharge instruction was based on dicta in Northville Ind. Corp. v. Nat'l Union Fire Ins. Co., 89 N.Y.2d 621, 679 N.E.2d 1044 (1997), the decision that explained the meaning of "sudden" in the pollution exclusion. There, in discussing the meaning of "sudden", the Court of Appeals stated (89 N.Y. 2d at 632):

> The focus in determining whether the temporally sudden discharge requirement is met, for purpose of nullifying the pollution exclusion, is on the initial release of the pollutant, not on the length of time the discharge remains undiscovered, nor the length of time that damage to the environment continued as a result of the discharge, nor in the time span of the eventual dispersal of the discharged pollutant in the environment.

There, the insured's gasoline leaked from piping into the groundwater, which then migrated underneath adjacent land. Id. at 630. The court concluded, "eliminating the temporal aspect from the meaning of sudden in the exception to the pollution exclusion would render the sudden and accidental contingencies of the exception unavoidably redundant for unintended pollutant discharges." Id. at 632. In its discussion of the "initial release," the court was not making a distinction between releases in the first instance and subsequent releases. Rather, the court simply identified the release as the event that must be "sudden" as opposed to the "length of time the discharge remains undiscovered, [or] the length of time that damage to the environment continued as a

result of the discharge, or . . . the timespan of the eventual dispersal of the discharged pollutant in the environment." Id. at 633. In any event Northville, even in its dicta, did not address the issue here presented, whether an otherwise abrupt release must be disregarded although the insured had not intentionally introduced the contaminant to the site.

The reliance on dicta in Northville is misplaced. In applying state law, the First Circuit has stated, "[d]icta comprises observations in a judicial opinion or order that are 'not essential' to the determination of the legal questions then before the court. … Dicta - as opposed to a court's holdings - have no binding effect in subsequent proceedings in the same (or any other) case." Municipality of San Juan v. Rullan, 318 F.3d 26, 29 n.3 (1st Cir. 2003) (citation to Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992) omitted). The holding in Northville was that the term "sudden," in the context of a "sudden and accidental" exception to a pollution exclusion, is unambiguous and contains a temporal aspect. Northville, 89 N.Y.2d at 632. The subsequent discussion of "initial release" is not essential to this holding. Thus, as dicta, it is not binding. As it is neither binding, nor consistent with the policy language, it should not be followed.

In Northville and the cases subsequently citing the Northville dicta concerning initial releases in determining that the pollution exclusion precluded coverage, there was neither evidence of, nor an attempt to prove, any temporally sudden event.[5] Thus, in Employers Ins. of Wausau v. Duplan Corp., No. 94 Civ. 3143, 1999

5 See e.g. Ogden Corp. v. Employers Ins. of Wausau, 924 F.2d 39 (2d Cir. 1991); State of N.Y. v. AMRO Realty Corp., 936 F.2d 1420 (2d Cir. 1991); Borg-Warner Corp. v. Liberty Mut. Ins. Co., 577 N.Y.S.2d 953, 174 A.D.2d 24 (N.Y. App. Div. 1992); County of Fulton v. U.S. Fid. and Guar. Co., 600 N.Y.S.2d 972, 195 A.D.2d 864 (N.Y. App. Div. 1993); Freedom Gravel Prod., Inc. v.

U.S. Dist. LEXIS 15368 (S.D.N.Y. Sept. 30, 1999), the court concluded that the insureds "offer no affirmative evidence of any sudden and accidental discharge on either site." Id. at * 30 (insureds could not avail themselves of the "sudden and accidental" exception where the pollution was the result of intentional and long-lasting practices.) In this sense, the case at bar is easily distinguishable from Northville and its progeny. Here, each event Emhart was seeking to submit for the jury's consideration was either a flood or a fire that clearly was temporally abrupt. Those cases are further distinguishable as the initial discharge, usually at a landfill, resulted from the intentional conduct of the insured. Here, in contrast, (i) Emhart proved there were abrupt and accidental discharges of dioxin in fires and floods and (ii) no dioxin initially reached the site as a result of intentional acts of Metro-Atlantic.

Both the policy language, and the only New York decision to address the meaning of "discharge, dispersal, release or escape", establish that sudden and accidental events that occur after the initial discharge are properly considered for the purposes of the exception to the pollution exclusion. Thus, the Court should have permitted the jury to consider the fires and floods that occurred after the initial discharges.

B. The Court Erred In Responding To The Jury Question

During deliberations, the jury asked whether a "series of small, sudden and accidental events which may have caused a small percentage of the overall property damage [could] be enough to satisfy the 'sudden and accidental' provision." As part of its response, the Court reiterated the initial discharge instruction. That portion of the instruction had no bearing on the question presented. The question could have been

---

Mich. Mut. Ins. Co., 819 F.Supp. 275 (W.D.N.Y. 1993); and Manheimer v. The Home Ins. Co., 86 F. Supp.2d 67 (E.D.N.Y. 1999).

answered in the affirmative. It could have been answered by reminding the jury of the portion of the instruction concerning whether a discharge was "of a quantity significant enough to have some potentially damaging environmental effect" or further explaining that portion of the instruction. The question did not warrant repeating the initial discharge instruction. The repetition of that instruction had the prejudicial effect of suggesting that the Court believed there were no sudden and accidental initial discharges. As the Fourth Circuit explained, "in responding to a jury's request for clarification on a charge, the district court's duty is simply to respond to the jury's apparent source of confusion fairly and accurately without creating prejudice." Lee v. Lockheed Martin Operations Support Inc., No. 05-1959; No. 05-1976, 2006 U.S. App. LEXIS 25734, at * 4 (4th Cir. Oct. 17, 2006).

The proper remedy for these errors is judgment as a matter of law. The jury's question indicated that it determined there were sudden and accidental events. If it had been permitted to consider discharges or dispersals other than the initial discharge, it would have found that the floods were also sudden and accidental and that the floods caused significant damage.

C. The Alternative Motion For A New Trial Should Be Granted

If the Court denies the motion for judgment as a matter of law, it should grant Emhart a new trial. The error in the jury instructions, at a minimum, entitles Emhart to a new trial regarding whether the pollution exclusion barred coverage. It is settled that an erroneous jury instruction that impacts the decision on an issue is a basis for a new trial. E.g., Hiller v. County of Suffolk, 199 F.R.D. 101, 106 (E.D.N.Y. 2001) (erroneous jury instruction concerning scope of damages recoverable for emotional

distress warranted new trial as "erroneous jury instructions coupled with the summation counsel was permitted to make because of those erroneous instructions led the jury to reach a seriously erroneous result"); Soledad v. Department of Treasury, 116 F.Supp. 2d 790, 798 (W.D. Tex. 2000) (granting motion for new trial where "the jury's consideration of an incorrect liability standard effectively lowering Plaintiff's burden under the facts of this case is prejudicial error"). That prejudice was compounded by the incorrect answer to the jury's question.

Emhart is also entitled to a new trial in view of the erroneous exclusion of newspaper articles concerning the fires and floods. Those articles were admissible as "ancient documents" pursuant to Fed. R. Evid. 803(16). They were not "sensationalistic". The exclusion of this evidence interfered with Emhart's ability to prove that the sudden and accidental events were "significant enough to have some potentially damaging environmental effect". See Jury Instructions, p. 30.

**CONCLUSION**

For the foregoing reasons, Emhart is entitled to judgment as a matter of law or, at a minimum, a new trial concerning its claims against North River.

Respectfully submitted,

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600
gpetros@haslaw.com

Jack R. Pirozzolo
Richard L. Binder
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 832-1000
jpirozzolo@foleyhoag.com

Counsel for Plaintiff, Emhart Industries, Inc.

Dated: November 20, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2006, a copy of the foregoing Plaintiff's Memorandum in Support of its Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial Regarding its Claims Against North River was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's Cm/ECF System.

/s/Gerald J. Petros
Gerald J. Petros

7613741 (55451/115705