UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | ) | CIVIL ACTION<br>No. 02-053-S |

**PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING THE DUTY TO DEFEND UNDER THE CENTURY PRIMARY POLICY**

Emhart moves for a judgment as a matter of law that Century has, and has had, a duty to defend Emhart under Century Policy No. GAL 36597 ("Century Primary Policy").

The basis for this motion is set forth in the Memorandum of Law In Support Of Plaintiff's Motion For Summary Judgment And Renewed Motion For Judgment As A Matter of Law As To The Duty To Defend Under The Century Primary Policy and Plaintiff's Submission To Address Corporate Successorship And The Century Primary Policy, both filed herewith and incorporated herein.

By its attorneys,

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600
gpetros@haslaw.com

Jack R. Pirozzolo
Richard L. Binder
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 832-1000
jpirozzolo@foleyhoag.com

Dated: November 20, 2006

Counsel for Plaintiff, Emhart Industries, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2006, a copy of the foregoing Plaintiff's Renewed Motion for Judgment as a Matter of Law Regarding the duty to Defend Under the Century Primary Policy was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's Cm/ECF System.

/s/Gerald J. Petros
Gerald J. Petros

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | ) | CIVIL ACTION<br>No. 02-053-S |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO THE DUTY TO DEFEND UNDER THE CENTURY PRIMARY POLICY**

Pursuant to the Scheduling Order dated November 8, 2006, Emhart submits this memorandum regarding Century's duty to defend under the Century Policy No. GAL 36597 (the "Century Primary Policy").[1] That issue was raised in the Emhart summary judgment motion regarding the duty to defend, filed on July 24, 2006, and in Emhart's motion for judgment as a matter of law, filed on October 12, 2006. Under that insurance policy, Century was obligated to defend Emhart in the CERCLA proceedings initiated by the EPA. The Court previously denied Emhart summary judgment on this issue due to "factual disputes regarding …the issue of whether coverage was triggered by an occurrence" (Transcript of August 3, 2006 hearing at 36).

[1] The Century Primary Policy was issued to Crown-Metro, Inc., but, as demonstrated in a separate memorandum, filed herewith, Emhart succeeded to the rights of the insured under that policy.

The duty to defend is determined solely on the basis of whether the complaining documents "bring the case within or potentially within the risk coverage of the policy". Employers' Fire Ins. Co. v. Beals, 240 A.2d 397, 403 (R.I. 1968). Under that standard, the presence of uncertainty as to whether there was an occurrence entitled Emhart to summary judgment regarding the duty to defend. The resolution of those factual disputes was pertinent only to the duty to indemnify.

Seeking to avoid its duty to defend, Century has erroneously conflated its two separate duties under the policy—its duties to indemnify and defend—as if now, after being absolved of its duty to indemnify, its initial duty to defend Emhart was negated. This is not so. The duty to defend is broader than the duty to indemnify and exists even where there ultimately is no duty to indemnify and where the underlying complaint lacks any merit. The jury's determination that Century has no duty to indemnify has no bearing on the separate question of whether it has a duty to defend. This is due, in part, to the duty to defend being determined solely by reference to the complaining documents without regard to the fact-finder's determinations concerning indemnity.

Here, the complaining documents in the EPA proceedings potentially encompassed a covered event. Accordingly, Century owed Emhart a duty to defend in the EPA proceedings[2].

## I. BACKGROUND FACTS

The relevant facts already are before the Court in connection with the July, 2006 summary judgment motions.[3] In February 2000, the EPA sent a letter to Emhart regarding the

---

[2] The Court previously ruled that the EPA proceeding was a "suit."

[3] See Joint Appendix to the Parties' Summary Judgment Motions (Docket Index 326) ("SJApp"), Emhart's Motion for Summary Judgment Concerning the Duty to Defend (Docket Index 323), and Statement of Undisputed Facts (Docket Index 325).

contamination at the Centredale Site, asserting that Emhart was a potentially responsible party (or "PRP"). This was followed by Administrative Orders in April 2000, March 2001, and September 2003 [SJApp., Tabs F-I]. Pursuant to the Century Primary Policy [SJApp., Tab A], Emhart sent notice of the potential claims to Century in 1999, 2000 and 2001. [SJApp., Tabs J-L] Emhart initiated this action in January 2002, asserting that Century was in breach of its duty to defend and also seeking declaratory relief.

## II. ARGUMENT

### *A. An Insurer's Duty To Defend Is Based Solely On The Complaining Documents*

The Century Primary Policy, by its plain language, creates two separate, distinct duties on the part of Century: (i) the duty to indemnify for "property damage to which th[e] insurance policy applies, caused by an occurrence," and (ii) the duty to defend "any suit" against Emhart seeking damages for "bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent." [SJApp., Tab A] As between the two duties, and under applicable Rhode Island law,[4] "[a]n insurer's duty to defend is broader than its duty to indemnify." Employers Mut. Cas. Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 215 (D.R.I. 1998) (citing Mellow v. Med. Malpractice Joint Underwriting Assn., 567 A.2d 367, 368 (R.I. 1989); Employers' Fire Ins. Co. v. Beals, 240 A.2d 397, 403 (R.I. 1968)). Further, the existence of a duty to defend "does not depend on whether the injured party will ultimately prevail against the insured." Beals, 240 A.2d at 403 (R.I. 1968).

Here, the jury found that there was no ***actual*** "occurrence" under the policy. The issue of Century's duty to defend must be determined simply by referring to the complaining documents to see if they at least ***allege*** what would ***potentially*** be an "occurrence" under the policy—the

---

[4] The parties agreed, in connection with briefing on the initial summary judgment motions, that Rhode Island law applies.

duty to defend exists so long as there is any possibility of coverage. See O'Donnell v. Twin City Fire Ins. Co., 40 F. Supp. 2d 68, 71 (D.R.I. 1999) ("If defendant could be required to indemnify under any factual allegation in the [complaining document], then defendant has a duty to defend the suit. ... If any of the acts or omissions alleged in the [complaining document] could possibly be covered under the insurance policy, then defendant has an unequivocal duty to defend plaintiffs against all the claims asserted"); see also Employers Mut. Cas. Co. v. PIC Contractors, Inc., 24 F. Supp. 2d 212, 216-17 (D.R.I. 1998) (duty to defend lies where allegations of complaint do not "exclude the possibility that their injuries manifested themselves or were discovered or were discoverable" within the policy period); Flori v. Allstate Ins. Co., 388 A.2d 25, 27 (R.I. 1978) (insurer has a duty to defend where the pleadings "leave in doubt whether a state of facts exists that will" permit coverage); Beals, 240 A.2d at 403 (when the complaining documents are "potentially within the risk coverage of the policy, the insurer has an unequivocal duty to defend").

Indeed, stressing reliance on the complaining documents alone, Rhode Island courts strictly apply a "pleading test" to determine whether an insurer's duty to defend has been triggered: "[A] liability insurer's duty to defend is predicated not upon information in its possession which indicates or even proves non-coverage, but instead upon the allegations in the complaint filed against the insured." Beals, 240 A.2d at 403; see Flori, 388 A.2d at 26 (noting that the underlying complaint "determine[] the insurer's duty to defend even if the known facts conflict with the facts alleged"); Progressive Cas. Ins. Co. v. Narragansett Auto Sales, 1997 WL

839923, at *2-3 & n.1 (R.I. Super. Ct. June 2, 1997) (noting that the sole, narrow exception to the "pleadings test" is in cases involving sexual molestation of children).[5]

Under the "pleadings test," an insurer's duty to defend "is resolved by comparing the complaint [in the underlying action] with the policy issued by the insurer …if the complaint discloses a statement of facts bringing the case potentially within the risk coverage of the policy, the insurer will be duty-bound to defend…." Flori, 388 A.2d at 26; see Beals, 240 A.2d at 403. "[A]ny doubts as to the adequacy of the pleadings to encompass an occurrence within the scope of the policy must be resolved in the insured's favor." O'Donnell, 40 F. Supp. 2d at 71; see also Shelby Ins. Co. v. Northeast Structures, Inc., 767 A.2d 75, 77 (R.I. 2001) (where there was a "question of fact" as to cause of collapse of structure and therefore as to whether an occurrence was covered, insurer had a duty to defend "***until*** there has been a finding of fact that the cause of the collapse was ***excluded*** from coverage.") (emphasis added).

Here, under the "pleadings test," the EPA complaining documents require the conclusion that Century has a duty to defend.

### *B. The EPA Complaining Documents Triggered Century's Duty to Defend*

The Primary Century Policy ultimately covered the period from February 15, 1969 through January 1, 1970, and defined an "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in … property damage neither expected or intended from the standpoint of the insured" [SJApp., Tab A at CIC 0478] The EPA complaining documents allege such a potential "occurrence" during the policy period.

---

[5] This exception was set forth in Peerless Insurance Co. v. Viegas, 667 A.2d 785 (R.I. 1995), and expressly is confined to cases arising out of sexual molestation of children. 667 A.2d at 788-89. That Viegas needed to create a specific exception for such cases shows that, even where the duty to indemnify is unlikely if not virtually non-existent, there is a duty to defend so long as such a result is possible under the allegations of the complaint.

Although the EPA complaining documents lack detail as to Emhart's predecessor's expectation or intent to cause damage, the discoverability of the property damage and what Emhart's predecessor allegedly did, each document seeks recovery of costs for remediating extensive contamination at the Centredale Site on account of property damage, which resulted during a broad period encompassing the term of the Century policy. See Ins. Co. of N. Am. v. Kayser-Roth Corp., 770 A.2d 403, 417 (R.I. 2001); see also Johnson Controls, Inc. v. Employers Ins. of Wausau, 665 N.W.2d 257, 287 n.41 (Wis. 2003); Hazen Paper Co. v. U.S. Fid. & Guar. Co., 555 N.E.2d 576, 582 & n. 6 (Mass. 1990). The EPA alleged that Emhart was responsible for operations "from approximately 1943 to approximately 1971," which included the period of the Century Primary Policy. [SJApp., Tab G at 3, ¶ 18] The EPA further alleged that there were "elevated levels of contaminants," including dioxin and PCBs, in surface soil and river sediments, and that remediation was required. [SJApp., Tab G at 4-5, ¶¶ 22-24; id., Tab G at 10, ¶¶ 41-42; id., Tab H at 7-8, 13].

1. The PRP Letter listed hazardous substances, made the broad statement that "[r]esponsible parties" include those "who arranged for disposal or treatment of hazardous substances found at the Site," and described Emhart as "a successor to the liability of a chemical company which operated at the Site." [SJApp., Tab F at 2]

2. The first EPA order found that "[h]azardous substances were disposed of at the Site as part of former operations of several chemical companies … and a drum recycler" [SJApp., Tab G at 2] and that the chemical companies are found to have manufactured hexachlorophene [id. at 3].

3. The second EPA order stated that "[e]vidence suggests that the operations of the chemical companies and the drum reconditioning facility at the Site resulted in releases and threats of releases of hazardous substances at the Site." [SJApp., Tab H at 3-4]

Indeed, as set forth above, the documents at least suggested, through implication, that certain contamination at the Centredale Site was discoverable during the policy period.

Accordingly, the EPA documents alleged a potential occurrence under the Century Primary Policy.

This is true regardless of whether it was ultimately determined that property damage resulted during the policy period. Indeed, in addition to the duty to defend and duty to indemnify being legally and factually distinct, Century's duty to defend under the Century Primary Policy extends to suits that are ultimately found to be "groundless, false or fraudulent."

Further, the PRP notice and the EPA orders list substances in addition to dioxin as contaminants at the Centredale Site. [SJApp., Tab F at 2 (VOCs and SVOCs); id., Tab G at 2, 6 and 10, ¶¶ 4, 29, 37 (VOCs, SVOCs and metals); id., Tab H at 9, 13, ¶¶ 36, 43] Therefore, in addition to dioxin, there were other contaminants at the Centredale Site that were subjects of the EPA complaining documents and were discoverable during the Century policy period. This alone is enough to trigger Century's duty to defend because "if any ***one*** of the acts alleged" in a complaint "could possibly be covered under the Policy," then the Century must defend "against ***all*** the claims." See Nortek, Inc. v. Liberty Mut. Ins. Co., 858 F. Supp. 1231, 1236 (D.R.I. 1994) (emphasis in original).

The EPA complaining documents alleged "occurrences" within the meaning of the Century Primary Policy. Century had a duty to defend Emhart.

### ***C. Extrinsic Facts Are Not To Be Considered In Determining Whether A Duty to Defend Exists***

In determining whether the EPA complaining documents alleged a potential "occurrence" under the Century Primary Policy, extrinsic evidence cannot be considered. The duty to defend must be determined from the outset based solely on the policy and the complaining documents.

The Beals court stated: "In Rhode Island, the insurer's duty to defend a suit brought against one of its policyholders is determined by the allegations contained in the complaint." Beals, 240 A.2d at 402. The court elaborated:

> As a general rule, where the particular policy requires insurer to defend even if the suit is groundless, false or fraudulent, the insurer's duty to defend is ascertained by laying the tort complaint alongside the policy; if the allegations in the complaint fall within the risk insured against in the policy, the insurer is said to be duty-bound to provide a defense for the insured, regardless of the actual details of the injury or the ultimate grounds on which the insured's liability to the injured party may be predicated.

Id. The court held that facts outside the scope of the complaining document, even uncontested facts, have no effect upon the determination of the duty to defend:

> In our opinion the best rule in such a case is that if the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff. In this state, therefore, a liability insurer's duty to defend is predicated not upon information in its possession which indicates or even proves non-coverage, but instead upon the allegations in the complaint filed against the insured; in other words, when a complaint contains a statement of facts which bring the case within or potentially within the risk coverage of the policy, the insurer has an unequivocal duty to defend.

Id. at 402-03 (internal citations omitted). The court went further, stating that, in making this determination, "any doubts as to the adequacy of the pleadings to encompass an occurrence within the coverage of the policy are resolved against the insurer and in favor of its insured." Id. at 403.

The PIC court again emphasized that the duty to defend turns on the factual allegations of the complaint, nothing more:

> Thus, in determining whether a duty to defend exists, there is no need to resolve any factual issues. The determination involves "nothing more than comparing the allegations in the complaint with the terms of the policy. If the facts alleged in the complaint fall within the risks covered by the policy, the insurer is obligated to defend. Otherwise, it is not.

24 F. Supp. 2d at 215 (quoting Aetna Cas. & Sur. Co. v. Kelly, 889 F. Supp. 535, 541 (D.R.I. 1995)); id. at 216 ("[D]etermining whether a duty to defend exists turns on the factual allegations in the complaint. It is inappropriate to base that determination on additional facts asserted by the insurer (i.e., that the plaintiffs were not diagnosed until after July 1, 1989), particularly when those additional facts may be disputed").

The rationale for prohibiting extrinsic evidence is clear: to hold otherwise "would give insurance companies a perverse incentive to delay making a decision whether to defend a suit in the hope that extrinsic evidence would emerge showing the claim fell outside the policy's coverage." IBM Corp. v. Liberty Mut. Ins. Co., 303 F.3d 419, 426 n.4 (2d Cir. 2002) (applying New York law).

Indeed, in IBM, the Second Circuit noted that, if extrinsic evidence were allowed, the defendant-insurance company would be rewarded by the court "considering extrinsic evidence flushed out as a result of its unwillingness to take a position regarding the [claims for which a duty to defend was sought] for over three years." Id. at 426-27; accord Gen. Motors Acceptance Corp. v. Nationwide Ins. Co., 828 N.E.2d 959, 961 (N.Y. 2005) ("We have liberally construed an insurer's general duty to defend in order to ensure the adequate and timely investigation of a claim and defense of an insured, regardless of the insured's ultimate likelihood of success on the merits.") Here, the extensive evidence presented at trial was developed over nearly five years of proceedings, and included expert opinions that certainly had not been formulated at the time of the initial PRP letter and EPA Order in 2000.

There is no reason for the Rhode Island courts to reward Century for conduct identical to that of the insurer in IBM and punish Emhart, which, although it did not actually cause

contamination at the Centredale Site, faces substantial potential liability under CERCLA. Century had a duty to defend Emhart in the EPA proceeding.

### *D. The Exception To The Prohibition On Extrinsic Evidence Advocated By Century Is Contrary To Applicable Rhode Island Law*

Hoping that the Court will create an exception to the prohibition on extrinsic evidence, Century has asserted that "where the complaint is silent and the relevant facts regarding coverage will not be determined in the underlying action, extrinsic evidence is admissible to show that the claim is not covered." [Century's Mem. Supp. Mot. Partial Summ. Judgment Duty to Defend, at 2-3 (Docket Index 327, filed July 24, 2006)] This exception, and the cases that Century cited in support, are contrary to Rhode Island law.[6] Compare Beals, 240 A.2d at 403, and Flori, 388 A.2d at 26, with Delta Airlines v. State Farm Fire & Cas. Co., 1996 WL 511575 (9th Cir. Sept. 9, 1996), W. Heritage Ins. Co. v. River Entertainment, 998 F.2d 311, 314-15 (5th Cir. 1993)[7], Millers Mut. Ins. Ass'n of Ill. v. Ainsworth Seed Co., 552 N.E.2d 254, 256 (Ill. App. Ct. 1990), and Burd v. Sussex Mut. Ins. Co., 267 A.2d 7, 9-10 (N.J. 1970).

If the exception Century advocates were the law, it would be of no avail to Century. The cases cited by Century involved situations where there were undisputed facts that contradicted the allegations in the pleadings. Here, there are no such facts. Rather, during trial there was an extensive factual record demonstrating that the property damage was discoverable.

---

6 Emhart previously addressed the cases cited by Century in its Motion for Judgment as a Matter of Law Regarding Duty to Defend Under the Century Primary Policy, at 6-8 (Docket Index 448, dated October 12, 2006).

7 See also Lafarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 394 n.8 (5th Cir. 1995) (noting that Western Heritage is limited to a situation where "the complaint either omitted or indisputably misrepresented material facts that would have clearly excluded coverage").

The exception advocated by Century should be rejected, as a similar argument was in Beals, because it would impermissibly erode Rhode Island's distinction between the duty to defend, which is determined based on the pleadings, and the duty to indemnify, which is determined based on the facts developed at trial. See Beals, 240 A.2d at 403. The error in determining the duty to defend based on the facts that will ultimately determine the duty to indemnify was noted in Flori. There the court noted that the trial court found facts concerning the insurer's ultimate liability under the policy, i.e., whether the insured's negligence took place before of after he had completed operations. It noted that the fact finding at trial was irrelevant to the duty to defend as the "trial justice's decision, however, was not that Allstate would be obligated to indemnify Flori in the event of a successful prosecution of the tort suit against him, but 'that said defendant, Allstate Insurance Co., shall be required to defend said suit'". 388 A.2d at 26. The Court then proceeded to explain that the correct analysis regarding the duty to defend is "comparing the complaint in that action with the policy issued by the insurer".

### *E. Where The EPA Complaining Documents Are Silent On Issues, All Doubts Should Be Resolved In Favor Of A Duty To Defend*

Nor can Century rely on any alleged silence on certain issues in the EPA complaining documents to avoid its duty. This follows from three basic principles stated in Beals: (i) "the duty to defend is broader in its scope than the duty of an insurer to indemnify"; (ii) the "duty to defend is predicated not upon information in [the insurer's] possession which indicates or even proves non-coverage, but instead upon the allegations in the complaint"; and, (iii) "any doubts as to the adequacy of the pleadings to encompass an occurrence within the coverage of the policy are resolved against the insurer and in favor of its insured." 240 A.2d at 402, 403. Thus, under Beals, where the complaint is silent as to a fact concerning coverage, the doubts are resolved in favor of finding that the broader duty to defend exists.

Specifically, Century has suggested that the EPA complaining documents are silent regarding discoverability .[8] This is neither accurate, nor, if accurate, of avail to Century. Indeed, Flori found that there was a duty to defend where the complaint was silent as to when the acts giving rise to the cause of action occurred, that is, "whether [the insured's] alleged negligence occurred before or after his operations would be deemed completed under the policy." 388 A.2d at 27. Since the complaint was silent, a duty to defend was found: "The pleadings, therefore, leave in doubt whether a state of facts exists that will render inapplicable the completed operations exclusion. Under our rule that doubt must be resolved against Allstate." Id. Here, as in Flori, any such silence in the EPA complaining documents must be construed against Century and a duty to defend found.

Applying Beals and Flori to another complaint that was silent as to whether there was an occurrence during the policy period, this Court held that the insurer had a duty to defend as "the complaints in the underlying suits make no reference to when the plaintiffs' injuries first manifested themselves or were discovered or were discoverable" and that the dates on which plaintiff's injuries were diagnosed did "not exclude the possibility that their injuries manifested themselves or were discovered or were discoverable prior to that time." PIC, 24 F. Supp. 2d at 216-217[9]. Again, any doubts as to whether the pleadings "encompass an occurrence within the scope of the policy must be resolved in the insured's favor." O'Donnell, 40 F. Supp. 2d at 71;

---

8 Here, the charging documents alleged exposure to contaminants during a period beginning before the operations of Emhart and its predecessors, which included the term of the Century policy, and continued long after those operations had ceased and that the concentration of dioxin and other contaminants were at elevated levels that could be viewed as discoverable using tests available during the policy period. [SJApp., Tab G, ¶¶ 18, 22, 26, 29; id., Tab H, ¶¶ 14, 35-36.

9 In PIC, the complaints alleged exposure during the policy period, but not when injury was discoverable. 24 F. Supp. 2d at 214.

see Providence Journal Co. v. Travelers Indem. Co., 938 F. Supp. 1066, 1072 (D.R.I. 1996); Beals, 240 A.2d at 403. The determination that the charging documents present a question of fact as to whether there was an occurrence requires the conclusion that Century has a duty to defend. The issue of whether the policies were triggered, like whether the damage in Shelby was caused by an act of God or defective work, whether the insured's work in Flori was performed to correct defective work or perform new work, whether the personal injury in PIC was discoverable during the policy periods and whether the child in Beals was negligently or intentionally struck with a pencil, pertains only to indemnification. Resolution of the fact questions as to indemnification that the Court noted were present has no bearing on the duty to defend. As in Beals, the complaining documents were consistent with facts "potentially within the risk coverage of the policy", giving rise to a duty to defend.

## *III.* CONCLUSION

For the foregoing reasons, the Court should rule that the complaining documents in the EPA proceedings gave rise to a duty to defend.

Respectfully submitted,

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600
gpetros@haslaw.com

Jack R. Pirozzolo
Richard L. Binder
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 832-1000
jpirozzolo@foleyhoag.com

Dated: November 20, 2006

Counsel for Plaintiff, Emhart Industries, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2006, a copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Renewed Motion for Judgment as a Matter of Law as to the Duty to Defend Under the Century Primary Policy was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's Cm/ECF System.

/s/Gerald J. Petros
Gerald J. Petros

761428v1