UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY<br><br>Defendants. | CIVIL ACTION<br>NO. CA 02-053S<br><br>DEFENDANT CENTURY INDEMNITY COMPANY'S OBJECTIONS TO PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING THE DUTY TO DEFEND UNDER THE CENTURY PRIMARY POLICY |

Defendant Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"), by its attorneys, objects to Plaintiff's Renewed Motion for Judgment as a Matter of Law Regarding the Duty to Defend under the Century Primary Policy for the reasons set forth in the accompanying Memorandum of Law in Support of Defendant Century Indemnity Company's Objections to Plaintiff's Renewed Motion for Judgment as a Matter of Law Regarding the Duty to Defend under the Century Primary Policy.

Dated: January 12, 2007

McKENNA & McCORMICK

By: /s/ James T. McCormick

James T. McCormick (#2614)
McKENNA & McCORMICK
128 Dorrance Street, Suite 330
Providence, RI 02903
(401) 831-2970

- and -

Lawrence A. Nathanson
Scott E. Levens
SIEGAL, NAPIERKOWSKI & PARK
533 Fellowship Road, Suite 120
Mt. Laurel, NJ 08054
(856) 380-8910

Attorneys for Defendant Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2007, a copy of the foregoing Century Indemnity Company's Objections to Plaintiff's Renewed Motion for Judgment as a Matter of Law Regarding the Duty to Defend under the Century Primary Policy was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: /s/ James T. McCormick

James T. McCormick (#2614)
McKENNA & McCORMICK
128 Dorrance Street, Suite 330
Providence, RI 02903
(401) 831-2970

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY<br><br>Defendants. | CIVIL ACTION<br>NO. CA 02-053S<br><br>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CENTURY INDEMNITY COMPANY'S OBJECTIONS TO PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING THE DUTY TO DEFEND UNDER THE CENTURY PRIMARY POLICY |

## I. INTRODUCTION

Defendant Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"), submits this memorandum of law in support of its objections to Plaintiff's Renewed Motion for Judgment as a Matter of Law Regarding the Duty to Defend under the Century Primary Policy. Century has no duty to defend under its primary policy because the EPA's allegations in its charging documents do not raise a "reasonable possibility" that the dioxin contamination at the Centredale Manor Superfund Restoration Site (the "Site") was discovered, manifested itself, or was discoverable in the exercise of reasonable diligence during Century's policy period.

## II. STATEMENT OF THE ISSUE

Plaintiff Emhart Industries, Inc. ("Emhart") and Century filed cross-motions for partial summary judgment before trial on whether Century had a duty to defend under Century's

1969 primary policy. The Court denied both motions, holding that Emhart would have to prove "a reasonable possibility that contamination was discoverable in the exercise of reasonable diligence during the 1969 policy period." [1] Finding "there are too many factual disputes regarding . . . at a minimum . . . trigger of coverage," the Court denied the motions and said "the issue of whether coverage was triggered by an occurrence under the manifestation discovered or in the exercise of reasonable diligence was discoverable is an issue of fact that needs to be decided at trial." *Id.*

Emhart then filed a motion for reconsideration, which the Court denied, noting "this issue may be reexamined if the facts developed at trial support a renewed motion for summary judgment." Subsequently, the Court advised the parties that it intended to decide whether Century had a duty to defend under Century's 1969 primary policy after the jury reached its verdict. The jury reached a verdict, finding, among other things, that the dioxin contamination at the Site was not discoverable in the exercise of reasonable diligence during Century's primary policy period.

## III. STATEMENT OF FACTS

### A. Century's 1969 Primary Policy

Century issued Policy No. GAL 36597 (the "primary policy") to Crown-Metro, Inc. ("Crown-Metro") for the period from February 15, 1969 to January 1, 1970. [PX-2.][2] The policy lists Crown-Metro's address as 12 Dudley Street, Providence, Rhode Island, which is not the Site. [*Id.* at CIC 0474.] The limits under the primary policy are $100,000. [*Id.*]

The insuring agreement in the primary policy limits coverage to property damage caused by an "occurrence":

---

[1] Appendix to the Objections of Defendant Century Indemnity Company to Plaintiff's Renewed Motion for Judgment as a Matter of Law Regarding the Duty to Defend under the Century Primary Policy ("Appendix") Tab A at 36.
[2] Appendix Tab B.

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
> B. property damage
>
> to which this insurance applies, **caused by an occurrence and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage**, even if any of the allegations of the suit are groundless, false or fraudulent,

[*Id.* at CIC 0483 (emphasis added).] An "occurrence" is defined as:

> an accident, including injurious exposure to conditions, **which results, during the policy period,** in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

[*Id.* at CIC 0478 (emphasis added).]

## B. The EPA's Claim against Emhart

On February 28, 2000, the EPA sent a PRP letter to Emhart, advising that Emhart had potential liability with respect to dioxin contamination at the Site. [PX-12.][3] The PRP letter states that "EPA has reason to believe that Emhart Industries, Inc., is a successor to the liability of a chemical company which operated at the Site." [*Id.* at 2.] The letter makes no other allegation as to why Emhart may be responsible for the cleanup. Further, the letter does not allege when Crown-Metro (Emhart's alleged predecessor) discovered or should have discovered the dioxin contamination at the Site. The letter does not allege that Crown-Metro discovered the dioxin contamination at the Site during 1969 or earlier, that the dioxin contamination at the Site manifested itself to Crown-Metro during 1969 or earlier, or that the dioxin contamination at the Site was discoverable by Crown-Metro in the exercise of reasonable diligence during 1969 or earlier.

---

[3] Appendix Tab C.

On April 12, 2000, the EPA issued a Unilateral Administrative Order for Removal Action to Emhart and four other parties. [PX-13.][4] The Unilateral Administrative Order also did not state whether Crown-Metro discovered the dioxin contamination at the Site during 1969 or earlier, whether the dioxin contamination at the Site manifested itself to Crown-Metro during 1969 or earlier, or whether the dioxin contamination at the Site was discoverable by Crown-Metro in the exercise of reasonable diligence during 1969 or earlier. The only factual allegations with respect to Emhart's potential liability are:

> Hazardous substances were disposed of at the Site as part of former operations of several chemical companies (the Atlantic Chemical Company, Metro-Atlantic Inc., and Crown Metro, Inc.) and a drum recycler (New England Container Co., Inc.).

[*Id.* at 2], and

> Respondent Emhart is also a successor to liability of several chemical companies which operated at the Site from approximately 1943 to approximately 1971. The chemicals manufactured by these companies included hexachlorophene. The chemical companies also buried drums and other containers at the Site.

[*Id.* at 3.]

On March 26, 2001, the EPA issued a Second Administrative Order for Removal Action to Emhart and four other parties. [PX-15.][5] The Second Administrative makes clear that the dioxin contamination at the Site was not discovered until the 1990s. It states that the EPA did not discover the dioxin contamination in the Woonasquatucket watershed until 1996, and did not discover the dioxin contamination at the Site until 1998. [*Id.* at AON 00021.] The order further states that the EPA did not advise Emhart of the dioxin contamination at the Site until 2000 [*Id.* at AON 00022.]

---

[4] Appendix Tab D.
[5] Appendix Tab E.

Like the PRP letter and the Unilateral Administrative Order, the Second Administrative Order does not allege that Crown-Metro discovered the dioxin contamination at the Site during 1969 or earlier, that the dioxin contamination at the Site manifested itself to Crown-Metro during 1969 or earlier, or that the dioxin contamination at the Site was discoverable by Crown-Metro in the exercise of reasonable diligence during 1969 or earlier. The only other factual allegation with respect to Emhart's potential liability is that: "Evidence suggests that the operations of the chemical companies and the drum reconditioning facility at the Site resulted in releases and threats of releases of hazardous substances at the Site." [*Id.* at AON 00020 – AON 00021.] Based on these allegations, the order states that Emhart "is a liable party within the meaning of section 107(a) of CERCLA, 42 U.S.C. § 9607(a)." [*Id.* at AON 00030.]

On September 11, 2003, the EPA issued a Third Administrative Order of Consent for Removal Action to Emhart and nine other parties. [PX-16.][6] The Third Unilateral Administrative Order repeats the same allegations against Emhart that are in the Second Administrative Order. Like the prior charging documents, the EPA does not allege that Crown-Metro discovered the dioxin contamination at the Site during 1969 or earlier, the dioxin contamination at the Site manifested itself to Crown-Metro during 1969 or earlier, or the dioxin contamination at the Site was discoverable by Crown-Metro in the exercise of reasonable diligence during 1969 or earlier.

## IV. <u>ARGUMENT</u>

### A. **The duty to defend only arises if the underlying factual allegations raise a "reasonable possibility" that the dioxin contamination at the Site was discovered by Crown-Metro, manifested itself to Crown-Metro, or was discoverable by Crown-Metro in the exercise of reasonable diligence during Century's policy period.**

[6] Appendix Tab F.

The duty to defend only arises when the complaint or charging documents in the underlying action contain facts sufficient to bring the case within or potentially within the coverage of the policy, regardless of whether the claimant in the underlying action will prevail on the merits. *Mellow v. Medical Malpractice Joint Underwriting Ass'n of Rhode Island,* 567 A.2d 367, 368 (R.I. 1989); *Hingham Mut. Fire Ins. Co. v. Heroux,* 549 A.2d 265, 266 (R.I. 1988). The underlying factual allegations must raise a "reasonability possibility" of coverage. *Aetna Cas. & Sur. Co. v. Kelly,* 889 F.Supp. 535, 541 (D.R.I. 1995); *Nortek, Inc. v. Liberty Mut. Ins. Co.,* 858 F.Supp. 1231, 1236 (D.R.I. 1994). To determine whether an insurer has a duty to defend, the Court should compare the underlying factual allegations with the terms of coverage. *Kelly,* 889 F.Supp. at 541. If the facts alleged in the underlying action fall within the terms of coverage, an insurer has a duty to defend. *Id.* If they do not, the insurer has no such duty. *Id.*

Century's primary policy only covers property damage that results during the policy period. Under Rhode Island law, property damage only results during a policy period if it was discovered, manifested itself, or was discoverable in the exercise of reasonable diligence by the policyholder during the policy period. *CPC Intern., Inc. v. Northbrook Excess & Surplus Ins. Co.,* 668 A.2d 647, 649 (R.I. 1995). To show that property damage was discoverable in the exercise of reasonable diligence by the policyholder during a policy period, the policyholder must show that (1) the property damage occurred during the policy period, (2) the property damage was capable of being detected during the policy period, and (3) the policyholder had reason to test for the property damage during the policy period. *Textron, Inc. v. Aetna Cas. and Sur. Co.,* 754 A.2d 742, 745-746 (R.I. 2000).

Thus, for Century to have a duty to defend, the underlying allegations would have to raise a "reasonable possibility" that (1) Crown-Metro discovered the dioxin contamination at

the Site during 1969, (2) the dioxin contamination at the Site manifested itself to Crown-Metro during 1969, or (3) the dioxin contamination at the Site was discoverable by Crown-Metro in the exercise of reasonable diligence during 1969. With respect to whether the dioxin contamination was discoverable by Crown-Metro in the exercise of reasonable diligence during the policy period, the charging documents would have to allege (1) the dioxin contamination was present at the Site during 1969, (2) the dioxin contamination was capable of detection during 1969, and (3) Crown-Metro had reason to test for the dioxin contamination during 1969.

**B. The underlying factual allegations do not raise a "reasonable possibility" that the dioxin contamination at the Site was discovered by Crown-Metro, manifested itself to Crown-Metro, or was discoverable by Crown-Metro in the exercise of reasonable diligence during Century's policy period.**

The underlying factual allegations are contained in the EPA's PRP letter and in the three unilateral orders that the EPA issued to Emhart and others. Those charging documents make clear that the dioxin contamination at the Site was not discovered, and did not manifest itself, during Century's policy period. The charging documents state that the EPA did not discover the dioxin contamination in the Woonasquatucket River until 1996, and did not discover the dioxin contamination at the Site until 1998 – 28 years after Century's policy period. The documents further state that EPA did not inform Emhart of the dioxin contamination until 2000.

The charging documents also do not raise a "reasonable possibility" that the dioxin contamination at the Site was discoverable by Crown-Metro in the exercise of reasonable diligence during Century's policy period. The EPA does not allege that either Metro-Atlantic or Crown-Metro should have been aware of the dioxin contamination at the Site during the period of operations or during Century's policy period. In fact, the EPA does not allege how the dioxin contamination occurred, except that it was the result of the activities of the former chemical companies and barrel reclamation company that did business at the Site. Although the EPA

refers to the burials of drums and other containers at the Site, it does not allege whether the dioxin contamination at the Site is a result of the burial of those drums and other containers.

The charging documents also do not allege or suggest that the dioxin contamination at the Site was discoverable in the exercise of reasonable diligence during Century's policy period or earlier. Although the EPA alleges that the dioxin contamination arose out of Metro-Atlantic's and NECC's activities, it does not allege that the dioxin contamination was capable of detection during 1969, or that Crown-Metro had a reason to test for the dioxin contamination during 1969. Absent such allegations, the charging documents do not raise a "reasonable possibility" that Emhart's claim is covered.

Emhart acknowledges that the charging documents do not raise a "reasonable possibility" of coverage in its brief, when it admits that the underlying charging documents at best "at least suggested, through implication, that certain contamination at the Centredale Site was discoverable during the policy period."[7] A "suggestion through implication" is not a "reasonable possibility." Furthermore, "discoverable" is not the same as "discoverable in the exercise of reasonable diligence" and "contamination" is not the same as "dioxin contamination." The allegation that some form of contamination may have been present at the Site and, thus, theoretically "discoverable" during Century's policy period, is not sufficient for Century to have a duty to defend. To be "discoverable in the exercise of reasonable diligence" would require an allegation that the dioxin contamination was capable of detection during Century's policy period, and that Crown-Metro had reason to test for the dioxin contamination during that period. The EPA makes no such allegations. As a result, Century has no duty to defend.

[7] Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Renewed Motion for Judgment as a Matter of Law as to the Duty to Defend under the Century Primary Policy at 6.

**C. Consideration of extrinsic evidence is appropriate where the charging documents are silent regarding an issue of coverage and the relevant facts regarding coverage <u>will not be determined in the underlying action</u>.**

Whether the dioxin contamination at the Site was discoverable in the exercise of reasonable diligence by Crown-Metro during 1969 or earlier is not relevant to the relief the EPA is seeking against Emhart. Under CERCLA, Emhart is strictly liable for the dioxin contamination at the Site as an alleged successor to a person who operated the facility at the time hazardous substances were disposed. 42 U.S.C. § 9607(a)(2). Thus, whether Crown-Metro should have discovered the dioxin contamination at the Site during 1969 or earlier is not mentioned in the EPA's charging documents, and will not be resolved in that action.

Where the charging documents are silent on an issue relevant to coverage and the relevant facts regarding coverage will not be determined in the underlying action, courts have considered extrinsic evidence to determine if an insurer has a duty to defend. For example, in *Delta Airlines v. State Farm Fire and Cas. Co.*, 96 F.3d 1451 (9th Cir. 1996) (unpublished opinion), the Ninth Circuit explained:

> However, while *Afcan* stands for the general proposition that an insurer must defend any complaint alleging facts within the coverage of the policy, we conclude that the Alaska Supreme Court would follow sound authority allowing an insurer to rely on extrinsic facts to prove coverage is unavailable when the complaint is *silent* as to the existence of those facts and when the facts will not be determined in the underlying action.

*Id.* at *1; *see also Western Heritage Ins. Co. v. River Entertainment,* 998 F.2d 311, 314-15 (5th Cir. 1993) ("when the petition does not contain sufficient facts to enable the court to determine if coverage exists, it is proper to look to extrinsic evidence in order to adequately address the issue."); *Millers Mut. Ins. Ass'n of Illinois v. Ainsworth Seed Co.*, 552 N.E.2d 254, 255 (Ill.App. 4 Dist. 1989) ("We conclude that extrinsic facts may be considered as long as they do not bear

upon issues in the underlying litigation."); *Burd v. Sussex Mutual Ins. Co.*, 267 A.2d 7, 9 (N.J. 1970) ("but when coverage, i.e., the duty to pay, depends upon a factual issue which will not be resolved by the trial of the third party's suit against the insured, the duty to defend may depend upon the actual facts and not upon the allegations in the complaint."); B. Ostrager & T. Newman, *Handbook on Insurance Coverage Disputes* § 5.02[b] at 259-263 (12th ed. 2003).

Rhode Island court have followed this same approach. In *Providence Journal Co. v. Travelers Indem. Co.*, 938 F. Supp. 1066 (D.R.I. 1996), Judge Lagueux held that Travelers did not have a duty to defend based on extrinsic evidence. The United States filed suit against the Providence Journal under CERCLA to recover costs incurred in cleaning up the Davis Liquid Waste Site in Smithfield, Rhode Island. *Id.* at 1069. The Journal brought a lawsuit against Travelers seeking a declaratory judgment that Travelers had a duty to defend under a liability insurance policy Travelers issued to the Journal. *Id.* at 1068-69. Travelers denied coverage based on an exclusion that said that the policy does not apply to discharges that the policyholder expects or intends. *Id.* at 1070. To determine whether Travelers had a duty to defend, Judge Lagueux applied Rhode Island law. *Id.* at 1072. In discovery, the Journal had conceded it had hired Cannons, an independent contractor, to haul away its liquid wastes, and that Cannons had intentionally disposed of those wastes at the waste site. *Id.* at 1069. Based on that extrinsic evidence, Judge Lagueux held that Travelers had no duty to defend:

> The discharge of the Journal's liquid waste at the Davis Site was undeniably expected and intended from the standpoint of Cannons; the Journal concedes this fact. Consequently, Travelers has neither the duty to defend nor indemnify the Journal against the government's CERCLA action and the liabilities resulting from the Consent Decree, since this claim is for property damage arising out of a discharge of a pollutant that was expected and intended from the standpoint of an organization for whose acts the Journal is liable.

*Id.* at 1079.

Judge Lovegreen also followed this same approach in his Report and Recommendation in this case with respect to Emhart's and Liberty Mutual's cross-motions for summary judgment on Liberty Mutual's duty to defend. Judge Lovegreen denied both motions because he could not determine from the EPA's allegations whether the sudden and accidental pollution exclusion in Liberty Mutual's policies barred coverage. Thus, whether Liberty Mutual had a duty to defend would depend upon consideration of the extrinsic evidence at trial:

> Although the EPA documents contain numerous descriptive details about its finding at the Site, there is no clear attribution of the contamination solely to Emhart's predecessors, to the exclusion of other suspected causes. Moreover, beginning with the Second Administrative Order by EPA, there was the suggestion of a possibility that a major fire, which destroyed most of the structures at the Site and required significant amounts of water to extinguish it, may have contributed to the spread of contaminants on the Site and beyond it. Whether such an event would qualify as the "sudden and accidental" occurrence necessary to indicate at least a duty to defend under the Policies, is a question of fact not suitable for resolution at summary judgment.

Report and Recommendation (2/15/05) at 60.

Like these cases, the EPA's charging documents do not address trigger of coverage and that issue will not be resolved in the underlying action. Under these circumstances, consideration of extrinsic evidence is appropriate to determine whether an insurer has a duty to defend.

**D. The cases Emhart cites do not address a situation like this one in which the charging documents are silent regarding an issue of coverage and the relevant facts regarding coverage will not be determined in the underlying action.**

Emhart contends that those cases cited above in which courts considered extrinsic evidence to determine whether an insurer had a duty to defend are all contrary to Rhode Island law because Rhode Island courts do not consider extrinsic evidence in determining whether an

insurer has such a duty. But, the cases Emhart cites do not address a situation like this one in which the complaint is silent and the relevant facts regarding coverage will not be resolved in the underlying action. Rhode Island courts have not expressly addressed a situation like this one.

For example, in *O'Donnell v. Twin City Fire Ins. Co.*, 40 F.Supp.2d 68 (D.R.I. 1999), the issue was whether the alleged legal malpractice took place before or during the policy period. The underlying claimant, however, explicitly alleged "that the acts of malpractice took place both before and during the policy period." *Id.* at 69-70. Thus, Judge Lagueux appropriately held that the insurer had a duty to defend. *Id.* at 70.

Similarly, in *Employers' Fire Ins. Co. v. Beals,* 103 R.I. 623, 631, 240 A.2d 397, 402 (1968), the Rhode Island Supreme Court held that the lower court appropriately declined to award a declaratory judgment in the coverage action because the same issue regarding whether the injury was intentionally or accidentally caused would be resolved in the underlying action. Further, the court found that the underlying action included a negligence count, which "is unquestionably within the risks covered by the policy." *Id.* at 632-633, 240 A.2d at 403.

In *Flori v. Allstate Ins. Co.,* 120 R.I. 511, 388 A.2d 25 (1978), the issue was whether the policyholder's alleged negligence occurred before or after the policyholder's operations would be deemed completed. Although the underlying complaint was ambiguous as to when the alleged negligence took place, that issue would have to be resolved in the underlying action. Thus, the court held that the insurer had a duty to defend. *Id.* at 514, 388 A.2d at 27.

In *Employers Mut. Cas. Co. v. PIC Contractors, Inc.*, 24 F.Supp.2d 212 (D.R.I. 1998), Judge Torres rejected the insurer's argument that it had no duty to defend based on Rhode Island trigger of coverage law because the insurer's policy--unlike Century's policy--did not require that the bodily injury result during the policy period:

> In addition, Employers' argument is inconsistent with the terms of its own policies. The policies define an "occurrence" to include "continuous or repeated exposure to substantially the same general harmful conditions." There is nothing in the policies that requires an "occurrence" to take place during the policy period. Employers' reliance on *CPC International, Inc. v. Northbrook Excess and Surplus Insurance Co.*, 668 A.2d 647 (R.I.1995), and *Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.*, 682F.2d 12 (1st Cir.1982) is misplaced. Although both cases held that there was no occurrence until an injury or damages became manifest, their holdings were based on definitions of "occurrence" that materially differ from the definition contained in Employers' policies.

*Id.* at 216. Based on the distinction between the policies at issue in *CPC* and the policies at issue in his case, Judge Torres held "the time at which an injury manifests itself is irrelevant for purposes of determining when an 'occurrence' took place." *Id.* Century's policy, however, is like the policies at issue in *CPC*. Thus, when the property damage manifested itself would be relevant.

The other cases Emhart cites are similarly distinguishable. In *Progressive Cas. Ins. v. Narragansett Sales,* 1997 WL 839923 (R.I. Super. 1997), no complaint was filed against the policyholder. Thus, the court could not determine whether the insurer had a duty to defend. *Id.* at *3. In *Shelby Ins. Co. v. Northeast Structures, Inc.*,767 A.2d 75, 77 (R.I. 2001), the policyholder's answer explicitly raised the possibility that the cause of the collapse was an "Act of God," which was a covered occurrence. Thus, the court held the insurer had a duty to defend. *Id.*

**E. Whether the extrinsic facts are in dispute is not relevant to whether those facts <u>should be considered</u>.**

Emhart also contends that the cases cited above in which courts considered extrinsic evidence to determine whether an insurer had a duty to defend are distinguishable because the extrinsic evidence in those cases was not disputed. The fact these other courts,

however, even considered extrinsic evidence refutes Emhart's contention that extrinsic evidence should never be considered. Moreover, the facts in this case are no longer in dispute. The jury determined that the dioxin contamination at the Site was not discoverable by Crown-Metro in the exercise of reasonable diligence during Century's policy period. Thus, the Court should apply that finding and hold that Century has no duty to defend Emhart.

## V. CONCLUSION

For the reasons stated, Century respectfully requests that the Court deny Plaintiff's Renewed Motion for Judgment as a Matter of Law Regarding the Duty to Defend under the Century Primary Policy.

Dated: January 12, 2007

McKENNA & McCORMICK

By: /s James T. McCormick

James T. McCormick (#2614)
McKENNA & McCORMICK
128 Dorrance Street, Suite 330
Providence, RI 02903
(401) 831-2970

- and -

Lawrence A. Nathanson
Scott E. Levens
SIEGAL, NAPIERKOWSKI & PARK
533 Fellowship Road, Suite 120
Mt. Laurel, NJ 08054
(856) 380-8910

Attorneys for Defendant Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2007, a copy of the foregoing Memorandum of Law in Support of Defendant Century Indemnity Company's Objections to Plaintiff's Renewed Motion for Judgment as a Matter of Law regarding the Duty to Defend under the Century Primary Policy was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: /s/ James T. McCormick

James T. McCormick (#2614)
McKENNA & McCORMICK
128 Dorrance Street, Suite 330
Providence, RI 02903
(401) 831-2970