UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC., Plaintiff, v. HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY, Defendants. | CIVIL ACTION NO. 02-053S |

**ONEBEACON AMERICA INSURANCE COMPANY'S**
**BRIEF IN SUPPORT OF REFORMATION**[1]

## I. INTRODUCTION

Emhart brought this declaratory judgment action against OneBeacon and several of its insurers seeking to establish that the insurers must defend and indemnify Emhart for costs associated with an Environmental Protection Agency-ordered cleanup of contamination at the Centerdale Manor Restoration Project Superfund Site in North Providence, Rhode Island (the "Site"). After the close of evidence at trial, the Jury returned a verdict in favor of all Defendants.

During the trial, OneBeacon presented uncontroverted evidence to the Court that the OneBeacon Policy should be reformed and that the reformed OneBeacon Policy incorporates an

[1] During the trial of this matter, Emhart Industries, Inc. ("Emhart") and OneBeacon America Insurance Company ("OneBeacon") agreed to try OneBeacon's claim that Employers' Surplus Lines Insurance Company Policy No. S-16-07084 (the "OneBeacon Policy") should be reformed to the Court. Pursuant to Fed. R. Civ. P. 52, OneBeacon submits herewith Requests for Findings of Fact and for Rulings of Law, along with an Appendix thereto.

absolute pollution exclusion. Emhart was unable to dispute OneBeacon's reformation evidence at trial or to present its own contradictory evidence.[2] Having heard the evidence, the Court should enter judgment reforming the OneBeacon Policy such that it is subject to the terms and conditions of the Insurance Company of North America ("INA") Umbrella Liability Policy that was in effect at the time the OneBeacon Policy was issued.

Emhart seeks to shift the Court's attention away from the clear and simple facts and to have the Court apply an incorrect legal standard. Emhart did not and cannot now dispute that the OneBeacon underwriter copied the wrong policy number when he was preparing the initial handwritten draft Daily Report for the OneBeacon Policy. The copying or scrivener's error was carried though onto the typed Policy Declarations. The copying error reflected a mistake in the written form of the insuring agreement between OneBeacon and Crown-Metro and should be reformed. Because the OneBeacon Policy contains a scrivener's error, the mutuality of the parties' mistake is presumed. However, even if OneBeacon is required to show that the OneBeacon Policy as issued contains a mutual mistake, then OneBeacon has presented clear, convincing and undisputed evidence of such mutual mistake.

Once the Court reforms the OneBeacon Policy, then it should enter judgment that Emhart's claims against OneBeacon are precluded because the OneBeacon Policy incorporated an absolute pollution exclusion that is directly applicable to Emhart's claims.

## II. RELEVANT FACTS

### A. <u>The Policies At Issue</u>

OneBeacon, as successor-in-interest to Employers' Surplus Lines Insurance Company ("ESLIC"), issued a single excess umbrella liability policy to Crown Metro Inc. ("Crown-

[2] Emhart did not introduce any evidence at trial with respect to OneBeacon's reformation claim.

Metro"), an alleged Emhart predecessor, for the period from April 24, 1969 to January 1, 1970. The OneBeacon Policy is an excess umbrella liability policy and grants coverage subject to the terms of one of two different primary umbrella policies issued by Century Indemnity Company's predecessor, INA.

The following policies are at issue:

1. INA Policy No. XBC 64674 (the "INA Crown-Chemical Umbrella Policy"). This was an umbrella policy issued by INA to Crown Chemical Company ("Crown Chemical") for the period December 1, 1967 to December 1, 1968. It provided $5,000,000 of umbrella liability insurance.

2. INA Policy No. XBC 46961 (the "INA Crown-Metro Umbrella Policy). This was an umbrella policy issued by INA to Crown-Metro for the period December 1, 1968 to February 15, 1970. It provided only $1,000,000 of umbrella liability insurance.

3. OneBeacon Policy No. S-16-07084 (the "OneBeacon Policy"). This policy insured Crown-Metro, "subject to all the terms and conditions of Policy No. XBC64674 [sic] issued by INA to … Crown Metro Inc."

B. The Underwriting

On March 21, 1969, Crown-Metro, through its broker, Laren Insurance Agency of Providence, Rhode Island, and wholesale broker George Busnach ("Busnach") at Maurice H. Saval, Inc. ("Saval"), sought to procure $5,000,000 of umbrella coverage from OneBeacon, excess only of Crown-Metro's primary insurance. On April 15, 1969, Vincent Puccio, OneBeacon's excess umbrella liability underwriter, provided a price quotation, which Crown-Metro did not accept. On May 2, 1969, INA issued the INA Crown-Metro Umbrella Policy,

which provided the first $1,000,000 of the $5,000,000 of umbrella insurance that Crown-Metro sought to procure from OneBeacon previously. On May 9, 1969, Crown-Metro, again acting through Busnach at Saval, sent OneBeacon a copy of the INA Crown-Metro Umbrella Policy. Crown-Metro sought to procure the remaining $4,000,000 of umbrella insurance from OneBeacon. OneBeacon issued the OneBeacon Policy on May 16, 1969. The OneBeacon Policy provides $4,000,000 of excess umbrella liability coverage, excess of $1,000,000 of INA umbrella coverage.

In underwriting the OneBeacon Policy, Vincent Puccio prepared a Daily Report, filling in the requisite information on a preprinted form. The preprinted form read:

> Employers' Surplus Lines Insurance Company . . . Agrees with the Insured named below in consideration of the payment of the premium and, except as herein provided, subject to all the terms and conditions of Policy No. _______________ issued by
>
> ______________________
>
> to:
> Item 1. <u>INSURED:</u> ________________

Mr. Puccio wrote "INA" in the space for the issuing company. In the blank space for the policy number, Mr. Puccio wrote "XBC 64674," **the number of the expired Crown Chemical, not the recently issued Crown-Metro, INA Policy**. Emhart did not and cannot now dispute that this was a clerical or copying error. Mr. Puccio did not have a copy of the INA Crown Chemical Umbrella Policy; he had only the INA Crown-Metro Umbrella Policy. The INA Crown-Metro Umbrella Policy declarations page contained **both** INA policy numbers (i.e., XBC 64674 as the expired or "old policy no." and XBC 46961, as the number assigned to the INA Crown-Metro Umbrella Policy). Mr. Puccio copied the wrong policy number by mistake. He intended to copy the number of the INA Crown-Metro Umbrella Policy. This mistake was carried through when the OneBeacon Policy Declarations was typed and subsequently issued to Crown-Metro.

The fact that this was a copying error and does not reflect the true intent of the parties is both beyond dispute **and undisputed.**[3] Mr. Puccio's universal practice in underwriting excess umbrella liability insurance was to write subject to the terms and conditions of the underlying umbrella insurance then in effect. Mr. Puccio did not write excess umbrella liability coverage subject to the terms and conditions of expired umbrella policies. In fact, it was custom and practice in the insurance industry to write subject to the terms and conditions of the current, underlying umbrella policy when writing excess umbrella liability coverage.

Crown-Metro, for its part, did not intend the OneBeacon Policy to be subject to the terms and conditions of the INA Crown Chemical Umbrella Policy. That would have been a highly unusual situation, unique in Mr. Puccio's experience. If Crown-Metro had intended that result, there would have been some indication of it in the underwriting file. However, there is none and Emhart presented no evidence from which the Court can conclude that Crown-Metro had sought to procure such unusual insurance.

C. <u>INA Crown-Metro Umbrella Policy Endorsement No. 6</u>

On June 19, 1969, INA amended the INA Crown-Metro Umbrella Policy to include an Endorsement No. 6. On July 3, 1969, Busnach forwarded a copy of Endorsement No. 6 to OneBeacon, without a request that OneBeacon add Endorsement No. 6 to the OneBeacon Policy. The correspondence from Busnach to Mr. Puccio of OneBeacon forwarding that endorsement states only: "I am enclosing a copy of endorsement #6 which was added to the primary

[3] Apparently, Emhart would have the Court believe that there was no mistake made in connection with the OneBeacon Policy. Such a proposition, however, is without merit and illogical. **The INA Policy described in the OneBeacon Policy does not exist.** No policy number XBC 64674, as referenced in the OneBeacon Declarations, was issued to Crown-Metro. Only the INA Crown-Metro Policy, Policy No. XBC 46961, was issued to Crown-Metro. The mistake is apparent on the face on the OneBeacon Declarations.

underlying Umbrella contract issued by INA. If you have any questions give me a call." One of the conditions incorporated into the OneBeacon Policy provides:

> Notice to any agent or knowledge possessed by any other agent or by any other person shall not effect a waiver or a change in any part of this policy or estop [OneBeacon] from asserting any rights under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

With respect to Endorsement No. 6, no endorsement was ever issued or agreed to by OneBeacon to incorporate it into the OneBeacon Policy.

## II. ARGUMENT

### A. The OneBeacon Policy Should Be Reformed Because The Wrong INA Umbrella Policy Number Was Listed On The Declarations.

#### 1. The OneBeacon Policy should be reformed because there was a scrivener's error.

Reforming of insurance policies to correct copying or scrivener's errors reflects the basic rule that the terms of a contract are determined based upon the intent of the parties. Drafting mistakes that create a writing at variance with that intent should be corrected.[4] *See, e.g., Cincinnati Ins. Co. v. Fred S. Post, Jr. Co.*, 747 S.W. 2d. 777, 781-782 (Tenn. 1988) (insurer entitled to reformation to correct typographic error made by insurer because error made the policy differ from the actual agreement of the parties); *see also Board of Trustees of the Univ. of*

[4] While there are no Rhode Island cases directly on point, this does not mean that "Rhode Island law does not recognize some form of 'scrivener's error' exception to the rules of reformation by mutual mistake" as Emhart argued in its Motion *in Limine*. In fact, Emhart mis-cited three cases offered in support of this proposition. *Hopkins v. Equitable Life Assurance Soc.*,.107 R.I. 679, 270 A.2d 915 (1970) cited by Emhart as being "[p]articularly on point," is a mutual mistake case that has nothing to do with a copying or scrivener's error. Rather, as correctly quoted by Emhart, the case involved a "clerical" error (i.e., "the employer's failure to ascertain who was then the existing designee") and a mistake "by Walter who signed the enrollment card" (i.e., a mutual mistake). 107 R.I. at 685, 270 A.2d at 918. Similarly, neither *Rosen v. E. Rosen Co.,* 818 A.2d 695 (R.I. 203) nor *Diaman v. Providence, Warren & Bristol R.R. Co.*, R.I. 130 (1858) are cases involving copying or scrivener's error. The *Rosen* decision in fact, did not turn on a mistake, mutual or otherwise, issue. Rather, the Rhode Island Supreme Court concluded that the complaining party had no standing to challenge the transaction at issue and to prosecute the appeal. *Id.* at 697. In *Diaman*, the complaining party "by some unaccountable mistake, subscribed for double the amount [of stock]." 5 R.I. 130.

*Ill. V. Ins. Corp. of Ireland, Ltd.*, 969 F.2d 329, 334-35 (7th Cir. 1992); *Reynolds v. Farmers Ins. Co. of Washington*, 90 Wash. App. 880, 885, 960 P.2d 432, 434 (1998). A leading insurance law treatise states the basic rule as it applies to insurance contracts:

> Reformation has been allowed because of the insurer's clerical mistake, since in such instances it is apparent that the policy which was issued does not, in fact, set forth what has been agreed to and what was intended by all the parties.

Couch on Insurance, 3d § 27:27.

It is undisputed that OneBeacon made a scrivener's error by stating that the OneBeacon Policy was subject to the terms and conditions of the INA Crown Chemical Umbrella Policy instead of the INA Crown-Metro Umbrella Policy.[5] Mr. Puccio, the OneBeacon underwriter with whom Crown-Metro's brokers communicated regarding this matter, has admitted that he mistakenly wrote the wrong policy number on the draft Daily Report. Emhart has not and cannot offer any evidence to contradict this fact. Application of the clear rule of law to the undisputed fact of OneBeacon's scrivener's error entitles OneBeacon to reformation.

2. The OneBeacon Policy should be reformed because there was a mutual mistake.

Even if the Court is unwilling to presume that the OneBeacon Policy embodies a mutual mistake of the parties (i.e., reforming the OneBeacon Policy based upon the copying error), then the clear and convincing evidence, and in fact, the undisputed and only evidence, is that the parties intended that the OneBeacon Policy be subject to the terms and conditions of the INA Crown-Metro Umbrella Policy. Crown-Metro approached OneBeacon seeking to procure a single umbrella policy in the amount of $5,000,000 for the entire excess layer. After receiving a

[5] Although Emhart argues to the contrary, there can be no question that a mistake was made in connection with the OneBeacon Policy. The INA Policy referred to in the OneBeacon Policy simply does not exist. *See* Footnote 3, *supra*.

price quotation from OneBeacon for the coverage, Crown-Metro elected to seek alternatives. Crown-Metro went on to procure the first $1,000,000 of umbrella liability coverage that it had sought initially from OneBeacon from INA (i.e., the INA Crown-Metro Umbrella Policy). Subsequently, Crown-Metro purchased the remaining $4,000,000 of umbrella coverage from OneBeacon (the OneBeacon Policy). If the OneBeacon Policy is found to be subject to the terms and conditions of the expired INA Crown Chemical Umbrella Policy, then different policy terms would have applied to the two "layers" of umbrella liability coverage (i.e., the INA Crown-Metro Umbrella Policy coverages would apply to the first $1,000,000 dollars and the INA Crown Chemical Umbrella Policy coverages would apply to the $4,000,000 of excess umbrella liability insurance provided by the OneBeacon Policy). Such a proposition is illogical and inconsistent with Crown-Metro's efforts originally to procure the entire $5,000,000 of umbrella coverage through one policy.

Consistent with Crown-Metro's intent for the OneBeacon Policy to be subject to the terms and conditions of the INA Crown-Metro Umbrella Policy, Crown-Metro forwarded to OneBeacon a copy of the INA Crown-Metro Umbrella Policy, not the expired INA Crown Chemical Umbrella Policy (the INA Crown-Metro Policy was the renewal of the expired INA Crown Chemical Policy). Mr. Puccio used the INA Crown-Metro Umbrella Policy to prepare the OneBeacon Policy, but he mistakenly included the reference to the "old" or expired INA policy rather than the INA Policy which was then in effect. The INA Crown Chemical Umbrella Policy to which Emhart claims the OneBeacon Policy is subject to was never even considered by Mr. Puccio. The INA Crown Chemical Umbrella Policy was expired and it was not Mr. Puccio's practice, or the custom and practice in the insurance industry, to write excess coverage subject to

the terms and conditions of an expired policy.[6] If Crown-Metro wanted OneBeacon to underwrite a policy that was subject to the terms and conditions of the expired INA Crown Chemical Policy, then it would have provided it to OneBeacon.[7] It is undisputed that the only policy that OneBeacon was given was the INA Crown-Metro Umbrella Policy.

B. The Reformed OneBeacon Policy Incorporates The Absolute Pollution Exclusion Which Was Endorsement No. 5 To The INA Crown-Metro Umbrella Policy And As Such, There Is No Coverage For Emhart's Loss.

1. The OneBeacon Policy can be amended only by an endorsement to the OneBeacon Policy.

After reformation, Emhart seeks to amend the OneBeacon Policy through an endorsement to the INA Crown-Metro Umbrella Policy, agreed to between Crown-Metro and INA **after the OneBeacon Policy was issued**. The terms of the OneBeacon Policy prohibit amending the policy in that fashion. The OneBeacon Policy incorporates the condition of the INA Crown-Metro Umbrella Policy ("... nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy") allowing policy changes **only** by endorsement to the OneBeacon Policy. The OneBeacon Policy was never amended by endorsement to replace the broad pollution exclusion incorporated into the OneBeacon Policy as issued (Endorsement No. 5) with the narrower Endorsement No. 6 exclusion. Therefore, upon reformation of the OneBeacon Policy to incorporate the terms and conditions of the INA Crown-Metro Umbrella

[6] OneBeacon would not have issued excess umbrella insurance to a chemical company such as Crown-Metro without the existence of an absolute pollution exclusion, which was present in the INA Crown-Metro Umbrella Policy, but not in the INA Crown Chemical Umbrella Policy.

[7] However, Vincent Puccio and OneBeacon would not have agreed to underwrite such coverage.

Policy, OneBeacon is entitled to a ruling, as a matter of law, that the OneBeacon Policy includes only Endorsement No. 5.[8]

2. Modification or amendment of an insurance policy requires the agreement of the insurer and the insured.

An insurance contract is created according to the same principles as any other contract, requiring "a manifestation of mutual assent in the form of an offer by one party which is accepted by the other party." *Goucher v. John Hancock Mutual life Ins. Co.*, 113 R.I. 672, 676, 324 A.2d 657, 660 (1974); *see also J.M.P.H. Wetherell v. Sentry Reinsurance, Inc.,* 743 F. Supp. 1157, 1170 (E.D.Pa 1990). Based upon this principle, an insurance policy cannot be changed or modified without the consent of both the insurer and the insured. *J.M.P.H. Wetherell,* 743 F. Supp. at 1170 - 1171 (unilateral attempt to alter the expiration date of a contract not effective without agreement of both parties to the contract); *Anderson v. American Standard Ins. Co. of Wisconsin,* 293 N.W.2d 878, 883 (N.D. 1980)("an endorsement proposed by one party only, and not consented by the other, will not effect a modification of the insurance policy."). A leading insurance treatise states this rule succinctly:

> A modification which will bind the parties must be based upon all the elements required to initially make a binding contract of insurance; and no revision or alteration of an existing contract of insurance can be regarded as effective where the parties have not agreed thereto prior to the loss.

Couch on Insurance, 3d § 25:16.

---

[8] Emhart argued in its October 9, 2006 Memorandum regarding the form of the pollution exclusion that other "[c]ourts have held that an insurer that issues a policy following form to an underlying policy is bound by retroactive modifications of the underlying policy." The cases cited by Emhart do not support this position. Rather, these cases address the situation where the underlying policy was changed by reformation to correct a mistake upon which the excess insurer did not rely. Here, Emhart seeks to materially change the OneBeacon Policy by applying a voluntary amendment (which does not relate to a prior mistake) entered into by the underlying insurer after the OneBeacon Policy was issued.

OneBeacon did not agree to the replacement of Endorsement No. 5 with Endorsement No. 6. Indeed, neither Crown-Metro nor anyone acting on its behalf asked ESLIC to replace Endorsement No. 5 with a different exclusion.[9] Therefore, upon reformation of the OneBeacon Policy to incorporate the terms and conditions of the INA Crown-Metro Umbrella Policy (as it was in effect on May 16, 1969), OneBeacon is entitled to a ruling, as a matter of law, that the OneBeacon Policy includes only Endorsement No. 5.

3. Modification or amendment of an insurance policy requires adequate consideration.

A further manifestation of the rule that insurance policies are created and governed by the same rules regarding the creation and modification of contracts in general is that an amendment or modification of a policy must be supported by adequate consideration. *J.M.P.H. Wetherell*, 743 F. Supp. at 1170 ("A change or modification of a contract must be supported by consideration."). Here, the policy modification advanced by Emhart is the replacement of a broadly worded pollution exclusion, applicable "to any claim for damages arising out of contamination or pollution of land, air, water or real or personal property," with a narrower exclusion applicable to damage caused by the discharge of "waste products, fluids or materials." No evidence exists of any reduction in premium or other consideration from Crown-Metro to OneBeacon for any such amendment or modification of the OneBeacon Policy. Therefore, upon reformation of the OneBeacon Policy to incorporate the terms and conditions of the INA Crown-Metro Umbrella Policy (as it was in effect on May 16, 1969), OneBeacon is entitled to a ruling, as a matter of law, that the OneBeacon Policy includes only Endorsement No. 5.

[9] OneBeacon would not have agreed to replace Endorsement No. 5.

4. Emhart's claims against OneBeacon are precluded by the terms of Endorsement No. 5 to the INA Crown-Metro Umbrella Policy which was incorporated into the OneBeacon Policy.

Emhart's claims were for damages arising out of contamination or pollution to land, air, water or other real or personal property. Endorsement No. 5 to the INA Crown-Metro Umbrella Policy, the terms of which were incorporated into the OneBeacon Policy, is an absolute pollution exclusion which provides that the insurance afforded by the OneBeacon Policy did not apply to such a loss. Accordingly, Emhart's claims against OneBeacon are precluded by the terms of Endorsement No. 5 to the INA Crown-Metro Umbrella Policy which was incorporated into the OneBeacon Policy.

## IV. CONCLUSION

The Court should enter judgment as follows:

1. The OneBeacon Policy is reformed to be subject to the terms and conditions of the INA Crown-Metro Policy (Policy No. XBC 46961) as that Policy was in effect on May 16, 1969;

2. The OneBeacon Policy incorporates Endorsement No. 5 to the Crown-Metro Umbrella Policy which is an absolute pollution and contamination exclusion and which provided as follows:

> (Except with respect to the products hazard), such insurance as is afforded by this policy or any other endorsement thereto shall not apply to any claim for damages arising out of contamination or pollution to land, air, water or other real or personal property.; and

3. Emhart's claims against OneBeacon are precluded by the terms of Endorsement No. 5 to the INA Crown-Metro Umbrella Policy (Policy No. XBC 46961) which was incorporated into the OneBeacon Policy.

**ONEBEACON AMERICA INSURANCE COMPANY**
By its Attorneys,

/s/ Kelly N. Michels
James T. Murphy #1698
Kelly N. Michels #6478
HANSON CURRAN LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Kevin J. O'Connor
Peter C. Netburn
Michael S. Batson
HERMES, NETBURN, O'CONNOR
& SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110
(617) 728-0050
(617) 728-0052 (f)

Dated: January 12, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 12, 2007.

/s/ *Kelly N. Michels*
Kelly N. Michels

G:\DOCS\PCN\Cavell-OneBeacon\Emhart\trial brief.doc

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br>Plaintiff,<br>v.<br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY,<br>Defendants. | CIVIL ACTION NO.: 02-053S |

**ONEBEACON AMERICA INSURANCE COMPANY'S**
**REQUEST FOR FINDINGS OF FACT (REFORMATION ISSUES)**

Pursuant to Federal Rule of Civil Procedure 52, OneBeacon America Insurance Company ("OneBeacon") requests that the Court make the following findings of fact with respect to the reformation issues tried to the Court in the above-captioned matter:

1. OneBeacon is a successor to Employers' Surplus Lines Insurance Company ("ESLIC"). September 8, 2006 Stipulation of Facts ("Stipulation") at ¶ 3.

2. In the mid-1960s, the Employers' Group of companies purchased the Commercial Union Insurance Companies and became known as Employers' Commercial Union. October 11, 2006 Trial Testimony of Vincent A. Puccio (Vol. 16), p. 14, line 6 – p. 15, line 3 ("Puccio at p. ___( )").[1]

[1] A true copy of the October 11, 2006 trial testimony of Vincent A. Puccio is attached as Tab "A" to the Appendix in Support of OneBeacon's Requests for Findings of Fact and Rulings of Law (Reformation Issues).

3. ESLIC was part of the Employers' Commercial Union Group. Puccio at p. 4(19)–p. 15(3).

4. ESLIC issued Excess Umbrella Policy No. S-16-07084 to Crown Metro Inc. ("Crown-Metro") which was in effect during the period from April 24, 1969 to January 1, 1970 (the "OneBeacon Policy"). Stipulation at ¶ 7; Defendants' Exhibit 551 at OBA0377 ("DX 551 at OBA ____").[2]

5. The OneBeacon Policy was an excess umbrella liability policy which had limits of $4,000,000 in excess of $1,100,000. Stipulation at ¶ 7.

6. Vincent Puccio was the Employers' Commercial Union underwriter for the OneBeacon Policy. Puccio at p. 23(8–12).

7. By letter dated March 21, 1969, George M. Bushnach ("Bushnach") of Maurice H. Saval ("Saval") requested a price quotation from Vincent Puccio of ESLIC for a $5,000,000 umbrella liability policy, subject to a self-insured retention of $10,000, with respect to Crown-Metro. Puccio at p. 24(5–9); Puccio at p. 26(6–10); DX 551 at OBA0028.

8. Saval was a wholesale broker that arranged to place business for a retail agent or retail broker. Puccio at p. 24(10–18).

9. Saval was placing business on behalf of Laren Insurance Agency in Providence, Rhode Island ("Laren"). Laren, in turn, was Crown-Metro's broker. Puccio at p. 25(17–24).

10. Puccio, on behalf of ESLIC, provided price quotations for a $5,000,000 and a $1,000,000 Crown-Metro umbrella liability policy to Bushnach on April 15, 1969. Puccio at p. 30(2–12); DX 551 at OBA 0028.

---

[2] Defendants' Exhibit 551 is attached as Tab "B" to the Appendix in Support of OneBeacon's Requests for Findings of Fact and Rulings of Law (Reformation Issues). Defendants' Trial Exhibit 551 was admitted in full. Puccio at p. 7(16).

11. Crown-Metro did not accept ESLIC's umbrella liability price quotations. Puccio at p. 30(24)–p. 31(1).

12. ESLIC did not issue an umbrella liability policy to Crown-Metro. Id.; Stipulation at ¶ 7.

13. After Crown-Metro did not accept Vincent Puccio's April 15, 1969 umbrella quotations, Bushnach of Saval, on behalf of Laren and Crown-Metro, sought excess umbrella liability coverage in the amount of $4,000,000 excess of $1,000,000 umbrella liability coverage from ESLIC. Puccio at p. 31(2– 9); DX 551 at OBA 0027.

14. On May 9, 1969, Bushnach sent Vincent Puccio a copy of Insurance Company of North America ("INA") Excess Blanket Catastrophe Liability Policy No. XBC 46961 issued to Crown-Metro (the "INA Crown-Metro Umbrella Policy"). Puccio at p. 3(4)–p. 33(19); DX 551 at OBA 0014–OBA 0024.

15. The INA Umbrella Crown-Metro Policy, as issued, was for the policy period December 1, 1968 to February 15, 1970 and had limits of $1,000,000 excess of Crown-Metro's primary insurance. DX 551 at OBA 0018.

16. The INA Crown-Metro Umbrella Policy was issued on May 2, 1969. DX 551 at OBA 0018.

17. The INA Crown-Metro Umbrella Policy Declarations Page contained various information, including the policy number assigned to the INA Crown-Metro Umbrella Policy and the policy number of the "old" or expired INA policy, Policy No. XBC 64674, which had been issued to Crown Chemical Corporation (the "INA Crown Chemical Umbrella Policy"). Puccio p. 36(18–23); DX 551 at OBA 0018; Plaintiff's Exhibit No. 4.[3]

---

[3] A true copy of Plaintiff's Exhibit No. 4 is attached as Tab "C" to the Appendix in Support of OneBeacon's Requests for Findings of Fact and Rulings of Law (Reformation Issues).

18. The policy numbering found on the INA Crown-Metro Umbrella Policy is unusual in the industry because the policy number assigned to the INA Crown-Metro Umbrella Policy was lower than the "old" or expired INA Crown Chemical Umbrella Policy. Typically, policy numbers are assigned in sequence (i.e., newer policies are assigned higher or larger numbers than had been assigned to expired or earlier policies). Puccio at p. 36(18)–p. 37(9).

19. The INA Crown-Metro Umbrella Policy, as issued and as provided to ESLIC, contained five endorsements. DX 551 at OBA 0014–0024, 0027.

20. Endorsement No. 5 to the INA Crown-Metro Umbrella Policy was an absolute pollution and contamination exclusion which provided as follows:

> (Except with respect to the products hazard), such insurance as is afforded by this policy or any other endorsement thereto shall not apply to any claim for damages arising out of contamination or pollution to land, air, water or other real or personal property.

Puccio at p. 37(10–21); DX 551 at OBA 0018 and OBA 0023.

21. Vincent Puccio relied upon the INA Crown-Metro Umbrella Policy Endorsement No. 5 absolute pollution and contamination exclusion when he underwrote the OneBeacon Policy. Puccio at p. 37(22–24).

22. ESLIC would not have issued excess umbrella liability insurance to a chemical company such as Crown-Metro without the existence of an absolute pollution exclusion. Puccio at p. 58(9-18) and p. 59(14-25).

23. Vincent Puccio prepared the Daily Report for the OneBeacon Policy by hand, filling in the requisite information on a preprinted form. Puccio at p. 39(21)–p. 40(11); DX 551 at OBA 0010.

24. A typed version of Vincent Puccio's handwritten Daily Report was created and the information that Vincent Puccio had filled onto the preprinted form was transferred to the typed document. Puccio at p. 43(25)–p. 44(8); DX 551 at OBA 0010 and OBA 0377.

25. The handwritten Daily Report for the OneBeacon Policy, which was subsequently transferred to the typed declarations, indicated, incorrectly, that the OneBeacon Policy was to be subject to the terms and conditions of INA Policy No. XBC 64674 (i.e., the INA Crown Chemical Policy). DX 551 at OBA 0010 and OBA 0377.

26. Vincent Puccio intended the OneBeacon Policy to be subject to the terms and conditions of the then-current underlying umbrella policy (i.e., the INA Crown-Metro Umbrella Policy XBC 46961). Puccio at p. 41(18)–p. 44(22); Puccio at p. 45(20-24).

27. The OneBeacon Policy was intended to be subject to the terms and conditions of the INA Crown-Metro Umbrella Policy, as that policy was in effect on May 16, 1969 and as reflected on the Declarations Page found at DX 551 at OBA 0018.

28. Vincent Puccio made a mistake when he handwrote the underlying INA policy information on the ESLIC Daily Report form for the OneBeacon Policy. Specifically, Vincent Puccio copied the wrong INA umbrella policy number onto the ESLIC Daily Report. Vincent Puccio meant to copy the policy number of the then-current INA umbrella policy (i.e., the INA Crown-Metro Umbrella Policy). Instead, he copied the number of the "old" or expired INA Crown Chemical Umbrella Policy number onto the ESLIC Daily Report form. Puccio at p. 41(18)–p. 44(22); Puccio at p. 45(20-24).

29. The OneBeacon Policy contained a copying or scrivener's error in that it mistakenly purported to incorporate the terms of the INA Crown Chemical Umbrella Policy, rather than the INA Crown-Metro Umbrella Policy.

30. It was contrary to Vincent Puccio's practice to write excess umbrella liability coverage subject to the terms and conditions of an expired umbrella liability policy. Puccio at p. 45(25)–p. 46(16).

31. It was contrary to the custom and practice in the industry to write excess umbrella liability coverage subject to the terms and conditions of an expired umbrella policy. Puccio at p. 46(17)–p. 47(3).

32. It was Vincent Puccio's universal practice, and custom and practice in the insurance industry, to write excess umbrella liability coverage subject to the terms and conditions of the current underlying umbrella policy. Puccio at p. 45(25)-47(3).

33. The INA Crown Chemical Umbrella Liability Policy was issued to Crown Chemical Corporation. Puccio at p. 47(4–17); Plaintiff's Exhibit No. 4.

34. The OneBeacon Policy insured Crown-Metro. Stipulation at ¶ 7.

35. The OneBeacon Policy issued to Crown-Metro contains the following language:

> Employers' Surplus Lines Insurance Company...AGREES WITH THE INSURED named below in consideration of the payment of premium and, except as herein provided, subject to all the terms and conditions and Policy No. XBC64674 [sic] issued by I.N.A.
>
> To:
>
> Item 1. INSURED: Crown Metro Inc. ...

DX 551 at OBA 0377.

36. The INA policy described in the OneBeacon Policy does not exist. No policy number XBC 64674 was issued to Crown-Metro. Only the INA Crown-Metro Umbrella Policy, Policy No. XBC 46961, was issued to Crown-Metro. DX 551 at OBA 0018; Plaintiff's Exhibit 4.

37. It would have been very unusual (i.e., unheard of or not done) for a broker to request that an excess umbrella liability underwriter issue excess umbrella liability coverage subject to the terms and conditions of an expired umbrella policy. Puccio at p. 47(20)–p. 48(3).

38. Neither Saval nor Crown-Metro requested that ESLIC issue excess umbrella liability coverage subject to the terms and conditions of an expired INA umbrella policy (i.e., the INA Crown Chemical Umbrella Policy). Puccio at p. 48(4–7); DX 551.

39. If there were material changes made to the umbrella liability policy underlying an excess umbrella liability policy, after the excess umbrella liability policy had been issued, then it was the custom and practice in the industry for the umbrella liability insurer to notify the excess umbrella liability insurer. Puccio at p. 48(8-13); Puccio at p. 51(24)–p. 52(8).

40. As an excess umbrella liability underwriter at ESLIC, Vincent Puccio would not automatically accept material changes made by the underlying umbrella liability insurer after the ESLIC excess umbrella liability coverage had been issued. Puccio at p. 48(8-18).

41. It was the custom and practice in the industry that excess umbrella liability insurers would not automatically accept changes in coverage adopted by the underlying umbrella liability insurer after the excess umbrella liability insurer had issued its coverage. Puccio at p. 49(6)-p. 52(22).

42. By letter dated May 16, 1969, Vincent Puccio of ESLIC sent to Bushnach at Saval an original and two copies of the OneBeacon Policy. Puccio at p. 52(23)–p. 53(13); DX 551 at OBA 0376.

43. By letter dated July 3, 1969, Bushnach sent to Vincent Puccio a copy of an Endorsement No. 6 entitled "Exclusion of Waste Products" which had been added to the INA

Crown-Metro Umbrella Policy effective December 1, 1968. Puccio at p. 53(14)–p. 54(5); DX 551 at OBA 0001–0002.

44. Endorsement No. 6 to the INA Crown-Metro Umbrella Policy stated as follows:

> It is agreed that Endorsement #5, Pollution Contamination Exclusion Endorsement is deleted.
>
> It is further agreed that this policy shall not apply to:
>
> 1.) Injury to or destruction of property caused by intentional or willful introduction of waste products, fluids or materials, including oil refuse, gas or gas bleed water, into any soil or island or title waters, irrespective of whether the insured possessed knowledge of the harmful effects of such acts.

The Endorsement indicated further that it was issued to "Crown-Metro, et al, per Named Insured Endorsement" and it indicated that a copy was sent to Insurance Underwriters, Inc. on June 19, 1969. DX 551 at OBA 0002.

45. Endorsement No. 6 was a material change to the INA Crown-Metro Umbrella Policy because it eliminated the absolute pollution exclusion and replaced it with an exclusion that was more favorable to the insured. Puccio at p. 55(1)–p. 56(2).

46. Neither Crown-Metro nor anyone acting on its behalf asked ESLIC to replace Endorsement No. 5 with a different exclusion. Puccio at p. 57(13-15).

47. ESLIC was not asked to amend the OneBeacon Policy so as to accept Endorsement No. 6 to the INA Crown-Metro Umbrella Policy. Puccio at p. 57(13–15).

48. Vincent Puccio would not have accepted Endorsement No. 6 to the INA Crown-Metro Umbrella Policy. Puccio at p. 58(9–18) and p. 59(14–25).

49. The OneBeacon Policy incorporates the condition of INA Crown-Metro Umbrella Policy which provides that:

> Notice to any agent or knowledge possessed by any other agent or by any other person shall not effect a waiver or a change of any part of this policy or estop [OneBeacon] from asserting any rights under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

DX 551 at OBA 0016.

50. The OneBeacon Policy can be amended only be an endorsement to the OneBeacon Policy. DX 551 at OBA 0377 and OBA 0016.

51. The OneBeacon Policy was not subject to Endorsement No. 6 to the INA Crown-Metro Umbrella Policy.

**ONEBEACON AMERICA INSURANCE COMPANY**
By its Attorneys,

/s/ Kelly N. Michels
James T. Murphy #1698
Kelly N. Michels #6478
HANSON CURRAN LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Kevin J. O'Connor
Peter C. Netburn
Michael S. Batson
HERMES, NETBURN, O'CONNOR & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110
(617) 728-0050
(617) 728-0052 (f)

Dated: January 12, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 12, 2007.

/s/ Kelly N. Michels
Kelly N. Michels

G:\DOCS\PCN\Cavell-OneBeacon\Emhart\Request for Findings of Fact.doc

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | CIVIL ACTION NO. 02-053S |

**ONEBEACON AMERICA INSURANCE COMPANY'S**
**REQUEST FOR RULINGS OF LAW (REFORMATION ISSUES)**

Pursuant to Federal Rule of Civil Procedure 52, OneBeacon America Insurance Company ("OneBeacon") requests that the Court make the following rulings of law with respect to the reformation issues tried to the Court in the above-captioned matter:

A. Reformation of the OneBeacon Policy

1. An insurance policy must be reformed to correct a copying or scrivener's error if the policy issued does not set forth what was agreed to and what was intended by the parties. *Board of Trustees of the University of Illinois v. Ins. Corp. of Ireland, Ltd.*, 969 F.2d 329, 334-335 (7th Cir. 1992); *Reynolds v. Farmers Ins. Co. of Washington,* 90 Wash. App. 880, 885, 960 P.2d 432, 434 (1998); *Cincinnati Ins. Co. v. Fred S. Post, Jr. Co.*, 747 S.W.2d 777, 781-782 (Tenn. 1988); *Couch on Insurance,* 3d § 27:27; *Farnsworth on Contracts,* 3d § 7.5.

2. An insurance policy will be reformed to correct a mutual mistake if the policy issued does not set forth what was agreed to and what was intended by the parties. *See Associates in Anesthesia v. Mut. Benefit Life Ins. Co.*, 504 A.2d 477, 478 (1986); *Ferla v. Commercial Cas. Inc. Co.*, 59 A.2d 714, 716 (1948).

3. Employers' Surplus Lines Insurance Company Excess Umbrella Policy No. S-16-07084 (the "OneBeacon Policy") issued to Crown Metro Inc. ("Crown-Metro") contained a copying or scrivener's error in that it mistakenly referred to the terms and conditions of Insurance Company of North America Excess Blanket Catastrophe Liability Policy No. XBC 64674 (the "INA Crown Chemical Umbrella Policy").

4. The OneBeacon Policy was intended by OneBeacon and Crown-Metro to be subject to the terms and conditions of Insurance Company of North America Excess Blanket Catastrophe Liability Policy No. XBC 46961 (the "INA Crown-Metro Umbrella Policy"), as that policy was in effect on May 16, 1969 and as reflected on the Declarations Page found at DX 551 at OBA 0018.

5. The OneBeacon Policy is reformed to be subject to the terms and conditions of the INA Crown-Metro Umbrella Policy, as that policy was in effect on May 16, 1969 and as reflected by the Declarations Page found at DX 551 at OBA 0018.

B. The Applicable Pollution Exclusion

6. The OneBeacon Policy incorporates the condition of INA Crown-Metro Umbrella Policy which provides that:

> Notice to any agent or knowledge possessed by any other agent or by any other person shall not effect a waiver or a change of any part of this policy or estop [OneBeacon] from asserting any rights under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

7. The OneBeacon Policy can be amended only by an endorsement to the OneBeacon Policy.

8. The OneBeacon Policy incorporates Endorsement No. 5 to the INA Crown-Metro Umbrella Policy which was an absolute pollution and contamination exclusion and which provided as follows:

> (Except with respect to the products hazard), such insurance as is afforded by this policy or any other endorsement thereto shall not apply to any claim for damages arising out of contamination or pollution to land, air, water or other real or personal property.

9. The OneBeacon Policy was never amended to delete or to replace the Endorsement No. 5 pollution exclusion and contamination incorporated into the OneBeacon Policy from the INA Crown-Metro Umbrella Policy.

10. An insurance contract is created according to the same principles as any other contract, requiring a manifestation of mutual assent in the form of an offer by one party which is accepted by another party. *Goucher v. John Hancock Mut. Life Ins. Co.,* 113 R.I. 672, 676, 324 A.2d 657, 660 (1974); *J.M.P.H. Wetherell v. Century Reinsurance Inc.,* 743 F. Supp. 1157, 1170 (E.D.Pa.1990).

11. An insurance policy cannot be changed or modified without the consent of both the insurer and insured. *J.M.P.H. Wetherell,* 743 F. Supp. at 1170, 1171; *Anderson v. American Standard Ins. Co. of Wisconsin,* 293 N.W.2d 878, 883 (N.D. 1980).

12. A modification that will bind the parties must be based upon all of the elements required to initially make a binding contract of insurance; and no revision or alteration of an existing contract of insurance can be regarded as effective when the parties have not agreed thereto. *Couch on Insurance,* 3d § 25:16.

13. OneBeacon did not agree to replace Endorsement No. 5 incorporated into the OneBeacon Policy from the INA Crown-Metro Umbrella Policy with Endorsement No. 6 that INA agreed to add to the INA Crown-Metro Umbrella Policy.

14. Neither Crown-Metro nor anyone acting on its behalf asked Employers' Surplus Lines Insurance Company to replace Endorsement No. 5 with a different exclusion

15. An amendment or modification to a policy of insurance must be supported by adequate consideration. *J.M.P.H. Wetherell,* 743 F. Supp. at 1170.

16. Endorsement No. 6 to the INA Crown-Metro Umbrella Policy is narrower than was Endorsement No. 5 which it replaced (i.e., Endorsement No. 6 provided broader coverage to Crown-Metro).

17. There is no evidence of any reduction in premium or other consideration from Crown-Metro to OneBeacon for such an amendment or modification to the OneBeacon Policy.

18. The claim at issue in this lawsuit was for damages arising out of contamination or pollution to land, air, water or other real or personal property.

19. Emhart Industries, Inc.'s claims against OneBeacon are precluded by the terms of Endorsement No. 5 to the INA Crown-Metro Umbrella Policy which was incorporated into the OneBeacon Policy.

**ONEBEACON AMERICA INSURANCE COMPANY**
By its Attorneys,

/s/ Kelly N. Michels
James T. Murphy #1698
Kelly N. Michels #6478
HANSON CURRAN LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Kevin J. O'Connor
Peter C. Netburn
Michael S. Batson
HERMES, NETBURN, O'CONNOR & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110
(617) 728-0050
(617) 728-0052 (f)

Dated: January 12, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 12, 2007.

*/s/ Kelly N. Michels*
Kelly N. Michels

G:\DOCS\PCN\Cavell-OneBeacon\Emhart\rulings of law.doc