UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC., Plaintiff, v. HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY, Defendants. | CIVIL ACTION NO.: CA 02-053S |

**ONEBEACON AMERICA INSURANCE COMPANY'S REPLY TO EMHART INDUSTRIES, INC.'S POST-TRIAL REFORMATION MEMORANDUM**

## I. INTRODUCTION

Because it cannot dispute the simple fact that Vincent Puccio copied the wrong policy number when he filled in the preprinted Daily Report form, Emhart is attempting to convince the Court that the law does not allow reformation for an obvious scrivener's error. Emhart's position on this issue is based upon a misstatement of the applicable law and a distortion of the evidence presented at trial. Emhart would have the Court believe that this simple, common sense and uniformly accepted legal principle does not exist in Rhode Island. However, Emhart's advocating the position does not make it so.

Unable to find any law to supports its position, Emhart seeks to have the Court apply an incorrect legal standard for reformation by citing cases that do not involve a scrivener's error. These cases are distinguishable and reformation is warranted because an unintentional copying

error resulted in the OneBeacon Policy having terms that were different from those which were agreed to by the parties.

Emhart attempts to argue further that OneBeacon has failed to demonstrate a scrivener's error by mischaracterizing Mr. Puccio's testimony. Vincent Puccio admitted that he made a mistake. He could not have been more clear.

Finally, Emhart's arguments regarding the form of the pollution exclusion contained in the reformed OneBeacon Policy ignore basic principles of contract construction and the express language of the OneBeacon Policy.

## II. ARGUMENT

### A. Emhart Applies An Incorrect Reformation Standard And Mischaracterizes The Evidence.

#### 1. A copying error resulting from an unintentional mistake should be reformed.

Emhart maintains that "well settled principles of Rhode Island law," require OneBeacon to demonstrate a mutual mistake in order to warrant reformation of its insurance policy. Emhart argues that Rhode Island courts have rejected reformation claims where there is only evidence of a unilateral mistake. Emhart cites a string of Rhode Island case law that it claims supports its position. However, none of the cases cited by Emhart involve a scrivener's error resulting in a presumption of the parties' mutual mistake.[1] The cases cited by Emhart involve facts very different from the facts in this case.

[1] Among other cases, Emhart cites *McEntee v. Davis*, 861 A.2d 459 (2004), *Hopkins v. Equitable Life Assurance Society*, 107 R.I. 679, 270 A.2d 915 (1970), *Associates in Anesthesia, Inc. v. Mut. Benefit Life Ins. Co.*, 504 A.2d 477 (1986), *Fleet Nat'l Bank v. 175 Post Road LLC*, 851 A.2d 267 (2004) and *Vanderford v. Kettelle*, 75 R.I. 130, 64 A.2d 483 (1949). *McEntee* is a mutual mistake case arising out of a surveying error, not a copying or scrivener's error. 851 A.2d at 463-66. *Hopkins* is a mutual mistake case that has nothing to do with a copying or scrivener's error. Rather, the case involved "the employer's failure to ascertain who was then the existing designee" and a mistake "by Walter who signed the enrollment card." (i.e., a mutual mistake). 107 R.I. at 685. In *Associates in Anesthesia*, the reformation issue had been rendered moot; however, the court stated that reformation of a contract (Footnote continued on next page)

Emhart suggests incorrectly that Rhode Island law requires proof of a mutual mistake where the error is of the type that might be characterized as a scrivener's error. Emhart places heavy reliance of the case of *Diman v. Providence, Warren & Bristol R.R. Co*, 5 R.I. 130, 1858 WL 2576 (1858). However, and as with the other cases cited by Emhart, *Diman* does not involve a scrivener's error. In fact, no Rhode Island case has ever addressed the reformation of a writing based on a scrivener's error.

In *Diman*, the plaintiff sought to reform an agreement contained in a subscription book. The plaintiff claimed that *he* inadvertently wrote a number in the subscription book that did not accurately reflect *his* intended investment. Upon learning of the error, the plaintiff sought to have the writing reformed to express *his* true intention. The court refused to allow reformation because the plaintiff had failed to demonstrate a mutual mistake that caused the writing to express something other than the parties' true intentions. *Diman*, 5 R.I. at 130-31.

As an initial matter, the court in *Diman* recognized its authority to correct a writing "executed as evidence of [an] agreement, so as to make it express what the parties actually agreed to." *Diman*, 5 R.I. at 134. The court refused reformation; however, because the plaintiff had not shown that the writing, as drafted, failed to convey the intent of either party to the contract *Diman*, 5 R.I. at 134.

---

generally requires evidence of a mutual mistake. As with *Hopkins*, the case did not involve a copying or scrivener's error. 504 A.2d at 478. In *Fleet Nat'l Bank*, the court refused to reform a purchase and sales agreement because the seller had only demonstrated evidence of a unilateral mistake as to the nature and extent of the work to be performed. 851 A.2d at 274-75. *Fleet Nat'l Bank* did not involve an allegation of a scrivener's or copying error in the purchase and sales agreement. In *Vanderford v. Kettelle*, the court refused to reform a deed to land without evidence that, by mutual mistake, the writing failed to express the parties' intended agreement in some material respect. *Vanderford* did not involve a scrivener's or copying error; rather, it was alleged that the owner of the property simply misidentified the applicable boundary lines (a factual error) when creating the deed. 75 R.I. at 141-43.

*Diman* is facially distinguishable from this case. *Diman* did not involve an error by a scrivener.[2] Rather, the error was truly unilateral and flowed directly from the plaintiff's own negligence. Here, the error in the insurance policy resulted from Mr. Puccio's copying of the incorrect policy number. Mr. Puccio was a scrivener; the plaintiff in *Diman* was not. *Diman* is not applicable to the specific facts of this case.

OneBeacon has shown by clear and convincing evidence that Mr. Puccio committed a scrivener's error when he wrote the incorrect number on the OneBeacon Policy. To the extent that it is necessary, the mutuality of mistake is presumed and the OneBeacon Policy should be reformed. *Couch on Insurance*, 3d § 27:28.[3]

2. OneBeacon's underwriting evidence is compelling.

Emhart contends that the evidence is insufficient to find that Mr. Puccio committed a scrivener's error. Emhart mischaracterizes the evidence, including the testimony of Mr. Puccio.[4] The undisputed evidence demonstrates that Mr. Puccio made a mistake in May of 1969 when he

---

[2] A scrivener is defined as: "[a] writer, scribe; conveyancer. One whose occupation is to draw contracts, write deeds and mortgages, and prepare other species of written instruments…" BLACK'S LAW DICTIONARY 937 (6th ed. 1991).

[3] As indicated in *Couch*:

> Simply stated, mutuality of mistake is not necessary, where the mistake is due to a clerical error of the scrivener, in which event relief may be had at the suit of either party, since the scrivener's negligence is not attributable to either party, even though he or she was the agent of the insurer. Many cases have recognized that, in essence, the justification for allowing reformation is that the mistake is, in fact, mutual in the sense that the result is not what either party intended.

*Id.* (citations omitted).

[4] For example, Emhart would have the Court believe that Mr. Puccio's testimony that he made a mistake when he prepared the OneBeacon Policy Daily Report was mere speculation. Nothing could be further from the truth. Mr. Puccio was clear and unequivocal that he made a mistake and that he copied the wrong INA policy number. Puccio at p. 41(18) – p. 44(22); Puccio at p. 45(20-24).

copied the number of the expired INA Crown Chemical Umbrella Policy instead of the number of the INA Crown-Metro Umbrella policy which was in effect at the time.[5]

The lynchpin of Emhart's attack on OneBeacon's reformation evidence is the "most logical inference" that Mr. Puccio issued the OneBeacon Policy on April 24, 1969, and that he would have had to have made the scrivener's error on that date. Emhart attempts to buttress its argument with Mr. Puccio's testimony that he would not back date coverage.[6] Relying on this assumption, Emhart maintains that Mr. Puccio could not have made the scrivener's error on April 24, 1969 because he was not yet in possession of the INA Crown-Metro Umbrella Policy from which he copied the incorrect number. Mr. Puccio was clear that he made a mistake in May of 1969, *after he received a copy of the INA Crown-Metro Umbrella Policy* from Mr. Busnach, when the OneBeacon Policy was issued.

Mr. Puccio testified that he would "never [issue] an excess umbrella policy unless [he] had the primary umbrella policy in [his] hands." Puccio at p. 84(7-9). He was adamant that he would wait for the underlying policy to come in before issuing the excess policy. Puccio at p. 83(20-21). He testified that here he received a request to provide $4,000,000 of excess umbrella liability coverage, excess of 1,000,000 of INA umbrella coverage to Crown-Metro on April 24, 1999. Puccio at p. 31(2-22). The OneBeacon Policy would have been *bound* on the date the request for coverage was made (i.e., April 24, 1969). Puccio p. 89(22). However, the Policy

---

[5] Emhart attempts to discredit Mr. Puccio's testimony by pointing out that the OneBeacon Policy, as reformed and if it had not been cancelled, would have afforded coverage pursuant to the terms and conditions of an expired policy because the INA Crown-Metro Umbrella Policy period ended February 15, 1970. This is irrelevant. Mr. Puccio did not testify that OneBeacon would not issue excess umbrella liability coverage that incorporated the terms and conditions of underlying umbrella coverage that would expire before the OneBeacon coverage expired as Emhart implies. Rather, Mr. Puccio testified that OneBeacon would not write excess umbrella liability coverage subject to the terms and conditions of an already expired umbrella liability policy.

[6] Mr. Puccio testified that he would not back date coverage of the excess umbrella policy to the effective date of the primary umbrella policy. Puccio at 89(16-20).

would not have been _issued_ "until after such time that [Mr. Puccio] received a copy of the [INA Crown-Metro Umbrella Policy] so that [he] could put the correct policy number on it." Puccio at p. 89(22-25).

The underwriting file indicates that Mr. Busnach sent a copy of the INA Crown-Metro Umbrella Policy to Mr. Puccio on May 19, 1969. DX 551 at OBA0027. Mr. Puccio testified that he received the INA Crown-Metro Policy, before he prepared the OneBeacon Policy Daily Report. Puccio at p. 32(16) – p. 33(19). After receiving the INA Crown-Metro Umbrella Policy, Mr. Puccio mistakenly copied the incorrect number from the declarations page onto the Daily Report. Puccio at p. 41(18) – p. 44(22); Puccio at p. 45(20-24). Mr. Puccio testified unequivocally that he made a mistake. *Id.*

The simple and undisputed evidence demonstrates that Mr. Puccio mistakenly copied the wrong INA policy number when he prepared and issued the OneBeacon Policy in May, not April, of 1969.

B. Emhart Ignores Basic Rules Of Contract Construction And The Express Language Of The OneBeacon Policy.

1. The OneBeacon policy could not be amended in the manner Emhart suggests.

Emhart argues that the reformed OneBeacon Policy would contain the INA Crown-Metro Umbrella Policy Endorsement No. 6, Waste Product Endorsement, and not the Endorsement No. 5, Absolute Pollution Exclusion. This is incorrect because the OneBeacon Policy was never endorsed to adopt Endorsement No. 6.

The OneBeacon Policy incorporates the condition of the INA Crown-Metro Umbrella Policy ("...nor shall the terms of this policy be waived or changed, except by endorsement issued

to form a part of this policy").[7] Pursuant to this condition, modifications to the OneBeacon Policy can be made only by endorsement to the OneBeacon Policy.[8] The OneBeacon Policy was never amended by endorsement to replace the Absolute Pollution Exclusion incorporated into the OneBeacon Policy as issued with the narrower Waste Products Exclusion. Therefore, upon reformation the OneBeacon Policy will include the Absolute Pollution Exclusion.

2. The cases cited by Emhart do not apply to the specific facts of this case.

Among other cases,[9] Emhart cites *Public Util. Dist. No. 1 v. Int'l Ins. Co.*, 881 P.2d 1020 (1994) for the proposition that OneBeacon was bound by the retroactive modification of the INA Crown-Metro policy deleting the Absolute Pollution Exclusion and substituting the Waste Products Exclusion. Emhart's reliance on *Public Utility* is misplaced.

In *Public Utility*, the excess insurer, International, conceded that its policy followed form to the initial terms of the underlying policy, but argued that its policy did not incorporate an errors and omissions clause added several months after the International policy was written. *Public Utility*, 881 P.2d at 1025. The court rejected International's argument. In support of its decision, the court found that after scrutinizing the underlying policy, International could have

---

[7] Mr. Puccio testified the he intended to incorporate into the OneBeacon Policy all of the provisions of the underlying policy in effect at the time he quoted the form, including the "changes" provision. Puccio at 86(1-11).

[8] The OneBeacon Policy is subject to the terms and conditions of the underlying INA Crown-Metro Umbrella Policy (i.e., unless otherwise noted, it adopts the specific language of that policy). As it relates to the "changes" condition, Emhart would have the Court construe this to mean that the OneBeacon Policy can be modified "by endorsement issued to form a part of this policy," referring to the INA Crown-Metro Umbrella Policy. This is a tortured reading of the changes condition that would have the OneBeacon Policy incorporate the language of the INA condition, but have the word "policy" refer to another document.

[9] Emhart also cites *Great Atl. Ins. Co. v. Liberty Mut. Ins. Co.*, 773 F.2d 976 (8th Cir. 1985) and *Broadhead v. Hartford Cas. Ins. Co.*, 773 F. Supp. 882 (S.D. Miss. 1991). Both cases are distinguishable from the case at bar. In *Great Atlantic*, the court allowed a retroactive modification of the insurance policy to rectify a clerical error regarding agreed upon territorial limitations on coverage. 773 F.2d at 977-81. In *Broadhead*, retroactive modification of the insurance policy was allowed where an agreement regarding the scope of coverage was reached, but the insurer failed to formally endorse the policy to reflect the agreement prior to the loss. 773 F. Supp. at 910-15. In addition, and unlike in this case, neither of the insurers issued their policies in reliance on an exclusion contained in the underlying policies which was subsequently modified by retroactive endorsement.

chosen to expressly exclude from its coverage the terms of the underlying policy providing for amendment by endorsement. Because International chose not to include such an express exclusion to its coverage, it was bound by the retroactive endorsement. *Public Utility*, 881 P.2d at 1026-27.

This case is distinguishable from *Public Utility* in two respects. First, in *Public Utility*, the excess insurer did not rely on the errors and omissions clause contained in the underlying policy because that clause was not added until several months after the excess policy had issued. Here, OneBeacon specifically relied on the Absolute Pollution Exclusion contained in the INA Crown-Metro policy. In fact, Mr. Puccio testified that he *would have been precluded from issuing* an excess umbrella policy to a chemical manufacturer such as Crown-Metro, if the underlying primary policy did not include an Absolute Pollution Exclusion. Puccio at p. 58(8-18); Puccio at p. 59(14-25).

Second, the OneBeacon Policy was issued subject to the INA Crown-Metro Umbrella Policy condition that prohibited changes or modifications except by endorsement issued to form a part of the policy.[10] Therefore, changes or modifications could only have been made by endorsement to the OneBeacon Policy. OneBeacon was never asked to endorse its policy to delete the Absolute Pollution Exclusion and substitute the Waste Products Exclusion. Puccio at p. 56(13-15). Because OneBeacon never endorsed its Policy to substitute the Waste Products Exclusion, the Absolute Pollution Exclusion remains in effect.

---

[10] The excess liability insurance at issue in *Public Utility* identified various underlying insurance "per forms on file with the company." The excess policy further contained a provision relating to the "application of underlying insurance" which indicated that the policy "shall apply in like manner as the underlying insurance described in the Declarations." The Court found that the term "per forms on file with the company" was ambiguous (i.e., whether the "company" referred to was the underlying carrier or the excess insurer). Based upon this ambiguity, the *Public Utility* court, utilizing extrinsic evidence, held that the excess insurer was bound by the underlying carrier's retroactive endorsement. In this case, the OneBeacon Policy, as reformed, unambiguously incorporates the terms and conditions contained in the underlying INA Crown-Metro Umbrella Policy, including the condition that prohibited changes and modifications except by endorsement to the OneBeacon Policy.

## III. CONCLUSION

The Court should enter judgment as follows:

1. The OneBeacon Policy is reformed to be subject to the terms and conditions of the INE Crown-Metro Policy (Policy No. XBC 46961) as that Policy was in effect on May 16, 1969;

2. The OneBeacon Policy incorporates Endorsement No. 5 to the Crown-Metro Umbrella Policy which is an absolute pollution and contamination exclusion and which provides as follows:

> (Except with respect to the products hazard), such insurance as is afforded by this policy or any other endorsement thereto shall not apply to any claim for damages arising out of contamination or pollution to land, air, water or other real or personal property); and

3. Emhart's claims against OneBeacon are precluded by the terms of the Endorsement No. 5 to the INA Crown-Metro Umbrella Policy (Policy No. XBC 46961) which was incorporated into the OneBeacon Policy.

**ONEBEACON AMERICA INSURANCE COMPANY**
By its Attorneys,

/s/ Peter C. Netburn

James T. Murphy #1698
Kelly N. Michels #6478
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903
(401) 421-2154

Kevin J. O'Connor
Peter C. Netburn
Hermes, Netburn, O'Connor
& Spearing, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110
(617) 728-0050
(617) 728-0052 (f)

Dated: February 9, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 9, 2007.

/s/ Peter C. Netburn
Peter C. Netburn

G:\DOCS\BDL\Clients\One Beacon\Emhart-15035\Pleadings\Reply Reformation Memorandum.doc