UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

EMHART INDUSTRIES, INC.,

Plaintiff,

v.

HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, ONE BEACON AMERICA INSURANCE COMPANY and UNITED STATES FIRE INSURANCE COMPANY,

Defendants.

Civil Action No. 02-053-S

**EMHART'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL REGARDING ITS CLAIMS AGAINST CENTURY AND ONEBEACON**

**INTRODUCTION**

Emhart's post-trial filings concerning its claims against Century and OneBeacon (together, "insurers") demonstrated that construing the discoverability trigger using a subjective standard would convert the discoverability trigger into the discredited discovery trigger and eviscerate the important differences between occurrence policies and claims made policies. The insurers neither rebut that showing nor provide any rationale for a subjective standard.

The insurers misconstrue both Textron-Gastonia[1] and Truk-Away of R.I., Inc. v. Aetna Cas. & Sur. Co., 723 A.2d 309 (R.I. 1999). Textron-Gastonia clearly signals that Rhode Island is likely to adopt the continuous trigger. Otherwise, the court would not have mentioned the issue which it was not required to resolve. Truk-Away is inapposite as it addresses a situation where

1 Textron, Inc. v. Aetna Cas. & Sur. Co., 723 A.2d 1138, 1143 (R.I. 1999).

all the events alleged to have caused the property damage took place after the policy period. Here, events causing contamination commenced prior to the policy period.

The insurers seek to support the verdict by citing evidence that is not relevant to trigger under the instructions given to the jury. Further, their discussion of Dr. Hass' testimony is not accurate.

Resolution of the trigger issue entitles Emhart to judgment. There was no evidence that Metro-Atlantic intentionally disposed of waste containing dioxin. Accordingly, the Waste Products Exclusion, Endorsement 6 of the Century Excess Policy, does not bar judgment. In fact, the evidence and the answers to the jury questions established that Emhart and its predecessors had no responsibility for causing the dioxin contamination that is the subject of the EPA action. The evidence points to NECC as the responsible party.

Emhart has shown in other post-trial motions that Century had a duty to defend and that the OneBeacon Policy may not be "reformed" to contain Endorsement 5. There is no support for the Century assertion that it is absolved from the duty to defend under its excess policy merely because another insurer was also in breach of a duty to defend Emhart. Emhart is entitled to judgment in its favor

## ARGUMENT

### A. The Instructions Concerning Trigger Were In Error

#### 1. The Instructions Concerning Discoverability

The insurers do not provide the Court with any rationale for instructing the jury to consider discoverability on a subjective basis (See Ins. Mem. at 7-8). In contrast, Emhart explained that the objective standard is necessary for at least three reasons, each of which was not addressed by the insurers: (1) to prevent a conundrum in which coverage is denied either on

the basis of trigger or on the basis of the expected and intended issue, (2) to permit the discoverability trigger to provide coverage in at least some situations where the discovery trigger would not and (3) to provide coverage for an innocent insured (See Em. Mem. at 14-16). This issue warrants judgment in favor of Emhart. At a minimum, it should be certified to the Rhode Island Supreme Court.

The insurers do not support the failure to instruct the jury that spills and leaks at the site could provide a reason to test for dioxin. They admit that, in view of Textron Wheatfield (754 A.2d at 747)[2], evidence of leaks and spills "creates an issue of fact as to whether or not the insured has a reason to test for the relevant contaminants" (Ins. Mem. at 8). In Textron-Wheatfield, such evidence created an issue of fact that defeated summary judgment for the insurer and required a trial. Here, at trial, it could support a verdict for the insured. The jury should have been so instructed. The failure to do so prejudiced Emhart by preventing the jury from understanding that the spills and leaks could provide a reason to test for dioxin contamination.

2. The Failure To Instruct Concerning The Continuous Trigger

Emhart demonstrated that an instruction concerning the continuous trigger, or a trigger not limited to discovery or discoverability, was appropriate as (1) the policy language requires that property damage "result", not be manifest, discovered or discoverable, during the policy period, (2) the failure to recognize that a discovery-based trigger would impermissibly convert an occurrence policy into a claims made policy and (3) the failure to recognize that trigger would result in Rhode Island being the only jurisdiction that relied exclusively on discovery-based triggers (Em. Mem. at 18-25). In response, the insurers provide no reason Rhode Island would

[2] Textron, Inc. v. Aetna Cas. & Sur. Co., 754 A.2d 742, 745-46 (R.I. 2000).

not adopt the discoverability trigger. They simply argue that it has yet to do so (Ins. Mem. at 4-6).

The insurers rely on Truk-Away and Textron-Gastonia for the proposition that Rhode Island would not adopt the continuous trigger. Their reliance is misplaced as they misread those cases. In Truk-Away, the court did not reject the insured's argument for a continuous trigger. It merely found that the insured could not recover under any theory of trigger because the EPA, in the underlying CERCLA claim, alleged that the only property damage occurred after the policy period. 723 A.2d at 313. Even then, the insured was provided the opportunity to "show any evidence of actual damage at site" during the policy period, but was unable to do so. Id.

Further, in Truk-Away, the court noted that the EPA "specifically" alleged that the property damage requiring remediation "occurred during the period between March 1977 and September 1979 when the more than two million gallons of waste, including hazardous substances, was accepted for disposal [and] it was those wastes that formed the basis for its June 29, 1990 order." Id. The issue was whether insurance policies issued "prior to 1977" provided coverage for contamination that was caused only by events beginning in March, 1977. Id. Thus, Truk-Away would apply here only if the dioxin contamination began after the expiration of the terms of the OneBeacon and Century policies. Here, the EPA charging documents are not so limited. The EPA alleges that the contamination occurred as a result of events at the Site "from approximately 1943 to approximately 1971," which included the period of the Century and OneBeacon policies.[3] Accordingly, Truk-Away has nothing to do with whether Rhode Island would adopt the continuous trigger and has no applicability to the facts of this case.

---

[3] See PX 13 ¶ 18. The EPA allegations in this action are discussed in Emhart's post-trial briefs regarding the duty to defend.

The insurers' argument concerning Truk-Away flies in the face of the subsequent decision in Textron-Gastonia. If the Rhode Island Supreme Court had rejected the continuous trigger doctrine in Truk-Away, or CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co., 668 A.2d 647 (R.I. 1995)[4], it would have had no occasion in its Textron-Gastonia decision to state "[b]ecause we conclude that liability under the policy may be established by one of the recognized CPC tests, we need not address the continuous trigger-of-coverage standard." 723 A.2d at 1141. The court's statement clearly indicates that the continuous trigger doctrine is potentially viable and would have been addressed if the insured had not been entitled to coverage under other triggers. This cannot be read as a rejection of the continuous trigger. Rather, the court does not consider an issue that is unnecessary to its decision. See Hoffman v. Metcalf, 851 A.2d 1083, 1093 (R.I. 2004) (Flanders, J., concurring) ("It is well settled that courts should decide cases 'on the narrowest legal grounds available.' 'It is the duty of the court to resolve the dispute before it on whatever ground may properly conclude or dispose of the litigation, and not engage unnecessarily in exercises in the derivation of abstract law.'") (internal citations omitted).

Accordingly, the Court should predict that the Rhode Island Supreme Court would adopt the continuous trigger. In the alternative, the Court should certify the question to the Rhode Island Supreme Court.

B. The Evidence Regarding Discoverability

The evidence demonstrating that the dioxin contamination was discoverable was discoverable during the policy period is discussed in detail at Em. Mem. 7-9. The insurers attempt to support the verdict by asserting that the jury could have relied on certain evidence to

---

4 CPC answered a question concerning the trigger of coverage from a single spill, rather than ongoing exposure. 668 A.2d at 647 (addressing the "trigger-of-coverage standard … where an insured alleges that a spill of hazardous substances in 1974 …").

conclude that the dioxin contamination was not discoverable (Ins. Mem. at 14-17). The evidence they cite is not relevant to the discoverability trigger. Nothing in Rhode Island law provides that contamination is discoverable only if the insured conducts its business on the contaminated site during the policy period. There is no requirement that environmental concern is the sole determinant of discoverability; and that evidence of death or disease from occupational exposure to a contaminant must be disregarded. Even Dr. Woodard testified that the toxicity of dioxin was known prior to the policy period.

The insurers' reliance of the testimony of Mr. Leo is also misplaced. He did not know whether Metro-Atlantic was a manufacturer of chemicals, much less that it used trichlorophenol. In any event, his ability to order tests was restricted by budgetary constraints. If anything, his testimony is probative of the importance of knowing the site history in determining the tests to conduct. It is not probative of whether dioxin contamination was discoverable. The verdict cannot be supported by evidence unrelated to the test for discoverability.

The characterization of Dr. Hass' testimony (See Ins. Mem. at 13-14, 17-19) is belied by the record. Dr. Hass testified that the concentrations of dioxin present on the site (and even much lower concentrations) could have been detected using the rabbit ear test, gas chromatography and electron capture microscopy during the policy period (See Em. Mem. at 8-9, 11, 12, citing, inter alia, tr. 9/26: 135-137; tr. 9/27: 52-53, 58-59; tr. 10/3: 133-34, 138-39; PX 242, 243). He also testified that those methods were "available commercially from 1962 forward" (tr. 9/27: 49; see also id., at 52-53) and that laboratories performed such work during the policy period (tr. 10/3 at 49). His testimony was based on a combination of personal knowledge and his expert opinion regarding the import of articles in both newspapers and learned publications (tr. 9/26 at 86-87; tr. 10/3 at 12). While there were advances in testing

technology and sampling techniques during the 1970's, neither Dr. Hass nor any of defendants' expert witnesses testified that those advances were necessary to detect the levels of dioxin at the Centredale Site. Dr. Hass specifically testified that the advances in technology which are discussed in detail at pages 18-20 of the insurers' memorandum permitted detection of TCDD in concentrations as low as parts per trillion, but that the levels of as much as 140 parts per billion present at the Site could be detected using the testing equipment and methodology in effect during the policy period (See tr. 10/3: 132).

### C. Century Is Not Entitled To Further Proceedings Concerning The Waste Products Exclusion Or The Century Excess Policy

If the trigger issue and the post-trial motions regarding the duty to defend, corporate successorship and reformation are resolved in Emhart's favor, it will be entitled to judgment on its claims against Century and OneBeacon. See Em. Mem. at 26-32.

Century does not cite any authority in support of the proposition that the existence of a duty to defend under its excess policy depends on whether another insurer, Liberty Mutual, also was in breach of a duty to defend Emhart (Ins. Mem. at 20-22). The duty to defend is determined on the basis of the allegations of the complaining documents. The existence of another insurer's duty to defend is irrelevant. See Liberty Mut. Ins. Co. v. Black & Decker Corp., 2004 WL 1771589, at *22 (D. Mass. Aug. 5, 2004) (insurance company was in breach of its duty to defend and was liable for both defense and indemnification costs, although another insurer was also in breach of a duty to defend and later reimbursed the insured for a portion of its defense costs). Thus, any evidence that Century would seek to offer regarding Liberty Mutual is irrelevant and does not warrant a further evidentiary proceeding.

Moreover, Century may not escape its duty to indemnify on the basis that the jury did not answer the question regarding the waste products exclusion (Ins. Mem. at 22-24). The testimony

of Raymond Nadeau and John Turcone could not support a finding that Metro-Atlantic intentionally disposed of dioxin-containing wastes. See Em. Mem. 5. Mr. Nadeau testified that barrels containing an unidentified material were emptied in a dump. The black sludge to which Century refers could not have been the oatmeal colored waste that is associated with the manufacture of hexachlorophene[5]. Mr. Nadeau's observations occurred before Metro-Atlantic began the manufacture of hexachlorophene. Similarly, Mr. Turcone only testified that he saw treflan, which did not contain dioxin, being discharged (See Em. Mem. at 4, citing tr. 9/9: 11, 26-27; tr. 9/27: 135). The argument that intentional disposal of waste by NECC would bar coverage is contrary to the Court's ruling that this exclusion does not … apply if someone other than Metro-Atlantic intentionally introduced" a contaminant. See Jury Instructions at 28.

**CONCLUSION**

For the foregoing reasons and those stated in its opening brief, Emhart is entitled to judgment as a matter of law or, at a minimum, a new trial concerning its claims against Century and OneBeacon that were the subject of the jury verdict.

Respectfully submitted,

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600
gpetros@haslaw.com

Jack R. Pirozzolo
Richard L. Binder
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 832-1000
jpirozzolo@foleyhoag.com

Dated: February 9, 2007

Counsel for Plaintiff, Emhart Industries, Inc.

[5] Further, the testimony of Dr. Hass established that the dioxin found at the site could not have been associated with the manufacture of hexachlorophene by Metro-Atlantic.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of Emhart's Reply Memorandum In Support Of Its Motion For Judgment As A Matter Of Law Or A New Trial Regarding Its Claims Against Century And OneBeacon was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's Cm/ELF System.

/s/Gerald J. Petros____________________
Gerald J. Petros