UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMHART INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HOME INSURANCE COMPANY,<br>INSURANCE COMPANY OF NORTH AMERICA,<br>LIBERTY MUTUAL INSURANCE COMPANY,<br>ONEBEACON AMERICA INSURANCE COMPANY,<br>and UNITED STATES FIRE INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 02-053-S |

**EMHART'S RESPONSE TO ONEBEACON'S**
**<u>POST-TRIAL MEMORANDUM REGARDING REFORMATION</u>**

## INTRODUCTION

The Emhart and OneBeacon post-trial memoranda regarding OneBeacon's reformation claim demonstrate several key points that preclude any reformation of the OneBeacon Policy at all, much less a reformation that would add the Century Excess Policy's Endorsement No. 5, which was deleted from that policy as of its effective date:

- There was no evidence that Crown-Metro intended to purchase insurance that would follow form to the Century Excess Policy.
- In the absence of clear and convincing evidence of the intent of both parties, there is no reformation of any error, even if the purported error is a "scrivener's" error.
- OneBeacon, by following form to an insurance policy that permitted modifications, agreed to the modification that deleted the "absolute" pollution exclusion and added the Exclusion of Waste Products Endorsement.

## ARGUMENT

A. There Was No Evidence That Crown-Metro Intended To Follow Form To The Century Excess Policy

There was no evidence introduced at trial concerning Crown-Metro's alleged intent to have the OneBeacon Policy follow form to the Century Excess Policy as opposed to the Excess Blanket Policy. See Emhart's Post-Trial Memorandum, at 5-9 ("Em. Mem."). The evidence OneBeacon cites only demonstrates that Crown-Metro was looking for insurance coverage in the amount of $4,000,000. See OneBeacon Post-Trial Memorandum, at 6-8 ("OB Mem."). That is not relevant to the issue of what terms, other than policy limits, it intended to include in the insurance policy. OneBeacon was required to prove that Crown-Metro intended to follow form to the Century Excess Policy, rather than the insurance policy identified on the face of the OneBeacon Policy. That Crown-Metro was shopping for insurance is hardly evidence of Crown-Metro's intent to follow form to the Century Excess Policy and certainly does not meet OneBeacon's evidentiary burden.

OneBeacon errs in pointing to Mr. Puccio's alleged underwriting business practice of not following form to an expired policy as evidence of Crown-Metro's intent. Crown-Metro was a chemical company, not an insurance company. Its intent cannot be inferred from Mr. Puccio's conclusory statements about the customary practice of the insurance industry. Obviously, an insurer is not allowed to attribute its own alleged business practices to the insured as evidence of the insured's intent. Indeed, there was no evidence that Crown-Metro was aware of, much less shared, Mr. Puccio's views on underwriting practices.

Further, OneBeacon cannot meet its burden by pointing to the absence of documents — e.g., the Excess Blanket Policy — from its underwriting file. Mr. Puccio admitted that OneBeacon was unable to identify the "underlying policy" that was enclosed with the letter of

May 9, 1969, and that the OneBeacon underwriting file does not contain a key letter dated April 24, 1969, the date when it issued the policy.[1] In view of the incomplete underwriting file, no reasonable inference may be drawn from the absence of the true underlying policy from that file. In short, even taking as true OneBeacon's characterization of the evidence regarding its own alleged intent and mistake, it has not satisfied its burden of proving that Crown-Metro had an identical intent — a "mistake by one party coupled with ignorance thereof by the other part does not constitute a mistake within this rule" in order to reform a contract. See Vanderford v. Kettele, 64 A.2d 483, 489 (R.I. 1949).

Moreover, OneBeacon failed even to establish that it made a unilateral mistake. See Em. Mem., at 9-12. Its argument relies heavily on an implausible reading of its own policy. OneBeacon's policy states unequivocally that it was "subject to all the terms and conditions of Policy XBC 64674," not Century Excess Policy No. XBC46961. The four numbered paragraphs in the OneBeacon Policy that follow describe the terms and conditions of the policy that OneBeacon issued to Crown-Metro, not the terms and conditions of Policy XBC64674. See Em. Mem., at 10-11.

B. Reformation Does Not Lie In The Absence Of Mutual Mistake

Faced with an inability to prove unilateral mistake, OneBeacon (erroneously) asserts that a scrivener's error does not require proof that the identical intent of ***both*** parties is in conflict with the writing. OB Mem., at 6-7. In the three cases cited by OneBeacon in support of this position, however, the courts granted reformation only after being presented with clear and convincing evidence of both parties' intent. In the absence of evidence of each party's intent, it is impossible to determine whether the purported scrivener's error is, indeed, an error. See Bd.

[1] See Em. Mem., at 4, with citations to the record.

of Trs. of the Univ. of Ill. v. Ins. Corp. of Ir., Ltd., 969 F.2d 329 (7th Cir. 1992) (evidence of intent of both parties offered via testimony of negotiators from both sides); Reynolds v. Farmers Ins. Co., 960 P.2d 432 (Wash. Ct. App. 1998) (the court noted that "[a] scrivener's error occurs when the intention of the parties is identical"; there prior to reinstatement of an insurance policy, the insurer informed the insured in writing of the effective date of reinstatement and, the insured either agreed to the time of reinstatement or was not entitled to reinstatement); Cincinnati Ins. Co. v. Fred S. Post, Jr., Co., 747 S.W.2d 777, 778-79 (Tenn. 1988) (intent of both parties proved by pre-policy correspondence between the parties). Indeed, these cases are in accord with the authority cited by Emhart on this point — all demonstrating that reformation requires proof of mutual mistake, even if the error was a copying, clerical, or "scrivener's" error. See Em Mem., at 5-8, citing, inter alia, 2 Couch on Insurance 3d, at § 27:27 ("Reformation has been allowed because of the insurer's clerical mistake, since in such instances it is apparent that the policy which was issued does not, in fact, set forth what has been agreed to and what was ***intended by all the parties***.") (emphasis added); Restatement (Second) of Contracts § 155; McEntee v. Davis, 861 A.2d 459, 463 (R.I. 2004); Assocs. in Anesthesia, Inc. v. Mut. Benefit Life Ins. Co., 504 A.2d 477, 478 (R.I. 1986); Diman v. Providence, Warren & Bristol R.R. Co., 5 R.I. 130, 136-37 (1858).

An additional issue is that the alleged clerical error was made by Mr. Puccio, who was employed by OneBeacon (as opposed to being a mere agent) when the OneBeacon Policy was issued. See 10/11/06 Trial Tr. at 13-15. Accordingly, OneBeacon is charged with the knowledge of the policy's contents and is precluded from obtaining reformation. See 2 Couch on Insurance 3d, § 27:27 (noting that reformation has been denied where "the mistake is the fault of the insurer's home office as distinguished from that of an ordinary agent ...."); see also Hayes

v. Travelers Ins. Co., 93 F.2d 568, 571 (10th Cir. 1937) (noting that an insurer which executes a policy containing certain mistakes through a clerical error in its home office charged with the knowledge of its contents and is not entitled to reformation).

C. Endorsement No. 6 Would Apply If The Policy Were Reformed

Having agreed to follow form to an underlying policy[2] that permitted modification, OneBeacon was bound by all modifications, including those that were retroactive. Em. Mem., at 13-14, (citing Great Atl. Ins. Co. v. Liberty Mut. Ins. Co., 773 F.2d 976, 977-81 (8th Cir. 1985); Broadhead v. Hartford Cas. Ins. Co., 773 F. Supp. 882, 914-15 (S.D. Miss. 1991); Gen. Accident Ins. Co. of Am. v. Safety Nat'l Cas. Corp., 825 F. Supp. 705, 707-09 (E.D. Pa. 1993); Public Util. Dist. No. 1 v. Int'l Ins. Co., 881 P.2d 1020, 1027 (Wash. 1994)).

The cases OneBeacon cites for the proposition that mutual assent is required to modify a contract (OB Mem., at 10) do not address the issue here presented: whether an insurer that issued a "follow form" policy is bound by modifications to the underlying policy. The cases simply address whether there was consideration to support the primary policy.[3] Here, OneBeacon, for good and valuable consideration, including substantial premiums, agreed to follow form to the underlying policy, including all modifications. It was not entitled to additional consideration each time the underlying policy was altered pursuant to its express modification clause, which the OneBeacon Policy adopted along with the rest of the underlying policy's terms. OneBeacon knew the underlying policy could be modified, but did not choose to negotiate a provision stating that its policy would follow form to the underlying policy as of a

---

2 Solely for purposes of this section, it is assumed that the OneBeacon Policy would be reformed.

3 See J.M.P.H Wetherell v. Sentry Reinsurance, Inc., 743 F. Supp. 1157 (E.D. Pa. 1990); Anderson v. Am. Standard Ins. Co., 293 N.W.2d 878 (N.D. 1980); Goucher v. John Hancock Mut. Life Ins. Co., 324 A.2d 657 (R.I. 1974).

certain date or that it would not be bound by future modifications. Such provisions could easily have been added to the "exceptions" section of the OneBeacon Policy if that had been OneBeacon's intent. If OneBeacon advised Crown-Metro of its intent to issue the policy on that basis, Crown-Metro would have had the opportunity to seek insurance elsewhere.

Further, the argument that OneBeacon would not be bound by modifications to the underlying policy is inconsistent with its argument concerning industry practices. In its attempt to ascribe Mr. Puccio's intent to Crown-Metro, OneBeacon voiced a concern that, if its policy followed form to the actual underlying policy, rather than the Century Excess Policy, "different policy terms would have applied to the two 'layers' of umbrella liability coverage" (OB Mem., at 8). In this context, however, OneBeacon is arguing for that very result; the OneBeacon Policy would be governed by Endorsement No. 5, while the underlying Century Excess Policy would be governed by Endorsement No. 6.

OneBeacon has placed itself in the horns of a dilemma: (1) if Crown-Metro did not care whether the two layers of its excess policy would contain the same provisions, then one of the primary arguments for reformation has been surrendered[4], or (2) if Crown-Metro intended that the two layers of coverage would contain the same provisions, then the policy as reformed must conform to all terms of the Century Excess Policy, including Endorsement 6. Either way, the OneBeacon Policy would not contain the "absolute" pollution exclusion of Endorsement No. 5.

The Puccio testimony established that he received Endorsement No. 6 and, during the ensuing six months, did not advise Crown-Metro that OneBeacon would not agree to the modifications or would purport to cancel the policy. See 10/11/06 Trial Tr., at 84-85; DX 551 at OBA 1-3. During that period, OneBeacon continued to collect premiums and Crown-Metro lost

[4] As discussed, infra, OneBeacon did not establish the Crown Metro intent.

the opportunity to replace the OneBeacon Policy with one that did not contain the onerous "absolute" pollution exclusion. Accordingly, even if OneBeacon were otherwise entitled to exclude Endorsement No. 6 from the "reformed" policy, it waived its right due to its failure to advise Crown-Metro that it would not agree to that endorsement. See Lajayi v. Fafiyebi, 860 A.2d 680, 687 (R.I. 2004) (waiver where party rested on contractual right it later attempted to assert); see also DiLibero v. Swenson, 593 A.2d 42, 44 (R.I. 1991) (party was equitably estopped from asserting an ownership interest after she remained silent during settlement negotiations concerning the company).

If OneBeacon had asserted that it would not agree to Endorsement No. 6, Crown Metro could have replaced the OneBeacon Policy with an insurance policy that either did not contain a pollution exclusion or that contained a less onerous pollution exclusion. The insurance industry did not adopt the "sudden and accidental" pollution exclusion until the summer of 1970 and it was not until 1985 that the industry adopted the "absolute" pollution exclusion.[5] See Em. Mem., at 9 (citing Millipore Corp. v. Travelers Indem. Co., 115 F.3d 21, 25 n.2 (1st Cir. 1997)). Rather, it appears that prior to the adoption of the "sudden and accidental" pollution exclusion, Endorsement No. 5 is the most onerous pollution exclusion that could be imposed without an insurer losing its opportunity to write a policy.

## CONCLUSION

For the foregoing reasons and for those set forth in Emhart's previous submission on this issue, the Court should not reform the OneBeacon Policy. In the alternative, if the Court does reform the policy, it should also rule that Endorsement No. 6, the Waste Products Exclusion

[5] Mr. Puccio must have forgotten the date the insurance industry adopted the pollution exclusion, as his testimony about reinsurers' concern about including pollution exclusions could only relate to a period after such a provision was generally contained in insurance policies.

Endorsement contained in the Century Excess Policy, applies to the policy as reformed.

Respectfully submitted,

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600
gpetros@haslaw.com

Jack R. Pirozzolo
Richard L. Binder
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 832-1000
jpirozzolo@foleyhoag.com

Dated: February 9, 2007

Counsel for Plaintiff, Emhart Industries, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of Emhart's Response To OneBeacon's Post-Trial Memorandum Regarding Reformation was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's Cm/ELF System.

/s/Gerald J. Petros
Gerald J. Petros