UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

EMHART INDUSTRIES, INC.

Plaintiff,

v.

HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY and UNITED STATES FIRE INSURANCE COMPANY

Defendants.

C.A. No. 02-53S

ORDER

During the evidentiary hearing in this matter, Century Indemnity Company ("Century") and Emhart Industries, Inc. ("Emhart") sought further clarification of the Court's May 1, 2007 order, finding, among other things, that Century's duty to defend Emhart under the Excess Policy triggered in part because the Primary Policy's $100,000 limit of liability was exhausted by October 19, 2006 (the date of the jury's verdict finding, among other things, that Century did not have a duty to indemnify Emhart under either the Primary Policy or the Excess Policy). Essentially, Century asked the Court to identify the specific point at which its duty to defend Emhart under the Excess Policy triggered. As the questions below reflect, this issue is as of yet unresolved. The relevant portion of the May 1, 2007 order was

based in part on the parties' stipulation that "[t]hrough June 2006, Emhart has incurred costs in the amount of $711,732.00 for performing the work required by the three orders issued by the EPA." The obvious implication of this stipulation is that the Primary Policy's limit of liability was exhausted far before October 19, 2006. One of the purposes of the May 1, 2007 order was to catalyze discussion on this precise issue (as well as several others). The purpose of the present order is to provide guidance on how the parties may supplement that discussion.

Accordingly, Emhart, Century, and, to the extent that it deems necessary, OneBeacon America Insurance Company ("OneBeacon"), are directed to submit post-hearing memoranda on or before July 17, 2007, including, but not limited to, the following:

(1) Revised proposed findings of fact and conclusions of law in light of the evidentiary hearing;

Defense Costs

(2) The precise amount of defense costs that Century must reimburse, including:

(A) A detailed explanation of the steps used to calculate that amount;

(B) With respect to Century's reimbursement obligation in this case, when defense costs began to accrue and when they ceased (for both the Primary Policy and the Excess Policy);

(C) Whether other sources of contribution (for example, the relevant funds allocated to the Site in the Liberty settlement) reduce that amount; if so, identify those sources, provide the specific amount from each source (indicating whether the amount should be modified for any reason, such as, but not limited to, collusion), and calculate the total credit;

(D) Whether Century must reimburse Emhart for defense costs above and beyond the Excess Policy's limit of liability;

(E) Whether the Rhode Island Supreme Court would, under the circumstances of this case, adopt the reasoning of the Court of Appeals for the Seventh Circuit in Taco Bell Corp. v. Continental Caves. Co., 388 F.3d 1069 (7th Cir. 2004), and either presume or come close to presuming that Emhart's defense costs (and underlying litigation tactics) were reasonable; if it would not, set forth in detail what factors this Court should consider to determine whether those costs (and tactics) were reasonable;

Breach of the Duty to Defend

(3) A thorough discussion of whether Conanicut Marine Servs., Inc. v. Ins. Co. of N. Am., 511 A.2d 967 (R.I. 1986) applies to the facts of this case, including:

(A) Whether Century breached its duty to defend Emhart under Conanicut;

(B) Whether Conanicut damages may exceed the Excess Policy's limit of liability;

(C) Whether Conanicut damages may reflect indemnity costs beyond October 19, 2006; if so, describe the affect that would have on the calculation of damages for present purposes;

(D) Whether any of the current EPA orders qualifies as a "judgment" or "settlement" as required by Conanicut; if not, whether a future EPA order/consent decree will so qualify (and what affect that would have on the calculation of damages for present purposes);

(E) Whether Century's actions fall under one of the exceptions to Conanicut liability, or whether Century is otherwise excused from that liability;

(F) Whether the Rhode Island Supreme Court would follow Conanicut under the circumstances of this case (that is, an insurance-coverage dispute with an

underlying CERCLA action with remedial costs in the tens of millions, if not more); if it would not, identify, describe, and undergird the approach that the Rhode Island Supreme Court would follow (for example, the approach, which at least Hawaii and Maine have adopted, of the Supreme Judicial Court of Massachusetts in Polaroid Corp. v. Travelers Indemn. Co., 610 N.E.2d 912 (Mass. 1993));[1]

(G) Calculate the precise amount of damages that Century must pay for breaching its duty to defend Emhart under Conanicut (assuming that it has done so); or, calculate the precise amount of damages Century must pay, if any, under the approach that the Rhode Island Supreme Court would follow (the

---

[1] Interestingly, the Court has discovered that Emhart submitted a thorough amicus brief in Polaroid that argued against the approach ultimately approved by the Supreme Judicial Court. (The Court would be happy to provide Emhart's amicus brief in pdf format to any party that requests it.) A submission of similar breadth would be helpful in predicting whether the Rhode Island Supreme Court would follow Conanicut, Polaroid, or some other approach. For example, the Court is particularly interested in whether the Rhode Island equivalent of Mass. Gen. Laws ch. 93A and 176D (existing in statute or at common law) would more suitably deter an insurer's refusal to defend an estimable claim, see Polaroid, 610 N.E.2d at 922, instead of Conanicut's regime, which essentially (and perhaps wrongly) imposes punitive damages on breaching insurers. See Conanicut, 511 A.2d at 971.

flow-from-breach principle in Polaroid, for example).

The parties are not required to address these issues in any particular order, as long as each party answers all of the relevant questions. For example, Emhart is not required to address the second clauses of either issue (3)(F) or (3)(G) unless it desires to provide the Court with an alternative to that which Century will provide in response to those inquires. Also, as stated above, OneBeacon is permitted but not required to address these inquires; and North River Insurance Company is permitted but not required or encouraged to do the same.

If Century and Emhart cannot agree to the introduction of the exhibits referenced at the close of the hearing before Magistrate Judge Almond, Century may move for their admission on or before July 17, 2007, along with the two outstanding depositions and, if desired, a request for further discovery. (See the June 26, 2007 order.) Emhart and, to the extent necessary, Liberty Mutual Insurance Company ("Liberty"), are encouraged to file their objections at the same time as Century, but, in any event, no later than July 17, 2007;[2] accordingly, Century is directed to coordinate with Emhart (and, if necessary, Liberty) so that this filing deadline is met.

[2] The Court notes that, at the close of the hearing before Magistrate Judge Almond, Emhart orally objected to the admission of several exhibits. If Emhart wishes to retract or modify these objections, it must do so on or before July 17, 2007; otherwise, the Court shall rule on them in due time.

It is so ordered.

/s/ William E. Smith

______________________________
William E. Smith
United States District Judge

Date: July 5, 2007