**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **EMHART INDUSTRIES, INC.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HOME INDEMNITY CO., ET AL.,**<br><br>**Defendants.** | **Civil No. 02-053-S** |

**MEMORANDUM OF LAW OF *AMICUS CURIAE***
**THE COMPLEX INSURANCE CLAIMS LITIGATION ASSOCIATION**
**ON DUTY TO DEFEND PRINCIPLES**

The Complex Insurance Claims Litigation Association ("CICLA") respectfully submits this amicus curiae memorandum of law in connection with the Court's July 5, 2007 order in the above-captioned proceeding. In this memorandum of law, CICLA focuses specifically on the questions that this Court has posed concerning Conanicut Marine Services, Inc. v. Insurance Co. of North America, 511 A.2d 967 (R.I. 1986), and, even more specifically, on the potential consequences of an insurer's failure to defend its policyholder.[1]

[1] This memorandum of law focuses solely on this issue based on the interest expressed by this Court for a thorough discussion of Conanicut, and the important duty to defend principles raised by the Court. This memorandum does not address any of the other issues identified in the July 5 order.

## INTEREST OF AMICUS CURIAE

The Complex Insurance Claims Litigation Association ("CICLA") is a trade association of major property and casualty insurers and reinsurers.[2] CICLA members have entered into liability insurance contracts in Rhode Island and throughout the nation, and provide a substantial percentage of the liability coverage written in Rhode Island. Accordingly, CICLA is vitally interested in the judicial interpretation of the duty to defend issues set out in this Court's July 5 Order. CICLA has a unique and broad perspective on the issues presented and respectfully submits that its participation will aid this Court in a thorough discussion of the issues raised in the Court's July 5 order.

## SUMMARY OF ARGUMENT

The insurance contract makes a clear distinction between the duty to defend and the duty to indemnify. A failure to defend should not result in the automatic imposition of indemnity upon an insurer such that the insurer is estopped from raising any coverage defenses. It clearly should not be the basis for indemnity in excess of policy limits. Such a result is contrary to the overwhelming weight of authority both in Rhode Island and nationwide. These cases hold that the doctrine of estoppel cannot be used to expand the scope of coverage. Rather, the measure of the insured's damages for breach of the duty to defend should be limited to the cost of the defense, or other damages that arise causally from the breach. Adequate remedies exist to

---

[2] This brief is filed on behalf of the following CICLA members: AIG Insurance Companies; Arrowpoint Capital Corp. (formerly Royal & SunAlliance); Chubb & Son, a Division of Federal Insurance Company; Hartford Insurance Group; St. Paul Fire and Marine Insurance Company; The Travelers Indemnity Company; and Zurich American Insurance Company. This brief is not filed on behalf of Liberty Mutual Insurance Company, which was a party to this case.

protect the policyholder; imposing "automatic indemnity" on the insurer is overbroad and unfairly punitive.

Conanicut does not mandate a different result. Citing two older cases from Massachusetts and California – both later superseded – the Rhode Island Supreme Court in Conanicut found that the insurer, who had "wrongly" refused to defend its policyholder, could be estopped from raising certain coverage defenses. The Conanicut court did not hold, however, that an insurer should be automatically liable for any settlement or judgment, regardless of the terms and limits of the policy, in every case where an insurer (however innocently) breaches the duty to defend. In the more than twenty years since Conanicut was decided, not a single published decision of any Rhode Island state court has ever interpreted Conanicut in the expansive fashion urged by the policyholder here.

The policyholder's proposed interpretation of Conanicut would conflate the duties of defense and indemnity, which the Rhode Island Supreme Court has recognized are separate and distinct. It would permit policyholders to reap a windfall of potentially enormous proportions – far beyond the natural consequences of the insurer's breach of the duty to defend, and far beyond the scope of the insurer's contractual undertaking.

Moreover, the policyholder's proposed interpretation of Conanicut would have broad policy implications, potentially extending far beyond the present case. The Rhode Island legislature already has addressed the circumstances under which insurers should be "punished" for bad faith or misconduct. The policyholder's interpretation of Conanicut would judicially expand and thereby undermine that legislative scheme. It would impose potentially draconian penalties for any errors by an insurer, no matter how minor or innocent, in the interpretation of the scope of an insurer's obligation to defend. It would force Rhode Island insurers to consider

the prospect of potentially open-ended liability, untethered to the terms and limits of the policies that those insurers wrote. For this reason as well, this Court should reject the policyholder's interpretation of Conanicut as inconsistent with Rhode Island law.

## ARGUMENT

### I. Coverage By Estoppel Is Inconsistent With Established Principles Of Coverage Law.

This Court's prediction of Rhode Island coverage law must turn on "existing state law or the 'better reasoned authorities' from other jurisdictions." 56 Associates ex rel. Paolino v. Frieband, 89 F. Supp. 2d 189, 191 (D.R.I. 2000).[3] Here, principles set forth by existing Rhode Island case law do not support creating indemnity coverage by estoppel as an automatic penalty for any breach of the duty to defend. Moreover, the "better reasoned authorities" nationwide overwhelmingly reject that approach. See Allan D. Windt, Insurance Claims and Disputes, § 4.35 (2d ed. 2001) (collecting cases). Under the view held by the substantial number of states, "an insurer does not forfeit its right to contest coverage when it has breached its obligation to defend its insured." Flannery v. Allstate Ins. Co., 49 F. Supp. 2d 1223, 1227 (D. Colo. 1999).

In reaching this result, courts nationwide generally have rested on one or more of four fundamental coverage principles: (1) the duty to indemnify is narrower than the duty to defend; (2) penalties for breach of the duty to defend are distinct from breach of the duty to indemnify;

[3] Although the general rule in diversity cases is for "federal courts to apply state law . . . in accordance with the then controlling decision of the highest state court," Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543 (1941), that rule is not ironclad, and "on certain occasions a federal court need not follow an old state supreme court decision." In Re Ryan, 851 F.2d 502, 509 n.9 (1st Cir. 1988)) (citing Bernhardt v. Polygraphic Co., 350 U.S. 198, 204-05 (1956)); see also AIG Centennial Ins. Co. v. Fraley-Landers, 450 F.3d 761, 767 (8th Cir. 2006) ("we are not required to apply all decisions of the Arkansas Supreme Court [on matters of Arkansas law], even if they have not been expressly overruled, if we are convinced that that court would not follow them").

(3) conflating the duty to defend and the duty to indemnify would violate fundamental contract principles; and (4) estoppel principles do not apply. Several of these principles are recognized under Rhode Island law, and none of the principles is in contradiction with this State's laws.

**A. The Duty To Indemnify Differs From, And Is Narrower Than, The Duty To Defend.**

Insurance policies are contracts, which are interpreted under "the rules established for the construction of contracts generally." Malo v. Aetna Cas. & Sur. Co., 459 A.2d 954, 956 (R.I. 1983). Under these contracts, and Rhode Island law, an insurer's obligation to indemnify a policyholder is distinct from its obligation to defend. See Mellow v. Medical Malpractice Joint Underwriting Ass'n of Rhode Island, 567 A.2d 367, 368 (R.I. 1989); National Grange Mut. Ins. Co. v. Joseph, No. 02-6972, 2004 WL 2821510, *2 (R.I. Super. Ct. Oct. 13, 2004). The duty to defend is triggered when a complaint filed against an insured "recite[s] facts bringing the injury complained of within the coverage of the insurance policy[.]" Peerless Ins. Co. v. Viegas, 667 A.2d 785, 787 (R.I. 1995). The truth of the allegations in the complaint is irrelevant to the duty, and the insurer is "duty bound" to defend the suit regardless of whether the allegations are "groundless, false or fraudulent." Id.

The duty to indemnify, on the other hand, is separate, and much narrower. See Mellow, 567 A.2d at 368. It does not flow ineluctably from the duty to defend. Progressive Cas. Co. v. Narragansett Auto Sales, 764 A.2d 722, 724-25 (R.I. 2001); Flori v. Allstate Ins. Co., 388 A.2d 25, 26 (R.I. 1978). It is triggered only when a determination is made that the insured's claims are determined actually to fall within the provisions of the policy.

Thus, as a matter of contract law, a failure to defend should not bar an insurer from contesting its indemnity obligation. Breach of an insurer's duty to defend does not negate all of the contract's terms and conditions related to indemnity. An insurer's default, with respect to

defense, therefore should not entitle the policyholder automatically to obtain indemnity beyond the terms written into the policy.[4]

### B. The Remedies For Breach Of The Duty To Defend Relate To The Harm From That Breach.

Commentators agree that the "vast majority" of other jurisdictions hold that an insurer's unjustified refusal to defend does not estop it from later denying indemnity coverage. Windt, supra, §4.37. Professor Windt explained the basis for this basic rule of insurance jurisprudence:

> If an insurer wrongfully refuses to defend an insured, it should be liable for the damages that the insured thereby incurs. . . . The insurer's breach of contract should not, however, be used as a method of obtaining coverage for the insured that the insured did not purchase. When a contract is breached, the injured party is entitled to receive what would have been obtained if there had been no breach; the injured party is not entitled to receive more.

*Id.*

This principle was applied by the Massachusetts Supreme Judicial Court in Polaroid Corp. v. Travelers Indem. Co., 610 N.E.2d 912 (Mass. 1993), which expressly rejected the argument that "an insurer in breach of its obligation to defend a claim . . . must pay the amount of any reasonable settlement the insured makes, without regard for whether the claim was one for which coverage was provided." 610 N.E.2d at 920 & n.15 (citing cases). The Massachusetts high court reasoned that "there is no reason not to apply normal contract damages principles" to

---

[4] Because the contractual obligations of defense and indemnity are distinct, the remedies for breach of the duty to indemnify, and breach of the duty to defend, are similarly distinct. An insurer that is found to have breached the duty to indemnify may be held liable for the policyholder's costs of settling the underlying action, to the extent that the settlement costs are determined to be reasonable and within policy coverage. Ins. Co. of N. Am. V. Kayser-Roth Corp., 770 A.2d 403, 403 (R.I. 2001). By contrast, an insurer that is found to have breached its duty to defend will be held liable only for the policyholder's reasonable and necessary defense costs, "up to the time that it [is] determined that the . . . claims [are] not covered." Polaroid Corp. v. Travelers Indem. Co., 610 N.E.2d 912, 921 (Mass. 1993).

breaches of the duty to defend and ruled that "[a] failure to defend does not bar an insurer from contesting its indemnity obligation." Id. at 921. The court further explained that:

> we align ourselves with those authorities that treat an insurer's unjustified refusal to defend as a breach of contract and seek then to determine what is recoverable as contract damages. If any underlying claim . . . is not within the coverage of an insurance policy, an insurer's improper failure to defend that claim would not ordinarily be a cause of any payment that the insured made in settlement of that claim or to satisfy a judgment based on that claim.

Id. at 921.[5]

Similarly, in Esicorp, Inc. v. Liberty Mutual Insurance Co., 193 F.3d 966 (8th Cir. 1999) (applying Missouri law), the federal appellate court rejected the policyholder's argument that it was automatically entitled to reimbursement of all indemnity and defense costs. In the underlying case, the policyholder was sued for damages arising out of faulty pipe welds. The insurer refused the defense, relying upon its impaired property exclusion. Id. at 968-99. The court found that a duty to defend existed because at least a portion of the claims could have

---

5 Although the court in Polaroid was not called upon to decide the point, it suggested in dicta that an insurer could, in certain circumstances, be held liable for "amounts paid in settlement" by the policyholder, to the extent the amount of the settlement "arose naturally from the breach [of the duty to defend]." Id. at 921-22. For example, Polaroid hypothesized that, "if an insured lacks financial resources sufficient to maintain a proper defense, an insured's losses in the underlying claim could well be the result of a breach of the duty to defend." Id. at 922. Those facts were not present in Polaroid, however, and they are not present here. There is no indication in this case that the policyholder "lack[ed] financial resources sufficient to maintain a proper defense," or that its handling of these claims was compromised in any way by the insurer's alleged breach of the duty to defend. To the contrary, the evidence suggests that the policyholder was vigorously and competently defended by a major national law firm, and that it aggressively pursued a broad range of defenses to liability. In fact, the recent testimony suggests that the policyholder may have spent significant sums of money, both on indemnity and on defense, that its insurers – had they participated in the defense – would not have permitted as reasonable or necessary. See Century Indemnity Co.'s Proposed Findings of Fact and Conclusions of Law ¶¶ 77-80 (June 20, 2007). To the extent that the policyholder now is permitted to recover these sums as a consequence of the insurer's failure to defend, it will have already benefited significantly in the manner suggested in Polaroid, and the insurer will have been penalized for its alleged failure to defend its policyholder sooner. Thus, consistent with Polaroid, the policyholder is not entitled to additional damages, over and above the attorneys' fees and related costs it has incurred in defending the underlying action.

fallen within the policy's coverage. Id. at 969-70. The policyholder argued that, because the insurer had breached its duty to defend, the insurer was liable for the full amount of the settlement, regardless of the fact that much of the settlement was related to uncovered claims. The court stated that the proper measure of damages are those "reasonably flowing from the breach." Providing coverage for the uncovered claims in this circumstance would award the policyholder a "windfall in the form of greater insurance coverage than [the policyholder] would have obtained had the insurer defended the underlying case." Id. at 970. Therefore, the court concluded that the policyholder was not entitled to recover indemnity for the uncovered claims, despite the insurer's breach of its duty to defend.

An Idaho appellate court also has persuasively explained that an insurer should not be estopped from raising coverage defenses as a consequence of breaching its duty to defend. In Hirst v. St. Paul Fire & Marine Insurance Co., 683 P.2d 440 (Idaho Ct. App. 1984), the court first held that the insurer breached its duty to defend. Id. at 446. The court, however, refused to grant indemnity as a necessary consequence of this breach:

> We decline to adopt the [estoppel] rule. We question the propriety of utilizing a form of estoppel as a punitive measure against an insurer for breach of a contractual duty to defend. Rather, we believe the sanctions for that breach should be governed by ordinary principles of contract law. In Idaho, the purpose of awarding damages for breach of contract is to fully recompense the non-breaching party for its losses sustained because of the breach, not to punish the breaching party.

Id. at 447. Given that the policyholder defended itself in the underlying case, the court awarded the unpaid defense costs as damages. Id.

In addition to the examples above, numerous other courts have rejected the policyholder's suggestion that breach of the duty to defend should entitle it to indemnity for a claim, even one outside the policy's indemnity coverage. See, e.g., Flannery, 49 F. Supp. 2d at

1227 (Colorado law); Servants of Paraclete, Inc. v. Great Am. Ins. Co., 857 F. Supp. 822 (D.N.M. 1994) (New Mexico law); Johnson v. Studyvin, 828 F. Supp. 877, 886-87 (D. Kan. 1993); Sentinel Ins. Co. v. First Ins. Co. of Hawaii, 875 P.2d 894, 907-14 (Haw. 1994); Colonial Oil Indus. v. Underwriters, 491 S.E.2d 337, 339 (Ga. 1997) ("[T]he insured is entitled to receive only what it is owed under the contract – the cost of defense. The breach of the duty to defend . . . should not enlarge indemnity coverage beyond the parties' contract. This rule, which is the majority position, recognizes that the duty to defend and the duty to pay are independent obligations."); McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So. 2d 692, 695 (Fla. Dist. Ct. App. 2000) ("[A]n unjustified failure to defend does not require the insurer to pay a settlement where no coverage exists."); Aselco, Inc. v. Hartford Ins. Group, 21 P.3d 1011, 1020 (Kan. Ct. App. 2001) (ruling that the Kansas Supreme Court would not adopt an indemnity by estoppel doctrine); Elliott v. Hanover Ins. Co., 711 A.2d 1310, 1313 (Me. 1998) ("We . . . have repeatedly stated that an insurer's duty to indemnify is independent from its duty to defend and that its duty to defend is broader than its duty to indemnify. An insurer that breaches its duty to defend therefore is not estopped from asserting noncoverage as a defense in a subsequent action brought by the insured or the insured's assignee."); Fireman's Fund Ins. Co. v. Rairligh, 475 A.2d 509, 516 (Md. Ct. Spec. App. 1984); Servidone Constr. Corp. v. Sec. Ins. Co., 477 N.E.2d 441, 444 (N.Y. 1985) ("By holding the insurer liable to indemnify on the mere 'possibility' of coverage perceived from the face of the complaint – the standard applicable to the duty to defend – the court has enlarged the bargained-for coverage as a penalty for breach of the duty to defend, and this it cannot do."); Sellie v. N.D. Ins. Guar. Ass'n, 494 N.W.2d 151, 156 (N.D. 1992) (applying Minnesota law and ruling that an insurer that has breached its duty to defend is still "entitled to challenge coverage under the insurance policy"); Timberline Equip.

Co. v. St. Paul Fire & Marine Ins. Co., 576 P.2d 1244, 1248 (Or. 1978) ("The plaintiff contends that because St. Paul breached its duty to defend, it waived any right to rely on any of the terms of its policy, including the exclusion clause. That argument is incorrect. When a contract is breached the injured party is entitled to receive what he would have if there had been no breach; he is not entitled to receive more.").

As the overwhelming weight of authority establishes, the remedies for breach of an insurer's duty to defend do not include automatic indemnification of the policyholder's claim. Rather, determining the proper scope of remedies for breach of that defense obligation is a separate and distinct inquiry from determining the contractual scope of the insurer's duty to indemnify.

### C. By Conflating The Duty To Defend And The Duty To Indemnify, Emhart Violates Fundamental Contract Principles.

Generally speaking, the courts have found that the plaintiff in an action for breach of contract should not be put in a better position than if the defendant had actually performed. Wells v. Uvex Winter Optical, Inc., 635 A.2d 1188, 1193 (R.I. 1994). They have held, in other words, that a party may not recover for damages "beyond what in reason . . . was contemplated by the original contract." Rhode Island Turnpike & Bridge Auth. v. Bethlehem Steel Corp., 379 A.2d 344 (R.I. 1977) (quoting Plymouth Village Fire Dist. v. New Amsterdam Cas. Co., 130 F. Supp. 798, 802 (D.N.H. 1955)).

Yet automatic indemnity – as a penalty for breach of the duty to defend − results in exactly such a windfall. Under the policyholder's reading of Conanicut, a policyholder would automatically be entitled to indemnity – potentially outside policy terms – and without regard to any actual damages that the policyholder has incurred – as a result of an insurer's failure, however innocent or harmless, to defend.

The policyholder's argument, quite simply, turns contract law on its head. "[W]hen the insurer breaches the contract by wrongfully refusing to provide a defense, the insured is entitled to receive only what it is owed under the contract – the cost of defense." Colonial Oil Indus., Inc. v. Underwriters, 133 F.3d 1404, 1405 (11th Cir. 1998). There is no basis, in the circumstances presented here, for the Court to "provide for a 'rewriting' of the policy contract to award the insured more than their purchased coverage." Time Oil Co. v. CIGNA Prop. & Cas. Co., 743 F. Supp. 1400, 1421 (W.D. Wash. 1990) (quotation omitted). Even more starkly, commentators and courts almost universally agree that "[t]he liability of the insurer is ordinarily not increased beyond the policy limits because it wrongfully refuses to defend the insured." Windt, supra, § 4.34 (collecting cases); accord 22 Holmes' Appleman on Insurance § 136.8[B][1] (2003) (collecting cases). Even in those courts that have recognized "automatic indemnity," the insurer's liability is limited to its policy limits in the absence of bad faith. See, e.g., Fidelity & Cas. Co. v. Mobay Chem. Corp., 625 N.E.2d 151, 158-59 (Ill. App. Ct. 1992); Appleman, supra, § 137.3[A].

On the facts of the present case, Emhart seeks this kind of "automatic indemnification" although a jury has already found – after almost three weeks of testimony – that Century's denial of coverage was not "wrongful," and that Century was correct that its policies did not provide coverage for Emhart's claims. Moreover, the Court recognized in this case that the premise for the insurer's defense obligation – that a potentially responsible party letter issued by the EPA could constitute a "suit" triggering a defense obligation – was an issue of first impression for Rhode Island courts. Courts nationwide have reached different conclusions regarding this issue.[6]

---

[6] Courts in several neighboring jurisdictions have ruled that the duty to defend is triggered only upon the filing of a complaint in a court of law. See, e.g., Ryan v. Royal Ins. Co., 916 F.2d 731 (1st Cir. 1990) (New York law); Patrons Oxford Ins. Co. v. Marois, 573 A.2d 16 (Me.

(Continued . . . )

Accordingly, in the absence of any bad faith or wrongful conduct, imposing automatic indemnity – potentially beyond the insurer's policy limits – would be an extremely punitive measure that should be considered inappropriate in this case.

### D. Estoppel Principles Do Not Apply.

Although the vast majority of courts that have considered the issue have rejected automatic indemnity, a small minority of courts have suggested that the rule is appropriate based on principles of equitable estoppel, suggesting that an insurer should be "estopped to deny liability" when it fails to defend a claim tendered by its policyholder. See, e.g., Aetna Cas. & Surety Co. v. Prestige Cas. Co., 553 N.E.2d 39, 41-42 (Ill. App. Ct. 1990); see also Windt, supra, § 4:37 (explaining and criticizing the rationale employed by courts adopting automatic indemnity); Todd J. Weiss, A Natural Law Approach to Remedies for the Liability Insurer's Breach of the Duty to Defend: Is Estoppel of Coverage Defenses Just?, 57 Alb. L. Rev. 145, 147 n.6 (1993) (same).[7]

That rationale is clearly inconsistent with Rhode Island law. In three significant cases since Conanicut, the Rhode Island Supreme Court has held, then twice reiterated, that "[a] court . . . may not invoke the doctrine of equitable estoppel to expand the scope of coverage of an

(. . . Continued)
1990); Borg-Warner, Inc. v. Ins. Co. of N. Am., 577 N.Y.S.2d 953 (App. Div. 1992); see also Foster-Gardner, Inc. v. National Union Fire Ins. Co., 959 P.2d 265 (Cal. 1998); Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co., 655 N.E.2d 842 (Ill. 1995).

[7] These authorities generally note that "th[e] creation of coverage via estoppel is . . . outside the accepted doctrines of insurance law," see Weiss, 57 Alb. L. Rev. at 149, and that it arose "by force of habit and with no examination of the merits whatsoever." Id.; see also, e.g., Sentinel Ins. Co. v. First Ins. Co. of Hawaii, 875 P.2d 894, 892 ("a blanket application of coverage by waiver or estoppel, based upon the failure to provide a defense, subverts any meaningful distinction between the duty to defend and the separate duty to indemnify").

insurance policy." Zarrella v. Minnesota Mut. Life Ins. Co., 824 A.2d 1249, 1260 (R.I. 2003); see also General Accident Ins. Co. v. Am. Nat'l Fireproofing, Inc., 716 A.2d 751, 755 (R.I. 1998); Martinelli v. Travelers Ins. Cos., 687 A.2d 443, 447 (R.I. 1996) (citing ABCD Vision v. Firemans Fund Ins. Co., 744 P.2d 998 (Or. 1987)). Although these decisions do not expressly address Conanicut, they undermine its reasoning, and instead align Rhode Island with the "majority view" held by Massachusetts and most other jurisdictions.

Needless to say, this newer Rhode Island authority is directly at odds with the policyholder's broad reading of Conanicut. Emhart's argument would enormously "expand the scope of coverage" under its insurers' policies. In this case, it would make Century – which wrote a single primary policy, with limits of $100,000 per occurrence – potentially liable under that policy for the entire amount of Emhart's liability at the Centredale Manor site – an amount that Emhart, in its submissions to this Court, has suggested could be in the range of tens of millions of dollars. Moreover, Emhart's reading would strip Century of any coverage defenses it might have under its policy. Under general contract principles, and under the Rhode Island Supreme Court's more recent articulation of estoppel law, such a result, disregarding all terms of the parties' insurance agreement, should not be countenanced by this Court.

## II. The Conanicut Decision Is Narrow In Scope, And Has Been Limited Or Distinguished By Subsequent Authority.

This Court correctly discerned that Conanicut may be of questionable precedential value in predicting Rhode Island law on whether a policyholder should automatically be awarded indemnity coverage, regardless of any insurance policy limitations that may be applicable. The cases upon which Chief Justice Bevilacqua relied in Conanicut have been rejected or distinguished. Moreover, Conanicut involved a very different factual situation. Instead of adhering blindly to the interpretation of Conanicut sought by the policyholder, this Court should

follow the decisions of other state high courts – using duty to defend and estoppel principles consistent with Rhode Island law – that have concluded that an insurer should not be automatically estopped from asserting coverage defenses even if it had breached its duty to defend.

### A. Conanicut Is Factually Distinguishable

The facts underlying Conanicut and this case are very different. Whereas Conanicut involved a "garden variety" slip-and-fall negligence action, this case involves strict and retroactive liability under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). The facts established in the underlying cases differed significantly, and their impact on the coverage case is pivotal.

The plaintiff in Conanicut was a marina operation, which in 1980 purchased a "Boat Dealers / Repairs and Marina Operators Policy" from the defendant insurer. During the policy period, a customer of the marina slipped and fell from the marina's launch onto its dock. The insurer declined to defend, arguing that its policy provided indemnity only. The marina ultimately settled the claim for $18,000. There was no showing by either side, and the Rhode Island Supreme Court did not address, whether the $18,000 settlement fell outside the limits of the policies at issue. The marina then pursued an action for declaratory judgment to determine the coverage provided by the policy. The trial court entered judgment in the marina's favor.

The Supreme Court affirmed, finding that the "Boat Dealers" contract was a general liability policy, which imposed on the insurer a duty to defend. The court found that the allegations of the underlying complaint "clearly allege[d] facts sufficient to bring the claim within the purview of the policy." Id. at 971. Having so found, the Court concluded that the insurer had waived its "opportunity to contest the issue of coverage." Id. at 970. Specifically, the

Court stated that the insurer was precluded from arguing that the marina's employee was not licensed to operate the launch from which the customer had slipped on the date of the incident. Id. at 968 n.2.

In Conanicut, whether the marina's employee had been licensed to operate the launch was a critical fact in establishing the liability of the defendant-policyholder in the tort litigation. In this manner, the court's conclusion that the insurer was precluded from re-litigating that fact is consistent with decisions from other jurisdictions stating that the insurer is bound as to issues necessarily adjudicated in the prior action. Hogan v. Midland Nat'l Ins. Co., 476 P.2d at 825, 832 (Cal. 1970). The facts presented in Conanicut therefore was much more narrow than the sweeping holdings now suggested by the policyholder.

In contrast, CERCLA imposes strict and retroactive liability on PRPs as long as the PRP broadly fits within the definition of an owner or operator at the site. Because CERCLA is a strict liability statute, the federal government's burden for establishing responsibility at a site is very different from a conventional tort case, and the factual details necessary to establish liability do not overlap significantly with facts relevant to determining coverage. Thus, unlike in Conanicut, the insurers in this case are not seeking to "re-litigate" facts. Rather, they are simply seeking to litigate facts and defenses not previously litigated that are relevant to determining whether coverage exists.

Conanicut should not apply to cases in which an insurer's mistaken declination of defense is undertaken in good faith, rather than "wrongfully" or "without legal justification." It clearly should not apply in *any* case – regardless of good faith or "legal justification" – to permit a policyholder to extend an insurer's indemnity obligation beyond the limits of the insurer's policy.

**B. Conanicut Has Been Limited By Subsequent Authority.**

Conanicut also is of limited precedential value because of subsequent decisions in Rhode Island and elsewhere. The cases upon which the Rhode Island high court relied have been discredited, and the Rhode Island Supreme Court has adopted legal principles in recent cases that conflict with Conanicut. Accordingly, this Court should not follow the interpretation of Conanicut sought by the policyholder.

In support of its holding, the court cited two older cases, from California and Massachusetts, which it read to say that an insurer that denies defense "wrongful[ly]," or "without legal justification," should be "liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract." Id. at 971 (citing Comunale v. Traders & General Ins. Co., 328 P.2d 198, 202 (1958); Saragan v. Bousquet, 75 N.E.2d 649 (Mass. 1947)).

In the more than twenty years since Conanicut sought to align itself with the views of Massachusetts and California, both of these jurisdictions have abandoned or curtailed the authority on which Conanicut relies. As this Court recognized, the Massachusetts high court rejected the "automatic indemnity" rule in Polaroid. Notably, several courts have expressly agreed with the approach taken in Polaroid. See, e.g., Bucci v. Essex Ins. Co., 393 F.3d 285, 293 (1st Cir. 2005); Servants of Paraclete, 857 F. Supp. at 1577; Sentinel, 875 P.2d at 907-14; Elliott, 711 A.2d at 1313-14; Northwest Pump & Equip. Co. v. American States Ins. Co., 925 P.2d 1241, 1242 (Or. Ct. App. 1996).[8]

[8] Interestingly, in agreeing with Polaroid, the Maine Supreme Judicial Court in Elliott distinguished an earlier Maine high court decision similar to Conanicut that the policyholder had used to argue for an "automatic indemnity" rule. See Elliott, 711 A.2d at 1313 (distinguishing Marston v. Merchants Mut. Ins. Co., 319 A.2d 111 (Me. 1974); see also Bucci, 393 F.3d at 292-94 (explaining in detail the evolution of the Maine rule).

Likewise, the Supreme Court of California, in Hogan v. Midland Nat'l Ins. Co., 476 P.2d 825 (Cal. 1970), declined to adopt the broad reading of California law suggested by Conanicut. The California court rejected the argument that, "as the consequence of [an insurer's] wrongful refusal to defend [its insured,] it is liable for the entire judgment against [the policyholder] and may not now deny coverage." Hogan, 476 P.2d at 832. The court held, to the contrary, that "the insurer is not bound . . . as to issues not necessarily adjudicated in the prior action and can still present any defenses not inconsistent with the judgment against the insured." Id. In effect, Hogan narrowed Comunale, and similar California precedents, to suggest that an insurer may be bound by matters litigated in the underlying action, but otherwise retains the right to litigate coverage defenses and to invoke the limits available under the insurer's policy. See generally Sentinel Ins. Co., 875 P.2d at 909-911 (describing evolution of California law on this issue).[9]

Tellingly, in the more than twenty years since Conanicut was decided, no Rhode Island state court has ever extended the Conanicut decision to hold – as Emhart now argues – that an insurer that erroneously denies defense should be held liable to indemnify its policyholder beyond the limits set forth in those policies. No Rhode Island state court has ever held that an insurer that does not act "wrongfully," or "without legal justification," in declining to defend a

---

[9] In a footnote apparently intended as dicta, the Conanicut court noted that the plaintiff in Comunale had been allowed to recover in excess of its insurer's policy limits. See Conanicut, 511 A.2d at 971 n.9. Nothing in the Conanicut case, however, suggests that the policyholder was seeking to recover a judgment beyond its policy limits, and this footnote was not central to the Conanicut holding. In any event, Conanicut's reading of Comunale appears to have been incorrect as a matter of California law. As subsequent cases have pointed out, the cited passage of Comunale was only speaking to the question of whether an insurer who *rejects a reasonable settlement offer within the limits of its policy* may thereafter be obligated to pay the full amount of the settlement. See Hogan v. Midland Nat'l Ins. Co., 476 P.2d 825, 832 (Cal. 1970); Campbell v. Superior Court, 44 Cal. App. 4th 1308, 1317 (1996). Elsewhere, the Comunale decision specifically distinguishes the consequences of an insurer's refusal to settle and its refusal to defend, and says, as to the latter, that "the liability of the insurer is ordinarily limited to the amount of the policy plus attorneys' fees and costs." Comunale, 328 P.2d at 201.

claim, should thereby be stripped of its coverage defenses, and found liable without limits on an underlying claim.[10] At least three subsequent decisions of the Rhode Island Supreme Court have undermined Conanicut's rationale, holding, contrary to Conanicut, that "[a] court . . . may not invoke the doctrine of equitable estoppel to expand the scope of coverage of an insurance policy," or bind an insurer beyond the plain terms of the agreement. See Zarrella, 824 A.2d at 1260; American Nat'l Fireproofing, 716 A.2d at 751; Martinelli, 687 A.2d at 443.

In at least one case, Insurance Co. of North America v. Kayser-Roth Corp., No. 92-5248, 1999 WL 813661 (R.I. Super. Ct. July 29, 1999), the Rhode Island Superior Court limited or ignored Conanicut by considering, at some length, the policy defenses of an insurer who was found to have breached the duty to defend. See Kayser-Roth, 1999 WL 813661, at *21-*44. Moreover, the Rhode Island Supreme Court later reviewed the Superior Court decision in detail – including a detailed examination of the coverage defenses invoked by the defense-defaulting insurer, see 770 A.2d 403 (R.I. 2001). Nothing in the Rhode Island Supreme Court's review questioned the Superior Court's willingness to consider the insurer's policy defenses in the case.

Thus, the foundations of the Conanicut decision have been eroded by later authority. The decision itself appears to have been at best ignored – and perhaps overruled sub silentio – by later Rhode Island precedent. Thus, there is ample basis for this Court to view Conanicut as a "derelict in the stream of the law," North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc., 414 U.S. 156 (1973), which need no longer be followed.

[10] In fact, in the twenty years since Conanicut was decided, only one federal case in Rhode Island has ever addressed the decision in detail: Michaud v. Merrimack Mut. Fire Ins. Co., No. 94-0175B, 1994 WL 774683 (D.R.I. Nov. 16, 1994), an unpublished decision, in which a federal magistrate issued a report and recommendation that noted the conflict between Conanicut and Polaroid, and followed Conanicut with obvious reluctance. Of course, the magistrate's report and recommendation in Michaud is not binding on this Court. Fed. R. Civ. P. 72(b). Michaud appears to have been settled before the district court in that case could enter any written order adopting or rejecting the magistrate's report and recommendation.

**III. Legislative and Other Policy Considerations Support A Restrictive View of Conanicut.**

The majority rule – that "an insurer does not forfeit its right to contest coverage when it has breached its obligation to defend its insured," Flannery, 49 F. Supp. 3d at 1227 – is also supported by important policy considerations. The policyholder's interpretation of Conanicut would have this Court automatically "punish the insurer for breach of a contractual duty," Sentinel, 875 P.2d at 894. It would impose punitive liability, up to the full amount of a policyholder's underlying settlement or judgment, in every case where an insurer denied defense – without regard for the culpability of the insurer or the actual damages incurred by a policyholder.

Such indiscriminate "deterrence" is neither necessary nor wise. The Rhode Island legislature, in R.I. Gen. Laws § 9-1-33 (2006), has already addressed the problem of unfair and deceptive conduct by insurers, permitting policyholders to claim "compensatory damages, punitive damages, and reasonable attorney fees" in any case where an "insurer wrongfully and in bad faith refused to pay or settle a claim made pursuant to the provisions of the policy, or otherwise wrongfully and in bad faith refused to timely perform its obligations under the contract of insurance." Id.; see Rumford Prop. & Liab. Ins. Co. v. Carbone, 590 A.2d 398, 400-02 (R.I. 1991) (affirming ruling that insurer had not engaged in bad faith for failing to defend, when insurer contributed to settlement after court rendered judgment that it was obligated to defend), *abrogated in part on other grounds*, Skaling v. Aetna Ins. Co., 799 A.2d 997 (R.I. 2002); see also Lewis v. Nationwide Mut. Ins. Co., 742 A.2d 1207, 1209 (R.I. 2000) ("[b]efore a bad-faith claim can even be considered, a plaintiff must prove that the insurer breached its obligation under the insurance contract"); Bartlett v. John Hancock Mut. Life Ins. Co., 538 A.2d 997, 1000 (R.I. 1998) ("[t]here can be no cause of action for an insurer's bad faith refusal to pay a claim

until the insured first establishes that the insurer breached its duty under the contract of insurance"), *abrogated in part on other grounds*, Skaling v. Aetna Ins. Co., 799 A.2d 997 (R.I. 2002). In effect, the Rhode Island statute allows insurers to limit their liability, in accordance with the terms of the policies, so long as they do not "wrongfully or in bad faith refuse[] to timely perform [their] obligations," and it allows for imposition of extra-contractual damages only if insurers act "wrongfully and in bad faith." R.I. Gen. Laws § 9-1-33; see also Rumford, 590 A.2d at 400 (even if an insurer's coverage determination is incorrect, no bad faith exists if coverage is "fairly debatable"); Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I. 1980) (insurer is not liable for bad faith damages just because its determination as to coverage is found erroneous by a court).

The "automatic indemnity" rule undermines legislative intent by punishing insurers even where the insurer has not acted in bad faith. By doing so, the rule undermines legislative intent by judicially expanding the circumstances under which insurers would be punished. This Court should not engage in that type of policymaking. See, e.g., Rosen v. State Farm Gen. Ins. Co., 70 P.3d 351, 355 (Cal. 2003) (courts should not "rewrit[e] the coverage provision to conform to their notions of sound public policy"); Foster-Gardner, Inc. v. National Union Fire Ins. Co., 959 P.2d 265, 286 (Cal. 1998) (rejecting arguments to expand coverage based on "social and economic considerations").

Rejecting the "automatic indemnity" rule properly acknowledges the contractual basis of the insurance relationship, and binds the policyholder to the limits and terms of the contract it purchased. It permits insurers, writing risks within the State of Rhode Island, accurately to appraise their exposure, and set premiums based on the limits of their policies, without the need to factor in – and adjust premiums to account for – the possibility of arbitrary or excessive

awards. It thereby avoids the unnecessary burden on "ordinary insureds . . . of increased premiums necessitated by the erroneous expansion of their insurers' potential liabilities." See Garvey v. State Farm Fire & Cas. Co., 770 P.2d 704, 711 (Cal. 1989) (noting the destabilizing effects of judicial expansions of coverage on the insurance underwriting process, which relies heavily on contract predictability). The policyholder's broad reading of Conanicut would circumvent the Rhode Island statute – stripping insurers of coverage defenses, and imposing penalties automatically, up to the full extent of the damages in an underlying action, without regard for the limits or terms of the policies in question in the long run, the costs of these arbitrary and unforeseen liabilities would be shifted to all consumers of insurance – businesses and individuals alike.

## CONCLUSION

For all of the foregoing reasons, the Complex Insurance Claims Litigation Association respectfully requests that this Court rule that a liability insurer's failure to defend a claim should not result in the automatic imposition of indemnity upon that insurer such that the insurer is estopped from relying on coverage defenses that otherwise would be available.

Dated: July 31, 2007

Respectfully submitted,

THE COMPLEX INSURANCE CLAIMS LITIGATION ASSOCIATION

/s/ Frederick E. Connelly, Jr.
Frederick E. Connelly, Jr., No. 6772
Michael P. Duffy, No. 4776
PEABODY & ARNOLD LLP
40 Westminster Street, Suite 201
Providence, Rhode Island 02903
401-521-3742
Fax 617-951-2125
fconnelly@peabodyarnold.com
mduffy@peabodyarnold.com

Of Counsel:

Laura A. Foggan
John C. Yang
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
202-719-7000

CERTIFICATION

I, Frederick E. Connelly, Jr., hereby certify that I have this 31st day of July, 2007 electronically filed the above document. The document is available for viewing and downloading from the ECF system. I have electronically served a copy of the foregoing upon all parties through their counsel as listed below:

Jack R. Pirozzolo, Esq.
jpirozzolo@foleyhoag.com

Adam Weisberger, Esq.
aweisberger@foleyhoag.com

Elisa Nethercott, Esq.
enethercott@foleyhoag.com

Mark T. Nugent, Esq.
mnugent@morrisonmahoney.com

James T. McCormack, Esq.
mclaw@choiceonemail.com

Gerald J. Petros, Esq.
gpetros@haslaw.com

John T. Harding, Esq.
jharding@morrisonmahoney.com

Lawrence A. Nathanson, Esq.

James T. Murphy, Esq.
jtm@hansoncurran.com

Kevin J. O'Connor, Esq.
koconnor@hnso.org

Peter Netburn, Esq.
pnetburn@hnso.org

/s/ Frederick E. Connelly, Jr., Esq.
Frederick E. Connelly, Jr.

PABOS2:FCONNEL:665718_1